UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

WALTER A. KOTT, JR.                        CIVIL ACTION

VERSUS                                     NO. _____

N. BURL CAIN, WARDEN                       SECTION:_____

---

MEMORANDUM IN SUPPORT OF PETITION FOR WRIT OF HABEAS CORPUS

---

RESPECTFULLY SUBMITTED BY:

WALTER A. KOTT, JR. #347318
LOUISIANA STATE PENITENTIARY
ANGOLA, LA 70712

## TABLE OF CONTENTS

PAGE NO.

Jurisdiction..................................................................................................1

Statement of the Case.....................................................................................1

Statement of the Facts...................................................................................4

Standard of Review........................................................................................6

Claims Presented...........................................................................................6

Argument in Support of Claim One.................................................................8

Argument in Support of Claim Two...............................................................21

Argument in Support of Claim Three............................................................29

Argument in Support of Claim Four..............................................................35

Argument in Support of Claim Five..............................................................43

Argument in Support of Claim Six................................................................57

Argument in Support of Claim Seven............................................................66

Argument in Support of Claim Eight.............................................................76

Conclusion..................................................................................................78

## INDEX OF APPENDIX

Appendix-A: State Courts Pretrial Rulings (Trial Court; Appellate Court; Supreme Court)

Appendix-B: State Courts Rulings on Direct Appeal (Trial Court; Appellate Court; Supreme Court)

Appendix-C: State Courts Rulings on Post-Conviction (Trial Court; Appellate Court; Note: Louisiana Supreme Court Writ Application Still Pending)

Appendix-D:  Motion for Leave to File Out-of-Time Writ Application

Appendix-E: Louisiana Supreme Court Writ Application (Exhibits Attached Thereto)

Appendix-F: Captain Kevin Swann's Employment Status Application and Dismissal from Arlington Police Department

Appendix-G: Incident Reports of Slidell Police Department (See Appendix-E; Exhibit-I)

TABLE OF AUTHORITIES

PAGE NO.

UNITED STATES CONSTITUTION:

Fourth Amendment..................................................................................21, 22, 23, 27

Fifth Amendment.......................................................................................8, 46, 75, 78

Sixth Amendment................................................................30, 34, 35, 43, 50, 51, 56, 75

Eighth Amendment...................................................................................58, 60, 62, 66

Fourteenth Amendment........................................8, 21, 22, 23, 26, 40, 46, 69, 75, 78

FEDERAL STATUTES:

28 U.S.C. § 1331...........................................................................................................1

28 U.S.C. § 2254............................................................................................................1

28 U.S.C. § 2254(d)..........................................................................................6, 17, 21

28 U.S.C. § 2254(e)(1)...........................................................................................6, 20

STATE STATUTES:

La. C.Cr.P. art. 930.3.................................................................................................58

La. C.Cr.P. art. 930.3(5)............................................................................................58

La. C.E. art 403............................................................................................................36

La. C.E. art. 404(B)........................................................................................36, 37, 39

La. C.E. art. 404(B)(1)...............................................................................................36

La. C.E. art. 611(B).....................................................................................................33

La. R.S. 14:2(B)...........................................................................................................61

La. R.S. 14:14...............................................................................................................51

La. R.S. 14:30.1...............................................................1, 3, 7, 58, 60, 61, 64, 66

CASE LAW:

Ake v. Oklahoma, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985).........................................55

Arizona v. Fulminante, 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991).........................28

Arizona v. Youngblood, 448 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281(1988)......................48, 68

Berger v. United States, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed.2d 1314 (1935)...............................66

Blankenship v. Estelle, 545 F.2d 510 (5th Cir. 1977)........................................................41

Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1983)..............................67, 70

Brecht v. Abrahamson, 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993)...................29, 40

Brown v. Mississippi, 297 U.S. 278, 56 S.Ct. 461, 80 L.Ed. 682 (1936).....................................19

Brown v. United States, 720 F.3d 1316 (11th Cir. 2013)......................................................18

Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).............................35

Bumper v. North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968)........................22

California v. Trombetta, 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984)........................46

Caspari v. Bohlen, 510 U.S. 383, 114 S.Ct. 948, 127 L.Ed.2d 236 (1994)....................................2

Chambers v. Mississippi, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973)....................56, 77

Colorado v. Connelly, 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986)..................................9

Connelly v. Colorado, 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986)................................69

Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971)....................22

Corwin v. Johnson, 150 F.3d 467 (5th Cir. 1998)..........................................................41

Darden v. Wainwright, 477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986)............................75

Davis v. Alaska, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974)...................................30, 34

Dawson v. Delaware, 503 U.S. 159, 112 S.Ct. 1093, 117 L.Ed.2d 309 (1992)............................40

Delaware v. Van Arsdall, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986)........................33

Dickerson v. United States, 530 U.S. 42, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000)......................9

Donnelly v. DeChristoforo, 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974)......................75

Estelle v. McGuire, 502 U.S. 62, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991)....................................41

Fikes v. Alabama, 352 U.S. 191, 77 S.Ct. 281, 1 L.Ed.2d 246 (1957)...........................................9

Gamble v. Oklahoma, 583 F.2d 1161 (10th Cir. 1978)..................................................21

Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972)........................66, 70

Gilmore v. Marks, 799 F.2d 51 (3rd Cir. 1986)................................................................21

Graham v. Florida, 560 U.S. 448, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2009)..........................62, 65

Greer v. United States, 245 U.S. 559, 38 S.Ct. 209, 62 L.Ed. 469.................................................36

Gregory v. United States, 369 F.2d 185 (D.C.Cir. 1966)..................................................75

Grimsley v. Dodson, 696 F.2d 303 (4th Cir. 1982)...........................................................22

Hafdahl v. Johnson, 251 F.3d 528 (5th Cir. 2001)..........................................................41

Hinton v. Alabama, 571 U.S. ___, 134 S.Ct. 1081 (02/24/14).....................................47

Jencks v. United States,353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103 (1957)......................33, 34

Kennedy v. Louisiana, 554 U.S. 407, 128 S.Ct. 2641 (2008).........................................62

Kentucky v. Stincer, 482 U.S. 730, 107 S.Ct. 2658, 96 L.Ed.2d 631 (1987).............................30

Kyles v. Whitley, 514 U.S. 419, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995).................56, 68, 69, 77

Lockhart v. Fretwell, 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993).......................44

Lynum v. Illinois, 372 U.S. 528, 83 S.Ct. 917, 9 L.Ed.2d 922 (1963)..............................20

Michelson v. United States, 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168 (1948)...........................36

Migliore v. U.S., 409 F.2d 786 (5th Cir. 1969)...............................................................68

Miller v. Alabama, 567 U.S. ____, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012)..............................61

Miller-El v. Cockrell, 537 U.S. 322, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003)..........................20

Mincey v. Arizona, 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290  (1978)...................................26

Mooney v. Holohan, 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed.2d 791 (1935)....................................66

Moore v. Johnson, 185 F.3d 244 (5th Cir. 1999)..............................................................53

Murray v. Carrier,  477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986).....................44, 55, 77

Nealy v. Cabana, 764 F.2d 1173 (5th Cir. 1985)..............................................................45

Old Chief v. United States, 519 U.S. 172, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997).................................................................................................35, 36, 37

Otte v. Houk, 654 F.3d 594 (6th Cir. 2011).....................................................................18

Pietri v. Florida Dept. of Corrections, 641 F.3d 1276 (11th Cir. 2011)...........................18

Ponce v. Cupp, 735 F.2d 333 (9th Cir. 1984)..................................................................22

Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932)....................................52

Reck v. Pate, 367 U.S. 433, 81 S.Ct. 1541, 6 L.Ed.2d 948 (1961)......................................9

Riley v. Gray, 674 F.2d 522 (6th Cir.1982)....................................................................22

Roberts v. Cockrell, 319 F.3d 690 (5th Cir. 2003)............................................................2

Roper v. Simmons, 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005).............................61, 62

Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973).................................................................................................9, 20, 22, 23

Schriro v. Landrigan, 550 U.S. 465, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007)............................20

Spano v. New York, 360 U.S. 315, 79 S.Ct. 1202, 3 L.Ed.2d 1265 (1959).................................9

Spencer v. Texas, 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967)..................................35

State v. Bertrand, 6 So.3d 738 (La. 2009)................................................................59

State v. Chambers, 933 So.3d 200 (La. App. 3 Cir 5/24/06)..............................................53

State v. Davis, 666 So.2d 400 (La.App. 1 Cir. 1995)....................................................60

State v. Dorthey, 623 So.2d 1276 (La. 1993)..........................................................59, 60

State v. Foret, 447 So.2d 1265 (La.App. 1 Cir. 1984)..................................................46

State v. Goode, 380 So.2d 1361 (La. 1980)...............................................................59

State v. Green, 416 So.2d 539 (La. 1982)................................................................66

State v. Guajardo, 428 So.2d 468 (La. 1983)...........................................................59

State v. Hatcher, 372 So.2d 1024 (La.1979)............................................................37

State v. Interiano, 868 So.2d 9 (La. 2004)..............................................................58

State v. Lobato, 603 So.2d 739 (La. 1992)..............................................................60

State v. Muschkatt, 706 So.2d 429 (La. 1998)...........................................................58

State v. Rochon, 75 So.3d 876 (La. 2011)................................................................58

State v. Sepulvado, 25 So.3d 899 (La.App. 2 Cir. 10/28/09)............................................53

State v. Simmons, 443 So.2d 512 (La. 1983).............................................................69

Stone v. Powell, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976)..............................21, 22

Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674

(1984)..................................................................................43, 44, 45, 55, 76, 77

Strickler v. Greene, 527 U.S. 263, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999)..............................67

Taylor v. Kentucky, 436 U.S. 478, 98 S.Ct. 1930, 56 L.Ed.2d 468 (1978)..............................56, 77

Tennessee v. Bane, 510 U.S. 808, 114 S.Ct. 52, 126 L.Ed.2d 23 (1993).....................................40

Thompson v. Louisiana, 469 U.S. 17, 105 S.Ct. 409, 83 L.Ed.2d 246 (1984).........................26, 27

United States v. Bagley, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985)......................56, 67

United States v. Bieganowski, 313 F.3d 264 (5th Cir. 2002).............................................75

United States v. Bryant, 439 F.2d 642 (1971)...........................................................70

United States v. Cronic, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657

(1984)...............................................................44, 45, 50, 53, 55, 56, 57, 77

United States v. Cronic, 839 F.2d 1401 (10th Cir. 1988)................................................53

United States v. Hernandez, 670 F.3d 616 (5th Cir. 2012).............................................29

United States v. Meros, 866 F.2d 1304 (11th Cir. 1989)................................................67

United States v. Singh, 261 F.3d 530 (5th Cir. 2001)...................................................29

United States v. Skilling, 554 F.3d 529 (5th Cir. 2009).................................................75

United States v. Soape, 169 F.3d 257 (5th Cir. 1999)...................................................75

United States v. Watson, 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976).............................23

United States. v. Gaddy, 532 F.3d 783 (8th Cir. 2008).................................................70

Waddington v. Sarausad, ____ U.S. ____, 129 S.Ct. 823, 172 L.Ed.2d 532 (2009).......................6

Washington v. Texas, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967)................................51

Wright v. Van Patten, 552 U.S. 120, 128 S.Ct. 743, 169 L.Ed.2d 583 (2008)..................57

OTHER:

Blacks Law Dictionary Abridged 6th Ed.................................................................63

Fed.R.Evid. 403.....................................................................................36

## JURISDICTION

The United States District Court for the Eastern District of Louisiana has jurisdiction to review a Petition for Writ of Habeas Corpus filed by a person in state custody pursuant to 28 U.S.C. § 2254 and 28 U.S.C. § 1331.

## STATEMENT OF THE CASE

Petitioner, Walter A. Kott, Jr., was charged by grand jury indictment with second degree murder (La. R.S. 14:30.1) in connection with the death of Rebecca Roshto caused by a drug overdose on January 29, 2004. A motion to suppress evidence, confession and a motion to recuse the District Attorney's Office was heard on November 7, 2008, and denied by the trial court. (See Appendix-A).

Petitioner sought supervisory writ with the Louisiana First Circuit Court of Appeal ("First Circuit") to review the trial court's pretrial ruling denying his combined motions to suppress evidence, confession, and recusal of the District Attorney's Office. Both the First Circuit and the Louisiana Supreme Court denied the writ without reason. State v. Kott, 09-0295 (La.App. 1 Cir. 6/22/09)(unpublished); writ denied, 09-167 (La. 10/30/09), 21 So.3d 270. (See Appendix-A).

Petitioner's trial commenced on November 29, 2010, and on December 3, 2010, a twelve-person jury found him guilty of second degree murder. On March 11, 2011, the trial court sentenced petitioner to life in prison without benefit of parole, probation, or suspension of sentence.

Petitioner appealed his conviction to the Louisiana First Circuit Court of Appeal. Appellate counsel submitted one assignment of error and petitioner presented two pro se assignments of error. His appellate counsel argued that the trial court erred and/or abused its discretion in permitting the State to use evidence of another crime in rebuttal.[1] As a result of an oversight, the appellate court granted a rehearing to consider the merits of petitioner's pro se assignments of error. He argued that (1) the trial court erred in not suppressing evidence recovered from his motel room and vehicle and (2) the trial court erred in denying the motion to suppress confession/inculpatory statements. The court of appeal affirmed his conviction. State v. Kott, 11-0997 (La.App. 1 Cir. 2/10/12), 2012 WL 602425(unpublished); rehrg. denied, 11-0997 (La.App. 1 Cir. 5/4/12). The Louisiana Supreme Court denied writ of certiorari on November 21, 2012. State v. Kott, 12-1221 (La. 11/21/12), 102 So.3d 53. (See Appendix-B). Petitioner did not seek writ of certiorari with the United States Supreme Court. Thus, his conviction became final on February 19, 2013, or 90 days from the date the Louisiana Supreme Court denied writ of certiorari. See Caspari v. Bohlen, 510 U.S. 383, 390, 114 S.Ct. 948, 127 L.Ed.2d 236 (1994); Roberts v. Cockrell, 319 F.3d 690, 693 (5th Cir. 2003).

Petitioner filed an Application for Post Conviction Relief (APCR) with the trial court on May 24, 2013. As grounds for relief, he presented the following claims: (1) that his defense counsel was ineffective for (a) failing to perform proper pretrial discovery

---

[1]   Due to clerical error, the First Circuit did not initially address petitioner's pro se assignments of error, but granted a rehearing to address those alleged errors. See Appendix-C.

2

and investigation, (b) failing to prepare and present a defense, (c) failure to challenge and seek writs regarding the admission of other crimes evidence, (d) failed to present a defense of negligent homicide and to request a special jury instruction on same, (e) failed to acquire experts to assist in preparation and presentation of the defense when the motion filed for expert requesting funds was granted, (f) and the cumulative effect of defense counsel's errors; (2) that his conviction under the second degree murder statute, La.R.S 14:30.1 (3) and (4), is unconstitutional as applied to him; (3) that prosecutorial misconduct occurred when the district attorney withheld blood evidence and when he obtained testimony by threatening a witness; and (4) denial of a fair trial due to the accumulation of errors.

The trial court denied post-conviction relief on June 20, 2013. (See Appendix-C). Petitioner filed a timely Notice of Intent to seek supervisory writs with the court of appeal which was granted on July 10, 2013. Soon thereafter, on July 19, 2013, he filed his application for supervisory writ with the First Circuit Court. The appellate court denied the writ without reason on October 28, 2013.[2] (See Appendix-C).

Due to a malfunction with petitioner's attorney's e-mail system, the ruling of the court of appeal got lost in her inbox. When petitioner received a copy of the appellate court's ruling, he immediately filed a Motion for Leave to File an Out-of-Time Writ

---

2 Even though the court of appeal denied the writ on October 28, 2013, petitioner had no knowledge of the ruling and had not receive a copy of the ruling at the time. Petitioner contacted his attorney one day to inquire about the status of his writ application. His attorney, Rachel Yazbeck, called the clerk of court and was informed that the appellate court had denied the writ application on October 28, 2013. Ms. Yazbeck notified petitioner by letter dated March 12, 2014, to inform him that "the email from the First Circuit got lost in my inbox and they never mailed an actual copy to the office." See letter and sworn affidavit attached to separate Motion for Stay of Abeyance.

Application with the Louisiana Supreme Court (See Appendix-D), together with an Application for Supervisory Writ of Review (See Appendix-E).[3] The aforementioned pleadings was received and filed by the clerk of the supreme court on on April 4, 2014.[4]

Petitioner now submit the instant Petition for Writ of Habeas Corpus with a Motion for Stay and Abeyance pending resolution of his writ application by the Louisiana Supreme Court.[5]

## STATEMENT OF THE FACTS

The Louisiana First Circuit Court of Appeal summarized the facts underlying the offense on direct review, in the following manner:

> On January 29, 2004, at 11:23 a.m., the defendant called for medical assistance to his motel room at the Plaza Inn on Lindberg Drive in Slidell. He told the responding police officers that the , Rebecca Roshto, was in his room and was not breathing. The police found her lying naked in the bathtub. She was dead and lividity was present in her body. She had mucus coming from her nose and an apparent puncture wound and "track mark" from a needle on her inner right arm.
>
> The defendant had eight pills of hydrocodone in his pocket. There was a pill bottle for Dephenhydramine, containing numerous pills, located in the drawer of the motel room. The defendant also had prescription bottles in his name containing thirty Dilaudid pills and fifty-six hydrocodone (Lorcet) pills in the glove compartment of his car. Additionally, a syringe and needle were recovered from a bag in the dumpster at the motel.
>
> Analysis of the victim's blood and liver revealed the presence of a trace amount of carisoprodol (Soma); a low-end therapeutic amount of alprazolam (Xanax), a muscle relaxant; and a lethal amount of

---

3 Soon after petitioner's attorney informed him that the ruling of the appellate court got lost in her e-mail system, he got assistance from an inmate counsel who prepared the Motion for Leave to File an Out-of-Time Writ Application and an Application for Supervisory Writ of Review for filing in the Louisiana Supreme Court.

4 See Louisiana Supreme Court Notice of Filing attached to separate Motion for Stay of Abeyance.

5 It should be noted that petitioner's § 2254 petition is not untimely. His conviction became final on February 19, 2013; he filed post-conviction application with the trial court on May 24, 2013. Thus, he still had 271 days remaining on his federal 1-year prescription period which would expire on July 26, 2014.

4

hydromorphone (Dilaudid). The victim died within two to four hours of being injected with the Dilaudid. Dilaudid, an opiate six to twelve times more potent than morphine, affects the receptors in the brain controlling breathing. It can cause the fluid in blood to flow into the lungs, preventing breathing and causing a "froth column" at the nose and mouth.

Eric Scott Williams testified that the defendant confessed he had injected the victim with "K4 Dilaudids," and "[t]here was mention of Xanax and Somas," when Williams was incarcerated in St. Tammany Parish Jail with the defendant in January or February of 2004. Williams also claimed the defendant stated he disposed of the syringe or syringes and the drugs from the room at a convenience store on Voters Road in Slidell.

Catherine Grace "Rena" Boyen, the defendant's stepdaughter, testified the defendant called her on january 29, 2004, at approximately 8:00 a.m. or 8:30 a.m., stated he was having heart problems and asked her to come to his hotel room. Boyen indicated the victim was deceased and lying on the bed in the room. Boyen and the victim had been friends for a few years. Boyen put ice on the victim to try to "bring her back." According to Boyen, the defendant had previously injected her and the victim with Dilaudid. In a January 29, 2004 statement to the police, Boyen indicated the defendant told her he "shot [the victim] up with four K4s in the past two hours."

The defendant gave multiple statements to the police concerning the incident. Initially, he claimed the victim came to his motel room between 10:50 p.m. and 12:00 a.m., on the night prior to her death, after calling him and asking to come over to talk because she was having a "bad evening." He claimed the victim then went to get gas, cigarettes, and milk. He claimed he went to sleep and woke up at 9:00 a.m. or 10:00 a.m. when Boyen came to his room. He claimed Boyen helped him put the victim in the bathtub, and when the victim did not respond, he called the police. The defendant had needle marks on both of his arms.

In his second statement, the defendant claimed he "shot Dilaudid" with Boyen in the days prior to, and on the morning of, the victim's death. In his third statement, the defendant claimed he administered a four milligram tablet of Dilaudid to himself and a lady friend, "Rebecca," by injecting the drug into one of her veins with a hypodermic needle. He claimed he then went to sleep, while "Rebecca" watched the Discovery Channel.

At trial, the defendant denied injecting the victim with anything on the day of the incident or at any other time. He also denied confessing to Williams. Additionally, he denied confessing to Boyen. Further, he denied

injecting Boyen with drugs. He claimed his statements to the police were the result of the police putting his "medications" in front of him and promising to give him the drugs in exchange for the statements. He also claimed he made the statements so the police would not take Boyen to jail.

State v. Kott, 2011-0997 (La.App. 1 Cir. 02/10/12)(unpublished opinion).

### STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act (AEDPA), the federal district court may grant a petition for habeas relief from a state court judgment only in one of two limited circumstances: if the state court decision (1) was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). In conducting this deferential evaluation, the district court will presume that the state court's factual determinations are correct, a presumption the petitioner may rebut only by clear and convincing evidence. Id. § 2254(e)(1). Thus, the petitioner bears the burden of showing that the state court's finding of fact or its application of federal law was not only erroneous, but unreasonable. See Waddington v. Sarausad, _____ U.S. _____, 129 S.Ct. 823, 831, 172 L.Ed.2d 532 (2009).

### CLAIMS PRESENTED

1) The decisions of the state courts that petitioner's confessions were freely and voluntarily given was contrary to and based on an unreasonable application of clearly

6

established federal law as determined by the United States Supreme Court.

2) The decisions of the state courts that petitioner's alleged consent to search was voluntary, and the evidence obtained without a warrant admissible, was based on an unreasonable application of clearly established federal law as determined by the United States Supreme Court.

3) The decisions of the state courts that petitioner's constitutional right to cross-examine a prosecution witness was not violated was contrary to and based on an unreasonable application of clearly established federal law as determined by the United States Supreme Court.

4) The decisions of the state courts that the prosecutor's admission of prior bad acts during rebuttal examination of State witness was not prejudicial was contrary to and based on an unreasonable application of clearly established federal law as determined by the United States Supreme Court.

5) The decisions of the state courts that petitioner's attorney was not constitutionally ineffective was contrary to and based on an unreasonable application of clearly established federal law as determined by the United States Supreme Court.

6) The decisions of the state courts that Sections (3) and (4) of the second degree murder statute, La. R.S. 14:30.1, was not unconstitutional as applied him was contrary to and based on an unreasonable application of clearly established federal law as determined by the United States Supreme Court.

7

7) The decisions of the state courts that petitioner's due process right to a fair trial was not violated due to prosecutor misconduct was contrary to and based on an unreasonable application of clearly established federal law as determined by the United States Supreme Court.

8) The decisions of the state courts that petitioner's due process right to a fair trial was not violated as a result of the accumulation of errors was contrary to and based on an unreasonable application of clearly established federal law as determined by the United States Supreme Court.

<u>ARGUMENT IN SUPPORT OF CLAIM ONE</u>

Petitioner contends that the trial court's failure to suppress his involuntary confessions obtained in violation of his Fifth and Fourteenth Amendment rights was contrary to and based on an unreasonable application of clearly established federal law as determined by the United States Supreme Court.

(A)

Petitioner filed a pretrial motion to suppress his confessions and evidence sought to be used against him as unlawfully and illegally obtained. He complained that the interrogation techniques used by the police to obtain his confessions violated his substantive due process rights. The Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. The Due Process Clauses of the Fifth and Fourteenth Amendments bar the admission of

8

involuntary confessions. Spano v. New York, 360 U.S. 315, 324, 79 S.Ct. 1202, 1207-08, 3 L.Ed.2d 1265 (1959). In order for a confession to be involuntary for due process purposes, it must be the product of official coercion. Colorado v. Connelly, 479 U.S. 157, 167, 107 S.Ct. 515, 521, 93 L.Ed.2d 473 (1986); Spano v. New York, 360 U.S. at 321-22, 79 S.Ct. 1202; Fikes v. Alabama, 352 U.S. 191, 196-98, 77 S.Ct. 281, 1 L.Ed.2d 246 (1957).

In determining the voluntariness of a confession, the reviewing court "examines whether a defendant's will was overborne by the circumstances surrounding the giving of a confession." Dickerson v. United States, 530 U.S. 428, 44, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000)(citation and internal quotation marks omitted). "The due process test takes into consideration the totality of all the surrounding circumstances -- both the characteristics of the accused and the details of the interrogation." Id. (citation and internal quotation marks omitted). Another words, "all the circumstances attendant upon the confession must be taken into account." Reck v. Pate, 367 U.S. 433, 440, 81 S.Ct. 1541, 6 L.Ed.2d 948 (1961)(citation omitted). Thus, the questions that the court must answer: "Is the confession the product of an essentially free and unconstrained choice by its maker? If it is, if he has willed to confess, it may be used against him. If it is not, if his will has been overborne and his capacity for self-determination critically impaired, the use of his confession offends due process." Schneckloth v. Bustamonte, 412 U.S. 218, 225-26, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973)(citation omitted).

9

(B)

The trial court's findings that petitioner's confessions given freely and voluntarily was based primarily on the testimony of the police officers. Sergeant Bobby Campbell testified that he was involved in the investigation of Rebecca Roshto's death. According to Campbell, petitioner called 911 at approximately 11:23 a.m. because Ms. Roshto appeared to be unconscious, unresponsive and potentially deceased. Ms. Roshto was in petitioner's hotel room at the Plaza Inn in Slidell. Campbell received verbal instruction from Detective Sean McClain over the phone that petitioner had consented to allow a search of his car and the hotel room at issue. Petitioner was at the police station when this alleged consent was given. Campbell saw petitioner at the hotel when he arrived but claims he did not speak to him. Petitioner was taken to the police station from the hotel in the back of a police car.

Campbell searched the room and petitioner's car pursuant to the verbal information he received from Detective McClain. Campbell did not have personal confirmation that petitioner had consented to a search at the time the search was conducted but merely relied on the hearsay statement of Detective McClain. He claims that he "later" asked petitioner at the station if he had in fact consented. When petitioner allegedly said yes, according to Campbell, he signed the consent to search form as a witness. However, the form indicated that it was executed at 10:45 a.m., almost an hour before the 911 call. Campbell claims that he was witnessing the fact that the search was done even though the

10

form does not ask whether the search was done. Campbell did not witness petitioner's signature. He did not correct the alleged incorrect time on the consent form or notice it. He did not see the form prior to conducting a search. He does not know what time the form was filled out. Detective McClain filled out the form. However, McClain did not have a search warrant to search the hotel room or the car. Search of petitioner's car revealed two prescription medication bottles which were lawfully prescribed to him.

Campbell participated in questioning petitioner at the Slidell Police Department. Petitioner gave three written statements. One was obtained prior to Campbell's arrival. None of these statements were recorded even though there was recording equipment at the station. Campbell does not know what time the statements were taken. He claims that petitioner did not ask for an attorney until after these three written statements were obtained over several hours of interrogation.[6] Campbell denied that petitioner appeared in need of medical attention, despite the fact that petitioner repeatedly asked for his medication[7] four or five times during the several hours of interrogation.[8] Campbell admitted that he was not a medical expert. Petitioner was interrogated from at least 1:00 p.m. until 7:30 p.m. and was deprived of his lawfully prescribed medications during that time. Campbell refused to give petitioner any of his medication because he is not a

---

6  See, e.g., Missouri v. Seibert, 542 U.S. 600, 124 S.Ct. 2601, 159 L.Ed.2d 643 (2004)(plurality opinion)(holding that post-Miranda confessions are the result of a deliberate two-step interrogation technique).

7  Petitioner was prescribed Lauracet-10 (Hydrocodone), 1 every 4 to 6 hours and Dilaudid 4mg (Hydromorphine), 1 every 6 hours for breakthrough pain.

8  See, e.g., Arnett v. Lewis, 870 F.Supp. 1514, 1523-25, 1540 (D.Ariz. 1994)(Defendant's confession was involuntary under totality of the circumstances because, while suffering from acute chronic sinus condition he was denied his medication.)

11

doctor or a nurse.

Campbell denied offering to give petitioner his medication in exchange for a confession. Campbell did place the pill bottles taken from petitioner's car on the table in front of him during the interrogation. Campbell denied taunting petitioner with the pill bottles. He denied leaving petitioner alone in the room with the pill bottles. He denied asking petitioner why he needed the pills. He did not see anyone give petitioner any medication. He did not call a doctor or nurse to determine if petitioner needed to take his medication.

Campbell was not present when the initial Miranda[9] form was signed or when petitioner allegedly received Miranda warnings. He contends that he verbally readvised petitioner of his Miranda rights. He witnessed petitioner write two statements. He also witnesses petitioner sign a consent to search his body. He did not participate in the questioning of Catherine "Rina" Boyen, petitioner's stepdaughter. Ms. Boyen was at the Slidell Police Station the same time as petitioner, but was being interrogated by Detective Stan Rabalais in another area.

Campbell also searched Ms. Roshto's truck which was at the hotel. The truck was towed to the Slidell Police Station and was later picked up by Ms. Roshto's mother (Jan Herrington Wroten), Ms. Wroten's ex-husband and Ms. Roshto's step-father, Henry Harrington. Campbell told Ms. Wroten that it was obvious that petitioner had a drug problem because he asked for drugs during the "interview" and made statements that he

---

9   Miranda v. Arizona, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

would tell the truth if given drugs.[10]   However, Campbell allegedly told her "As if we would dangle his drugs in order to get him to tell the truth."   He denied having petitioner's pills on him at the time he saw Ms. Wroten.

Captain Kevin Swann testified that he investigated Rebecca Roshto's death.  He spoke to petitioner at the police station.  Swann denied promising, threatening or coercing petitioner or seeing anyone else do so.  He testified that petitioner asked other investigators for a lawyer at the end of questioning but did not ask for a lawyer in his presence.  Petitioner told Swann that he (petitioner) was ill with liver issues.  He denied that petitioner requested medical attention.  According to Swann, petitioner did not ask him for his medication.  The officer testified that if petitioner needed medical attention, it would have been provided to him.  Swann claims that petitioner asked for medication not medical attention, but they do not provide medication.  He stated that McClain and Campbell made the decision that petitioner did not need his medication.

Regarding the consent to search form, Swann testified that the witnesses generally are the people that explain the form and went over the form.  He stated that it was not uncommon for a witness to sign the form at a later date or for more than one person to go over the form.  He admitted that the time on the form was wrong.  He denied apologizing to petitioner for the way other officers were treating him.  He denied that either petitioner or Ms. Boyen were transported to the police station in handcuffs.  He denied threatening

---

10 See, e.g., Jackson v. Denno, 378 U.S. 368, 384-85, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964)(the "reliability of confession has nothing to do with its voluntariness"); Hutcherson v. United States, 351 F.2d 748, 753 (D.C. Cir. 1965)(the "probable truth or falsity" of a confession " is not a permissible standard under the Due Process Clause: on the "question [of] whether the confession was voluntary and admissible.")

13

petitioner with prosecuting his stepdaughter for murder. He did not recall having to wake

petitioner who fell asleep while being interrogated. He did not recall going over a rights

form with him. The bottom line is: Swann's testimony was extremely evasive.

In spite of all the contradictions and irreconcilable conflicts in the testimony of the

police officers who testified at the suppression hearing, the court denied petitioner's

motion to suppress his confessions. The court's decision was based on the following:

> The Court took the Motion to Suppress Confession under
> advisement on November 7, 2008 after several days of testimony over an
> extended period. The Court looks at the facts and circumstances of each
> case and reviews the totality of the circumstances in determining whether a
> confession was freely and voluntarily made without coercion, intimidation
> or improper influences. First, it is clear that the defendant's confessions
> were not involuntary due to intoxication because any intoxication was not
> of such a degree as to negate his comprehension nor render him
> unconscious of the consequences of what he was saying. See State v. Lauf,
> 953 So.2d (La.App. 5th Cir.2007). The fact that the defendant suffers from
> a medical condition (which withdrawal is) does not mean he in incapable of
> giving a voluntary confession. See State v. Williams, 804 So.2d 932 (La.
> App. 1st Cir. 2001). The Court is convinced that the police officers did not
> use the defendant's pills to induce or coerce the confessions. Obviously,
> Mr. Kott wanted pills but they were not used to coerce or intimidate him
> into confessioning nor were improper influences used. All confessions
> were received before the invoking of his right to an attorney The Court
> denies the Motion to Suppress the defendant's confessions.

See trial court's "Reasons for Judgment".

After the state appellate court and supreme court upheld the trial court's ruling on

petitioner's pretrial motion to suppress his confessions, he resubmitted the issue of

voluntariness on direct review of his conviction. State v. Kott, 11-0997 (La.App. 1 Cir.

2/10/12); rehrg. denied, 11-0997 (La.App. 1 Cir. 5/14/12). However, the appellate court

14

rejected petitioner's claim of involuntariness of his confessions based on the findings set

forth below:

> Slidell Police Department Corporal Jeffrey Kahrs testified that on January 29, 2004, at 11:23 a.m., he responded to a call for medical assistance at the location of room 129 at the Plaza Inn & Suites in Slidell. On arrival, Corporal Kahrs encountered the defendant outside of the room, who told him, "she is not breathing" and brought him into the room. Corporal Kahrs saw the victim in the bathtub, checked for a pulse, and noticed the presence of lividity in her body. There were no obvious injuries to the victim's body, and Corporal Kahrs indicated he did not consider the matter a criminal investigation at that point. He did not handcuff the defendant or restrict his movements in any way. He did not consider the defendant to be a suspect in a crime. He stated the defendant was free to leave if he wanted to go. Corporal Kahrs questioned the defendant about "the time frame and presence in the room." Sergeant Campbell subsequently requested that the defendant be secured in the rear of the patrol unit, and Corporal Kahrs placed him there without handcuffs. Corporal Kahrs stated he still did not consider the defendant to be a criminal suspect. Pursuant to standard procedure, Corporal Kahrs patted the defendant down for weapons and contraband, and the defendant stated he had his medication in his pocket. Corporal Kahrs removed hydrocodone from the defendant's pocket, as contraband. He immediately recognized the pills, which were labeled "Watson 503," because he had dealt with hydrocodone "plenty of times." The defendant stated his prescription bottle for the medication was in his car. Corporal Kahrs advised the defendant of his <u>Miranda</u> rights.[11] Corporal Kahrs never interrogated the defendant about the dead body or the drugs, and stated the defendant made no inculpatory statements to him.[12] The defendant was not arrested at the scene and was never charged with illegal possession of any drugs.
>
> Slidell Police Department Detective Sean McClain testified he came into close contact with the defendant at the police station. He observed nothing which would suggest the defendant was impaired by drugs or alcohol or that the defendant was unable to understand what was occurring

---

11  The police report and narrative does not indicate that Corporal Kahrs, the first officer to arrive on the scene, "advised the defendant of his <u>Miranda</u> rights." <u>See</u> Appendix- (Exhibit-I).

12  It should be noted, however, that the police narrative state that Corporal Kahrs "conducted initial interview of Walter Kott to attempt to determine the circumstances surrounding the subject's death. Kott could not give consistent, coherent details during initial interview but the following is a summary of the facts given by Kott at the scene[.]" <u>See</u> Appendix- (Exhibit-I).

around him or what was being said to him. Detective McClain identified State Exhibit #1 as a form for permission for search and seizure. In the form, the defendant authorized Sergeant Campbell "to search my residence" and "my motor vehicles," and "to remove from my said residence, real estate and/or motor vehicles whatever documents, articles, or other items of property whatsoever which they deem pertinent to their investigation[.]" Detective McClain indicated Sergeant Campbell was processing the scene at the time the defendant signed the consent form. The form indicated it was executed on January 29, 2004 at 10:45 a.m. Detective McClain made no promises to the defendant in order to get him to sign the form. Detective McClain also stated he did not threaten the defendant or use any form of pressure on him to induce his cooperation or consent. After the defendant signed the form, Detective McClain advised the officers at the scene that they could proceed with a search of the defendant's motel room and vehicle.

Slidell Police Department Sergeant Bobby Campbell testified he was the "case detective" for the investigation at issue. His responsibilities included collecting evidence from the scene. He stated evidence was recovered from the defendant's motel room and vehicle pursuant to a consent to search. He indicated Detective McClain "spearheaded the pursuit of a consent to search." Sergeant Campbell testified, after the defendant was taken to the police station, Detective McClain called him (Sergeant Campbell) and advised him the defendant had consented to a search of the defendant's room and vehicle. After he finished processing and documenting the crime scene, Sergeant Campbell also went to the police station. He entered the interview room, introduced himself to the defendant, told the defendant that he (Sergeant Campbell) had searched the defendant's room and vehicle, and asked him to confirm that he had consented to the searches. Sergeant Campbell testified the defendant confirmed he had given consent and said "something to the effect of you all search whatever you want." Thereafter, Sergeant Campbell signed the consent form as a witness. He indicated the "10:45 a.m." time on the form was inaccurate because the call from the location was not made until 11:23 a.m.

State v. Kott, 11-0997 (La.App. 1 Cir. 2/10/12); rehrg. denied, 11-0997 pg. 4-6 (La.App. 1 Cir. 5/14/12).

16

(C)

Petitioner contends that the state courts' factual findings and legal determination on the issue of voluntariness of his confessions were objectively unreasonable in light of the evidence adduced in the trial court proceedings.  28 U.S.C. § 2254(d).  The police officers were fully aware of petitioner's need for his prescribed medication; but nonetheless, despite multiple requests, they refused to provide the medication which was available during the interrogation.  The officers purportedly relied on "department policy" that they do not give medication to anyone because of their lack of medical knowledge, but instead would rely on the advice of medical personnel in the form of an ambulance, doctor or nurse.  However, no medical personnel were consulted in the face of petitioner's repeated requests for his prescribed medication.

The trial court acknowledged that petitioner was suffering from withdrawal symptoms but found that fact did not mean he was incapable of giving a voluntary confession.  However, "capability" does not negate the coercion or improper influence used by the police in obtaining three unrecorded statements from petitioner.  In any event, there was no dispute that petitioner was suffering from withdrawal symptoms during the long interrogation with his properly prescribed medicine sitting in plain view but unavailable to him due to the coercive actions of the police.  The police seem to take the position that even though they are not medically capable to determine if someone truly is in withdrawal and needs medication, they can make the determination that the same

17

person is not under any duress due to the withdrawal symptoms such that would affect his ability to give a free and voluntary statement. However, the trial court's failure to consider the physical and psychological effects of drug withdrawals is objectively unreasonable. See, e.g., Brown v. United States, 720 F.3d 1316, 1330 (11th Cir. 2013) ("[A] person who suffered the effects of intoxication and/or drug withdrawal would not likely exercise the usual caution and judgment another reasonable person might."); Otte v. Houk, 654 F.3d 594, 608 (6th Cir. 2011)(COLE, Circuit Judge, dissenting)("Otte's expert testified that alcohol withdrawal causes serious discomfort which impairs cognitive functioning."); Pietri v. Florida Dept. of Corrections, 641 F.3d 1276, 1286 (11th Cir. 2011)("Dr. Caddy explained the effects of drug addiction and noted that during the withdrawal period, a drug addict overreacts to stimuli. The addict may experience a general sense of confusion and a high stress level.").

In sum, the record makes clear that the police used coercive techniques to obtain three involuntary statements from petitioner. The police withheld his lawfully prescribed medication (Lorcet[13] and Dilaudid[14]) from him for many, many hours which caused him to go into withdrawals. The police used petitioner's medical condition, the fact that he was without medication for many hours and dangled his medication in front of him in

---

13 "Lorcet is a preparation of hydrocodone and acetaminophen ... for use in the treatment of moderate to moderately severe pain." Rockwood v. Astrue, 614 F.Supp.2d 252, 284 n. 28 (N.D.N.Y. 2009); Key v. Barnhart, 324 F.Supp.2d 1288, 1294 n. 11 (N.D.Ala. 2004)("Lorcet is a hydrocodone which is used in the treatment of acute musculoskeletal pain.")

14 "Dilaudid is a hydrogenated ketone of morphine which can be prescribed by doctors for relief of pain." United States v. Knighten, 919 F.2d 80, 83 n. 2 (8th Cir. 1990). See also Henderson v. Astrue, 887 F.Supp.2d 617, 642 n. 28 (W.D.Pa. 2012)("Dilaudid is a strong analgesic (painkiller).").

18

order to gain consent to search and a statement against interest. Petitioner's interrogation was not audio or video recorded. Thus, it cannot be said that his consent or statements were freely and voluntarily given.

Additionally, the manner in which the consent to search form was incorrectly filled out by officers cast doubt on their credibility. Sergeant Campbell did not have consent when he searched petitioner's hotel room and car. He relied on hearsay information from another officer that petitioner had consented. He had not seen the form. He did not see the form until well after a search was conducted. Accordingly, the search of petitioner's car and hotel room were improper.

In sum, the record demonstrates that the interrogation techniques used by the police to extract three incriminating statements from petitioner were extremely coercive and torturous, to say the least. The mere deprivation of petitioner's prescribed pain medications for many hours, which caused him to suffer from withdrawals, is sufficient establish coercion and render his confessions involuntary. The denial of his pain medication to extract the statements clearly contravenes the "principles of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." Brown v. Mississippi, 297 U.S. 278, 284, 56 S.Ct. 461, 80 L.Ed. 682 (1936)(citation omitted). This court's role when faced with the coerced confessions in this case, is to " 'enforce[ ] the strongly felt attitude of our society that important human values are sacrificed where an agency of the government, in the course of securing a conviction,

wrings a confession out of an accused against his will.' " Schneckloth, 412 U.S. at 225, 93 S.Ct. 2041 (quoting Blackburn, 361 U.S. at 206-07, 80 S.Ct. 274). When the defendant's "will has been overborne and his capacity for self-determination critically impaired, the use of his confession offends due process." Id. at 225-26, 93 S.Ct. 2041; see also Lynum v. Illinois, 372 U.S. 528, 534, 83 S.Ct. 917, 9 L.Ed.2d 922 (1963)(question is "whether the defendant's will was overborne at the time he confessed").

(D)

AEDPA requires the federal habeas court to give deference to the trial court's factual findings. 28 U.S.C. § 2254(e)(1). However, the deference to which state-court factual findings are entitled under the AEDPA does not preclude relief. Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S.Ct. 1029, 1041, 154 L.Ed.2d 931 (2003)("Even in the context of federal habeas, deference does not imply abandonment or abdication of judicial review. Deference does not by definition preclude relief."). Section 2254(e)(1) provides a petitioner challenging state-court factual findings to establish by clear and convincing evidence that the state court's findings were erroneous. Schriro v. Landrigan, 550 U.S. 465, 473-74, 127 S.Ct. 1933, 9139-40, 167 L.Ed.2d 836 (2007).

The Supreme Court explained that it is an unreasonable application of Supreme Court precedent "if the state court identifies the correct governing legal rule from [the] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case."). The state courts' adjudication of petitioner's claim "resulted in a decision that

20

was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]" 28 U.S.C. § 2254(d)(1). Thus, this court should grant habeas corpus relief and reverse petitioner's conviction.

<u>ARGUMENT IN SUPPORT OF CLAIM TWO</u>

Petitioner contends that the decisions of the state courts that his alleged consent to search was voluntary and the evidence obtained without a warrant admissible, and did not violate Fourth and Fourteenth Amendment rights, was based on an unreasonable application of clearly established federal law as determined by the United States Supreme Court.

(A)

As an initial matter, a Fourth Amendment claim is generally not cognizable in a habeas corpus action unless the state has not "provided an opportunity for full and fair litigation" of the claim. See <u>Stone v. Powell</u>, 428 U.S. 465, 494, 96 S.Ct. 3037, 3052, 49 L.Ed.2d 1067 (1976). However, several pre-AEDPA courts have held that habeas review of Fourth Amendment claims is reserved for instances where the state court made an egregious error (e.g., failed to apply Supreme Court precedent directly on point after the argument was clearly presented), thus effectively depriving the petitioner of the ability to vindicate his federal rights in state court. This is consistent with the understanding of "opportunity for full and fair litigation." See <u>Gamble v. Oklahoma</u>, 583 F.2d 1161, 1165 (10th Cir. 1978); <u>Gilmore v. Marks</u>, 799 F.2d 51, 57 (3rd Cir. 1986), cert. denied, 479

21

U.S. 1041, 107 S.Ct. 903, 93 L.Ed.2d 853 (1987); Ponce v. Cupp, 735 F.2d 333, 335 (9th Cir. 1984); cf. Riley v. Gray, 674 F.2d 522, 526 (6th Cir.), cert. denied, 459 U.S. 948, 103 S.Ct. 266, 74 L.Ed.2d 207 (1982); Grimsley v. Dodson, 696 F.2d 303, 307 (4th Cir. 1982) (Ervin, J. concurring), cert. denied, 462 U.S. 1134, 103 S.Ct. 3118, 77 L.Ed.2d 1371 (1983).

Petitioner presents this Fourth Amendment claim for federal habeas review because the state courts' adjudication of the totality of the circumstances regarding his alleged consent to search is inconsistent with the principles of "full and fair litigation" set forth in Stone v. Powell, supra. The Due Process Clause of the Fourteenth Amendment and the United States Supreme Court would not approve of the coercive and egregious conduct of the police in obtaining petitioner's alleged consent to search.

The Fourth Amendment to the United States Constitution provides protection against unreasonable searches and seizures. A warrantless search is presumably unreasonable, and evidence obtained from such a search is inadmissible, subject only to a few carefully established exceptions. Schneckloth v. Bustamonte, 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); Coolidge v. New Hampshire, 403 U.S. 443, 454-55, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). A valid consent search is a well-recognized exception to the warrant requirement, but the State has the burden of proving that the consent was valid in that it was freely and voluntarily given. Bumper v. North Carolina, 391 U.S. 543, 548, 88 S.Ct. 1788, 1792, 20 L.Ed.2d 797 (1968). "But the Fourth and

22

Fourteenth Amendments require that a consent not be coerced, by explicit or implicit means, by implied threat or covert force. For, no matter how subtly the coercion was applied, the resulting 'consent' would be no more than a pretext for the unjustified police intrusion against which the Fourth Amendment is directed." Schneckloth, 412 U.S. at 228, 93 S.Ct. 2041. "[T]he question whether a consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances." Id. at 227, 93 S.Ct. 2041.

While the police are not required to advise a defendant that he has a right to refuse consent to search, the absence of such a warning is considered in the totality of circumstances analysis. Schneckloth, 412 U.S. at 227, 93 S.Ct. 2041. Second, a court should consider the details of the detention, including the length and nature of detention, id. at 226, 93 S.Ct. 2041; and indications of "more subtle forms of coercion that might flaw [an individual's] judgment." United States v. Watson, 423 U.S. 411, 424, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976).

### (B)

The issue whether petitioner's alleged consent to search was free and voluntary was presented to the trial court in his motion to suppress evidence. After the trial court denied the motion, he sought writ of review to the court of appeal and the Louisiana Supreme Court which was denied by both courts. State v. Kott, 09-0295 (La.App. 1 Cir. 6/22/09)(unpublished); writ denied, 09-1667 (La.App. 1 Cir. 10/30/09), 21 So.3d 270.

23

He raised the issue again on direct review, which was denied by the court of appeal and the Louisiana Supreme Court. State v. Kott, 11-0997 (La.App. 1 Cir. 2/10/12); rehrg. denied, 11-0997 (La.App. 1 Cir. 5/14/12).

I.

Petitioner submits that the "totality of circumstances" makes clear that his alleged consent to search his hotel room and vehicle was not freely and voluntarily given. There are too many discrepancies and contradictions in the testimony of the police officers which cast doubt on their credibility. Petitioner call 911 at approximately 11:23 a.m. to seek help for the victim, Rebecca Roshto, who appeared to be unconscious and unresponsive. Corporal Kahrs was the first officer to arrive on the scene and discover that Ms. Roshto was deceased. Kahrs admitted at the pretrial suppression hearing that he had never encountered a situation like this that was not criminal. (Rec.p. 342). He noted in his police report that petitioner was unable to give consistent coherent details of what happened to Ms. Roshto. (See Appendix-A; Exhibit-I). The officer searched petitioner and found hydrocodone (Lorcet) and hydromorphone (Dilaudid) pills in petitioner's pocket. After advising petitioner of his Miranda rights, he was placed the officer's vehicle and taken to the police station where he was interrogated for approximately eight hours.

Sergeant Bobby Campbell was involved in the investigation of Rebecca Roshto's death. Sergeant Campbell claims that he saw petitioner at the hotel when he arrived but

24

did not speak to him. According to Sergeant Campbell, he received verbal instructions from Detective Sean McClain over the phone that petitioner had consented to a search of his car and hotel room. Petitioner was at the police station when this alleged consent was given. Sergeant Campbell searched petitioner's room and car pursuant to the verbal information he received from Detective McClain.

Sergeant Campbell did not have personal confirmation from petitioner himself at the time of the search but merely relied on the hearsay statement of Detective McClain. Sergeant Campbell claims that when he asked petitioner later at the police station if he had consented to the search, and when he allegedly said yes, Campbell signed the consent to search form as a witness. Detective McClain also signed the form as a witness and indicated that it was executed at 10:45 a.m., almost an hour before petitioner made the 911 call. Thus, it was physically impossible for Sergeant Campbell and Detective McClain to witness petitioner sign the form. Moreover, Sergeant Campbell could not have possibly witness petitioner sign the form since he was at the crime scene and not present at the police station at the time.

Sergeant Campbell purported to have signed the form to indicate that the search was done, although the form does not ask whether the search was done. He did not know what time the form was filled out and did not see the form prior to conducting a search. At the time Detective McClain filled out the form, he did not have a search warrant to search the hotel room or the car. Moreover, Detective McClain and Sergeant Campbell

25

did not correct the time on the consent form or even noticed the incorrect time. As such, the consent to search form had absolutely no validity. The police officers were required to obtain a search warrant, and their failure to do so mandated the trial court to suppress any incriminating evidence recovered as a result of the illegal search. The mere fact that Corporal Kahrs found that Ms. Roshto had been dead does not provide an exception to the warrant requirement.

In Thompson v. Louisiana, the United States Supreme Court ruled there is no "murder scene exception" to the warrant requirement. 469 U.S. 17, 105 S.Ct. 409, 83 L.Ed.2d 246 (1984); See also Mincey v. Arizona, 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978). In Thompson, the defendant shot her husband and took a drug overdose. The police arrived and located the victim and the suspect in the bedroom. Soon after their arrival, an entire investigative team arrived without a warrant and conducted an in depth search of the home. The State recovered a gun and two notes written by the defendant in the garbage. The Court in Thompson held that there was no "murder scene" exception to the warrant requirement of the Fourteenth Amendment. Only a prompt warrantless search for victims and assailants was permitted. The Court also held that a telephone call for police assistance did not diminish defendant's expectation of privacy in her home, and only justified the seizure of evidence in plain view, or the limited "victim-or-suspect" search. Id.

Thompson is exceptionally similar to the case before this court. Petitioner called

26

911 and within minutes he was placed in the back of the police car and taken to the station for questioning. A consent to search was not properly conducted and no warrant was obtained. Sergeant Campbell stated that he only obtained consent as a courtesy because consent or a warrant was not necessary because of the dead body found in the room. Sergeant Campbell obviously believed there was a "murder scene" exception to the warrant requirement. In any event, the conduct of the Slidell Police Department was in direct contradiction to <u>Thompson v. Louisiana</u> and a violation of the Fourth Amendment.

## II.

In addition to the above, the record evidence makes clear that petitioner's alleged consent to search was involuntary because he was under the influence of strong pain medications at the time. Petitioner testified that he had taken a double-dose of Dilaudid at about 10:00 a.m. He was taken to the police station at about 11:30 a.m. During the intense questioning, he repeatedly asked for his prescribed medication. Detective McClain knew that petitioner was taking Dilaudid and other pain medications. Detective McClain, Sergeant Campbell and Captain Swann all testified that petitioner requested his medication on numerous occasions. Petitioner testified that he experienced severe withdrawal symptoms during the interrogation. He suffered joints pain, headache, nausea, dehydration, stomach pain, profuse sweating, and chills.[15]

---

15 Dilaudid is a synthetic heroin, which during withdrawals, have been known to cause death and increase suicidal behavior. See Kelly v. County of Wayne, 325 F.Supp.2d 788 (E.D.Mich. 2004); Gonzales v. Cecil County Maryland, 221 F.Supp.2d 611 (D.M.D.) 2002).

Even though Sergeant Campbell denied that petitioner appeared in need of medical attention, he admitted to his repeated pleas for his medication.[16] Petitioner was interrogated from at least 1:00 p.m. until 7:30 p.m. and was deprived of his lawfully prescribed medications during that time.[17]  Sergeant Campbell refused to give petitioner any of his medication because he is not a doctor or a nurse.  Moreover, he did not see anyone give petitioner his medication and he did not call a doctor or nurse to determine if petitioner needed to take his medication.

Captain Kevin Swann confirmed that petitioner asked for his medication but they could not provide the medication. He claims that Detective McClain and Sergeant Campbell made the decision that petitioner did not need his medication.

(C)

Petitioner contends that the police officers' coercive and constitutionally unacceptable misconduct overbore his free will, rendering his consent to search involuntary and the evidence obtained as a result of the warrantless search inadmissible. Nonetheless, the erroneous admission of the evidence is trial error rather than structural error. See Arizona v. Fulminante, 499 U.S. 279, 310, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991). Because the state courts found the consent to search admissible, it did not need to conduct harmless-error analysis. The habeas court must therefore review the evidence at

---

16 Petitioner was prescribed Lorcet-10 (Hydrocodone), 1 every 4 to 6 hours and Dilaudid 4mg (Hydromorphine), 1 every 6 hours for breakthrough pain.

17 See, e.g., Arnett v. Lewis, 870 F.Supp. 1514, 1523-25, 1540 (D.Ariz. 1994)(Defendant's confession was involuntary under totality of the circumstances because, while suffering from acute chronic sinus condition he was denied his medication.)

28

trial to determine whether the erroneous admission thereof likely had a substantial and injurious impact on the verdict; if not, its admission was harmless. See Brecht v. Abrahamson, 507 U.S. 619, 637-39, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993).

"[T]he exclusionary rule prohibits the introduction at trial of all evidence that is derivative of an illegal search, or evidence known as the 'fruit of the poisonous tree.' " United States v. Hernandez, 670 F.3d 616, 620-21 (5th Cir. 2012)(quoting United States v. Singh, 261 F.3d 530, 535 (5th Cir. 2001)). Petitioner submits that the evidence found on the scene included Dilaudids found in petitioner's vehicle and a syringe located in the dumpster servicing the entire hotel. The syringe did not contain petitioner's DNA or narcotics. (Rec.p. 1248-1254). Nonetheless, the syringe and the Dilaudids were paraded around the courtroom as the murder weapons. Clearly, the alleged murder weapons contributed to the verdict. The search of petitioner's hotel room and vehicle was conducted without petitioner's consent, without a warrant, and should have been suppressed. Thus, the erroneous and prejudicial admission of the evidence at petitioner's trial had a substantial and injurious impact on the jury's verdict. Petitioner is entitled to habeas corpus relief and reversal of his conviction.

<u>ARGUMENT IN SUPPORT OF CLAIM THREE</u>

Petitioner contends that the decisions of the state courts that he was not deprived of his constitutional right to effectively cross-examine and impeach the credibility of a prosecution witness was based on an unreasonable application of clearly established

29

federal law as determined by the United States Supreme Court.

### (A)

The Sixth Amendment guarantees the right of a defendant to "be confronted with the witnesses against him." U.S. Const. amend. VI. Cross-examination is "critical for ensuring the integrity of the fact-finding process" because it is " 'the principal means by which the believability of a witness and the truth of his testimony are tested.' " Kentucky v. Stincer, 482 U.S. 730, 736, 107 S.Ct. 2658, 96 L.Ed.2d 631 (1987)(quoting Davis v. Alaska, 415 U.S. 308, 316, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974)(holding refusal to allow defendant to cross-examine key prosecution witness to show his probation status following adjudication of juvenile delinquency violated his constitutional right to confront witness).

### (B)

During the pretrial hearing on the motion to suppress, defense counsel tried to impeach Captain Kevin Swann by asking him about his dismissal from the Arlington Police Department. However, the trial judge would not allow that line of questioning. Defense counsel, Martin Regan, was asking Captain Swann the following questions before the judge curtailed cross-examination:

Q.   Let's see, you've given some background. You have been with St. Tammany Parish Police Department for how long?

A.   I am with the Slidell Police Department, Mr. Regan.

Q.   How long?

30

A.      Since 1995.

Q.      Prior to that, where did you work?

A.      I worked briefly with the Arlington Police Department and prior to that, the Jefferson Parish Sheriff's Office.

Q.      How long with the Jefferson Parish Sheriff's Department?

A.      I graduated from college in '91. I believe from '92 to '93, '94.

Q.      And from there you went to the Arlington Police Department?

A.      Yes, sir.

Q.      Were you in fact terminated on Friday, 9/23/94 for misconduct from the Arlington Police Department?

        MR. DEARING (PROSECUTOR):
            Objection as to relevance, Your Honor.

        THE COURT:
            What is the relevance?

        MR. REGAN:
            It goes to the policeman's credibility in his work as law enforcement.

        MR. DEARING:
            Your Honor, response. If Captain Swann has been convicted of a crime, he is fair game to be impeached with that. The particular issue that Mr. Regan brings up in not a valid basis for cross-examination.

        THE COURT:
            Sustained.

        MR. REGAN:
            Note my objection.

THE COURT:
Yes, sir.

MR. REGAN:
We would like the take a writ on the issue. I am not accusing him of being convicted of anything, but being discharged or terminated for misconduct as a police officer, at this point and for the record, his credibility as law enforcement is before the Court for your judging.

THE COURT:
I think if he, you know, if he was convicted of something or if it would have dealt with the particular incident involved, but when it's collateral and remote, I think there are several decisions[18] as to collateral and remote information, and I am going to sustain the objection.

MR. REGAN:
Respectfully note my objection.

THE COURT:
Yes, sir.

EXAMINATION BY MR. REGAN:

Q.      With respect to your work as an officer with the St. Tammany Sheriff's Department at this point, were you in fact sanctioned or reprimanded because of misconduct involving evidence in the evidence room with the St. Tammany Parish Sheriff's or the Slidell evidence room and evidence records?

A.      No, sir.

MR. DEARING:
The same objection. He has already answered it.

(See Rec.p. 636-638).

---

18  However, the judge cites no decision to support his opinion.

32

The Louisiana Code of Evidence provides that "a witness may be cross-examined on any matter relevant to any issue in the case, including credibility." La.Code Evid. Art. 611(B).  The questions regarding Captain Swann's dismissal from the Arlington Police Department for misconduct[19] and his misconduct involving evidence in the evidence room were relevant issues to impeach his credibility.

(C)

The Supreme Court has held that the Confrontation Clause is violated when the defendant is denied the right "to expose to the [judge] the facts from which [the judge] ... could appropriately draw inferences relating to the reliability of the witness." Id. at 318, 94 S.Ct. 1105 (alterations of words added).  As with the defendant in Delaware v. Van Arsdall, 475 U.S. 673, 679, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986), his attorney was precluded by the trial court from questioning a witness about the State's dismissal of a pending public drunkenness charge against him. The Court concluded that "[b]y thus cutting off all questioning about an event ... that a jury might reasonably have furnished the witness a motive for favoring the prosecution in his testimony," the trial court's ruling violated the defendant's rights under the Confrontation Clause. Id.

Like the defendant in Van Arsdall, supra, the judge in this case curtailed all questioning regarding Captain Swann's alleged misconduct. Defense counsel had no opportunity to impeach his credibility with well-documented evidence of his past misconduct as a police officer.  (See Appendix-F). As the Supreme Court pointed out in

---

19 See Appendix-F.

33