UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

WALTER A. KOTT, JR.                           CIVIL ACTION

VERSUS                                        NO. _____

N. BURL CAIN, WARDEN                          SECTION:_____

---

## INDEX OF APPENDIX

Appendix-A: State Courts Pretrial Rulings (Trial Court; Appellate Court; Supreme Court)

Appendix-B: State Courts Rulings on Direct Appeal (Trial Court; Appellate Court; Supreme Court)

Appendix-C: State Courts Rulings on Post-Conviction (Trial Court; Appellate Court; Note: Louisiana Supreme Court Writ Application Still Pending)

Appendix-D: Motion for Leave to File Out-of-Time Writ Application

Appendix-E: Louisiana Supreme Court Writ Application (Exhibits Attached Thereto)

Appendix-F: Captain Kevin Swann's Employment Status Application and Dismissal from Arlington Police Department

Appendix-G: Incident Reports of Slidell Police Department (See Appendix-E; Exhibit-I)

**Appendix-A: State Courts Pretrial Rulings**
**(Trial Court; Appellate Court; Supreme Court)**

22ND JUDICIAL DISTRICT COURT FOR THE PARISH OF ST. TAMMANY

STATE OF LOUISIANA

NO. 378,041

DOCKET "E"

STATE OF LOUISIANA

VERSUS

WALTER KOTT

FILED: November 7, 2008

_____
DEPUTY CLERK

## REASONS FOR JUDGMENT

The Court took the Motion to Suppress Confession under advisement on November 7, 2008 after several days of testimony over an extended period. The Court looks at the facts and circumstances of each case and reviews the totality of the circumstances in determining whether a confession was freely and voluntarily made without coercion, intimidation or improper influences. First, it is clear that the defendant's confessions were not involuntary due to intoxication because any intoxication was not of such a degree as to negate his comprehension nor render him unconscious of the consequences of what he was saying. See State v. Lauff, 953 So.2d 813 (La. App. 5th Cir. 2007). The fact that the defendant suffers from a medical condition (which withdrawal is) does not mean he in incapable of giving a voluntary confession. See State v. Williams, 804 So.2d 932 (La. App. 1st Cir. 2001). The Court is convinced that the police officers did not use the defendant's pills to induce or coerce the confessions. Obviously, Mr. Kott wanted pills but they were not used to coerce or intimidate him into confessioning nor were improper influences used. All confessions were received before the invoking of his right to an attorney. The Court denies the Motion to Suppress the defendant's confessions.

Signed this _____ day of November, 2008 in Covington, Louisiana.

_____
WILLIAM J. BURRIS
DISTRICT JUDGE, DIVISION "E"

1

A TRUE
CR. CLERK 22nd
ST. TAMMANY

# STATE OF LOUISIANA
# COURT OF APPEAL, FIRST CIRCUIT

STATE OF LOUISIANA

VERSUS

WALTER KOTT

NUMBER 2009 KW 0295

JUN 2 2 2009

In Re:      Walter Kott, applying for supervisory writs, 22nd Judicial District Court, Parish of St. Tammany, No. 378041.

BEFORE:   CARTER, C.J., WHIPPLE, AND DOWNING, JJ.

WRIT DENIED.

BJC
VGW
RDD

COURT OF APPEAL, FIRST CIRCUIT

DEPUTY CLERK OF COURT
FOR THE COURT

Case 2:14-cv-00953-SM   Document 3-3   Filed 06/03/14   Page 5 of 352

*67482 21 So.3d 270

2009-1667 La. 10/30/09

Supreme Court of Louisiana.

**STATE of Louisiana**
v.
**Walter KOTT.**

**No. 2009-KK-1667.**
Oct. 30, 2009.

In re Kott, Walter;--Defendant;  Applying For Supervisory and/or Remedial Writs, Parish of St. Tammany, 22nd Judicial District Court Div. E, No. 378041;  to the Court of Appeal, First Circuit, No. 2009 KW 0295.

Denied.

© 2013 Thomson Reuters. No claim to original U.S. Govt. works.

**Appendix-B: State Courts Rulings on Direct Appeal**
**(Trial Court; Appellate Court; Supreme Court)**

NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NUMBER 2011 KA 0997

STATE OF LOUISIANA

VERSUS

WALTER A. KOTT, JR.

**Judgment Rendered:  February 10, 2012**

* * * * * *

Appealed from the
Twenty-Second Judicial District Court
In and for the Parish of St. Tammany
State of Louisiana
Docket Number 378,041

Honorable Richard A. Swartz, Jr., Judge Presiding

* * * * * *

Walter P. Reed
District Attorney
Covington, LA

Counsel for Appellee
State of Louisiana

Kathryn Landry
Special Appeals Counsel
Baton Rouge, LA

Frank Sloan
Appellate Attorney
Mandeville, LA

Counsel for
Defendant/Appellant
Walter A. Kott, Jr.

* * * * * *

BEFORE:  WHIPPLE, KUHN, AND GUIDRY, JJ.

**GUIDRY, J.**

The defendant, Walter A. Koti Jr., was charged by grand jury indictment with one count of second degree murder, a violation of La. R.S. 14:30.1, and pled not guilty. Following a jury trial, he was found guilty as charged by unanimous verdict. He was sentenced to life imprisonment at hard labor without benefit of probation, parole, or suspension of sentence. He now appeals, contending: (1) the trial court erred and/or abused its discretion in permitting the State to use evidence of another crime in rebuttal; and (2) the error was not harmless. For the following reasons, we affirm the conviction and sentence.

### FACTS

On January 29, 2004, at 11:23 a.m., the defendant called for medical assistance to his motel room at the Plaza Inn on Lindberg Drive in Slidell. He told the responding police officers that the victim, Rebecca Roshto, was in his room and was not breathing. The police found her lying naked in the bathtub. She was dead and lividity was present in her body. She had mucus coming from her nose and an apparent puncture wound and "track mark" from a needle on her inner right arm.

The defendant had eight pills of hydrocodone in his pocket. There was a pill bottle for Diphenhydramine, containing numerous pills, located in the drawer of the motel room. The defendant also had prescription bottles in his name containing thirty Dilaudid pills and fifty-six hydrocodone (Lorcet) pills in the glove compartment of his car. Additionally, a syringe and needle were recovered from a bag in the dumpster at the motel.

Analysis of the victim's blood and liver revealed the presence of a trace amount of carisoprodol (Soma); a low-end therapeutic amount of alprazolam (Xanax), a muscle relaxant; and a lethal amount of hydromorphone (Dilaudid). The victim died within two to four hours of being injected with the Dilaudid.

2

Dilaudid, an opiate six to twelve times more potent than morphine, affects the receptors in the brain controlling breathing. It can cause the fluid in blood to flow into the lungs, preventing breathing and causing a "froth column" at the nose and mouth.

Eric Scott Williams testified that the defendant confessed he had injected the victim with "K4 Dilaudids," and "[t]here was mention of Xanax and Somas," when Williams was incarcerated in St. Tammany Parish Jail with the defendant in January or February of 2004. Williams also claimed the defendant stated he disposed of the syringe or syringes and the drugs from the room at a convenience store on Voters Road in Slidell.

Catherine Grace "Rena" Boyen, the defendant's stepdaughter, testified the defendant called her on January 29, 2004, at approximately 8:00 a.m. or 8:30 a.m., stated he was having heart problems and asked her to come to his hotel room. Boyen indicated the victim was deceased and lying on the bed in the room. Boyen and the victim had been friends for a few years. Boyen put ice on the victim to try to "bring her back." According to Boyen, the defendant had previously injected her and the victim with Dilaudid. In a January 29, 2004 statement to the police, Boyen indicated the defendant told her he "shot [the victim] up with four K4s in the past two hours."

The defendant gave multiple statements to the police concerning the incident. Initially, he claimed the victim came to his motel room between 10:50 p.m. and 12:00 a.m., on the night prior to her death, after calling him and asking to come over to talk because she was having a "bad evening." He claimed the victim then went to get gas, cigarettes, and milk. He claimed he went to sleep and woke up at 9:00 a.m. or 10:00 a.m. when Boyen came to his room. He claimed Boyen helped him put the victim in the bathtub, and when the victim did not respond, he called the police. The defendant had needle marks on both of his arms.

3

In his second statement, the defendant claimed he "shot Dilaudid" with Boyen in the days prior to, and on the morning of, the victim's death. In his third statement, the defendant claimed he administered a four milligram tablet of Dilaudid to himself and a lady friend, "Rebecca," by injecting the drug into one of her veins with a hypodermic needle. He claimed he then went to sleep, while "Rebecca" watched the Discovery Channel.

At trial, the defendant denied injecting the victim with anything on the day of the incident or at any other time. He also denied confessing to Williams. Additionally, he denied confessing to Boyen. Further, he denied injecting Boyen with drugs. He claimed his statements to the police were the result of the police putting his "medications" in front of him and promising to give him the drugs in exchange for the statements. He also claimed he made the statements so the police would not take Boyen to jail.

## IMPROPER REBUTTAL; OTHER CRIMES EVIDENCE

In assignment of error number 1, the defendant argues the trial court erred and/or abused its discretion in permitting the State to use evidence of another crime in rebuttal. In assignment of error number 2, the defendant argues the erroneous admission of the other crimes evidence was not harmless error.

Generally, evidence of other crimes committed by the defendant is inadmissible due to the substantial risk of grave prejudice to the defendant. To admit "other crimes" evidence, the State must establish that there is an independent and relevant reason for doing so, i.e., to show motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or when it relates to conduct that constitutes an integral part of the act. La. C.E. art. 404(B)(1). The Louisiana Supreme Court has also held other crimes evidence admissible as proof of other crimes exhibiting almost identical modus operandi or system, committed in close proximity in time and place. Evidence of other crimes,

4

however, is not admissible simply to prove the bad character of the accused. Furthermore, the other crimes evidence must tend to prove a material fact genuinely at issue and the probative value of the extraneous crimes evidence must outweigh its prejudicial effect. La. C.E. art. 403; State v. Tilley, 99-0569, p. 20 (La. 7/6/00), 767 So. 2d 6, 22, cert. denied, 532 U.S. 959, 121 S.Ct. 1488, 149 L.Ed.2d 375 (2001).

Rebuttal evidence is that which explains, repels, disproves or counteracts. The determination of whether evidence is rebuttal evidence and, hence, admissible is an issue which is addressed to the sound discretion of the trial court. Contradiction is one means of rebutting testimony of a witness. Tilley, 99-0569 at 20, 767 So. 2d at 22.

The defendant testified that he allowed the victim to come to his motel room after she called him and tearfully asked him if she could "come over and stay." He denied injecting her with anything on the day of the incident or at any other time. He claimed Boyen had a drug problem, and she or "someone else could have [injected the victim with drugs]." He also denied injecting the victim with drugs approximately a year before the incident or injecting Boyen with drugs. He indicated he knew Shante Brady, but denied injecting her or anyone else with drugs.[1] The State told the defendant, "She'll be here tomorrow to talk." The defendant replied, "Well, good. Let's go."

On rebuttal, the State called Shante Brady. At a bench conference, the defense asked what Brady was being called "to rebut." The State indicated the defendant had denied injecting Brady with Dilaudid, but she would testify to the contrary. The defense objected it had no "404(B)" notice of Brady's testimony. The State responded, "[t]his isn't 404(B). This is for credibility[.]" The defense then objected that the State had "jarred the door open ... to uncharged misconduct"

---

[1] The record indicates the State asked the defendant if he knew Shante "Grady," and he replied, "Absolutely – I know – she goes by 'Rose.'"

5

by improperly questioning the defendant about other criminal activity. The court pointed out the defense had failed to contemporaneously object to the alleged improper questioning.[2]

Outside the presence of the jury, Brady indicated in 2002, the defendant told her a mutual friend was waiting for her in his motel room, sent a cab to bring her there, and then repeatedly injected her with Dilaudid. The State indicated, as part of discovery, the defense had been provided with a copy of the 2004 letter discussing the incident that Brady had sent to the district attorney's office. The court asked the State for what purpose it was offering Brady's testimony. The State replied it was offering the testimony to impeach the defendant's testimony that he had never injected Brady. The defense objected for lack of notice of La. C.E. art 404(B) evidence. The court ruled it would allow the testimony from Brady, with a limiting instruction. The court observed that in his direct testimony, the defendant had claimed the nonexistence of a material fact, i.e., the distribution by injection of Dilaudid to the decedent. On cross-examination, he had also denied injecting Brady with Dilaudid. The court held notice of other crimes evidence was not required on rebuttal when the defendant made the other crimes evidence relevant by his own testimony.

Within a reasonable time before trial, the State must furnish defendant with a statement in writing of the criminal acts or offenses it intends to offer in evidence specifying the exception to the general exclusionary rule upon which it relies for admissibility. State v. Prieur, 277 So. 2d 126, 130 (La. 1973). Absent evidence that the State evaded Prieur notice requirements by deliberately reserving its other crimes evidence for cross-examination or rebuttal, the Prieur notice requirements

---

[2] See La. C. Cr. P. art. 841(A) ("An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence."); La. C.E. art. 103(A)(1) ("Error may not be predicated upon a ruling which admits ... evidence unless ... a timely objection ... appears of record, stating the specific ground of objection[.]").

do not apply where the defendant, through his own testimony, makes the other crimes evidence relevant. State v. Silguero, 608 So. 2d 627, 630 (La. 1992).

The State in a criminal prosecution has the right to rebut evidence adduced by the defendant. La. C.E. art. 611(E). In a criminal prosecution, the State does not and cannot know what evidence the defendant will use until it is presented at the trial of the case. It is for this reason that the State is given the right of rebuttal. The fact that the rebutting testimony in question tends incidentally to strengthen the case originally presented by the State does not render it inadmissible for the purpose for which it was offered and admitted. State v. Williams, 445 So. 2d 1171, 1181 (La.1984). The issue of what constitutes rebuttal evidence and is therefore admissible lies within the sound discretion of the trial court. State v. Castleberry, 98-1388, p. 23 (La. 4/13/99), 758 So.2d 749, 768, cert. denied, 528 U.S. 893, 120 S.Ct. 220, 145 L.Ed.2d 185 (1999).

The trial court did not abuse its discretion in allowing the challenged rebuttal evidence. The evidence was properly admitted to contradict the defendant's testimony that he had not injected Brady with drugs. Additionally, the prejudicial effect of the challenged evidence did not rise to the level of undue or unfair prejudice when balanced against its probative value. Accordingly, we find no merit in the defendant's first assignment of error regarding the admissibility of the rebuttal evidence, and based on our disposition of this assignment, we pretermit consideration of his second assignment of error.

<div align="center">CONCLUSION</div>

Having found that the trial court did not abuse its discretion, but properly admitted the other crimes evidence without Prieur notice as rebuttal evidence, we affirm the defendant's conviction and sentence for second degree murder.

**CONVICTION AND SENTENCE AFFIRMED.**

<div align="center">7</div>



Office Of The Clerk
**Court of Appeal, First Circuit**
State of Louisiana
www.la-fcca.org

Christine L. Crow
Clerk of Court

Post Office Box 4408
Baton Rouge, LA
70821-4408
(225) 382-3000

**Certificate of Mailing**
5/4/2012

2011-KA-0997

State Of Louisiana
Versus
Walter A. Kott, Jr.

TO:    Hon. Richard A. Swartz          Walter A. Kott Jr.
       701 N. Columbia Street          LSP Camp D Falcon 1
       Justice Center                  General Delivery
       Covington, LA 70433             Angola, LA 70712

       Kathryn Landry                  Hon. Walter P. Reed
       Special Appeals Counsel         St. Tammany Parish
       IEYOUB & LANDRY, L.L.C.         701 North Columbia St.
       Post Office Box 82659           Covington, LA 70433
       Baton Rouge, LA 70884

       Frank Sloan
       Louisiana Appellate Project
       948 Winona Drive
       Mandeville, LA 70471

I hereby certify that a copy of the attached was mailed this date to the trial judge, all counsel of record, and all parties not represented by counsel as listed above.

*Peggy J. Landry*

CHRISTINE L. CROW
CLERK OF COURT

NOT DESIGNATED
FOR PUBLICATION

COURT OF APPEAL, FIRST CIRCUIT
STATE OF LOUISIANA

RE:  Docket Number 2011-KA-0997

State Of Louisiana

- - Versus - -

Walter A. Kott, Jr.

22nd Judicial District Court
Case #: 378041
St. Tammany Parish

On Application for Rehearing filed on 02/24/2012 by Frank Sloan

Rehearing _Granted, in part, for the limited purpose of_
_considering the defendant's pro se assignments_
_of error, as set forth in our opinion on rehearing today_
_rendered in these proceedings._

Vanessa G. Whipple

James E. Kuhn

John M. Guidry

Filed _____ MAY - 4 2012 _____

Christine L. Crow, Clerk

NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NUMBER 2011 KA 0997

STATE OF LOUISIANA

VERSUS

WALTER A. KOTT, JR.

Judgment Rendered: _____MAY - 4 2012_____

* * * * * *

**Opinion Granting Rehearing for Limited Purpose**

* * * * * *

Appealed from the
Twenty-Second Judicial District Court
In and for the Parish of St. Tammany
State of Louisiana
Docket Number 378,041

Honorable Richard A. Swartz, Jr., Judge Presiding

* * * * * *

Walter P. Reed
District Attorney
Covington, LA

Kathryn Landry
Special Appeals Counsel
Baton Rouge, LA

Frank Sloan
Appellate Attorney
Mandeville, LA

Counsel for Appellee
State of Louisiana

Counsel for
Defendant/Appellant
Walter A. Kott, Jr.

* * * * * *

BEFORE: WHIPPLE, KUHN, AND GUIDRY, JJ.

GUIDRY, J., on rehearing

In our original opinion, we addressed the defendant's counseled assignment of error contending the trial court erred and/or abused its discretion in permitting the State to use evidence of another crime in rebuttal. We found no merit in the claim and affirmed the conviction and sentence. State v. Kott, 11-0997 (La. App. 1st Cir. 2/10/12) (unpublished). Due to a clerical error, we did not address, however, the defendant's timely-filed, pro-se brief, which was initially returned unfiled as untimely. This rehearing is granted for the limited purpose of addressing the defendant's pro-se assignments of error.

## FACTS

The facts of this case are set forth in our original decision in this matter.

## MOTION TO SUPPRESS EVIDENCE

In pro-se assignment of error number one, the defendant argues the trial court erred in not suppressing evidence gathered from his motel room and vehicle because: the Miranda[1] form was not signed until after the consent to search the room and vehicle was signed at 10:45 a.m.; because he was never told he did not have to consent to a search; because the 10:45 a.m. time was impossible because he did not even call the police until 11:23 a.m.; and because the two witnesses to the form, Detectives Sean McClain and Bobby Campbell, were at two different locations.

In Miranda, the Supreme Court promulgated a set of safeguards to protect the there-delineated constitutional rights of persons subject to custodial police interrogation. In sum, the Court held in that case that unless law enforcement

---

[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

officers give certain specified warnings before questioning a person in custody,[2] and follow certain specified procedures during the course of any subsequent interrogation, any statement made by the person in custody cannot over his objection be admitted in evidence against him as a defendant at trial, even though the statement may in fact be wholly voluntary. State v. Leger, 05-0011, pp. 12-13 (La. 7/10/06), 936 So. 2d 108, 124, cert. denied, 549 U.S. 1221, 127 S.Ct. 1279, 167 L.Ed.2d 100 (2007).

A search conducted pursuant to consent is an exception to the requirements of both a warrant and probable cause. State v. Young, 06-0234, p. 6 (La. App. 1st Cir. 9/15/06), 943 So. 2d 1118, 1122, writ denied, 06-2488 (La. 5/4/07), 956 So. 2d 606. Informing a suspect of his right to refuse consent to a search is not required. Instead, the lack of such a warning is only one factor in determining the voluntary nature of consent to a search. See State v. Parfait, 96-1814, p. 13 (La. App. 1st Cir. 5/9/97), 693 So. 2d 1232, 1240, writ denied, 97-1347 (La. 10/31/97), 703 So. 2d 20.

When a trial court denies a motion to suppress, factual and credibility determinations should not be reversed in the absence of a clear abuse of the trial court's discretion, i.e., unless such ruling is not supported by the evidence. See State v. Green, 94-0887, p. 11 (La. 5/22/95), 655 So. 2d 272, 281. However, a trial court's legal findings are subject to a de novo standard of review. See State v. Hunt, 09-1589, p. 6 (La. 12/1/09), 25 So. 3d 746, 751.

---

[2]      The warnings must inform the person in custody "that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." Miranda, 384 U.S. at 444, 86 S.Ct. at 1612.

Prior to trial, the defendant moved to suppress the evidence sought to be used against him as unlawfully and illegally obtained. Following three hearings, the court denied the motion. The defendant applied to this court for supervisory relief from that ruling, but the writ was denied. State v. Kott, 09-0295 (La. App. 1st Cir. 6/22/09) (unpublished). Thereafter, he applied to the Louisiana Supreme Court for supervisory relief, and that court also denied his writ application. State v. Kott, 09-1667 (La. 10/30/09), 21 So. 3d 270.

Slidell Police Department Corporal Jeffrey Kahrs testified that on January 29, 2004, at 11:23 a.m., he responded to a call for medical assistance at the location of room 129 at the Plaza Inn & Suites in Slidell. On arrival, Corporal Kahrs encountered the defendant outside of the room, who told him, "she is not breathing" and brought him into the room. Corporal Kahrs saw the victim in the bathtub, checked for a pulse, and noticed the presence of lividity in her body. There were no obvious injuries to the victim's body, and Corporal Kahrs indicated he did not consider the matter a criminal investigation at that point. He did not handcuff the defendant or restrict his movements in any way. He did not consider the defendant to be a suspect in a crime. He stated the defendant was free to leave if he wanted to go. Corporal Kahrs questioned the defendant about "the time frame and presence in the room." Sergeant Campbell subsequently requested that the defendant be secured in the rear of the patrol unit, and Corporal Kahrs placed him there without handcuffs. Corporal Kahrs stated he still did not consider the defendant to be a criminal suspect.   Pursuant to standard procedure, Corporal Kahrs patted the defendant down for weapons and contraband, and the defendant stated he had his medication in his pocket.   Corporal Kahrs removed hydrocodone from the

4

defendant's pocket, as contraband. He immediately recognized the pills, which were labeled "Watson 503," because he had dealt with hydrocodone "plenty of times." The defendant stated his prescription bottle for the medication was in his car. Corporal Kahrs advised the defendant of his Miranda rights. Corporal Kahrs never interrogated the defendant about the dead body or the drugs, and stated the defendant made no inculpatory statements to him. The defendant was not arrested at the scene and was never charged with illegal possession of any drugs.

Slidell Police Department Detective Sean McClain testified he came into close contact with the defendant at the police station. He observed nothing which would suggest the defendant was impaired by drugs or alcohol or that the defendant was unable to understand what was occurring around him or what was being said to him. Detective McClain identified State Exhibit #1 as a form for permission for search and seizure. In the form, the defendant authorized Sergeant Campbell "to search my residence" and "my motor vehicles," and "to remove from my said residence, real estate and/or motor vehicles whatever documents, articles, or other items of property whatsoever which they deem pertinent to their investigation[.]" Detective McClain indicated Sergeant Campbell was processing the scene at the time the defendant signed the consent form. The form indicated it was executed on January 29, 2004 at 10:45 a.m. Detective McClain made no promises to the defendant in order to get him to sign the form. Detective McClain also stated he did not threaten the defendant or use any form of pressure on him to induce his cooperation or consent. After the defendant signed the form, Detective McClain advised the officers at the scene that they could proceed with a search of the defendant's motel room and vehicle.

5

Slidell Police Department Sergeant Bobby Campbell testified he was the "case detective" for the investigation at issue. His responsibilities included collecting evidence from the scene. He stated evidence was recovered from the defendant's motel room and vehicle pursuant to a consent to search. He indicated Detective McClain "spearheaded the pursuit of a consent to search." Sergeant Campbell testified, after the defendant was taken to the police station, Detective McClain called him (Sergeant Campbell) and advised him the defendant had consented to a search of the defendant's room and vehicle. After he finished processing and documenting the crime scene, Sergeant Campbell also went to the police station. He entered the interview room, introduced himself to the defendant, told the defendant that he (Sergeant Campbell) had searched the defendant's room and vehicle, and asked him to confirm that he had consented to the searches. Sergeant Campbell testified the defendant confirmed he had given consent and said "something to the effect of you all search whatever you want." Thereafter, Sergeant Campbell signed the consent form as a witness. He indicated the "10:45 a.m." time on the form was inaccurate because the call from the location was not made until 11:23 a.m.

There was no error or abuse of discretion in the trial court's denial of the motion to suppress evidence. The defendant relies on the "10:45 a.m." time on the consent to search being before the "13:14" time on the written Miranda-rights form. The testimony of Corporal Kahrs, however, indicates the defendant was orally advised of his Miranda rights prior to his arrival at the police station where he executed the consent-to-search form. Further, Sergeant Campbell testified the "10:45 a.m." time was inaccurate because the defendant did not even call the police

6

at the scene until 11:23 a.m. Detective McClain was not required to advise the defendant of his right to refuse consent. See Parfait, 96-1814 at 13, 693 So. 2d at 1240. Moreover, the permission for search and seizure form signed by the defendant stated the defendant's consent was given "after having been informed by these officers that I have the right to refuse to permit this search and seizure." Lastly, testimony at the suppression hearings explained how Detective McClain and Sergeant Campbell could both "witness" the consent form even though they were in different places when it was executed. Detective McClain testified Sergeant Campbell did not sign the consent form at the same time as he did because Sergeant Campbell was at the crime scene. Sergeant Campbell testified he signed the consent form after confirming that the defendant had in fact consented to the search.

This assignment of error is without merit.

## MOTION TO SUPPRESS CONFESSIONS/ INCULPATORY STATEMENTS

In pro-se assignment of error number two, the defendant argues the trial court erred in denying the motion to suppress confession/inculpatory statements because Jan Harrington Wroten testified Sergeant Campbell bragged about how the final two statements were obtained after 6:00 p.m., after the defendant went into severe withdrawal, and after the defendant's medications were placed in front of him, and he was promised the medications in exchange for the statements.

It is well settled that for a confession or inculpatory statement to be admissible, the State must affirmatively show that it was freely and voluntarily given without influence of fear, duress, intimidation, menaces, threats, inducements, or promises. La. R.S. 15:451; La. C. Cr. P. art. 703(D). Further, if the statement

7

was elicited during custodial interrogation, the State must show that the defendant was advised of his Miranda rights.[3]   Whether or not a showing of voluntariness has been made is analyzed on a case-by-case basis with regard to the facts and circumstances of each case.   The trial court must consider the totality of the circumstances in deciding whether or not a confession is admissible.   Moreover, where conflicting testimony is offered, credibility determinations lie within the sound discretion of the trial judge, and his ruling will not be disturbed unless clearly contrary to the evidence.   Unless the evidence does not support its findings, an appellate court will defer to the trial court's determination as to whether a confession was made knowingly, intelligently, and voluntarily.   State v. Williams, 01-0944, p. 13 (La. App. 1st Cir. 12/28/01), 804 So. 2d 932, 944, writ denied, 02-0399 (La. 2/14/03), 836 So. 2d 135.

The fact that a defendant is suffering from a medical condition does not mean that he is incapable of giving a voluntary statement.   One who has suffered a physical injury and is experiencing pain can still be competent to give a free and voluntary confession.   As in other cases, the critical inquiry is whether the defendant was able to understand the rights explained to him and voluntarily give a statement. Williams, 01-0944 at 13, 804 So.2d at 944-45.

Prior to trial, the defense moved to suppress the use as evidence of all written confessions or inculpatory statements.   The defense presented testimony from Jan Marie Wroten in connection with the motion.   She was the mother of the victim. Following the death of the victim, she spoke to Sergeant Campbell while retrieving

---

[3]     Detective McClain testified he advised the defendant of his Miranda rights prior to the defendant making any statements, and identified State Exhibit #2 as a Miranda-rights-waiver form signed by the defendant.

8

the victim's vehicle and her possessions. According to Wroten, Sergeant Campbell stated the defendant had asked for pills, and Sergeant Campbell imitated shaking a bottle of pills in front of her face and told her he had told the defendant he could have the pills if he would write the confession.

The State presented testimony from Sergeant Campbell in connection with the motion to suppress confessions/inculpatory statements. He had been employed by the Slidell Police Department for twenty years. He indicated he brought two pill bottles recovered from the defendant's vehicle into the interview room to question the defendant concerning whether or not they belonged to him and, if they did belong to him, where he had obtained them. Sergeant Campbell denied taunting or teasing the defendant with the bottles in order to force him to cooperate with the police. He testified neither he nor any officer he observed told the defendant that the defendant could have his pills after finishing his statements.

On cross-examination, Sergeant Campbell stated the defendant told the police he was a drug addict and asked for his drugs four or five times while being interviewed. Sergeant Campbell testified the defendant did not appear to be in any medical distress and never asked for a doctor or ambulance. He indicated that when Wroten came to pick up the victim's belongings, Wroten stated the defendant was a "pill head." Sergeant Campbell responded it was obvious the defendant had a drug problem because he asked for drugs multiple times in the interview room. Sergeant Campbell indicated Wroten was amazed the defendant had asked the police for drugs, and he told her, "as if we would dangle his drugs in order to get him to tell the truth. We don't operate that way." Sergeant Campbell denied shaking his hand in front of Wroten's face.

9

The State also presented testimony from Slidell Police Department Captain Kevin Swann in connection with the motion to suppress confessions/inculpatory statements. He indicated he had contact with the defendant during his questioning at the police station. He denied either personally, or being aware of any other officers, pressuring, coercing, or threatening the defendant to induce his cooperation. He indicated the defendant said he was ill due to some issues with his liver, but the defendant never requested immediate medical attention or an ambulance. Captain Swann testified that neither he nor any other officer made any statement to the defendant that the defendant would be provided medication in exchange for an incriminating statement.

In denying the motion to suppress confessions/inculpatory statements, the trial court found the fact that the defendant suffered from withdrawal did not make him incapable of giving a voluntary confession. See Williams, 01-0944 at 13, 804 So. 2d at 944-45. The court stated it was convinced the police officers did not use the defendant's pills to induce or coerce the confessions. The court concluded, "Obviously, Mr. Kott wanted pills but they were not used to coerce or intimidate him into [confessing] nor were improper influences used." The defendant applied to this court for supervisory relief from the ruling of the trial court, but the writ was denied. State v. Kott, 09-0295 (La. App. 1st Cir. 6/22/09) (unpublished). Thereafter, he applied to the Louisiana Supreme Court for supervisory relief, and that court also denied his writ application. Kott, 21 So. 2d 270.

There was no error or abuse of discretion in the trial court's denial of the motion to suppress confessions/inculpatory statements. The court made a factual and credibility determination that the police did not use the defendant's pills to

10

coerce or intimidate him into confessing, and that ruling was supported by the testimony of Sergeant Campbell and Captain Swann.

This assignment of error is without merit.

## ERRORS NOT HARMLESS

In pro-se assignment of error number three, the defendant argues the trial court's errors in not suppressing the evidence and in denying the motion to suppress confession/inculpatory statements were not harmless. Based on our disposition of pro-se assignments or error numbers one and two, we pretermit consideration of this pro-se assignment of error.

## CONCLUSION

Therefore, having concluded the trial court did not err or abuse its discretion in denying either the motion to suppress evidence or the motion to suppress the confession, we adhere to the result reached in our original opinion and again affirm the defendant's conviction and sentence.

**LIMITED   REHEARING   GRANTED;   CONVICTION   AND SENTENCE AFFIRMED.**

11

102 So.3d 53, 2012-1221 La. 11/21/12; State v. Kott, (La. 2012)                               Page 1

*16225 102 So.3d 53

2012-1221 La. 11/21/12

Supreme Court of Louisiana.

**STATE of Louisiana**
**v.**
**Walter A. KOTT, Jr.**

No. 2012-K-1221.
Nov. 21, 2012.

Prior report: La.App., 2012 WL 602425.

In re Kott, Jr., Walter A.;--Defendant; Applying For Writ of Certiorari and/or Review, Parish of St. Tammany, 22nd Judicial District Court Div. E, No. 378,041;  to the Court of Appeal, First Circuit, No. 2011KA 0997.

Denied.

© 2013 Thomson Reuters. No claim to original U.S. Govt. works.

STATE OF LOUISIANA

V.

WALTER A. KOTT, JR.

FILED: _June 20, 2013_

DOCKET NO. 378041    DIV. "C"

22ND JUDICIAL DISTRICT COURT

PARISH OF ST. TAMMANY

STATE OF LOUISIANA

_____

DEPUTY CLERK

## ORDER

This Court has considered defendant, Walter A. Kott, Jr.'s Application for Post-Conviction Relief filed May 24, 2013. The Court ordered the St. Tammany Parish District Attorney to file any procedural objections he may have or an answer in this matter on May 31, 2013. The District Attorney filed an answer on June 18, 2013. Defendant asserts claims of ineffective assistance of counsel, the unconstitutionality of La. R.S. 14:30.1, prosecutorial misconduct, and cumulative errors resulting in violations of his 5th and 14th Amendment rights under the U.S. Constitution, as the basis for his Application.

The Court has reviewed the entire record and finds that the issues raised in the Application for Post Conviction Relief may be decided on the record and no evidentiary hearing is necessary. The Court finds that petitioner has failed to prove grounds upon which relief shall be granted.

Accordingly, for the foregoing reasons:

IT IS ORDERED that the Application for Post Conviction Relief filed by defendant, Walter A. Kott, Jr., is denied.

IT IS FURTHER ORDERED that the Clerk of Court of the Parish of St. Tammany give notice of the denial of the Application for Post Conviction Relief to petitioner, the District Attorney for the Parish of St. Tammany and the petitioner's custodian.

SIGNED AT COVINGTON, LOUISIANA, this 20th day of June, 2013.

_____

RICHARD A. SWARTZ

Judge, Division "C"

A TRUE COPY

By Clerk, 22nd Jud. Dist. Court

ST. TAMMANY PARISH LA



Office Of The Clerk
**Court of Appeal, First Circuit**
State of Louisiana
www.la-fcca.org

Christine L. Crow
Clerk of Court

Post Office Box 4408
Baton Rouge, LA
70821-4408
(225) 382-3000

Notice of Judgment and Disposition

October 28, 2013

Docket Number:  2013 - KW - 1257

State Of Louisiana
versus
Walter A. Kotz, Jr.

TO:     Dale Branch                        Hon. Walter P. Reed
        Assistant District Attorney        St. Tammany Parish
        701 North Columbia                 701 North Columbia St.
        Covington, LA 70433                Covington, LA 70433
        debranch@bellsouth.net

        Rachel M. Yazbeck                   Hon. Richard A. Swartz
        848 Howard Ave                     701 N. Columbia Street
        Suite 305                          Justice Center
        New Orleans, LA 70113              Covington, LA 70433
        RMYazbeck@gmail.com

In accordance with Local Rule 6 of the Court of Appeal, First Circuit, I hereby certify that this notice of judgment and
disposition and the attached disposition were transmitted this date to the trial judge or equivalent, all counsel of record,
and all parties not represented by counsel.

                                        Christine Crow
                                        CHRISTINE L. CROW
                                        CLERK OF COURT

# STATE OF LOUISIANA
# COURT OF APPEAL, FIRST CIRCUIT

STATE OF LOUISIANA

VERSUS

WALTER A. KOTT, JR.

NO.: 2013 KW 1257

**OCT 28 2013**

---

In Re:    Walter A. Kott, Jr., applying for supervisory writs, 22nd Judicial District Court, Parish of St. Tammany, No. 378041.

---

BEFORE:   PARRO, GUIDRY AND DRAKE, JJ.

        WRIT DENIED.

                            RDP
                            JMG
                            WED

COURT OF APPEAL, FIRST CIRCUIT

DEPUTY CLERK OF COURT
    FOR THE COURT

IN THE

## SUPREME COURT OF LOUISIANA

NO.

STATE EX REL. WALTER A. KOTT, JR.

VERSUS

STATE OF LOUISIANA

MOTION FOR LEAVE TO FILE OUT-OF-TIME WRIT APPLICATION

TO THE COURT OF APPEAL, FIRST CIRCUIT, NO. 2013-KW-1257, DENYING
APPLICATION FOR SUPERVISORY WRIT FROM THE DENIAL OF POST-
CONVICTION RELIEF BY THE 22ND JUDICIAL DISTRICT COURT,
PARISH OF ST. TAMMANY, NO. 378041, DIVISION-C,
THE HONORABLE RICHARD A. SWARTZ, JUDGE

PRO SE APPLICATION OF WALTER A. KOTT, JR.

RESPECTFULLY SUBMITTED BY:

WALTER A. KOTT, JR. #347318
LOUISIANA STATE PENITENTIARY
ANGOLA, LA 70712

TO THE HONORABLE CHEIF JUSTICE AND ASSOCIATE JUSTICES OF THE LOUISIANA SUPREME COURT:

The petitioner-defendant, Walter A. Kott, Jr., moves this Honorable Court for leave to file an out-of-time Application for Supervisory Writ to review the adverse rulings of the Louisiana First Circuit Court of Appeal and the Twenty-Second Judicial District Court, Parish of St. Tammany, relative to his Application for Post Conviction Relief. Petitioner sets forth the following grounds in support of his motion:

I.

On May 24, 2013, petitioner submitted an Application for Post Conviction Relief (APCR)[1] to the Twenty-Second Judicial District Court, Parish of St. Tammany, in which he presented claims that (1) his defense counsel was constitutionally ineffective; (2) his conviction under Sections (3) and (4) of the second-degree murder statute, La. R.S. 14:30.1, is unconstitutional as applied to him; (3) prejudicial misconduct by the prosecutor; and (4) prejudicial effect of all the errors committed in this case.

II.

After the State filed an answer/response to petitioner's APCR, the district court denied relief on June 20, 2013. See Order attached hereto. Thereafter, he submitted a timely notice of intent to seek supervisory writ with the First Circuit Court of Appeal which was granted on July 10, 2013. He subsequently filed a timely writ application with the court of appeal on July 19, 2013.

III.

When the court of appeal did not issue a ruling within a reasonable time, petitioner contacted his attorney to inquire about the status of his writ application. In a letter dated March 12, 2014, he received a letter from his, Rachel M. Yazbeck, who informed him that the First Circuit had denied his writ application on October 28, 2013. See Letter (03/12/14) attached hereto. Ms. Yazbeck stated in her letter that:

> I have some bad news. Your Writ to the First Circuit was denied without reasons on October 28, 2013. Somehow the email from the First Circuit got lost in my inbox and they never mailed an actual copy to the

---

[1] Petitioner submits that he retained private counsel, Rachel M. Yazbeck, to represent him during the post-conviction process.

office. Obviously your writ to the Supreme Court is now untimely. Since we had no opinion from the First Circuit, I seriously doubt the Louisiana Supreme Court would have entertained the writ. Your Supreme Court Writ taken from your direct appeal was denied on 11/21/2013[2] and your Post Conviction Relief was filed six months and 3 days later. You still have your Federal Habeas available to you until approximately April 24, 2014. My office has not been retained to do either the Louisiana Supreme Court Writ or the Federal Habeas. If you would like, I can send you a template for the Federal Habeas. Should you have any questions, please do not hesitate to contact the undersigned.

See Letter (03/12/14) attached hereto.

IV.

Ms. Yazbeck, soon thereafter, sent petitioner a sworn affidavit dated March 17,

2014, in which she stated:

1.   That I am the attorney of record for Walter A. Kott, Jr. who filed the Supervisory Writ to the Court of Appeal, First Circuit, State of Louisiana, Docket No. 2013-KW-1257.

2.   That during the week of March 10, 2014, I contacted the First Circuit Court of Appeal to inquire about the ruling in the above case and was informed that a ruling had been e-mailed to me on October 28, 2013.

3.   That this was my first notification of the ruling.

4.   That the e-mail which had been sent to me on October 28, 2013 was lost in my inbox and only found last week after I inquired about the ruling with the Court.

5.   That a hard copy of the ruling was never received in the mail by my office at any time.

6.   That a copy of the ruling was immediately mailed to Walter A. Kott, Jr., via Certified Mail, Receipt No. 7012 1640 0000 5483 0403 on March 12, 2014.

7.   That on Friday, March 14, 2014, I spoke with Walter A. Kott, Jr. and advised him of the ruling and the events that had transpired.

See Affidavit (03/17/14) attached hereto.

V.

Ms. Yazbeck's letter and affidavit makes clear that there was a problem with her e-

mail system which prevented her from notifying and sending petitioner a copy of the

court of appeal's October 28, 2013 ruling denying his writ application.

---

2   This court denied writ of certiorari on November 21, 2012. See State v. Kott, 12-1221 La. 11/21/12), 102 So.3d 53.

VI.

As a result of the malfunction with Ms. Yazbeck's e-mail system, petitioner was prevented from filing a timely application for supervisory writ with this court. However, he had no control over his attorney's e-mail system and had no knowledge regarding the ruling of the court of appeal.

WHEREFORE, for the reasons set forth, petitioner respectfully urge this court to exercise its supervisory and/or remedial authority and grant him leave to file an out-of-time writ application to review the adverse rulings of the trial court and the court of appeal.

Done and signed this 31st day of March, 2014.

Respectfully submitted by:

_Walter a. Kott Jr_

Walter A. Kott, Jr. # 347318
Louisiana State Penitentiary
Angola, LA 70712

## AFFIDAVIT AND CERTIFICATE OF SERVICE

I, Walter A. Kott, Jr., hereby declare or affirm under penalty of perjury that all of the facts, information, and documents contained in the foregoing pleading is true and correct.

I further certify that on April 1st, 2014, a copy of the foregoing writ application has been mailed via United States Postal Service, or delivered to a prison official for mailing pursuant to the "Mailbox Rule" to following:

Office of the Clerk          District Attorney
Court of Appeal, First Circuit   22nd Judicial District
P.O. Box 4408                Parish of St. Tammany
Baton Rouge, LA 70616        701 North Columbia St.
                             Covington, LA 70433

_Walter a. Kott Jr_

Walter A. Kott, Jr. #347318

IN THE

SUPREME COURT OF LOUISIANA

NO.

STATE EX REL. WALTER A. KOTT, JR.

VERSUS

STATE OF LOUISIANA

ORDER

In consideration of petitioner's Motion for Leave to File Out-of-Time Writ Application;

IT IS HEREBY ORDERED that petitioner's motion is __GRANTED__ and that the Clerk of Court file his Application for Supervisory Writ submitted hereto with a filing date retroactive to October 28, 2013.

DONE AND SIGNED this _____ day of _____, 2014.

_____

Chief Justice or Associate Justice

# LAW OFFICE OF RACHEL M. YAZBECK, L.L.C.

818 HOWARD AVENUE.
SUITE 305
NEW ORLEANS, LOUISIANA. 70113
504-586-8008 OFFICE
504-586-8003 FAX
WWW.YAZBECKLAWOFFICE.COM

March 12, 2014

Mr. Walter Kott - DOC #347318
Camp D, Eagle 1
Louisiana State Penitentiary
Angola, Louisiana 70712

RE:     *State of Louisiana v. Walter A. Kott, Jr.*

Dear Mr. Kott:

      I have some bad news. Your Writ to the First Circuit was denied without reasons on October 28, 2013. Somehow the email from the First Circuit got lost in my inbox and they never mailed an actual copy to the office. Obviously your writ to the Supreme Court is now untimely. Since we had no opinion from the First Circuit, I seriously doubt the Louisiana Supreme Court would have entertained the writ. Your Supreme Court Writ taken from your direct appeal was denied on 11/21/2013 and your Post Conviction Relief was filed six months and 3 days later. You still have your Federal Habeas available to you until approximately April 24, 2014. My office has not been retained to do either the Louisiana Supreme Court Writ or the Federal Habeas. If you would like, I can send you a template for the Federal Habeas. Should you have any questions, please do not hesitate to contact the undersigned.

Kind Regards,

Rachel M. Yazbeck, Esq.

RMY

Enclosure

ANGOLA

US POSTAGE
FIRST-CLASS

7071280098

NEW ORLEANS,
LA 700
30 MAR 1 '13
PM 1 1

Sprincey

Walter Kost #342318
Camp D, Eagle 1
Louisiana State Penitentiary
Angola, LA 70712

RECEIVED MAR 17 REC'D

70712980399

Law Office of
Rachel M. Yazbeck, L.L.C.
818 Howard Ave., Ste. 305
New Orleans, LA 70113

CERTIFIED MAIL

7013 1090 0000 5483 0403

## AFFIDAVIT

STATE OF LOUISIANA

PARISH OF ORLEANS

BEFORE ME, the undersigned authority, personally came and appeared:

### RACHEL M. YAZBECK

who, being duly sworn and under oath, did depose and state:

1. That I am the attorney of record for Walter A. Kott, Jr. who filed the Supervisory Writ to the Court of Appeal, First Circuit, State of Louisiana, Docket No. 2013-KW-1257.

2. That during the week of March 10, 2014, I contacted the First Circuit Court of Appeal to inquire about the ruling in the above case and was informed that a ruling had been e-mailed to me on October 28, 2013.

3. That this was my first notification of the ruling.

4. That the e-mail which had been sent to me on October 28, 2013 was lost in my inbox and only found last week after I inquired about the ruling with the Court.

5. That a hard copy of the ruling was never received in the mail by my office at any time.

6. That a copy of the ruling was immediately mailed to Walter A. Kott, Jr., via Certified Mail, Receipt No. 7012 1640 0000 5483 0403 on March 12, 2014.

7. That on Friday, March 14, 2014, I spoke with Walter A. Kott, Jr. and advised him of the ruling and the events that had transpired.

_____
RACHEL M. YAZBECK

SWORN TO AND SUBSCRIBED BEFORE

ME, THIS 17TH DAY OF MARCH, 2014.

_____
NOTARY PUBLIC

TIMOTHY T. YAZBECK
NOTARY PUBLIC
LSBA NO. 34354
MY COMMISSION IS FOR LIFE.



## MEMORANDUM

TO:     KEVIN SCOTT SWANN #1483

FROM:   DAVID M. KUNKLE, POLICE CHIEF

REF:    DISMISSAL FROM AT-WILL EMPLOYMENT

DATE:   SEPTEMBER 22, 1994

You are hereby notified that you are being dismissed this date from at-will employment in accordance with City of Arlington Personnel Polices II.C.2.g. for probationary employees and II.D.1.a.6. for all other at-will employees.

DK/js0587

cc:     Norman Clark, Human Resources Director

# Employee Status Authorization

 

Employee's Name ___Swann___ ___Kevin___ ___S___ Date _09-22-94_
       (Last)   (First)  (MI)

Department ___Police___    Social Security Number ___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___

## I. Employment

Date of Employment _____ ☐ Full-time ☐ Part-time ☐ Temporary ☐ Seasonal

Position Title _____ Hay Points/Level _____

Position Number ____ - ____ - ____ - ____ - ____ Beginning Salary _____ + _____ / _____ _____
     (Dept) (Obj) (Job C) (Seq) (Suf)     (Base)  (Extra pay) (Code) (Type)

## II. Change in Status

Effective Date (Beginning of Pay Period) _____

Current Department _____ Position Number ____ - ____ - ____ - ____ - ____
                  (Dept) (Obj) (Job C) (Seq) (Suf)

Current Position Title _____ Hay Points/Level _____ Current Salary _____ + _____
                         (Base) (Extra pay)

New Department _____ Position Number ____ - ____ - ____ - ____ - ____
               (Dept) (Obj) (Job C) (Seq) (Suf)

New Position Title _____ Hay Points/Level _____ New Salary _____ + _____
                        (Base) (Extra pay)

Reason for Change ____ - ____ or Reason for Extra Pay ____ - ____
See Appropriate Code on Back (Code)  (Type)  See Appropriate Code on Back (Code)  (Type)

Performance Rating _____

## III.   ☒ Dismissal   ☐ Retirement   ☐ Resignation   ☐ Leave of Absence
  ☐ Injury Leave Without Pay   ☐ Short-term Disability   ☐ Long-term Disability
          See Appropriate Code on Back

Date of Action _09-22-94_ Reason for Action _22_ - _Probation Dismissal_
              (Code)    (Type)

Position Title _Police Officer_    Hay Points/Level _PI_

Date of Employment _03-28-94_ Position Number _8130_ - _1103_ - _3298_ - _0261_ - _0_
                 (Dept) (Obj) (Job C) (Seq) (Suf)

Terminal Pay Due? ☐ Yes ☒ No ☐ Disciplinary Appeal Pending

Recommended for Rehire? ☐ Yes ☒ No

Additional Comments _____

READ IN BY PERSONNEL

OCT 5 1994

## IV.   Approval

_____      _____
Department Head            Director of Human Resources

White copy - Human Resources  •  Yellow copy - Department

## Employee Status Authorization

COPY

City of Arlington Texas

Employee's Name ___ SWANN (Last) ___ KEVIN (First) ___ S. (Mid) ___ Date ___ 03/04/94

Department ___ POLICE ___ Social Security Number ___ 433 47 0583

### I. Employment

Date of Employment 03/28/94    ☒ Full-time    ☐ Part-time    ☐ Temporary    ☐ Seasonal

Position Title ___ OFFICER ___ Hay Points/Level ___ P1

Position Number 8130 (Dept) - 1103 (Obj) - 3298 (Job C) - 0261 (Seq) - 0 (Sub)   Beginning Salary 2328 (Base) + ___ (Extra pay) ___ (Code) ___ (Type)

3-28-94

### II. Change in Status

Effective Date (Beginning of Pay Period) ___

Current Department ___ Position Number ___ (Dept) - ___ (Obj) - ___ (Job C) - ___ (Seq) - ___ (Sub)

Current Position Title ___ Hay Points/Level ___ Current Salary ___ (Base) + ___ (Extra pay)

New Department ___ Position Number ___ (Dept) - ___ (Obj) - ___ (Job C) - ___ (Seq) - ___ (Sub)

New Position Title ___ Hay Points/Level ___ New Salary ___ (Base) + ___ (Extra pay)

Reason for Change ___ (Code) - ___ (Type)   or Reason for Extra Pay ___ (Code) - ___ (Type)
See Appropriate Code on Back

Performance Rating ___

### III.
☐ Dismissal    ☐ Retirement    ☐ Resignation    ☐ Leave of Absence

☐ Injury Leave Without Pay    ☐ Short-term Disability    ☐ Long-term Disability

See Appropriate Code on Back

Date of Action ___ Reason for Action ___ (Code) - ___ (Type)

Position Title ___ Hay Points/Level ___

Date of Employment ___ Position Number ___ (Dept) - ___ (Obj) - ___ (Job C) - ___ (Seq) - ___ (Sub)

Terminal Pay Due? ☐ Yes ☐ No    ☐ Disciplinary Appeal Pending

Recommended for Rehire? ☐ Yes ☐ No

Additional Comments ___ WORK HOURS: 0800 - 1700 HRS

WORK DAYS: MONDAY - FRIDAY   KEAD IN BY PERSONNEL

RDO'S: SATURDAY/SUNDAY

MAR 30 1994

### IV. Approval

___
Department Head

___
Director of Human Resources



# EMPLOYMENT APPLICATION

**City of Arlington**
**Human Resources**
P.O. Box 231 • 501 W. Main
Arlington, Texas 76004-0231
(817) 459-6868 • (817) 265-3311

An Equal Employment Opportunity Employer

Please print all information. Omissions and/or false information are cause for rejection or dismissal. All applications become inactive after three months.

**"OUR MISSION: To provide the best possible service to the people who live here."**

*******************************************************************************

Date _03-11-94_   Position(s) Desired: 1) _Police Officer_   2) _____

Name _____SWANN_____Kevin_____Scott____
         (Last)               (First)           (Middle)

Address __3400 Kent St C/102   Metairie LA      70006__
      (No. Street)        (City)      (State)     (Zip)

Telephone _504 - 889-2544_   Social Security Number _433 - 49 - 0583_
     (AC)

Driver's License # _5044397_   Type _E_   State Issued _LA_

Date Expires _08-08-96_

Do you have a high school diploma or GED certificate?   ☒ Yes   ☐ No

If "No", last grade completed: _B.A. Criminal Justice_

| For Human Resources Use: |
| --- |
| _____ Net wds/er |
| _____ Date |

| University/College/Trade School (Name and Address) | Dates of Attendance | Major | Certificate Cr't Degree Received | Date Received |
| --- | --- | --- | --- | --- |
| Southeastern LA University | 8/84 91 | | Criminal Justice | 12-91 |
| | | | | |
| | | | | |

Have you ever served in the Armed Services?   ☐ Yes   ☒ No

If "Yes", Branch _____ Rank at Discharge _____

Dates of Service:  From _____ To _____

Specific Training and duties _____

_____

Are you currently a member of a military unit?   ☐ Yes   ☒ No

*******************************************************************************

Have you ever been convicted of a felony?   ☐ Yes   ☒ No

If "Yes", Date _____ Charge _____

City/State _____ Disposition _____

COPY

Are you related to any member of the City Council or any current City of Arlington employee? ☐ Yes ☒ No

If "Yes", Name of Relative _____

Relationship _____ Department _____

**************************************************************************

Have you previously worked for the City of Arlington? ☐ Yes ☒ No

List all employment (including military service) beginning with current employer and work back.

CURRENT EMPLOYER: _Jefferson Parish Parish Sheriff's Office_

Dates of Employment: From: _8-92_ To: _3-94_

Address: _1400 Cross St  Marrero LA 70072_

Phone # ( _504_ ) _349-9400_ Present/Ending Salary _____

Position Title & Duties _____

_____

_____

Immediate Supervisor's Name _____

Reason for Leaving _____

May we contact this employer? ☐ Yes ☐ No

**City of Arlington Texas**

_____

**************************************************************************

I have reviewed the principle job duties and the minimum qualifications for the position(s) for which I have applied. I am aware that this application will be subject to public disclosure unless an exception under the Texas Open Records Act is applicable.

The information on this application is accurate to the best of my knowledge and is subject to verification by the City of Arlington. I authorize any person holding information on me related to my application to release it to the City of Arlington if so requested. I understand that the information provided by me herein may be used for the purpose of investigating my eligibility and my previous employers may be contacted. I agree that the City of Arlington will not be liable for any damage which may result from the release of such information, and that any misrepresentation or deliberate omission in my application may be justification for refusal of, or termination of, employment with the City of Arlington.

_Kevin Swann_ _3-11-94_

APPLICANT SIGNATURE                    DATE

**************************************************************************







THE STATE OF LOUISIANA    §

V.          §

WALTER ADAM KNOTT JR.   §

22nd JUDICIAL DISTRICT COURT

PARISH OF ST. TAMMANY

STATE OF LOUISIANA

## AFFIDAVIT FOR AUTHENTICATION OF BUSINESS RECORDS

BEFORE ME, the undersigned authority, personally appeared **Michelle Stellato**, who, being by me duly sworn, deposed as follows:

My name is **Michelle Stellato**, I am of sound mind, capable of making this affidavit, and personally acquainted with the facts herein stated:

I am the custodian of the records for the Arlington Police Department – Training Center, in Arlington, Texas. Attached hereto are fifty-eight pages of records from the Arlington Police Department's training files pertaining to Mr. Kevin Swann. These said fifty-eight pages of records are kept by Arlington Police Department – Training Center in the regular course of business; and it was the regular course of business of the Arlington Police Department – Training Center for an employee or representative of the Arlington Police Department – Training Center with knowledge of the act, event, condition, opinion, or diagnosis, recorded to make the records or to transmit information thereof to be included in such record; and the records was made at or near the time or reasonably soon thereafter. The records attached hereto are the original or exact duplicates of the original.

_____
Affiant

SWORN TO AND SUBSCRIBED before me on the 15 day of October, 2008

GRETCHEN L. COBB
Notary Public
STATE OF TEXAS
My Comm. Exp. 09/13/2012

_____
Notary Public, State of Texas

Gretchen L. Cobb
Notary's printed name

My commission expires: 9/13/2012

IN THE

SUPREME COURT OF LOUISIANA

NO.

STATE EX REL. WALTER A. KOTT, JR.

VERSUS

STATE OF LOUISIANA

## APPLICATION FOR SUPERVISORY WRIT

TO THE COURT OF APPEAL, FIRST CIRCUIT, NO. 2013-KW-1257, DENYING
APPLICATION FOR SUPERVISORY WRIT FROM THE DENIAL OF POST-
CONVICTION RELIEF BY THE 22ND JUDICIAL DISTRICT COURT,
PARISH OF ST. TAMMANY, NO. 378041, DIVISION-C,
THE HONORABLE RICHARD A. SWARTZ, JUDGE

PRO SE APPLICATION OF WALTER A. KOTT, JR.

RESPECTFULLY SUBMITTED BY:

WALTER A. KOTT, JR. #347318
LOUISIANA STATE PENITENTIARY
ANGOLA, LA 70712

APPENDIX C: SUPREME COURT OF LOUISIANA
WRIT APPLICATION FILING SHEET
NO. _____

TO BE COMPLETED BY COUNSEL
or PRO SE LITIGANT FILING APPLICATION

STATE EX REL. WALTER A. KOTT, JR.

Applicant: Walter A. Kott, Jr. #347318
Have there been any other filings in
this Court in this matter? [ ] Yes [ ]No

VERSUS

STATE OF LOUISIANA

Are you seeking a Stay Order? No
Priority Treatment? No
If so you MUST complete & attach a
Priority Form.

**LEAD COUNSEL PRO SE LITIGANT INFORMATION**

APPLICANT: Walter A. Kott, Jr. #347318
Name: Walter A. Kott, Jr. #347318
Address: Louisiana State Penitentiary
Angola, LA 70712

RESPONDENT: State of Louisiana
Name: Walter P. Reed, District Attorney
Address: 701 North Columbia St.
Covington, LA 70433

Phone: _____  Bar Roll No. _____     Phone: _____  Bar Roll No. _____

Pleading being filed:   [X]   In Proper Person   [ ]   In Proper Person

Attach a list of additional counsel/pro se litigants, their addresses, phone numbers and the parties they
represent.

[ ] Civil    [X] Criminal    [ ] Bar    [ ] Civil Juvenile    [ ] Criminal Juvenile    [ ] Other

**ADMINISTRATIVE OR MUNICIPAL COURT INFORMATION**

Tribunal/Court: _____     Docket No. _____
Judge/Commissioner/Hearing Officer: _____     Ruling Date: _____

**DISTRICT COURT INFORMATION**

Parish and Judicial District Court:   St. Tammany; 22nd          Docket No. 378041
Judge and Sec./Div.:   Hon. Richard A. Swartz; Div. "C"          Ruling Date: 06/20/12

**APPELLATE COURT INFORMATION**

Circuit: First _____          Filing Date: 07/19/13          No. 2013-KW-1257
Applicant in Appellate Court:   Walter A. Kott, Jr.
Ruling Date: 10/28/13          Panel of Judges: Parro, Guidry, and Drake, JJ

**REHEARING INFORMATION**

Applicant: _____   Date Filed: _____   Action on Rehearing: _____

**PRESENT STATUS**

[ ] Pre-Trial, Hearing/Trial Scheduled Date: _____   [ ] Trial in Progress [X] Post Trial

Is there a stay now in effect? No   Has this pleading been filed simultaneously in any other court? 

**VERIFICATION**

I certify that the above information and all of the information contained in this application is true and
correct to the best of my knowledge and that all relevant pleadings and rulings, as required by Supreme
Court Rule X, are attached to this filing. I further certify that a copy of this application has been mailed
or delivered to the appropriate court of appeal (if required), to the respondent judge in the case of a
remedial writ, and to all other counsel and unrepresented parties.

Date: April _1st_ 2014

*Walter A. Kott Jr*
Walter A. Kott, Jr. #347318
Louisiana State Penitentiary
Angola, LA 70712

## TABLE OF CONTENTS

PAGE NO.

Writ Application Filing Sheet ...................................................................................

Table of Authorities ...................................................................................................

Statement of Jurisdiction ...................................................................................... 1

Writ Grant Consideration ...................................................................................... 1

Statement of the Case ........................................................................................... 9

Statement of the Facts ....................................................................................... 10

Assignments of Error........................................................................................... 11

Argument on Assignment of Error One ................................................................ 12

Argument on Assignment of Error Two ................................................................ 25

Argument on Assignment of Error Three ............................................................. 31

Argument on Assignment of Error Four ............................................................... 35

Conclusion ........................................................................................................... 36

Affidavit and Certificate of Service ..................................................................... 37

Attachments:

    Ruling of the Court of Appeal, First Circuit

    Ruling of the District Court

## INDEX OF APPENDIX

Application for Supervisory Writs, with attached:

Exhibit-A:    Exhibits filed with original Post-Conviction but also referenced throughout

Exhibit-B:    Original Post Conviction Relief filed on May 24, 2013

Exhibit-C:    State's Answer to Application for Post Conviction Relief

Exhibit-D:    Judge's Order of Denial filed on June 20, 2013

Exhibit-E:    Notice of Intent to Seek Writs filed on July 9, 2013

Exhibit-F:    Order granting writ and return date filed on July 10, 2013

TABLE OF AUTHORITIES

PAGE NO.

CONSTITUTION:

Louisiana Constitution (1974), Art. I § 16 ................................................................. 18
Louisiana Constitution (1974), Art. I, § 19 ................................................................. 1
Louisiana Constitution (1974), Art. I, § 20 ........................................................... 25, 27
Louisiana Constitution (1974), Art. V, § 5(A) ............................................................. 1
United States Constitution, Fifth Amendment ............................................................ 14
United States Constitution, Sixth Amendment ................................................... 12, 18, 24
United States Constitution, Eighth Amendment ....................................................... 25, 27
United States Constitution, Fourteenth Amendment ................................................... 14, 33

STATUTES:

La. C.Cr.P. art. 770(2) ............................................................................................. 21
La. C.Cr.P. art. 930.3 ........................................................................................... 4, 25
La. C.Cr.P. art. 930.3(5) ....................................................................................... 4, 25
La. Code Evid. art. 403 .............................................................................................. 20
La. Code Evid. art. 404 (B)(1) .................................................................................... 20
La. R.S 14:30.1 ............................................................................................... 4, 9, 12
La. R.S 14:30.1(3) and (4) .......................................................................................... 4
La. R.S. 14:14 ................................................................................................... 3, 18
La. R.S. 14:15 ........................................................................................................ 2
La. R.S. 14:2(B) .................................................................................................. 4, 27
La. R.S. 14:30.1 (3) ............................................................................................ 4, 26
La. R.S. 14:30.1 (3) and (4) ......................................................................... 25, 27, 29
La. R.S. 14:31.1 ..................................................................................................... 11
La. R.S. 14:32 .............................................................................................. 3, 5, 11

CASE LAW:

Ake v. Oklahoma, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985) .......................... 22
Arizona v. Youngblood, 448 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988) ...... 6, 16, 32
Berger v. United States, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed.2d 1314 (1935) .................. 34
Blake v. Kemp, 758 F.2d 523 (11th Cir.), cert. denied, 474 U.S. 998 (1985) ................... 22
Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) .............. 6, 31, 33
California v. Trombetta, 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984) .... 6, 14, 35
Chambers v. Mississippi, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973) ......... 23, 36
Connelly v. Colorado, 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986) .................... 33
Cowley v. Stricklin, 929 F.2d 640 (11th Cir. 1991) .................................................... 22
Crane v. Kentucky, 476 U.S. 683, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986) ..................... 35

Darden v. Wainwright, 477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986) ...................35

Dawson v. Delaware, 503 U.S. 159, 112 S.Ct. 1093, 117 L.Ed.2d 309 (1992) .................20

Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972) .............33, 34

Graham v. Florida, 560 U.S. 448, 130 S.Ct. 2011 (2009) ......................................28, 30

Hinton v. Alabama, 571 U.S. ___, 134 S.Ct. 1081 (02/24/14) ....................................15

Kennedy v. Louisiana, 554 U.S. 407, 128 S.Ct. 2641 (2008) .......................................28

Kordenbrock v. Scroggy, 919 F.2d 1091 (6th Cir.1991) ..............................................22

Kyles v. Whitley, 514 U.S. 419, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995) ........23, 32, 36

Lockhart v. Fretwell, 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993) ................13

Migliore v. U.S., 409 F.2d 786 (5th Cir. 1969) ......................................................6, 32

Miller v. Alabama, 132 S.Ct. 2455 (2012) ................................................................27

Mooney v. Holohan, 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed.2d 791 (1935) .....................34

Moore v. Johnson, 185 F.3d 244 (5th Cir. 1999) .......................................................21

Murray v. Carrier, 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986) .......13, 23, 35

Napue v. Illinois, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959) .......................35

Nealy v. Cabana, 764 F.2d 1173 (5th Cir. 1985) ......................................................13

Old Chief v. United States, 519 U.S. 172, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997) .........19

Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932) ............................19

Roper v. Simmons, 543 U.S. 551, 125 S.Ct. 1183 (2005) ...........................................27

Smith v. McCormick, 914 F.2d 1153 (9th Cir. 1990) .................................................22

State v. Bertrand, 6 So.3d 738 (La. 2009) ..................................................................4

State v. Bertrand, 6 So.3d 738 (La. 2009) ................................................................26

State v. Chambers, 933 So.3d 200 (La. App. 3 Cir 5/24/06) .......................................21

State v. Clark, 387 So.2d 1124 (La.1980) .................................................................22

State v. Davis, 666 So.2d 400 (La.App. 1 Cir. 1995) .................................................26

State v. Dorthey, 623 So.2d 1276 (La. 1993) ............................................................26

State v. Foret, 447 So.2d 1265 (La.App. 1 Cir. 1984) ...............................................14

State v. Goode, 380 So.2d 1361 (La. 1980) ..............................................................26

State v. Green, 416 So.2d 539 (La. 1982) .................................................................34

State v. Gremillion, 542 So.2d 1074 (La. 1989) ........................................................18

State v. Guajardo, 428 So.2d 468 (La. 1983) ...........................................................26

State v. Howard, 859 So.2d 936 (La.App. 2 Cir. 10/31/03) ......................................20

State v. Interiano, 868 So.2d 9 (La. 2004) ...............................................................25

State v. Lobato, 603 So.2d 739 (La. 1992) ...............................................................26

State v. Marshall, 660 So.2d 819 (La. 1995) ............................................................35

State v. Muschkati, 706 So.2d 429 (La. 1998) ..........................................................25

State v. Rochon, 75 So.3d 876 (La. 2011) ................................................................25

State v. Sepulvado, 25 So.3d 899 (La.App. 2 Cir. 10/28/09) .....................................21

State v. Simmons, 443 So.2d 512 (La. 1983) ..................................................................33

State v. Van Winkle, 658 So.2d 198 (La. 1995) ..............................................................18

State v. Vigee, 518 So.2d 501 (La. 1988) .......................................................................18

Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674
(1984) ...................................................................................................12, 13, 19, 23

Strickler v. Greene, 527 U.S. 263, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999) ...............31

Taylor v. Kentucky, 436 U.S. 478, 98 S.Ct. 1930, 56 L.Ed.2d 468 (1978) ..............23, 36

Tennessee v. Bane, 510 U.S. 808, 114 S.Ct. 52, 126 L.Ed.2d 23 (1993) ......................20

United States v. Bagley, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985) .......23, 31

United States v. Bryant, 439 F.2d 642 (1971) ................................................................33

United States v. Cronic, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657
(1984) ..........................................................................................13, 17, 23, 24, 35

United States v. Cronic, 839 F.2d 1401 (10th Cir. 1988) ...............................................21

United States v. Meros, 866 F.2d 1304 (11th Cir. 1989) ................................................31

United States. v. Gaddy, 532 F.3d 783 (8th Cir. 2008) ..................................................33

Washington v. Texas, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967) ............18, 35

Wright v. Van Patten, 552 U.S. 120, 128 S.Ct. 743, 169 L.Ed.2d 583 (2008) ...............24

OTHER:

La.Sup.Ct.Rule X(a)(1) ..................................................................................................4

La.Sup.Ct.Rule X(a)(4) ..............................................................................................4, 6

La.Sup.Ct.Rule X(a)(5) ..........................................................................................1, 4, 6, 9

## JURISDICTION

Supervisory jurisdiction of this Court is vested by Article V, § 5(A) of the Louisiana Constitution of 1974.

## WRIT GRANT CONSIDERATIONS

### I.

Petitioner submits that the district court abused its discretion by denying his ineffective-assistance-of-counsel claims without an evidentiary hearing where he could have presented evidence and called witnesses to establish the factual basis of his claims. Moreover, the court of appeal's failure to remand this matter to the district court for an evidentiary deprived petitioner of his constitutional "right of judicial review based upon a complete record of all evidence upon which the judgment is based." La.Const. (1974), Art. 1, § 19. As such, the court of appeal abused its authority and sanctioned the district court's erroneous ruling with regards to petitioner's ineffective assistance of counsel claims. La.Sup.Ct.Rule X(a)(5).

The District Court in its review states after careful and extensive review finds no merits to this claim within the record and makes its decision only two days after the state's response basing its decision on misinterpretation and misleading facts presented in the State's answer.

1) The State asserts that the blood sample was already at the Louisiana State Crime Lab and that the sample was so small that they could not perform the test. Petitioner submits, however, that this is a gross misrepresentation of facts contained in the record. The fact contained in the record (Exhibit-B) is that the sample at the lab could be tested but the State Crime Lab was afraid that there would not be enough biological material (blood) remaining to share with the defense. The trial judge stated that provisions could be made for the defense to be present during testing of same for the two parties to work this out. Mr. Dearing then informs the judge that he would have to consult his supervisors to see if they want to pursue testing. This same issue was addressed at the next hearing and Mr.

1

Dearing inform the court and defense counsel that this testing issue still hasn't been addressed with his supervisors.

2) The State further claims in its response that they were always willing to have the crime lab transport the sample. The second misrepresentation of the truth is. The evidence of this is contained in the record over ten motions pertaining to same including orders by the court. (Exhibit-A). Also included is a letter from the paralegal to Martin Ragan, stating the State and Slidell Police Department's unwillingness to secure the chain of custody and locate the blood to ship to a lab. (Exhibit-C).

3) The State alleges that Dr. Young testified as to the test of levels in petitioner's blood. This is false because he did not even see a toxicology regarding petitioner's test results.

4) The State grossly misrepresented the facts once again that the claim by the defense that the State withheld the blood purposefully so that the toxins would diminish is pure speculation. They state to the contrary that it is refuted by the testimony of the doctor who testified at trial. This testimony does not exist within the record: 1) The assistance district attorney (ADA) is no medical expert in any medical field; 2) It is well-known within the medical community that toxins (drugs) concentration levels deteriorate depending on the temperature levels of storage, duration of storage and several other factors involved in the maintenance of same. Extrapolation is a scientific method of analysis which attempts to stretch out a small amount of toxins using that level and arrive at a level when the sample was drawn. There are experts who can testify based on results reached upon their analysis of same. A chain of custody was withheld barring defense counsel from securing this expert and this is classic ineffective assistance of counsel (IAC) or constructive IAC by way of the State when the funds were available. All of the above contained in #4 is a part of the record contained in Exhibit-C.

5) The State also submits that the defense chosen was defendant's only defense. That is not the case. For some reason defense counsel abandoned the intoxication defense, La. R.S. 14:15, due to the 39-month delay when it was still a viable defense. Had experts

2

been hired to test and testified to the method of extrapulation and the results of the analysis showing the petitioner's high level of intoxication at the time of the alleged offense. Thus having the option to present defenses of intoxication, insanity and negligent homicide. Had the State not withheld the blood evidence and expert's properly hired to expose the truth negligent homicide was a viable defense or defendant may have been found exempt from criminal responsibility. Petitioner was under the care of Dr. Richard Sabatier who admitted over prescribing the petitioner and surrendered both his permit of prescribe Controlled Dangerous Substances (CDS) along with his medical license. Dr. Sabatier prescribed petitioner 120 4mg Dilaudid two days prior and another 120 4mg Dilaudin the day prior to this untimely death. La. R.S. 14:32 where the production of the intoxication or drugged condition has been involuntary, and the circumstances indicated this condition is the direct cause of the commission of the crime. La. R.S. 14:14, insanity, was also a defense due to petitioner's addiction and level of intoxication at the time the statements were given and alleged offense. It was pertinent to acquire expert assistance in preparing and presenting a defense. Dr. Sabatier's actions were illegal and the jury should have heard his testimony regarding his actions. Petitioner rebuts the State claim that was petitioner's only defense.

6). Finally, the trial court granted the petitioner a stipen of $5,000 to hire experts and defense counsel spent less than $200 and failed to hire any experts. The names of witnesses in the appendix of the original post-conviction application, would have testified to the actions of Mr. Regan up until the day of trial attempting to acquire experts and lack of being prepared.

Had the trial court and the court of appeal done a thorough examination of the record and taken answers from the State and applied the law and constitution, it is clear that a reversal, or at least an evidentiary hearing, should have been granted.

II.

Petitioner further submits that the district court abused its discretion by denying an

3

evidentiary hearing to establish the factual basis of his claim that his conviction under Sections (3) and (4) of the second degree murder statute, La.R.S 14:30.1, unconstitutional as applied to to the facts of his case. The decision of the district court to deny an evidentiary hearing is contrary to this court's three-step analysis set forth in State v. Bertrand, 6 So.3d 738 (La. 2009). La.Sup.Ct Rule X(a)(1). The court of appeal abused its authority and sanctioned the district court's erroneous ruling with regards to the constitutionality and application of La.R.S 14:30.1 (3) and (4). La.Sup.Ct Rule X(a)(4) and (5).

Petitioner asks as a question of law how the First Circuit Court of Appeal and the District Court can deny the petitioner an evidentiary hearing when this court has set guidelines as how you challenge a state statute? In the instant case, petitioner chose to challenge La. R.S. 14:30.1 (3) as it applies to him. While this court stated that while there is no single procedure to challenge the unconstitutionality of a state statute, the petitioner 1) specially pleaded the grounds for the claim and were particularized in his original post-conviction application to the trial court. The 3-step analysis was met as this court has mentioned in the past the reason for this 3-step procedure is to afford interested parties an opportunity to brief and argue the constitutional issues. How can the record be more fully developed and the particularized issues argued without a full evidentiary hearing to establish the record for the higher courts? The only issue the State answers to is the sentencing and that is not grounds for relief under post-conviction procedures citing La. C.Cr.P. art. 930.3. Article 930.3(5) allows a challenge to a conviction when the statute creating the offense for which he is convicted and sentenced is unconstitutional. The sentencing is only one issue particularized in this claim. Petitioner submitted that he is not guilty of second degree murder as he had no specific intent to kill or cause great bodily harm nor was it in the commission of a violent crime. These violent crimes are enumerated in La. R.S. 14:2(B). Distribution of a Schedule II Control Dangerous Substance (CDS) is not listed in R.S. 14:2(B), nor is it a violent crime. The legislature

4

chose to add this in 1987 to Subsection (3) of R.S. 14:30.1. That is the primary reason for challenging this statute as it applies to petitioner. Petitioner also points out that the crime committed here is La. R.S. 14:32, Negligent Homicide, where the State has to prove that negligence is the direct or proximate cause of one's death. Negligent Homicide carries a maximum sentence of five years at hard labor with the possibility of parole, probation, or suspension of sentence. The petitioner submit that La. R.S. 14:32 is what he should have been charged with. This more closely resembles the offense committed in this case. The reason petitioner cited Miller, Graham, Roper and Kennedy is the culpability issue in those rulings in addition to the diminished mental capacity suffered by juveniles. In this case, the petitioner was under doctor's care and had developed a severe addiction and at the time of his offense was being illegally prescribed CDS by his doctor, further enhancing his addiction. This doctor prescribed two days prior to the incident 120 4mg Dilaudid and 120 more 4mg Dilaudid the next day, the day before the victim's death. In addition to much more CDS included in Exhibit-L. Petitioner submits that when there are special circumstances and sentencing is mandated by a state statute that the possibility exist that the mandatory sentence is unconstitutional and by removing the authority of the judge to consider the characteristics of each individual case needs to be addressed as such in this case.

Just because a legislature enacts a statute does not guarantee its constitutionality. The state and federal constitutions protects against excessive sentence and the circumstances indicate in the instant case that a life sentence is excessive.

Finally, an evidentiary hearing is necessary to explore the legislative intent, how and why the subsection was added in 1987. Why did this statute supercede the the existing statute, La. R.S. 14:32, which replaced involuntary homicide and have one statute for homicide where there was no specific intent to kill or inflict great bodily harm or other homicides not meeting the elements of second degree murder or manslaughter, so that the record may be fully developed for the higher courts?

### III.

Next, the district court abused its discretion by rejecting petitioner's claim that the prosecutor withheld favorable blood evidence in violation of Brady v. Maryland[1] which resulted in the lost of the evidence in violation of Arizona v. Youngblood[2] and California v. Trombetta.[3] Moreover, the prosecutor threaten and coerced a witness to forgo her constitutional right against self-incrimination and infringed on her attorney-client privilege. The court of appeal abused its authority and sanctioned the district court's ruling with regards to petitioner's claim of prosecutor misconduct. La.Sup.Ct.Rule X(a) (4) and (5).

### (A)

The prosecutor deliberately withheld this crucial piece of evidence for a period of 39 months. Question of law: How can the State withhold this evidence? In the first of three suppression hearing, petitioner's counsel made the court aware that it intends to present an intoxication defense and that the blood evidence suppression becomes a "very crucial matter?" That the blood had been requested numerous times. Defense counsel states clearly, "I'm stuck here and under Kyles v. Whitley, we are entitled to it. (Exhibit-R). The court made clear to the prosecutor that the defense has a right to this evidence under Migliore v. U.S., 409 F.2d 786 (5th Cir. 1969). How can the state not produce a chain of custody on this critical piece of evidence which got lost numerous times between the state crime lab, to the district attorney's office, to the Slidell Police Department, without proper chain of custody documentation and the type of storage including temperature of same? In Exhibit-A is a motion mailed and submitted on July 21, 2006, and received by the clerk and filed on July 27, 2006, reveals the following;

> "Motion for expedited evidentiary hearing to have the state produce a chain of custody of the blood sample including who took and what precautions were taken to insure the integrity to avoid sample being spoiled or destroyed by neglect."

1. 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).
2. 448 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988).
3. 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984).

The guts of that motion speaks for itself, this evidence had become a joking matter to the Mr. Dearing, the assistant district attorney (ADA). How can the state intentionally withhold the blood evidence from testing for such a period to time, other than to allow the toxins to diminish? Proof that he was aware that this takes place is contained on page 16 of the original application for post conviction to the district court. Mr. Dearing stated that:

> "We have heard no testimony during the course of this hearing how reliable this test result is based on the circumstances of the degradation of the sample. The passage of time, the amount of the sample." See Exhibit-D, pg. 518.

A pattern of misconduct by the State is contained through the entire record. An evidentiary hearing must be held in order to expose the truth to more fully develop the record and prove petitioner's constitutional claims presented herein.

<center>(B)</center>

Petitioner asks as a question of law when serious allegations of threat and coercion are lodged against the State and names two witnesses in its appendix to the original post-conviction application presented to the district court to prove claim, why and how can the district court judge not be interested in hearing such a serious allegation through an evidentiary hearing? This allegation alone is a violation of both the Louisiana and United States Constitutions and is automatic grounds for reversal and or acquittal in some cases. The State in its response stated that "The record contains a signed order by this court commanding this witness to testify because she had been granted immunity. This is not coercion." First, when a witness is compelled to testify, in this case, Rena Boyen. She is compelled to testify to the truth. If the witness is threatened to testify verbatim to her statement or be charged with perjury and multi-billed, that is not the truth, this is coercion and perjured testimony due to threats by the State. Her account on the record shows that she testified that she was loaded and does not even remember writing most of her statement. That the police told her what to write. She was was forced to testify to things

<center>7</center>

that were false and inaccurate in her statement. The witness's testimony of Mr. Frank DeSalvo can support this claim to an extent and he communicated this to Ms. Rachel Yazbeck, petitioner's post-conviction counsel at the time. The content of this allegation communicated to Ms. Yazbeck was a phone call between Mr. DeSalvo and Mr. Noria, the prosecutor, after Mr. Noria found out that Ms. Boyen was not going to testify and be held in contempt of court. The testimony of Mr. DeSalvo is vital to this claim.

Two weeks prior to this trial commencing, was the original trial date. Rana Boyen was transferred from Tallulah to the St. Tammany Parish Jail and had not spoken to her retained counsel, Mr. DeSalvo, as he was picking a jury in federal court in New Orleans in the Danzeinger Bridge murder trial of five New Orleans police officers. The trial court granted a two-week continuance so that Mr. Regan could interview Ms. Boyen along with Mr. DeSalvo. Mr. Papillion Anderson accompanied Mr. Regan to this interview along with Mr. DeSalvo. For the record, Mr. Anderson is a licenced private investigator in the state. The three interviewed Ms. Boyen and explained the court order and her options. Mr. Regan and Mr. Anderson excused themselves from this interview, leaving her alone with Mr. DeSalvo where he explained she could be charged with contempt of court and sentenced to a maximum of six months for each question she refused to answer. Mr. Anderson and Mr. Regan were summoned back to the interview room and informed that Ms. Boyen was not going to testify.

Fast forward to the start of the trial: First, Mr. Noria on the morning these threats and coercion takes place he misrepresents the truth advising his Honor that he spoke to Ms. Boyen that morning and she was going to testify. That Ms. Boyen was there on another matter. She was not there on another matter. Not true. She was on no other docket in any court that day. (Exhibit-T). She was brought there and threatened with perjury if she did not testify verbatim with her statement. A lie within itself as her statement was not taken under oath. In Ms. Boyen's testimony in Exhibit-0, she states that Mr. Noria tells her that Mr. DeSalvo told Mr. Noria to tell her to testify. Mr. Regan

clearly states he does not believe that, Ms. Noria then rambles on distorting the truth to

the judge as to what happened in his conversation with Mr. DeSalvo.

How without the testimony of Mr. DeSalvo, Mr. Anderson, Mr. Regan and Ms.

Yazbeck determine what the truth is regarding this very serious allegation? It would be

unethical for Mr. DeSalvo to send the district attorney to advise Ms. Boyen to testify

when he could have had an associate do so on his behalf or the jail inform Ms. Boyen to

call him. The record will support that Ms. Boyen never spoke to Mr. DeSalvo after their

meeting with Mr. Regan and Mr. Anderson prior to trial. This claim alone should require

this court to remand this case back to the district court for an evidentiary hearing and a

new trial.

<div align="center">IV.</div>

Petitioner submits that the district court abused its discretion by denying his post-

conviction application without considering the accumulation of errors committed in this

case. Moreover, the court of appeal abused its authority and sanctioned the district court's

erroneous ruling with regards to the instant claim, La.Sup.Ct.Rule X(s)(5).

<div align="center">STATEMENT OF THE CASE</div>

On March 29, 2004, Mr. Kott was charged by indictment in the Twenty Second

Judicial District Court (Docket No. 378,041) of St. Tammany Parish of Second Degree

Murder under the Louisiana Revised Statute Article 14:30.1. After a long bout with

attempts to obtain evidence through discoveries, a trial commenced on November 29,

2010.  Judgment was rendered by a twelve person jury against Mr. Kott on December 3,

2010, finding him guilty of second degree murder, Judge William J. Burris presiding. Mr.

Kott was sentenced to the mandatory life sentence at hard labor without benefit of parole,

probation, or suspension of sentence.

On November 9, 2011, Mr. Kott appealed to the First circuit Court of Appeals. The

conviction and sentence were affirmed on February 10, 2011(Docket No 2011-KA-0997).

On February 24, 2012, application for rehearing was filed. A Limited Re-Hearing was

<div align="center">9</div>

Granted and Ruled upon on May 4th 2012.

On June 1, 2012, Writ of Certiorari was filed to the Louisiana Supreme Court. The Louisiana Supreme Court denied relief on November 21, 2012 in Docket Number 2012-K-1221. Panel of JTK, BJJ, JPV, JLW, GGG, MRC.

On May 24, 2013, petitioner filed an Application for Post Conviction Relief (APCR) with the trial court. The State filed an answer to petitioner's APCR on June 13, 2013. However, the trial court denied relief on June 20, 2013, ruling that petitioner's claims could be decided on the record without a hearing. His Notice of Intent to Seek Supervisory Writs was filed on July 9, 2013, and granted on July 10, 2013. Petitioner subsequently filed his Application for Supervisory Writs on July 19, 2013. The court of appeal denied the writ without reason on October 28, 2013.[4] State v. Kott, 2013-1257 (La.App. 1 Cir. 10/28/13)(Unpublished opinion)(See Judgment attached hereto). Petitioner now submits the instant writ application and urge this court to exercise its supervisory authority to grant remedial relief in the interest of justice.

## STATEMENT OF FACTS

On January 29, 2004, at approximately 11:00 – 11:30 a.m. the Slidell Police Department received a 911 emergency call from Walter Kott, (hereafter defendant) seeking emergency medical assistance for a young woman (Rebecca Roshto) who was unresponsive while trying to wake her.[5] After police and paramedics arrived, attempts were made to revive Ms. Roshto to no avail. After it was determined by police that Ms. Roshto's death may have been the result of an overdose; Petitioner was questioned and searched. Police found prescription drugs upon his person (Delaudid and Lorcet 10) which at the time were unaccounted for. It was later established that the drugs found on Petitioner were prescribed by his physician. Petitioner was handcuffed, placed in police car, and transported to the Police Department and interrogated by police for over eight

---

[4] Petitioner did not know that the court of appeal had denied his writ application until his attorney, Rachel M. Yazbeck, informed him by letter dated March 12, 2014, of the court's decision. Ms. Yazbeck stated in her letter that, "Somehow the email from the First Circuit got lost in my inbox and they never mailed an actual copy to the office." See letter and sworn affidavit attached to separate Motion to File Out-of-Time Writ Application.

[5] A blood sample was drawn from the defendant on January 29th, 2004 the day of the incident

hours concerning Roshto's death. Contrary to that stated by the police, Kott was arrested as he was detained, handcuffed and unable to leave.

Throughout the questioning by police, Petitioner explained that he had received a phone call from Roshto (a known drug addict) who wanted to stop by to visit. Petitioner (a drug addict), high on his own prescribed drugs, welcomed Ms. Roshto's company. Defendant was at the time injecting up to 4 Delaudid every two to three hours. His accounting of the entire incident was that he remembered vaguely awaking only to take another injection of his prescribed drugs. Defendant never realized that Ms. Roshto was unresponsive until his daughter Catherine (Rena) Boyen attempted to awaken Ms. Roshto at approximately 10:00 – 10:30 a.m.

Petitioner was tried and convicted of second degree murder based on his statements/confession(s) which were illegally obtained.

Petitioner presents herein numerous errors of constitutional magnitude resulting in an unconstitutional conviction and sentence. Petitioner presents claims of ineffective assistance of counsel and prosecutorial misconduct. Petitioner further presents that application of LSA-R.S. 14:31.1 Sections (3) and (4) (Second Degree Murder Statute) which mandates a mandatory life sentence without parole for a non violent (overdose death) offense is unconstitutional as applied. The petitioner submits that La. R.S. 14:32, negligent homicide, is what he should have been charged with. This more resembles the offense committed in this case where the State has to prove that negligence is the direct or proximate cause of one's death.

## ASSIGNMENTS OF ERROR

1) Petitioner contends that his defense counsel was constitutionally ineffective based on counsel's (a) failure to perform proper pretrial discovery and investigation; (b) failure to prepare and present a defense; (c) failure to challenge and seek writs regarding the admission of other crimes evidence; (d) failed to present a defense of negligent homicide and to request a special jury instruction on same; (e) failed to acquire experts to

11

assist in preparation and presentation of the defense when the motion filed for expert requesting funds was granted; (f) and the cumulative effect of defense counsel's errors.

2) Petitioner contends that his conviction under the second degree murder statute, La.R.S 14:30.1, which includes §§ (3) and (4), in unconstitutional as applied to him by imposing a mandatory life sentence for an offense which lacks any intent to kill or inflict great bodily harm, without first allowing the sentencing court the ability to consider the characteristics of a petitioner and the details of his offense before sentencing him.

3) Petitioner contends that prosecutorial misconduct occurred when the district attorney withheld blood evidence and when he obtained testimony by threatening a witness.

4) The trial court erred in finding the cumulative errors involved in this case demonstrate an unconstitutional conviction and trial in violation of the Fifth and Fourteenth Amendments to the United States Constitution.

## ARGUMENT ON ASSIGNMENT OF ERROR ONE

The Sixth Amendment to the United States Constitution provides, in pertinent part, that "[i]n all criminal prosecutions, the accused shall ... have the Assistance of Counsel for his defence." U.S.Const.amend. VI.[6] The "Assistance of Counsel" means the "effective" assistance of counsel. See, e.g., Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

A reviewing court must reverse a conviction if the petitioner establishes: (1) that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms, and (2) counsel's inadequate performance prejudiced defendant to the extent that the trial was rendered unfair and the verdict suspect. Strickland, 466 U.S. at 687, 104 S.Ct. 2052.

"The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland, 466 U.S. at

6  The Sixth Amendment has been made applicable to the States under the Fourteenth Amendment.  See Gideon v. Wainwright, 372 U.S. 335, 345, 83 S.Ct. 792, 797, 9 L.Ed.2d 799 (1963).

686, 104 S.Ct. 2052. In other words, counsel's error must have been "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687, 104 S.Ct. 2052. With respect to prejudice, the Strickland test does not merely question whether the outcome of the proceeding would have been different, but also looks at whether the verdict was fundamentally unfair or unreliable. Lockhart v. Fretwell, 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993).

The Supreme Court has also recognized that "the right to effective assistance of counsel ... may in a particular case be violated by even an isolated error of counsel if that error is sufficiently egregious and prejudicial. Murray v. Carrier, 477 U.S. 478, 496, 106 S.Ct. 2639, 2649, 91 L.Ed.2d 397 (1986)(citing United States v. Cronic, 466 U.S. 648, 657 n. 20, 104 S.Ct. 2039, 2046 n. 20, 80 L.Ed.2d 657 (1984), and Strickland v. Washington, 466 U.S. at 693-696, 104 S.Ct. at 2067-2069). As demonstrated below, defense counsel in this case failed "to subject the prosecution's case to meaningful adversarial testing." United States v. Cronic, 466 U.S. at 658-89, 104 S.Ct. 2039. When "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment right that makes the adversary process itself presumptively unreliable." Cronic, 466 U.S. at 659, 104 S.Ct. 2039.

A) Defense Counsel Failed to Perform Proper Pre-trial Discovery and Investigation.

Defense counsel must engage in a reasonable amount of pretrial investigation, and "at a minimum . . . . make an independent investigation of the facts and circumstances of the case." Nealy v. Cabana, 764 F.2d 1173, 1177 (5th Cir. 1985). In general, defense counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Strickland, 466 U.S. at 691, 104 S.Ct. 2052. The State alleges that petitioner's claim is conclusory and does not state with specificity what the investigation could have revealed. However, petitioner was very specific and made reference to numerous exhibits in support of his claims.

Defense counsel failed to obtain the blood evidence in a timely manner. Motions

13

were filed and hearings held but those motions have no value if defense counsel fails to follow through. (Exhibit-A). The evidence was crucial to the defense. The blood sample was drawn from petitioner on the day of the incident on January 29, 2004. The blood sample bears Slidell Police Department evidence number 65304.    Defense counsel was aware of this evidence and its importance to the defense. However, the first time the blood suppression issue is in the record is on February 2, 2005 in a bond reduction motion. The State repeatedly proffered excuses to preclude this evidence from being tested and sadly, defense counsel failed to do anything about it. (Exhibit-B). This failure resulted in a 39 month delay which resulted in the toxins within the blood sample diminishing and petitioner's defense was lost. (Exhibit-C).

If physical evidence has been lost or destroyed by the State, the factors to be considered regarding whether a defendant's right to due process has been prejudiced are: (1) the materiality of the evidence to guilt or punishment; (2) prejudice to the defendant resulting from loss or destruction; and (3) good or bad faith on part of the State. State v. Foret, 447 So.2d 1265 (La.App. 1 Cir. 1984); U.S. Const.Amends. 5, 14. Duty to preserve evidence must be limited to evidence that might be expected to play a significant role in the defense. California v. Trombetta, 467 U.S. 479, 488 (1984). In the instant case, the blood evidence was crucial in proving petitioner's intoxication at the time of the alleged offense as well as his initial contact with the police. Unlike the outcome in Trombetta, the chances are very high that the evidence would have been a powerful piece in petitioner's defense.

Unfortunately, it was too late and the toxins within the blood evidence had diminished to 9.5 nanograms per milliliter. (Exhibit-D). The State's response alleges that petitioner had metabolized all but 20% of the expected amount of dilaudid. (State's response, p. 4). The State makes this assertion without using any scientific source. The District Attorney is no expert in toxicology. The State makes a "conclusory" statement without providing a source for the scientific information cited.

14

Petitioner suffered prejudice in two ways. It resulted from the State intentionally withholding the evidence, and defense counsel's ineffective assistance in failing to assure chain of custody, failing to assure that the evidence was located, acquired, and tested in a timely manner. Petitioner was prescribed 965 4mg Dilauded in addition to 1440 of Lorcet 10 pills within a 9-week period. (Exhibit-E). Equaling an allotment of 15 Dilauded and 22 Lorcet 10's per day. It is untenable to argue that the blood evidence would not have shown a high level of toxins had the blood evidence been submitted for testing in a timely manner. During hearing held pertinent to this issue, the prosecutor questioned petitioner asking the following:

> "We have heard no testimony during the course of this hearing how reliable this test result is based on the circumstances of the degradation of the sample. The passage of time, the amount of the sample. We have heard no testimony. You would agree with that?"

See Exhibit-D, p. 518.

Moreover, the prosecution was aware that the defense had no expert to provide the testimony necessary to prove his claims. No defense expert ever testified at trial. It must be remembered that Motion for Funds to Acquire Expert Assistance was filed and granted. (Exhibit-F). The trial court allotted $5000.00 but defense counsel failed to acquire expert assistance. See Hinton v. Alabama, 571 U.S. ___, 134 S.Ct. 1081 (02/24/14). Had defense counsel used the funds allotted and acquired the expert, there would have been testimony regarding the reliability of the test result, chain of custody, and degradation of the sample over the 39-month passage of time.

It is pertinent to note that during hearing of Motion to Recuse the District Attorney's Office, the trial judge himself admonished defense counsel for his failure to follow through on the testing of the blood evidence over extended period of time. The trial judge informed defense counsel that this issue had come before the court at least three times and he had given counsel the benefit during this time of looking for a crime lab all over this nation. (Exhibit-G).

13

Petitioner submits that the trial judge's comments support his allegation that defense counsel was utterly ineffective. The blood evidence was crucial in proving petitioner's mental incapacity at the time of the alleged offense. The victim's mother testified regarding the conduct of the officers during interrogation when they used petitioner's withdrawal symptoms to obtain a coerced statement. (Exhibit-H). Thus, he had a right to test this evidence and a right to have an independent chemical analysis performed on the blood evidence. Arizona v. Youngblood, 448 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988). Most importantly, had defense counsel acquired the assistance of an expert to assist with preparation and presentation of the defense, there is more than a reasonable probability that the result of the proceeding would have been different.

It is pertinent to remember in Corporal Kahrs' case narrative, he states that petitioner could not give consistent and coherent details when he arrived at the scene. (Exhibit-I). Petitioner was transported to the police station within 15 minutes of the 911 call being placed. It is untenable to argue that petitioner had the requisite mental capacity to give a voluntary statement/confession when he was so intoxicated that he could not give consistent and coherent details. Defense counsel failed to properly challenge the unlawful actions of the police officers when he had the facts and/or evidence to do so.

Additionally, the syringe presented by the State was located far away from the scene. No scientific evidence was presented linking petitioner or the alleged victim to the syringe and this evidence should have been suppressed. The syringe was the only physical evidence in the courtroom alleged to have been used by petitioner. "There was no claim that that syringe was ever the instrument used in injecting the victim." (State's response, p. 6). The syringe was paraded before the jury throughout the duration of the trial as if it were the murder weapon. This obvious display tainted the jury and defense counsel failed to object. Again, acquiring expert assistance was crucial regarding this issue who could have testified that the syringe proffered would not hold four Dilaudid. The State called Capt. Harry O'Niel, the director of the St. Tammany Parish Crime Lab,

16

as a rebuttal witness to refute petitioner's claim that the .30 cc syringe introduced as evidence could not hold a four 4mg Dilaudid. Capt. O'Niel was qualified as an expert in the preparation of street narcotics to be injected. There are multiple methods to prepare drugs to be injected. Capt. O'Niel testified as to how the injectables are prepared through a spoon/cooker and then heated, then the liquid toxins drawn into the syringe. This was done without any reliable testing of the syringe in question or a compatible one. He testified that it may take filling the syringe up twice to draw up the four Dilaudid. The State's theory from the beginning was that there was two injection sites on the victim. In Rena Boyen's statement coerced and written as the Slidell police told her to, states that the petitioner confessed to her that he had injected the victim twice. An autopsy performed on the victim confirmed that there was only one injection site, but the State's theory was that the victim was injected with four Dilaudid. This testimony was highly prejudicial that was presented to the jury supporting the State's claim that petitioner submits it is impossible to prepare the Dilaudid as Capt. O'Niel testified to and fit four 4mg Dilaudid in to the .03 cc syringe. Had defense counsel hired the necessary experts there is a reasonable probability that this prejudicial evidence would have been presented to the jury. The petitioner through his drug abuse history has never used that method to inject Dilaudid; he used a method known as "cold shaking" which expert testing and their testimony would prove scientifically that it is highly unlikely that much more than one 4mg Dilaudid much less 4mg Dilaudid could fit in a .30 cc syringe.

Petitioner made known to the trial court through numerous letters that he was sorely aggrieved by defense counsel's failures through repeated instances of not appearing in court and diligently obtaining the blood evidence. (Exhibit-J). The type of breakdown in the adversarial process that implicates the Sixth Amendment is not limited to counsel's performance as a whole; specific errors and omissions may be the focus of a claim of ineffective assistance as well. United States v. Cronic, 466 U.S. 648, 104 S.Ct. 2039, 2048 (1984). Petitioner's need for pretrial investigation was essential for effective

17

assistance of counsel. Consequently, counsel's errors deprived petitioner of due process of law, the right to a fair trial and the right to present a defense.

B) Failure to Prepare and Present a Defense

The Sixth Amendment of the United States Constitution guarantees the right to present a defense. U.S. Const. Amend. 6; La. Const. Art. 1 § 16; Washington v. Texas, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967); State v. Van Winkle, 658 So.2d 198 (La. 1995); State v. Gremillion, 542 So.2d 1074 (La. 1989); State v. Vigee, 518 So.2d 501 (La. 1988). As a result of Defense Counsel's failure to act as Counsel demanded by the Sixth Amendment to the United States Constitution, Petitioner was denied the Constitutional right to present a defense.

Petitioner and Ms. Roshto both suffered from severe addictions. Dr. Sebatier illegally over prescribed large amounts of narcotics to petitioner which enabled his addiction. (Exhibit-L). Dr. Sebatier later was required to surrender his medical license. (Exhibit-E). Under Louisiana law, the burden was upon petitioner to prove his insanity. "If the circumstances indicate that because of a mental disease (severe addiction) or mental defect the offender was incapable of distinguishing between right and wrong with reference to the conduct in question, the offender shall be exempt from criminal responsibility." La. R.S. 14:14 (emphasis added).

As a result of his severe addiction and heavy intoxication at the time of the alleged offense, petitioner submits that he was "incapable of distinguishing between right and wrong with reference to the conduct in question." Defense Counsel chose to present the defense of intoxication. No matter which of the above defenses was chosen by trial counsel, it was pertinent to acquire expert(s) to assist in preparing and presenting the defense.

Defense Counsel made no attempt to present Dr. Sebatier and his illegal actions to support petitioner's defense; nor did counsel present an expert to testify to any or all of the above. The State indicated in its response that defense counsel argued

18

insanity/intoxication during the motion hearings. However, the jury never heard the arguments and were never allowed the opportunity to hear from Dr. Sebatier or another expert concerning petitioner's level of intoxication.

Petitioner submits that he did not commit second degree murder for he could not have had the specific intent to kill or commit great bodily harm. Rather, due to his severe addiction and heavy intoxication which was further enabled by Dr. Sebatier's illegal actions, petitioner's actions was involuntary and he did not know the difference between right and wrong at the time of the alleged offense. However, when trial counsel never allowed the jury to hear from Dr. Sebatier or another expert regarding petitioner's level of intoxication, "[c]ounsel failed in his duty to bring to bear such skill and knowledge to render the trial a reliable adversarial testing process." Strickland, 466 U.S. 668, 104 S.Ct. at 2065 (citing Powell v. Alabama, 287 U.S. 45, 68-69, 53 S.Ct. 55, 63-64, 77 L.Ed. 158 (1932). The plethora of errors described above clearly shows that trial counsel was ineffective.

C) Defense Counsel was ineffective for his failure to challenge and seek writs regarding the admission of Other Crimes Evidence

The United States Supreme Court has recognized that other crimes evidence, even when properly admitted, is likely to lead the jury to base its verdict on improper factors Old Chief v. United States, 519 U.S. 172, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997). Petitioner contends that as a result of other acts/wrongs submitted by the State in a manner contrary to law resulted in an erroneous and prejudicial finding of guilt by the jury. What happened here was the same harm which the Court warned against in Old Chief. Courts that follow the common-law tradition almost unanimously have come to disallow the prosecution resorting to any kind of evidence of a defendant's evil character to establish a probability of his guilt...The State may not show defendant's prior trouble with the law, specific criminal acts, or ill name among his neighbors, even though such facts might logically be persuasive that he is by propensity a probable perpetrator of the

crime. Id., at 181.

The "other acts/wrongs" unlawfully proffered in this case, heavily bolstered the State's case. Petitioner continues to maintain that this evidence, i.e., testimony by witnesses stating that he shot them up was improperly admitted. Moreover, Rena Boyen's testimony was a result of threat and coercion. The testimonies served only one purpose and that was the purpose that Old Chief considered improper to show that the petitioner was a bad person who should be convicted of this crime regardless of the actual evidence.

Petitioner submits that the evidence was not properly admitted under Louisiana law, and its admission violated due process. "[W]hen a state court admits evidence that is 'so unduly prejudicial that it renders the trial fundamentally unfair, the Due Process Clause of the Fourteenth Amendment provides a mechanism for relief'." Dawson v. Delaware, 503 U.S. 159, 179, 112 S.Ct. 1093, 117 L.Ed.2d 309 (1992)(quoting Tennessee v. Bane, 510 U.S. 808, 114 S.Ct. 52, 126 L.Ed.2d 23 (1993)). In order for other crimes evidence to be admitted, the State must provide notice within a reasonable time. La. Code Evid. art. 404 (B)(1). The evidence may be admissible after a hearing in order to show proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident. Id. However, to be admissible the probative value of the evidence must outweigh the prejudicial effect. La. Code Evid. art. 403. For evidence of other crimes to be admissible, the State must prove with clear and convincing evidence that the probative value of the evidence outweighs its prejudicial effect. State v. Howard, 859 So.2d 936 (La.App. 2 Cir. 10/31/03).

No hearing was ever conducted regarding the admissibility of the other crimes evidence concerning Shanti Brady (Exhibit-M) but only regarding the testimony of Rena Boyen. (Exhibit-N). The State ambused defense counsel but counsel failed to object and motion for a mistrial. When petitioner was questioned by the prosecutor, he was asked at least four improper questions, to wit: Did you shoot her up? The second question, Did you shoot him up? Another question, Are you sure you didn't shoot her up? And the

fourth question, Did you shoot anybody up? See La. C.Cr.P. art. 770(2).

D) Counsel Failed to Present a Defense of Negligent Homicide, and Request a Special Jury Instruction on Same

Petitioner submits that the facts and circumstances of this case suggest a defense of negligent homicide but defense counsel failed to request a special jury instruction for that charge. Counsel's failure in this regard was not a tactical decision, but prejudicial error. See State v. Sepulvado, 25 So.3d 899 (La.App. 2 Cir. 10/28/09) and State v. Chambers, 933 So.2d 200 (La. App. 3 Cir 5/24/06). In both cases, the defendants tendered pleas of guilty to a lesser charge.

In United States v. Cronic, 839 F.2d 1401, 1403 (10th Cir. 1988), the conviction was originally reversed by the Tenth Circuit at 675 F.2d 1126. The Supreme Court then reversed that decision, and the case was sent back down to the district court, which denied relief. When the case went back to the Tenth Circuit for the second time, the court found that trial counsel had completely failed to present the obvious defense of good faith, and also failed to request a jury instruction on good faith, the Court of Appeals saw substantial prejudice and reversed. Id.

In this case, defense counsel chose an intoxication defense even though other viable defenses were available. There was no strategic or tactical reason for counsel's failure to present a defense of negligent homicide and request a jury instruction on that charge. The jurisprudence does not require the reviewing court to "fabricate tactical decisions on behalf of counsel when it appears on the face of the record that counsel made no strategic decisions at all." Moore v. Johnson, 185 F.3d 244, 261 (5th Cir. 1999). Defense counsel's deficient performance in this respect fell below an objective standard of reasonableness and that a substantial or significant possibility existed that the verdict of the trier of fact would have been affected.

E) Defense Counsel was ineffective for his failure to acquire experts to assist in preparation and presentation of the defense when the motion filed for expert requesting funds was granted.

Defense Counsel failed to timely secure a lab, and an expert (toxicology, psycho-pharmacology, and/or addictionology) who could have testified pertinent to the reliability

of the test result, chain of custody, and degradation of the sample over the 39-month passage of time. (Exhibit-A). Defense Counsel was ineffective when he failed to obtain an independent expert in the fields of toxicology, psycho-pharmacology, and addictionology (substance abuse). Motion to Obtain Funds for Expert was filed by the defense and granted by the Court on March 13, 2006. However, defense counsel failed to acquire these experts when they were crucial to the defense. (Exhibit-F).

Petitioner was a drug addict with repeated commitments and a history of treatment for substance abuse. Expert assistance and testimony was crucial pertinent to the reliability of the test results of the blood evidence, chain of custody, and degradation of the sample over the 39 month passage of time. Defense Counsel's failure to acquire expert assistance when motion for same had been granted was grossly ineffective and substantially prejudiced the defense. Petitioner submits that without expert assistance and testimony, he was deprived of his defense.

The accused is entitled by statute to at least twelve witnesses at the expense of the parish. State v. Clark, 387 So.2d 1124, 1129 (La.1980)(could have summoned a doctor at parish expense). In addition, "... art 739 provides a method by which he may apply to the court for additional witnesses." Id. at 1129. See Ake v. Oklahoma, 470 U.S. 68, 71, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985); Cowley v. Stricklin, 929 F.2d 640 (11th Cir. 1991); Kordenbrock v. Scroggy, 919 F.2d 1091 (6th Cir.); cert. denied, 499 U.S. 970 (1991); Blake v. Kemp, 758 F.2d 523 (11th Cir.), cert. denied, 474 U.S. 998 (1985); Smith v. McCormick, 914 F.2d 1153 (9th Cir. 1990).

Jurors do listen to, are influenced by, and rely upon the testimony of such experts and a trial may be fundamentally unfair when a party is left without expert assistance. Ake v. Oklahoma, supra, 470 U.S. at 80. Calling experts in this case was pertinent because (1) the results from the toxicology reports were crucial to the defense in suppressing evidence, statements or confession, and (2) crucial in proving petitioner's innocence of the crime charged, and (3) countering the State's case. Had defense counsel

22

acquired the assistance of an expert in preparation and presenting the defense, as well as countering the reports and testimony of State experts, there is more than a reasonable probability that the outcome would have been different.

F) Cumulative effect of defense counsel's errors and conclusion

Petitioner respectfully submit that he is entitled to a reversal of his convictions based on the accumulation of errors committed during his trial. With respect to his ineffective-assistance-of-counsel claims, the Supreme Court has recognized that "the right to effective assistance of counsel ... may in a particular cased be violated by even an isolated error of counsel if that error is sufficiently egregious and prejudicial". Murray v. Carrier, 477 U.S. 478, 496, 106 S.Ct. 2639, 2649, 91 L.Ed.2d 397 (1986)(citing United States v. Cronic, 466 U.S. 648, 657 n. 20, 104 S.Ct. 2039, 2046 n. 20, 80 L.Ed.2d 657 (1984), and Strickland v. Washington, 466 U.S. at 693-696, 104 S.Ct. at 2067-2069.)

The United States Supreme Court has further held that the combined effect of multiple trial court errors violates due process where it renders the resulting criminal trial fundamentally unfair. Kyles v. Whitley, 514 U.S. 419, 115 S.Ct. 1555, 1577; United States v. Bagley, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985); Chambers v. Mississippi, 410 U.S. 284, 298, 302-03, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973)(combined effect of individual errors "denied [Chambers] a trial in accord with traditional and fundamental standards of due process" and "deprived Chambers of a fair trial"); see also Taylor v. Kentucky, 436 U.S. 478, 487 n. 15, 98 S.Ct. 1930, 56 L.Ed.2d 468 (1978) ("[T]he cumulative effect of the potentially damaging circumstances of this case violated the due process guarantee of fundamental fairness...."). A cumulative error claim allows for relief when, although no single error independently warrants reversal or rises to the level of constitutional violation, the effect of multiple errors caused the defendant to suffer undue prejudice. Chambers, 410 U.S. at 290 n. 3, 93 S.Ct. 1038. As such, the cumulative effect and prejudicial impact of all the errors committed in this case deprived petitioner of his due process right to a fair trial.

In this case, defense counsel's actions and/or inactions deprived petitioner of his right to due process of law, his right to a fair trial, his right to present a defense. Counsel's deficient representation rendered the trial fundamentally unfair and unreliable. "If counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment right that makes the adversary process itself presumptively unreliable." United States v. Cronic, 466 U.S. at 659, 104 S.Ct. 2039. The High Court has recognized -- as in the instant case -- that counsel's ineffectiveness may have been "so likely to prejudice the accused" that any ineffective assistance concerns should be evaluated under the Cronic standard. See Wright v. Van Patten, 552 U.S. 120, 128 S.Ct. 743, 746 n. 1, 169 L.Ed.2d 583 (2008)(per curiam) (recognizing that Cronic's presumption of prejudice applies "when 'there [is] a breakdown in the adversarial process,' such that 'counsel entirely fails to subject the prosecution's case to meaningful adversarial testing' " (quoting Cronic, 466 U.S. at 662, 659, 104 S.Ct. 2039)).

The record makes clear that "there was a breakdown in the adversarial process" in this case. The ineffectiveness of trial counsel, as well as the accumulation of errors committed during petitioner's trial, made "the adversary process itself presumptively unreliable." Cronic, 466 U.S. at 659, 104 S.Ct. 2039. In light of the cumulative effect and prejudicial impact of all the errors committed in this case, the Court should apply Cronic's "presumption of prejudice" and reverse petitioner's convictions.

<u>ARGUMENT ON ASSIGNMENT OF ERROR TWO</u>

Petitioner submits that Louisiana's Second Degree Murder, La. R.S. 14:30.1, which includes Sections (3) and (4) is unconstitutional as applied to him by imposing a mandatory life sentence for a crime which lacks any intent to kill or cause bodily harm, without first allowing the sentencing authority the ability to consider the characteristics of a petitioner and the details of his offense before sentencing him. The statute as applied violates his protected right against cruel and unusual punishment guaranteed by the Eighth Amendment to the United Constitution and Article 1, § 20 of the Louisiana Constitution.

The State highlighted that sentencing is not a ground for relief under La. C.Cr.P. art. 930.3. Challenging a statute's constitutionality is a ground for relief under La. C.Cr.P. art. 930.3(5) allows a conviction to be challenged when the statute creating the offense for which he is convicted and sentenced is unconstitutional. As a general matter, a statute is presumed to be constitutional, and the burden of showing otherwise falls to the challenger. <u>State v. Rochon</u>, 75 So.3d 876 (La. 2011); <u>State v. Muschkatt</u>, 706 So.2d 429 (La. 1998). Criminal statutes are given a genuine construction according to the fair import of their words, taken in their usual sense, in context, and with reference to the purpose for the provision. See <u>State v. Interiano</u>, 868 So.2d 9 (La. 2004).

Attacking the constitutionally of a statute must be specifically pleaded and the grounds for the claim particularized. The Louisiana Supreme Court has expressed the challenger's burden as a three step analysis. First, a party must raise the unconstitutionality in the trial court; second, the unconstitutionality of a statute must be specially pleaded; and third, the grounds outlining the basis of unconstitutionality must be particularized. The purpose of these procedural rules is to afford interested parties an opportunity to brief and argue the constitutional issues. Briefing and arguments provides the trial court with thoughtful and complete arguments relating to the issue of constitutionality and furnishes reviewing courts with an adequate record upon which to

consider the constitutionality of the statute. State v. Bertrand, 6 So.3d 738 (La. 2009).

However, petitioner was not afforded an opportunity to establish the factual and legal

basis of his claim by being denied an evidentiary hearing to establish a record.

Additionally, the Louisiana Constitution protects against excessive sentences and

permits a court to determine both whether the sentence of a particular offender is

excessive, but also whether the range of sentence authorized by the statute is excessive.

State v. Guajardo, 428 So.2d 468, 472 (La. 1983). "The deliberate inclusion by the

redactors of the Constitution of a prohibition against "excessive" as well as cruel and

unusual punishment broadened the duty of this court to review the sentencing aspects of

criminal statutes." State v. Goode, 380 So.2d 1361, 1363 (La. 1980).

A punishment is constitutionally excessive if it makes no measurable contribution

to acceptable goals of punishment and is nothing more than a purposeless imposition of

pain and suffering and is grossly out of proportion of the severity of the crime. State v.

Dorthey, 623 So.2d 1276, 1280 (La. 1993). A sentence is grossly disproportionate when

the crime and punishment are considered, in light of harm done to society, it shocks the

sense of justice. State v. Lobato, 603 So.2d 739, 751 (La. 1992). It is well settled that

legislature has the unique responsibility to define criminal conduct and to provide for the

penalties to be imposed against persons engaged in such conduct. Dorthey, 623 So.2d at

1278. The penalties provided by the legislature reflect the degree to which criminal

conduct affronts society. State v. Davis, 666 So.2d 400, 407 (La.App. 1 Cir. 1995).

Courts must apply the penalties unless they are found to be unconstitutional. Dorthey,

623 So.2d at 1278.

Petitioner met all requirements of challenging the constitutionality of a statute by

raising it in the trial court, pleading with specificity, and outlined the basis for the

unconstitutionality. He specifically plead in his original application that Louisiana's

Second Degree Murder Statute, La. R.S. 14:30.1(3) as applied to him, is unconstitutional

in that both the United States and Louisiana Constitution's prohibition of cruel and

unusual punishment which "guarantees individuals the right not to be subjected to excessive sanctions". U.S. Const.Amend. 8; La. Const. Art. 1, § 20.

In 1987, the Louisiana Legislature added section (3) and (4) of La. R.S. 14:30.1 which further defined the crime of second degree murder. It now includes when the offender unlawfully directly or indirectly distributes or dispenses a controlled dangerous substance listed in Schedules I or II which is the direct cause of the death of the recipient who ingested or consumed the controlled dangerous substance. In 2010, the burden was lessened and even greater than that of 2004, totally eliminating the specific intent to kill or inflict great bodily harm, or in the perpetration or attempted perpetration of a violent crime that has historically been necessary to convict on second degree murder prior to 1987. It is pertinent to note that distribution of Schedule II is not a violent crime enumerated in R.S. 14:2(B). Petitioner submits that distribution or dispensing being inclusive in R.S. 14:30.1, second degree murder, is unconstitutional on its face where there is no specific intent to kill or commit great bodily harm, nor in the perpetration or attempted perpetration of a violent crime. The offense committed here is no more than a negligent homicide; not second degree murder. Considering the circumstances of petitioner's involuntary intoxication by being illegally overly prescribed scheduled medication, and his level of intoxication at the time of the alleged offense. It should be emphasized that Dr. Sabatier surrendered his permit to prescribe controlled dangerous substances and medical license.

Since that amendment, the United States Supreme Court ruled in Miller v. Alabama, 132 S.Ct. 2455 (2012); that the Eighth Amendment's prohibition of cruel and unusual punishment "guarantees individuals the right not to be subjected to excessive sanctions." Roper v. Simmons, 543 U.S. 551, 560, 125 S.Ct. 1183 (2005). That right "flows from the basic precept of justice that punishment for crime should be graduated and proportioned" to both the offender and the offense. Two strands of precedent reflecting the concern with proportionate punishment come together here. The first has

27

adopted categorical bans on sentencing practices based on mismatches between the culpability of a class of offenders and the severity of a penalty. See, e.g., Kennedy v. Louisiana, 554 U.S. 407, 128 S.Ct. 2641 (2008). Thus, Roper v. Simmons held that the Eighth Amendment bars capital punishment for children, and Graham v. Florida concluded that the Amendment prohibits a sentence of life without the possibility of parole for a juvenile convicted of a non-homicide offense. 560 U.S. 448, 130 S.Ct. 2011 (2009).

The basis of these decisions focuses on the culpability of the petitioner. Roper and Graham establish that children are constitutionally different than adults for purposes of sentencing. Because juveniles have diminished culpability and greater prospects for reform, ... "they are less deserving of the most severe punishments." Those cases relied on three significant gaps between juveniles and adults. First, children have a "lack of maturity and an underdeveloped sense of responsibility, leading to recklessness, impulsivity, and needless risk-taking." Roper at 569. Second, children "are more vulnerable . . . to negative influences and outside pressures," including from their family and peers; they have limited "control over their own environment" and lack the ability to extricate themselves from horrific, crime-producing settings. Id. And third, a child's character is not as "well formed" as an adult's; his traits are "less fixed" and his actions less likely to be "evidence of irretrievable depravity Id. at 570.

Roper and Graham emphasized that the distinctive attributes of youth diminish the penological justifications of imposing the harshest sentences on juvenile offenders, even when they commit terrible crimes. In this case we are faced with a different, but very real and seriously diminished culpability. At the time of his conviction petitioner was a 48 year old man with a long history of severe drug addiction. Blacks Law Dictionary Abridged 6th Ed. defines Addict: "Any individual who ...is or has been so far addicted that the use of such narcotic drugs as to have lost the power of self-control with reference to his addiction."

28

It is common knowledge that drug addiction dominates its victims, not only mentally but physically as well. Petitioner claims that because of his long history of addiction (See original post-conviction relief application and exhibits for full history), and his heavy use of prescription drugs at the time of the alleged crime, his culpability was reduced to less than that of a juvenile, which merits the same protection from a mandatory sentence of life without parole, without allowing the sentencing judge the necessary discretion to consider petitioner's severe drug addiction and attended characteristics, and from assessing whether the law's harshest term of imprisonment proportionately punishes him before sentencing.

Moreover, petitioner was using drugs illegally prescribed to him by Dr. Sabatier who prescribe 120 Delaudid and would prescribe another 120 the next day. Petitioner's addiction was furthered by receiving prescriptions of the same medications from other doctors to even increase the dosages of 2 to 4 at a time, every 45 minutes to an hour and a half. (Exhibit L and E). The vast amount of prescribed drugs being taken completely incapacitated him and reduced his culpability to a degree lesser than that of a juvenile.

The autopsy report states Poli-Substance Drug Toxicity of Dilauded, Soma and Xanax was the cause of Ms. Roshto's death. (Exhibit-K). Petitioner is only accused of providing the Schedule II Dilauded. It would be impossible to detect what sequence the 3 drugs were consumed, thus not proving which was the direct cause of her death. As a result of how the statute is worded, the judge had no discretion to consider those factors. Persuasively, in the case sub judice, the application of the statute leads to absurd results because petitioner had no intent to kill or commit great bodily harm. Petitioner submits that La. R.S. 14:30.1, which includes Sections (3) and (4) is unconstitutional as applied.

The legislature realized that by listing I through V Scheduled drugs in the amended statute of 2010, to include "or any combination thereof", makes it lesser to convict than in 2004 when which sequence the drugs were consumed, made it more difficult to convict. In this unusual incident, petitioner was a drug addict using prescribed

29

medications. His only crime was the abuse of his own prescribed medication. Petitioner was intoxicated almost to the point of being unconscious when the alleged victim arrived. Upon his daughter's later arrival and discovery that her friend was unresponsive when trying to awake her, she alerted petitioner and he called 911 emergency for help. This incident indicates negligence and/or an accident rather than second degree murder. The alleged victim was a major contributor to her own death. Petitioner was unaware of what had happened until notified by his daughter that the alleged victim was unresponsive.

Petitioner submits that Miller, supra, allows the trial judge or jury to fix punishment with the discretion to consider a juvenile's youth and immaturity, including such mitigating factors as a dysfunctional upbringing, abuse of alcohol and/or drugs as a juvenile, and whether or not he could be rehabilitated before deciding to impose a different punishment. "Moreover, defendants who do not kill, intend to kill, or foresee that life will be taken are categorically less deserving of such punishments than are murders." Graham v. Florida, 560 U.S. 48, 130 S.Ct. 2011 (2009). Having a mandatory life sentence for an offense with the circumstances and characteristics of this particular individual should be unconstitutional as well. Even though petitioner is an adult that suffered from addiction which is a disease and is treatable. Courts and legislatures today recognize that the "war on drugs" has been a failure. Today, these courts and legislatures recognize that as addiction is a disease and the person addicted can be rehabilitated that treatment in lieu of incarceration is preferred.

Petitioner submits that the circumstances presented support his claim that the statute is unconstitutional as applied. Since there was no evidence that petitioner had the specific intent to kill or commit great bodily harm there was no crime of second degree murder committed in this case. Thus, petitioner's conviction under Sections (3) and (4) of the second-degree murder statute, La. R.S. 14:30.1, is unconstitutional.

## ARGUMENT ON ASSIGNMENT OF ERROR THREE

### A) The State Withheld Exculpatory Blood Evidence

The suppression of evidence favorable to an accused by the prosecution when requested, violates Due Process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution. Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196-97, 10 L.Ed.2d 215 (1963). As the Supreme Court later clarified, there are three components of a true Brady violation: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) that evidence must have been suppressed by the State either willfully or inadvertently; and (3) prejudice must have ensued. Strickler v. Greene, 527 U.S. 263, 281-82, 119 S.Ct. 1936, 1948, 144 L.Ed.2d 286 (1999). Evidence is material so as to establish prejudice only "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." United States v. Bagley, 473 U.S. 667, 662, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985). Brady and its progeny apply only to evidence possessed by the prosecution team, which includes both investigative and prosecutorial personnel. United States v. Meros, 866 F.2d 1304, 1309 (11th Cir. 1989).

In the case sub judice, the prosecution was in possession of the blood evidence, which contained the drug toxins which would have negated the intent element of the crime charged and the unconstitutionally obtained statements. By withholding this blood evidence deliberately and in a covert manner the toxins were allowed to diminish to the point that petitioner's entire defense was ruined.

The blood evidence was drawn from the petitioner on January 29, 2004, the day of the incident, and was in the State's possession. The State has a constitution duty to preserve the blood evidence and maintain its chain of custody. Evidence of such an exculpatory nature should have been tested in a timely manner and provided to the

31

defense before its contents are lost, diminish, and cannot be replaced. See Arizona v. Youngblood, 109 S.Ct. 333, 448 U.S. 51, 102 L.Ed.2d 281 (1988). The defense notified the State of its intent to present an intoxication defense.[7] Defense Counsel informed the Court that the blood issue becomes a "very critical matter" and that the blood was requested at numerous status conferences. Defense counsel stated clearly, "I'm stuck here and under Kyles v. Whitley we are entitled to it". The Court made clear to the prosecutor that the defense has a right to this evidence under Migliore v. U.S., 409 F.2d 786 (5th Cir. 1969).[8]

Petitioner submits that the State intentionally withheld the evidence for a period of 39 months. Petitioner avers that the State violated standard procedure pertinent to handling this evidence. The State failed to even maintain and/or present a proper chain of custody when the toxins within the blood evidence were allowed to diminish. The State suppressed evidence which played a major role in establishing a complete defense to the charge of second degree murder. Moreover, had this evidence not been withheld and tested in a timely manner, the toxins within the blood evidence would have proven petitioner's mental incapacity when questioned by the police.

At the time petitioner was taken into custody, he was highly intoxicated and experienced major withdrawals during questioning. The police officers not only ignored petitioner's withdrawals symptoms, but they coerced two involuntary statements by promising him his medication. Prosecutors are responsible for "any favorable evidence known to the others acting on the government's behalf in the case, including the police." When police or prosecutors conceal significant exculpatory or impeaching material in the State's possession, it is ordinarily incumbent on the State to set the record straight. Kyles v. Whitley, 514 U.S. 419, 115 S.Ct. 1555 (1995).

The conduct of these officers was supported by testimony from the alleged victim's mother. (Exhibit-H). Coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause

7   Page 325 of trial transcripts.
8.  Pages 328-330 trial transcripts.

of the Fourteenth Amendment." Connelly v. Colorado, 479 U.S. 157, 167, 107 S.Ct. 515, 522, 93 L.Ed.2d 473 (1986). Connelly has modified Louisiana's jurisprudential rule that intoxication may negate the voluntariness of a statement if it is of such a degree that it renders the defendant "unconscious of the consequences of what he is saying." State v. Simmons, 443 So.2d 512, 516 (La. 1983). Diminished mental capacity, which may result from intoxication, remains relevant to the voluntariness of a statement only to the extent that it "made mental or physical coercion by the police more effective." United States v. Gaddy, 532 F.3d 783, 788 (8th Cir. 2008).

Petitioner avers that he was intoxicated to the degree that he was "unconscious of the consequences of what he is saying." His statements were the product of a will overborne by police coercion. It is pertinent to remember in Corporal Kahrs' case narrative where he states that petitioner could not give consistent and coherent details when he arrived at the scene. (Exhibit-I). Petitioner was transported to the Slidell Police Department within 15 minutes of the 911 call being made. It is untenable to argue that petitioner had the requisite mental capacity to give a voluntary statement.

It is well settled that the failure of police or prosecutor to preserve evidence may, in some circumstances, constitute grounds for reversal of conviction. It was the State's duty to preserve this evidence. See United States v. Bryant, 439 F.2d 642, 651 (1971) (Wright, J)(Government must make 'earnest efforts' to preserve crucial materials and to find them once a discovery request is made). The Supreme Court in Brady v. Maryland and Giglio v. United States, 405 U.S. 150, 153-54, 92 S.Ct. 763, 765-66, 31 L.Ed.2d 104 (1972), held that the Due Process Clause is implicated when a State intentionally or inadvertently destroys evidence that might have proved favorable to a criminal defendant.

Had the blood evidence not been withheld and tested in a timely manner, there is more than a reasonable probability that the outcome of the proceedings would have been different. The blood evidence would have established petitioner's mental incapacity during questioning by the police, and would have greatly affected the credibility of State

witnesses. The State repeatedly concealed the location of the blood evidence, the chain of custody regarding the blood evidence, and failed to test the blood evidence in a timely manner. (Exhibit-C).

B) The State Coerced Witness Testimony

The next issue concerns the testimony of Catherine (Rena) Boyen which was obtained by threats and coercion. The prosecutor, Nick Noriea, threatened Ms. Boyen with being charged and convicted as a habitual offender if she did not testify against petitioner. Mr. Noriea even lied to defense counsel and the trial judge about the fact that Ms. Boyen's testimony was obtained in an unconstitutional manner. Mr. Noriea had a duty to inform the defense that Ms. Boyen's testimony was preconditioned on the fact that she would avoid prosecution as a habitual offender. In any event, Ms. Boyen made clear that she was not going to testify against petitioner.

In addition to the above, the prosecutor gave the trial judge the false impression that Ms. Boyen was brought from jail on another matter. (Exhibit-S). However, Ms. Boyen had no other scheduled court appearances that day. (Exhibit-T). Moreover, Ms. Boyen was not allowed to speak with her counsel prior to testifying. The prosecutor also misrepresented to Ms. Boyen that he had spoken to her attorney, Frank DeSalvo, who advised her to testify.

The United States Supreme Court has warned long ago that prosecutors must "refrain from improper methods calculated to produce a wrongful conviction." Berger v. United States, 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed.2d 1314 (1935). The Louisiana Supreme Court "has repeatedly stated [that] prosecutorial misconduct that affects verdicts will not be tolerated and will result in reversals of convictions." State v. Green, 416 So.2d 539, 541-42 (La. 1982)(footnote omitted)(emphasis added). "As long ago as Mooney v. Holohan, 294 U.S. 103, 112, 55 S.Ct. 340, 342, 79 L.Ed.2d 791 (1935), [the Supreme Court] made clear that deliberate deception of a court and jurors by the presentation of known false evidence is incompatible with 'rudimentary demands of justice.' " Giglio v.

34

United States, 405 U.S. 150, 153, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972).

Petitioner insist that Ms. Boyen was forced to testify against him to avoid prosecution and conviction as a habitual offender. In any event, the prosecution had a duty to disclose any agreement with Ms. Boyen for her testimony whether she testified truthfully or falsely. See Napue v. Illinois, 360 U.S. 264, 360 (1959); State v. Marshall, 660 So.2d 819 (La. 1995). Thus, the misrepresentations made by the prosecutor in this mandates reversal petitioner's conviction.

## ARGUMENT ON ASSIGNMENT OF ERROR FOUR

Petitioner submits that he is entitled to a reversal of his conviction based on the accumulation of errors committed in this case. First, petitioner complains that he was erroneously charged and convicted under the second-degree murder statute which, as applied to him, is unconstitutional. He further assert that his defense counsel was grossly ineffective for failing to perform pre-trial discovery, investigation, failing to interview and call witnesses, failed to seek writs on issues crucial to the defense, and failed to put the State's case to meaningful adversarial testing[9]. Combined with the prosecutor's misconduct[10], petitioner was deprived of his constitutional rights to due process of law, to a fair and impartial trial, to present a defense[11], and to effective assistance of counsel.

With respect to the errors committed by defense counsel, the Supreme Court has recognized that "the right to effective assistance of counsel ... may in a particular case be violated by even an isolated error of counsel if that error is sufficiently egregious and prejudicial: Murray v. Carrier, 477 U.S. 478, 496, 106 S.Ct. 2639, 2649, 91 L.Ed.2d 397 (1986)(citing United States v. Cronic, 466 U.S. 648, 657 n. 20, 104 S.Ct. 2039, 2046 n. 20, 80 L.Ed.2d 657 (1984), and Strickland v. Washington, 466 U.S. at 693-696, 104 S.Ct. at 2067-2069.). On the same token, the combined effect of multiple trial court errors

---

9 United States v. Cronic, a defendant is entitled to a presumption of prejudice if defense counsel failed "to subject the prosecution's case to meaningful adversarial testing." 466 U.S. at 668-89; 104 S.Ct. 2039.
10 See, e.g., Darden v. Wainwright, 477 U.S. 168, 182, 106 S.Ct. 2464, 2472, 91 L.Ed.2d 144 (1986) (prosecutor's allegedly erroneous statements assessed in terms of "their effect on the trial as a whole")
11 Washington v. Texas, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967); Crane v. Kentucky, 476 U.S. 683, 690, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986)(The Constitution guarantees criminal defendants a "meaningful opportunity to present a complete defense")(quoting California v. Trombetta, 467 U.S. 479, 485, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984).

33

renders the resulting criminal trial fundamentally unfair. Chambers v. Mississippi, 410 U.S. 284, 298, 302-03, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973)(combined effect of individual errors "denied [Chambers] a trial in accord with traditional and fundamental standards of due process" and "deprived Chambers of a fair trial"); see also Taylor v. Kentucky, 436 U.S. 478, 487 n. 15, 98 S.Ct. 1930, 56 L.Ed.2d 468 (1978)("[T]he cumulative effect of the potentially damaging circumstances of this case violated the due process guarantee of fundamental fairness....");

Cumulative error claims allows for relief when, although no single error independently warrants reversal or rises to the level of constitutional violation, the effect of multiple errors caused the defendant to suffer undue prejudice. Chambers, 410 U.S. at 290 n. 3, 93 S.Ct. 1038. As such, the cumulative effect and prejudicial impact of all the errors committed in this case deprived petitioner of his due process right to a fair trial. Strickland v. Washington, 466 U.S. 668, 690, 104 S.Ct. 2052, 2066, 80 L.Ed.2d 674 (1984) (when reviewing counsel's effectiveness, courts must look to all the circumstances of the trial); Kyles v. Whitley, 514 U.S. 419, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995) (reviewing courts must be educated by the language throughout Kyles to look at the case as a whole).

Hence, the cumulative effect of all the errors together with counsel's unprofessional care and the prosecutor's prejudicial misconduct, demonstrate that petitioner was denied a fundamentally fair trial and effective assistance of counsel as guaranteed him by the fifth, sixth and fourteenth amendments to the United States Constitution.

## CONCLUSION

Petitioner urge this court to consider the merits of his claims, reverse his conviction, or remand this matter to the district court for an evidentiary hearing.

Respectfully submitted,

Walter A. Kott, Jr. #347318
Louisiana State Penitentiary
Angola, LA 70712

## AFFIDAVIT AND CERTIFICATE OF SERVICE

I, Walter A. Kott, Jr., hereby declare or affirm under penalty of perjury that all of the facts, information, and documents contained in the foregoing pleading is true and correct.

I further certify that on April _____, 2014, a copy of the foregoing writ application has been mailed via United States Postal Service, or delivered to a prison official for mailing pursuant to the "Mailbox Rule" to following:

Office of the Clerk                 District Attorney
Court of Appeal, First Circuit      22nd Judicial District
P.O. Box 4408                       Parish of St. Tammany
Baton Rouge, LA 70616               701 North Columbia St.
                                    Covington, LA 70433

*Walter C. Kott*
Walter A. Kott, Jr. #347318

37

STATE OF LOUISIANA

V.

WALTER A. KOTT, JR.

DOCKET NO. 378041    DIV: "C"

22ND JUDICIAL DISTRICT COURT

PARISH OF ST. TAMMANY

STATE OF LOUISIANA

FILED: June 20, 2013

DEPUTY CLERK

## ORDER

This Court has considered defendant, Walter A. Kott, Jr.'s, Application for Post-Conviction Relief filed May 24, 2013. The Court ordered the St. Tammany Parish District Attorney to file any procedural objections he may have or an answer in this matter on May 31, 2013. The District Attorney filed an answer on June 18, 2013. Defendant asserts claims of ineffective assistance of counsel, the unconstitutionality of La. R.S. 14:30.1, prosecutorial misconduct, and cumulative errors resulting in violations of his 5th and 14th Amendment rights under the U.S. Constitution, as the basis for his Application.

The Court has reviewed the entire record and finds that the issues raised in the Application for Post Conviction Relief may be decided on the record and no evidentiary hearing is necessary. The Court finds that petitioner has failed to prove grounds upon which relief shall be granted.

Accordingly, for the foregoing reasons:

IT IS ORDERED that the Application for Post Conviction Relief filed by defendant, Walter A. Kott, Jr., is denied.

IT IS FURTHER ORDERED that the Clerk of Court of the Parish of St. Tammany give notice of the denial of the Application for Post Conviction Relief to petitioner, the District Attorney for the Parish of St. Tammany and the petitioner's custodian.

SIGNED AT COVINGTON, LOUISIANA, this 20th day of June, 2013.

RICHARD A. SWARTZ
Judge, Division "C"

A TRUE COPY

By Clerk, 22nd Jud. Dist. Court
ST. TAMMANY PARISH, LA.

# STATE OF LOUISIANA
# COURT OF APPEAL, FIRST CIRCUIT

STATE OF LOUISIANA

VERSUS

WALTER A. KOTT, JR.

No. 2013 KW 1257

OCT 28 2013

---

In Re:   Walter A. Kott, Jr., applying for supervisory writs, 22nd Judicial District Court, Parish of St. Tammany, No. 378041.

---

BEFORE:   PARRO, GUIDRY AND DRAKE, JJ.

WRIT DENIED.

EXP
JMG
RLD

COURT OF APPEAL, FIRST CIRCUIT

DEPUTY CLERK OF COURT
FOR THE COURT

IN THE

## SUPREME COURT OF LOUISIANA

NO.

## STATE EX REL. WALTER A. KOTT, JR.

### VERSUS

### STATE OF LOUISIANA

## INDEX OF APPENDIX

Application for Supervisory Writs, with:

Exhibit-A:   Exhibits filed with original Post-Conviction but also referenced throughout

Exhibit-B:   Original Post Conviction Relief filed on May 24, 2013

Exhibit-C:   State's Answer to Application for Post Conviction Relief

Exhibit-D:   Judge's Order of Denial filed on June 20, 2013

Exhibit-E:   Notice of Intent to Seek Writs filed on July 9, 2013

Exhibit-F:   Order granting writ and return date filed on July 10, 2013

COURT OF APPEAL

FIRST CIRCUIT

STATE OF LOUISIANA

NO. _____

STATE OF LOUISIANA

**VERSUS**

WALTER A. KOTT, JR.

---

SUPERVISORY WRIT APPLICATION FROM THE 22ND JUDICIAL
DISTRICT COURT FOR THE PARISH OF ST. TAMMANY, CRIMINAL
DOCKET NO. 379354, DIVISION "C"
THE HONORABLE RICHARD SWARTZ, DISTRICT JUDGE

---

APPLICATION FOR SUPERVISORY WRITS
AND BRIEF ON BEHALF OF WALTER A. KOTT, JR.
DEFENDANT/APPLICANT

Respectfully submitted:

LAW OFFICE OF RACHEL YAZBECK

_____
RACHEL YAZBECK (31371)
818 HOWARD AVE., STE. 305
NEW ORLEANS, LA. 70113
(504) 586-8008
(504) 586-8003
*Attorney for Walter A. Kott, Jr.*

1

## INDEX

ACTION OF THE TRIAL COURT ........................................................................ 9

ARGUMENT .................................................................................................... 11

CERTIFICATE OF SERVICE ............................................................................. 38

GROUNDS FOR SUPERVISORY JURISDICTION ............................................... 7

ISSUES AND QUESTIONS OF LAW PRESENTED ............................................. 10

STATEMENT OF THE CASE ............................................................................. 8

VERIFICATION ............................................................................................... 36

2

## APPENDIX

**EXHIBIT A:**   Exhibits filed with original Post-Conviction but also referenced throughout

**EXHIBIT B:**   Original Post Conviction Relief filed on May 24, 2013

**EXHIBIT C:**   State's Answer to Application for Post Conviction Relief

**EXHIBIT D:**   Judge's Order of Denial filed on June 20, 2013

**EXHIBIT E:**   Notice of Intent to Seek Writs filed on July 9, 2013

**EXHIBIT F:**   Order granting writ and return date filed on July 10, 2013

## TABLE OF AUTHORITIES

**Cases**

*Ake v. Oklahoma*, 470 U.S. 68, 71, 105 S.Ct. 1087 (1985) ........................................... 21

*Arizona v. Youngblood*, 109 S.Ct. 333, 448 U.S. 51 (1988) ........................................ 29

*Arizona v. Youngblood*, 109 S.Ct. 333, 448 U.S. 51, 102 L.Ed.2d 281, 57 USLW
4013 (U.S. Ariz. 1988) ............................................................................. 14

*Berger v. United States*, 295 U.S. 78, 88 (1935) ...................................................... 33

*Blake v. Kemp*, 758 F.2d 523 (11th Cir. Ga. 1985), cert. denied, 474 U.S. 998
(1985) ................................................................................................... 21

*Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194 (1963) ........................................ 28

*California v. Trombetta*, 467 U.S. 479, 488 (1984) .................................................. 13

*Cowley v. Stricklin*, 929 F.2d 640 (11th Cir. Ala. 1991) .......................................... 21

*Darden v. Wainwright*, 477 U.S. 168, 182, 106 S.Ct. 2464, 2472 (1986) ................ 35

*Dawson v. Delaware*, 503 U.S. 159, 179 (1992) ...................................................... 19

*Derden v. McNeel*, 938 F.2d 605, 610 (5th Cir. 1991) ............................................. 35

*Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763 (1972) ...................................... 33

*Graham v. Florida*, 560 U.S. 48; 130 S. Ct. 2011 (2009) ......................................... 25

*Kennedy v. Louisiana*, 554 U.S. 407, 128 S.Ct. 2641 (2008) ................................... 25

*Kordenbrock v. Scroggy*, 919 F.2d 1091 (6th Cir. Ky. 1990); cert. denied, 499 U.S.
970 (1991) .............................................................................................. 21

*Kyles v. Whitley*, 514 U.S. 419, 115 S. Ct. 1555, 1577 (1995) ................................. 22

*McMann v. Richardson*, 397 U.S. 759, 771, 90 S.Ct. 1441, 1449 (1970) .............. 11

*Migliore v. U.S.*, 409 F.2d 786 (5th Cir. Fla. 1969) ........................................... 14, 29

*Miller v. Alabama*, 132 S. Ct. 2455; 183 L. Ed. 2d 407 (2012) ............................... 25

*Moore v. Johnson*, 185 F.3d 244, 261 (5th Cir. 1999) ............................................ 20

*Nealy v. Cabana*, 764 F.2d 1173, 1177 (5th Cir. 1985) ......................................... 11

*Old Chief v. United States*, 519 U.S. 172, 117 S. Ct. 644 (1997)........................... 17

*Powell v. Alabama*, 287 U.S. 45, 68-69, 53 S.Ct. 55, 63-64 (1932)....................... 17

*Roper v. Simmons*, 543 U.S. 551, 560; 125 S.Ct. 1183 (2005)............................. 25

*Sanders v. Rotelle*, 21 F.3d 1446, 1456 (9ᵗʰ Cir. 1994) ...................................... 12

*Smith v. McCormick*, 914 F.2d 1153 (9th Cir. Mont. 1990)................................. 21

*State v. Bertrand*, 6 So.3d 738 (La. 2009) .......................................................... 24

*State v. Clark*, 387 So.2d 1124, 1129 (La. 1980)............................................... 21

*State v. Forei*, 447 So.2d 1265 (La. App. 1 Cir. 1984)....................................... 12

*State v. Gremillion*, 542 So.2d 1074 (La. 1989) ................................................. 16

*State v. Howard*, 859 So.2d 936 (La. App. 2 Cir. 10/31/03) .............................. 18

*State v. Interiano*, 868 So. 2d 9 (La. 2004)....................................................... 23

*State v. Muschkatt*, 706 So.2d 429 (La. 1998)................................................... 23

*State v. Rochon*, 75 So.3d 876 (La. 2011)......................................................... 23

*State v. Sepulvado*, 25 So.3d 899 (La. App. 2 Cir. 10/28/09).............................. 19

*State v. Van Winkle*, 658 So.2d 198 (La. 1995)................................................. 16

*State v. Vigee*, 518 So.2d 501 (La. 1988).......................................................... 16

*State v. Williams*, 575 So.2d 452 (La.App. 4 Cir. 1991) ..................................... 34

*State v.Marshall*, 660 So.2d 819 (La. 1995) ..................................................... 33

*Strickland v. Washington*, 466 U.S. 668; 104 S. Ct. 2052 (1984) ........................ 11

*Strickler v. Greene*, 527 U.S. 263, 281-82, 119 S.Ct. 1936 (1999)....................... 28

*Tennessee v. Bane*, 510 U.S. 808 (1993) ........................................................... 19

*United States v. Bagley*, 473 U.S. 667, 105 S.Ct. 3375 (1985) ............................ 22

*United States v. Bagley*, 473 U.S. 667, 662, 105 S.Ct. 3375 (1985) ..................... 29

*United States v. Bryant*, 439 F.2d 642; 142 U.S. App. D.C. 132 (1971)............... 31

*United States v. Cronic, Id.* 466 U.S. 648; 104 S. Ct. 2039 at 2048 (1984)........... 16

*United States v. Gaddy*, 532 F.3d 783, 788 (8th Cir. Iowa 2008) ........................ 31

*United States v. Meros*, 866 F.2d 1304, 1309 (11th Cir. Fla. 1989)..........................29

*Washington v. Texas*, 388 U.S. 14, 87 S.Ct.1920, 18 L.Ed.2d 1019 (1967)..........16

## GROUNDS FOR SUPERVISORY JURISDICTION

Jurisdiction vests in this Honorable Court under and by virtue of the provisions of Article V, Section 10, of the Louisiana Constitution of 1974, as amended, granting the Courts of Appeal control of and general supervisory jurisdiction over cases arising within their circuits.

## STATEMENT OF THE CASE

On November 29, 2004, Mr. Kott was charged by indictment in the Twenty Second Judicial District Court (Docket No. 378-041) in the Parish of St. Tammany of Second Degree Murder under the Louisiana Revised Statute Article 14:30.1. After a long bout with attempts to obtain evidence through discovery, the trial commenced on November 29, 2010. Judgment was rendered by a twelve person jury against Mr. Kott on December 3, 2010, finding him guilty of second degree murder. Mr. Kott was sentenced to the mandatory life sentence at hard labor without benefit of parole, probation, or suspension of sentence.

On November 9, 2011, Mr. Kott appealed to the First Circuit Court of Appeal claiming three assignments of error: (1) The ruling that the consent to search was voluntarily given by the defendant was an erroneous interpretation or application of the constitution or laws of the United States and the State of Louisiana; (2) The Trial Court's decision conflicts with decisions of the Louisiana and United States Supreme Courts; and (3) The Trial Court's admission of prior bad acts during the State's rebuttal was an erroneous interpretation or application of the constitution or laws of the United States and the State of Louisiana. The Trial Court's decision conflicts with decisions of both the Louisiana and United States Supreme Courts. Petitioner's conviction and sentence were affirmed on February 10, 2011 (Docket No. 2011-KA-0997).

On February 24, 2012, application for rehearing was filed. A Limited Re-Hearing was granted and ruled upon on May 4, 2012. On June 1, 2012, a Writ of Certiorari was filed to the Louisiana Supreme Court. The Louisiana Supreme Court denied relief on November 21, 2012. (Docket No. 2012-K-1221; Panel of JTK, BJJ, JPV, JLW, GGG, MRC).

8

## ACTION OF THE TRIAL COURT

Mr. Kott filed an Application for Post-Conviction Relief on May 24, 2013. On June 18, 2013 the State submitted their answer to the trial court. However, on June 20, 2013, the Trial Court denied Mr. Kotts's application for Post-Conviction Relief stating that the issues raised could be decided on the record without a hearing. Mr. Kott subsequently filed his Notice of Intent to Seek Supervisory Writs on July 9, 2013 which was granted on July 10, 2013.

## ISSUES AND QUESTIONS OF LAW PRESENTED

**Issue No.1:**   DID DEFENSE COUNSEL RENDER INEFFECTIVE ASSISTANCE PRIOR TO AND DURING TRIAL?

**Issue No.2:**   IS La. C.Cr.P. Art. 14:30.1 IS UNCONSTITUTIONAL AS APPLIED?

**Issue No.3:**   DID PROSECUTORIAL MISCONDUCT OCCUR WHEN THE DISTRICT ATTORNEY WITHHELD BLOOD EVIDENCE AND WHEN HE OBTAINED TESTIMONY BY THREATENING A WITNESS?

**Issue No. 4:**   DID THE CUMULATIVE ERRORS INVOLVED IN THIS CASE DEMONSTRATE AN UNCONSTITUTIONAL CONVICTION AND TRIAL IN VIOLATION OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION?

## ASSIGNMENTS OF ERROR

**Assignment of Error No. 1:** THE TRIAL COURT ERRED IN FINDING THAT

TRIAL COUNSEL WAS CONSTITUTIONALLY EFFECTIVE PRIOR AND

DURING TRIAL.

**Assignment of Error No. 2:** THE TRIAL COURT ERRED IN FINDING La.

C.Cr.P. Art. 14:30.1 CONSTITUTIONAL.

**Assignment of Error No.3:** THE TRIAL COURT ERRED IN FINDING THAT

PROSECUTORIAL MISCONDUCT DID NOT OCCUR.

**Assignment of Error No.4:** THE TRIAL COURT ERRED IN NOT FINDING

THE CUMULATIVE ERRORS INVOLVED IN THIS CASE DEMONSTRATE

AN UNCONSTITUTIONAL CONVICTION AND TRIAL IN VIOLATION OF

THE FIFTH AND FOURTEENTH AMENDMENTS TO THE U.S.

CONSTITUTION.

## ARGUMENT

**Assignment of Error No. 1:** THE TRIAL COURT ERRED IN FINDING THAT TRIAL COUNSEL WAS CONSTITUTIONALLY EFFECTIVE PRIOR AND DURING TRIAL.

A defendant has a constitutional right to effective assistance of counsel which is guaranteed by the Sixth Amendment of the United States Constitution and Article 1, Section 13 of the Louisiana Constitution of 1974. The standard of review for evaluating such constitutional claims was established in *Strickland v. Washington*, 466 U.S. 668; 104 S. Ct. 2052 (1984).

To prevail on an ineffective assistance of counsel claim according to the *Strickland* standard, a petitioner must demonstrate that: "(1) counsel's performance was deficient, and (2) counsel's deficient performance prejudiced the outcome of the trial."

"[t]he Court must...determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland* at 690, 104 S.Ct. 2052. The second prong of the *Strickland* standard requires the petitioner to show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*, at 2068. Furthermore, the *Strickland* Court determined that "a reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*, at 2068.

### A. Defense counsel failed to perform proper pre-trial discovery and investigation.

Defense counsel must engage in a reasonable amount of pre-trial investigation, and "at a minimum...make an independent investigation of the facts and circumstances of the case". *Nealy v. Cabana*, 764 F.2d 1173, 1177 (5th Cir. 1985). In general, defense counsel has a duty to make reasonable investigations or

11

to make a reasonable decision that makes particular investigations unnecessary. *Strickland*, 466 U.S. 668; 104 S. Ct. 2052. See *Sanders v. Ratelle*, 21 F.3d 1446, 1456 (9th Cir. 1994)("[c]ounsel must, at a minimum, conduct a reasonable investigation enabling him to represent his client."). The State of Louisiana cites *State v. Castaneda*, 658 So.2d 297 (La. App. 1st Cir. 1995). The State alleges that Mr. Kott's petition is conclusory and does not state with specificity what the investigation could have revealed.

Mr. Kott was very specific and cited numerous exhibits to support his claims. Defense counsel failed to obtain the blood evidence in a timely manner. Motions were filed and hearings held but those motions have no value if defense counsel fails to follow through. (Exhibit A) The evidence was crucial to the defense.

The blood sample was drawn from petitioner on the day of the incident, (January 29, 2004). The blood sample bears Slidell Police Department evidence number 65304. Defense counsel was aware of this evidence and its importance to the defense. However, the first time the blood suppression issue is in the record is on February 2, 2005 in a bond reduction motion. The State repeatedly proffered excuses to preclude this evidence from being tested and sadly, defense counsel failed to do anything about it. (Exhibit B) This failure resulted in a 39 month delay which resulted in the toxins within the blood sample diminishing and petitioner's defense was lost. (Exhibit C). If physical evidence has been lost or destroyed by the State, the factors to be considered regarding whether a defendant's right to due process has been prejudiced are: (1) The materiality of the evidence to guilt or punishment; (2) Prejudice to the defendant resulting from loss or destruction; and (3) Good or bad faith on part of the State. *State v. Foret*, 447 So.2d 1265 (La. App. 1 Cir. 1984); U.S.C.A. Const. Amend. 5, 14.

12

Duty to preserve evidence must be limited to evidence that might be expected to play a significant role in the defense. *California v. Trombetta*, 467 U.S. 479, 488 (1984). The blood evidence in the instant case was crucial in proving the petitioner's intoxication at the time of the incident as well as Petitioner's initial contact with the Slidell Police Department. Unlike the outcome in *Trombetta*, the chances are very high that the evidence would have been a powerful piece in Mr. Kott's defense.

Unfortunately, it was too late and the toxins within the blood evidence had diminished to 9.5 nanograms per milliliter. (Exhibit D) The State's response alleges that Mr. Kott had metabolized all but 20% of the expected amount of Dilaudid. (State's response pg 4). The State makes this assertion without using any scientific source. The District Attorney is no expert in toxicology. The State makes a "conclusory" statement without providing a source for the scientific information cited.

Petitioner suffered prejudice in two ways. It resulted from the State intentionally withholding the evidence, and defense counsel's ineffective assistance in failing to assure chain of custody, failing to assure that the evidence was located, acquired, and tested in a timely manner. Petitioner was prescribed 965 4mg Dilauded in additional 1440 of Lorcet 10 pills within a 9 week period. (Exhibit E) Equaling an allotment of 15 Dilauded and 22 Lorcet 10's per day. It is untenable to argue that the blood evidence would not have shown a high level of toxins had the blood evidence been submitted for testing in a timely manner. During hearing held pertinent to this issue, the prosecutor questioned petitioner stating:

> "We have heard no testimony during the course of this hearing how reliable this test result is based on the circumstances of the degradation of the sample. The passage of time, the amount of the sample. We have heard no testimony. You would agree with that?"

(See Exhibit D, pg. 518)

Moreover, the prosecution was aware that the defense had no expert to provide the testimony necessary to prove his claims. No Defense expert ever testified at trial. It must be remembered that Motion for Funds to Acquire Expert Assistance was filed and granted. (Exhibit F) The Court allotted $5000.00 but defense counsel failed to acquire expert assistance. Had defense counsel used the funds allotted and acquired the expert, there would have been testimony regarding the reliability of the test result, chain of custody, and degradation of the sample over the 39 month passage of time.

It is pertinent to note that during hearing of Motion to Recuse the District Attorney's Office, the Trial Judge himself admonished defense counsel for his failure to follow through on the testing of the blood evidence over extended period of time. The Trial Judge informed defense counsel that this issue had come before the Court at least three times and he had given counsel the benefit during this time of looking for a crime lab all over this nation. (Exhibit G)

Petitioner submits that the Trial Judge's comments support his allegation that defense counsel was utterly ineffective. The blood evidence was crucial in proving Mr. Kott's mental incapacity at the time of the alleged offense. The victim's mother testified regarding the conduct of the officers during interrogation when they used Mr. Kott's withdrawal symptoms to obtain a coerced statement. (Exhibit H).

Petitioner submits that he had a right to test this evidence and a right to have an independent chemical analysis performed on the blood evidence. *Arizona v. Youngblood*, 109 S.Ct. 333, 448 U.S. 51, 102 L.Ed.2d 281, 57 USLW 4013 (U.S. Ariz. 1988); *Migliore v. U.S.*, 409 F.2d 786 (5th Cir. Fla. 1969). Petitioner submits that if not for defense counsel's unprofessional errors, there is more than a

14

reasonable probability that the result of the proceeding would have been different.

It is pertinent to remember in Corporal Kahrs' case narrative, he states that Mr. Kott could not give consistent and coherent details when he arrived at the scene. (Exhibit I) Mr. Kott was transported to the Slidell Police Department within 15 minutes of the 911 call being placed. It is untenable to argue that Mr. Kott had the requisite mental capacity to give a voluntary statement/confession when he was so intoxicated that he could not give consistent and coherent details. Defense counsel failed to properly challenge the unlawful actions of the police officers when he had the facts and/or evidence to do so.

Additionally, the syringe presented by the State was located far away from the scene. No scientific evidence was presented linking petitioner or the alleged victim to the syringe and this evidence should have been suppressed. The syringe was the only physical evidence in the courtroom alleged to have been used by petitioner. "There was no claim that that syringe was ever the instrument used in injecting the victim." (State's response pg. 6) The syringe was paraded before the jury throughout the duration of the trial as if it were the murder weapon. This obvious display tainted the jury and defense counsel failed object. Again, acquiring expert assistance was crucial regarding this issue who could have testified that the syringe proffered would not hold 4 Dilauded. If not for defense counsel's failures, there is a reasonable probability that this evidence would have been suppressed.

Petitioner made known to the Court through numerous letters that he was sorely aggrieved by defense counsel's failures through repeated instances of not appearing in court and diligently obtaining the blood evidence. (Exhibit J) The type of breakdown in the adversarial process that implicates the Sixth Amendment is not limited to counsel's performance as a whole; specific errors and omissions

may be the focus of a claim of ineffective assistance as well. *United States v. Cronic, Id.* 466 U.S. 648; 104 S. Ct. 2039 at 2048 (1984). Mr. Kott's need for pretrial investigation was essential for effective assistance of counsel.

Defense counsel's errors resulted in the denial and deprivation of due process, right to a fair impartial trial, the right to present a defense, and the right to effective assistance of counsel violating his 5th, 6th, 8th, and 14th Amendment rights under the United States Constitution mandating reversal.

### B. Failure to prepare and present a defense.

The Sixth Amendment of the United States Constitution guarantees the right to present a defense. U.S. Const. Amend. 6; La. Const. Art. 1 Section 16; *Washington v. Texas*, 388 U.S. 14, 87 S.Ct.1920, 18 L.Ed.2d 1019 (1967); *State v. Van Winkle*, 658 So.2d 198 (La. 1995); *State v. Gremillion*, 542 So.2d 1074 (La. 1989); *State v. Vigee*, 518 So.2d 501 (La. 1988). As a result of defense counsel's failure to act as counsel demanded by the Sixth Amendment to the United States Constitution, petitioner was denied the Constitutional right to present a defense.

Mr. Kott and Ms. Roshto both suffered from severe addictions. Dr. Sebatier illegally over prescribed large amounts of narcotics to petitioner which was enabled his addiction. (Exhibit L) Dr. Sebatier later was required to surrender his medical license (Exhibit E) Under Louisiana law, the burden was upon petitioner to prove his insanity. "If the circumstances indicate that because of a mental disease (severe addiction) or mental defect the offender was incapable of distinguishing between right and wrong with reference to the conduct in question, the offender shall be exempt from criminal responsibility". La. R.S. 14:14.

As a result of his severe addiction and heavy intoxication at the time of the alleged offense, petitioner submits that he was incapable of distinguishing between right and wrong with reference to the conduct in question. Defense counsel chose

to present the defense of intoxication. Petitioner submits that no matter which of the above defenses was chosen by defense counsel, it was pertinent to acquire expert(s) to assist in preparing and presenting the defense.

Defense counsel made no attempt to present Dr. Sabatier and his illegal actions to support petitioner's defense, nor did he present an expert to testify to any or all of the above. The State argued in their response that defense counsel argued the insanity/intoxication during motion hearings. The jury never heard the arguments and they were never allowed the opportunity to hear Dr. Sabatier or another expert concerning Mr. Kott's level of intoxication.

Petitioner submits that he did not commit second degree murder as he had no intent to kill or commit great bodily harm. Petitioner had no plan or motive, no intent to kill or cause great bodily harm. As a result of his severe addiction and heavy intoxication, which was enabled and furthered by Dr. Sabatier's illegal actions, petitioner's condition was involuntary and he did not know the difference between right and wrong at the time of the alleged offense.

Defense "[c]ounsel failed in his duty to bring to bear such skill and knowledge to render the trial a reliable adversarial testing process". *Strickland*, *citing Powell v. Alabama*, 287 U.S. 45, 53 S.Ct. 55(1932). The plethora of errors described above clearly indicates defense counsel was more than just ineffective.

### C. Defense counsel was ineffective for his failure to challenge and seek writs regarding the admission of other crimes evidence.

The United States Supreme Court has recognized that other crimes evidence, even when properly admitted, is likely to lead the jury to base its verdict on improper factors. *Old Chief v. United States*, 519 U.S. 172, 117 S. Ct. 644 (1997). Petitioner contends that as a result of other acts/wrongs submitted by the State in a manner contrary to law resulted in an erroneous and prejudicial finding of guilt by the fact finding jurors. What happened here was the same harm which the Court

17

warned against in *Old Chief.*

Courts that follow the common-law tradition almost unanimously have come to disallow the prosecution resorting to any kind of evidence of a defendant's evil character to establish a probability of his guilt...The state may not show defendant's prior trouble with the law, specific criminal acts, or ill name among his neighbors, even though such facts might logically be persuasive that he is by propensity a probable perpetrator of the crime. *Id.*

The "other acts/wrongs" unlawfully proffered in this case, heavily bolstered the State's case. Petitioner continues to maintain that this evidence, i.e., testimony by witnesses stating that Petitioner shot them up, was improperly admitted. Moreover, as argued, Rena Boyen's testimony was a result of threat and coercion. The testimonies served only one purpose and that was the purpose that *Old Chief* considered improper – to show that petitioner was a bad man who should be convicted of this crime regardless of the actual evidence.

Petitioner submits that the evidence was not properly admitted under Louisiana law, and its admission violated due process. In order for other crimes evidence to be admitted the State shall provide notice within a reasonable time. La. C.E. 404B(1). The evidence may be admissible after a hearing in order to show proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident. *Id.* However, to be admissible the probative value of the evidence must outweigh the prejudicial effect. La. C.E. 403. For evidence of other crimes to be admissible, the State must prove with clear and convincing evidence that the probative value of the evidence outweighs its prejudicial effect. *State v. Howard*, 859 So.2d 936 (La. App. 2 Cir. 10/31/03).

"[W]hen a state court admits evidence that is "so unduly prejudicial that it renders the trial fundamentally unfair, the Due Process Clause of the Fourteenth

Amendment provides a mechanism for relief.'" *Dawson v. Delaware*, 503 U.S. 159, 179 (1992) (quoting *Tennessee v. Bane*, 510 U.S. 808 (1993)). No hearing was ever conducted regarding the admissibility of the other crimes evidence concerning Shanti Brady (Exhibit M) but only regarding the testimony of Rena Boyen. (Exhibit N) The State ambushed defense counsel and defense counsel failed to object and motion for a mistrial. Rather than proving each element of the crime beyond a reasonable doubt with credible evidence, the prosecution proved this case through innuendo and reputation. Petitioner was placed in an impossible situation at trial when the other crimes evidence was admitted and his defense counsel failed to call for a mistrial. It is clear that the probative value of the other crimes testimony was outweighed by the prejudicial effect.

### D. Counsel failed to present a defense of negligent homicide, and request a special jury instruction on same.

Petitioner submits that the facts and circumstances of this case suggest a defense of Negligent Homicide and Defense counsel failed to request a special jury instruction. Therefore, petitioner suggests counsel's failure was not a tactical decision, but prejudicial error. See *State v. Sepulvado*, 25 So.3d 899 (La. App. 2 Cir. 10/28/09). In both cases, the defendants tendered pleas of guilty to a lesser charge.

In *United States v. Cronic*, 839 F.2d 1401 (10th Cir. 1988), the conviction was originally reversed by the Tenth Circuit at 675 F.2d 1126. The Supreme Court then reversed that decision, and the case was sent back down to the district court, which denied relief. Before the Tenth Circuit for the second time, the Court found that trial counsel had completely failed to present the obvious defense of good faith, and also failed to request a jury instruction on good faith, the Court of Appeals saw substantial prejudice and reversed. *Id.*

Akin to *Cronic*, as a result of defense counsel's failures, Mr. Kott effectively

19

had no defense. As argued, defense counsel could have presented intoxication or insanity. He chose intoxication. Defense counsel cannot show any strategic or tactical reasons for having failed in arguing negligent homicide and requesting jury instruction on same. Jurisprudence does not require this Court to "fabricate tactical decisions on behalf of counsel when it appears on the face of the record that counsel made no strategic decisions at all". *Moore v. Johnson*, 185 F.3d 244, 261 (5th Cir. 1999). Defense counsel's failure fell below an objective standard of reasonableness and that a substantial or significant possibility existed that the verdict of the trier of fact would have been affected.

### E. Defense counsel was ineffective for his failure to acquire experts to assist in preparation and presentation of the defense when the motion filed for expert requesting funds was granted.

Defense counsel failed to timely secure a lab, and an expert (toxicology, psycho-pharmacology, and/or addictionology) who could have testified pertinent to the reliability of the test result, chain of custody, and degradation of the sample over the 39 month passage of time. (Exhibit A) Defense counsel was ineffective when he failed to obtain an independent expert in the fields of toxicology, psycho-pharmacology, and addictionology (substance abuse). Motion to Obtain Funds for Expert was filed by the defense and granted by the Court on March 13, 2006, however, defense counsel failed to acquire these experts when they were critical to the defense. (Exhibit F).

Petitioner is a drug addict with repeated commitments and has a history of treatment for substance abuse. Expert assistance and testimony was crucial pertinent to the reliability of the test results of the blood evidence, chain of custody, and degradation of the sample over the 39 month passage of time. Defense counsel's failure to acquire expert assistance when motion for same had been granted was grossly ineffective and substantially prejudiced the defense.

Petitioner submits that without expert assistance and testimony, he was deprived of his defense.

The accused is entitled by statute to at least twelve witnesses at the expense of the parish. *State v. Clark*, 387 So.2d 1124, 1129 (La. 1980) (could have summoned a doctor at parish expense). In addition, "...Art. 739 provides a method by which he may apply to the court for additional witnesses." *Id.* at 1129. See *Ake v. Oklahoma*, 470 U.S. 68, 71, 105 S.Ct. 1087 (1985); *Cowley v. Stricklin*, 929 F.2d 640 (11th Cir. Ala. 1991); *Kordenbrock v. Scroggy*, 919 F.2d 1091 (6th Cir. Ky. 1990), cert. denied, 499 U.S. 970 (1991); *Blake v. Kemp*, 758 F.2d 523 (11th Cir. Ga. 1985), cert. denied, 474 U.S. 998 (1985); *Smith v. McCormick*, 914 F.2d 1153 (9th Cir. Mont. 1990).

Jurors do listen to, are influenced by, and rely upon the testimony of such experts and a trial may be fundamentally unfair when a party is left without expert assistance. *Ake, supra*, 472 U.S. at 80. Calling experts in this case was pertinent because (1) the results from the toxicology reports were crucial to the defense in suppressing evidence, statements or confession, and (2) crucial in proving petitioner's innocence of the crime charged, and (3) countering the State's case. Had defense counsel acquired the assistance of an expert to assist in preparation and presenting the defense, as well as countering the reports and testimony of State experts, there is more than a reasonable probability that the outcome would have been different.

### F. Cumulative effect of defense counsel's errors and Conclusion

The Supreme Court held in *Kyles, supra*, that a reviewing court must consider the cumulative effect of all errors together as a whole rather than evaluating each error against the other admissible evidence in order to determine if there is a reasonable probability that the errors complained of might have affected

21

the outcome. *Kyles v. Whitley*, 514 U.S. 419; 115 S. Ct. 1555, 1577 (1995); *United States v. Bagley*, 473 U.S. 667, 105 S.Ct. 3375 (1985).

Defense counsel's actions and/or inactions resulted in denial and deprivation of Due Process, Right to a Fair Impartial Trial, Right to Present a Defense, and the Right to Effective Assistance of Counsel subsequently rendering the trial unfair and unreliable violates of his 5th, 6th, 8th, and 14th Amendment rights under the United States Constitution. The deficient representation provided petitioner by his counsel fell woefully short of the "range of competency demanded of attorneys in criminal cases". See *McMann v. Richardson*, 397 U.S. 759, 90 S. Ct. 1441 (1970).

**Assignment of Error No.2: THE TRIAL COURT ERRED IN FINDING La. C.Cr.P. Art. 14:30.1 CONSTITUTIONAL.**

Petitioner submits that Louisiana's Second Degree Murder, La. R.S. 14:30.1, which includes Sections (3) and (4) is unconstitutional as applied to him by imposing a mandatory life sentence for a crime which lacks any intent to kill or cause bodily harm, without first allowing the sentencing authority the ability to consider the characteristics of a petitioner and the details of his offense before sentencing him. The statute as applied violates his protected right against cruel and unusual punishment guaranteed by the United States Eighth Amendment, and Louisiana's Constitution 1 Section 20.

The State highlighted that sentencing is not a ground for relief under La. C.Cr. P. Art. 930.3. Challenging a statute's constitutionality is a ground for relief under La. C.Cr.P. Art. 930.3(5). Additionally, La. C.Cr.P. Art. 930.3(5) allows a conviction to be challenged when the statute creating the offense for which he is convicted and sentenced is unconstitutional. As a general matter, a statute is presumed to be constitutional, and the burden of showing otherwise falls to the challenger. *State v. Rochon*, 75 So.3d 876 (La. 2011); *State v. Muschkatt*, 706 So.2d 429 (La. 1998). Criminal statutes are given a genuine construction

according to the fair import of their words, taken in their usual sense, in context, and with reference to the purpose for the provision. See *State v. Interiano*, 868 So. 2d 9 (La. 2004).

Attacking the constitutionality of a statute must be specifically pleaded and the grounds for the claim particularized. The Louisiana Supreme Court has expressed the challenger's burden as a three step analysis. First, a party must raise the unconstitutionality in the trial court; second, the unconstitutionality of a statute must be specially pleaded; and third, the grounds outlining the basis of unconstitutionality must be particularized. *State v. Bertrand*, 6 So.3d 738 (La. 2009).

Additionally, the Louisiana Constitution protects against excessive sentences and permits a court to determine both whether the sentence of a particular offender is excessive, but also whether the range of sentence authorized by the statute is excessive. *State v. Guajardo*, 428 So.2d 468, 472 (La. 1983). "The deliberate inclusion by the redactors of the Constitution of a prohibition against "excessive" as well as cruel and unusual punishment broadened the duty of this court to review the sentencing aspects of criminal statutes." *State v. Goode*, 380 So. 2d 1361, 1363 (La. 1980).

A punishment is constitutionally excessive if it makes no measurable contribution to acceptable goals of punishment and is nothing more than a purposeless imposition of pain and suffering and is grossly out of proportion of the severity of the crime. *State v. Dorthey*, 623 So.2d 1276, 1280 (La. 1993). A sentence is grossly disproportionate when the crime and punishment are considered, in light of harm done to society, it shocks the sense of justice. *State v. Lobato*, 603 So.2d 739,751 (LA 1992). It is well settled that legislature has the unique responsibility to define criminal conduct and to provide for the penalties to

23

be imposed against persons engaged in such conduct. *Dorthey* at 1278. The penalties provided by the legislature reflect the degree to which criminal conduct affronts society. *State v. Davis*, 666 So.2d. 400, 407 (La. 1st. Cir. 1995). Courts must apply the penalties unless they are found to be unconstitutional. *Dorthey* at 1278.

Mr. Kott met all requirements of challenging the constitutionality of a statute by raising it in the trial court, pleading with specificity, and outlined the basis for the unconstitutionality. Petitioner specifically plead in his original application that Louisiana's Second Degree Murder Statute, LSA-R.S. 14:30.1(3) as applied to him, is unconstitutional in that both the United States and Louisiana Constitution's prohibition of cruel and unusual punishment which "guarantees individuals the right not to be subjected to excessive sanctions". U.S.C. Amend.8; La. Const. Section 1 20.

In 1987, the Louisiana Legislature added section (3) and (4) of La. R.S. 14:30.1 which further defined the crime of second degree murder. It now includes: when the offender unlawfully directly *or* indirectly distributes or dispenses a controlled dangerous substance listed in Schedules I or II which is the direct cause of the death of the recipient who ingested or consumed the controlled dangerous substance. In 2004, the amended statute listed only Schedule I and II. In 2010, the Statute was amended once again to read Schedule I through V, or any combination thereof. In 2010, the burden was lessened and even greater than that of 2004, totally eliminating the specific intent to kill or inflict great bodily harm, or in the perpetration or attempted perpetration of a violent crime that has historically been necessary to convict on second degree murder prior to 1987.

Since that amendment, the U.S. Supreme Court ruled in *Miller v. Alabama*, 132 S. Ct. 2455(2012) that the Eighth Amendment's prohibition of cruel and

24

unusual punishment "guarantees individuals the right not to be subjected to excessive sanctions". *Roper v. Simmons*, 543 U.S. 551, 560, 125 S.Ct. 1183 (2005). That right "flows from the basic precept of justice that punishment for crime should be graduated and proportioned" to both the offender and the offense. Two strands of precedent reflecting the concern with proportionate punishment come together. The first has adopted categorical bans on sentencing practices based on mismatches between the culpability of a class of offenders and the severity of a penalty. See, e.g., *Kennedy v. Louisiana*, 554 U.S. 407, 128 S.Ct. 2641 (2008). Thus, *Roper v. Simmons* held that the Eighth Amendment bars capital punishment for children, and *Graham v. Florida* concluded that the Amendment prohibits a sentence of life without the possibility of parole for a juvenile convicted of a non-homicide offense. *Graham v. Florida*, 560 U.S. 48, 130 S. Ct. 2011 (2009).

The basis of these decisions focuses on the culpability of the petitioner. *Roper* and *Graham* establish that children are constitutionally different than adults for purposes of sentencing. Because juveniles have diminished culpability and greater prospects for reform,..."they are less deserving of the most severe punishments". Those cases relied on three significant gaps between juveniles and adults. First, children have a "lack of maturity and an underdeveloped sense of responsibility, leading to recklessness, impulsivity, and needless risk-taking". *Roper* at 569. Second, children "are more vulnerable ... to negative influences and outside pressures", including from their family and peers; they have limited "control over their own environment" and lack the ability to extricate themselves from horrific, crime-producing settings. *Id*. And third, a child's character is not as "well formed" as an adult's; his traits are "less fixed" and his actions less likely to be "evidence of irretrievable depravity. *Id*. at 570.

*Roper* and *Graham* emphasized that the distinctive attributes of youth diminish the penological justifications of imposing the harshest sentences on juvenile offenders, even when they commit terrible crimes. In this case, we are faced with a different but very real and seriously diminished culpability. Petitioner, Mr. Kott, at the time of his conviction was a 48 year old man with a long history of severe drug addiction. Blacks Law Dictionary Abridged Sixth Addition defines Addict: "Any individual who...is or has been so far addicted that the use of such narcotic drugs as to have lost the power of self-control with reference to his addiction".

It is common knowledge that drug addiction dominates its victims, not only mentally but physically as well. Petitioner claims that because of his long history of addiction (See original post-conviction relief application and exhibits for full history), and his heavy use of prescription drugs at the time of the alleged crime, his culpability was reduced to less than that of a juvenile, which merits the same protection from a mandatory sentence of life without parole, without allowing the sentencing judge the necessary discretion to consider petitioner's severe drug addiction and attended characteristics, and from assessing whether the law's harshest term of imprisonment proportionately punishes him before sentencing.

Moreover, petitioner was using drugs illegally prescribed to him by Dr. Sebatier who prescribe petitioner 120 Dilandid and would prescribe another 120 the next day. Petitioner's addiction was furthered by receiving prescriptions of the same medications from other doctors to even increase the dosages of 2 to 4 at a time, every 45 minutes to an hour and a half. (Exhibit L and E). The vast amount of prescribed drugs being taken completely incapacitated him and reduced his culpability to a degree lesser than that of a juvenile.

The autopsy report states Poli-Substance Drug Toxicity of Dilauded, Soma,

26.

and Xanax was the cause of Ms. Roshto's death. (Exhibit K) Petitioner is only accused of providing the Schedule II Dilauded. It would be impossible to detect what sequence the 3 drugs were consumed, thus not proving the direct cause of her death. As a result of how the statute is worded, the judge had no discretion to consider those factors. Persuasively, in the case *sub judice*, the application of the statute leads to absurd results because petitioner had no intent to kill or commit great bodily harm. Petitioner submits that R.S. 14:30.1, which includes Sections (3) & (4) is unconstitutional as applied.

The legislature realized that by listing I through V Scheduled drugs in the amended statute of 2010, to include "or any combination thereof" makes it lesser to convict than in 2004 when which sequence the drugs were consumed, made it more difficult to convict. In this unusual incident, petitioner was a drug addict using prescribed medications. His only crime was the abuse of his own prescribed medication. Petitioner was intoxicated almost to the point of being unconscious when the alleged victim arrived. Upon his daughter's later arrival and discovery that her friend was unresponsive when trying to awake her, she alerted petitioner and he called 911 emergency for help. The incident indicates negligence and/or an accident rather than second degree murder. The alleged victim was a major contributor to her own death. Petitioner was unaware of what had happened until notified by his daughter that the alleged victim was unresponsive.

Petitioner submits that *Miller, supra*, allows the Trial Judge or jury to fix punishment with the discretion to consider a juvenile's youth and immaturity, including such mitigating factors as a dysfunctional upbringing, abuse of alcohol and/or drugs as a juvenile, and whether or not he could be rehabilitated before deciding to impose a different punishment. "Moreover, defendants who do not kill, intend to kill, or foresee that life will be taken are categorically less deserving

27

of such punishments than are murderers." *Graham v. Florida, Graham v. Florida*, 560 U.S. 48; 130 S. Ct. 2011 (2009).

Petitioner submits that the circumstances presented support his claim that the statute is unconstitutional as applied. Petitioner submits that he did not commit second degree murder as he had no intent to kill or commit great bodily harm. The wording of the statute is unconstitutional as applied when removing the intent to kill or commit great bodily harm. Second degree murder is the next most severe crime in the Louisiana Code of Criminal Procedure and mandates a life sentence.

Under the above described circumstances, petitioner submits that the sentence of mandatory life-without-parole is excessive in this particular case and violates both the United States and Louisiana Constitution's prohibition of cruel and unusual punishment which guarantees individuals the right not to be subjected to excessive sanctions. U.S.C. Amend. 8, La.Const. Section 1 20.

### Assignment of Error No.3: THE TRIAL COURT ERRED IN FINDING THAT PROSECUTORIAL MISCONDUCT DID NOT OCCUR.

#### A. BLOOD EVIDENCE

The suppression of evidence favorable to an accused by the prosecution when requested, violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution. *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194 (1963). As the Supreme Court later clarified, there are three components of a true *Brady* violation: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) that evidence must have been suppressed by the State either willfully or inadvertently; and (3) prejudice must have ensued. *Strickler v. Greene*, 527 U.S. 263, 281-82, 119 S.Ct. 1936 (1999). Evidence is material so as to establish prejudice only "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been

different.  A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome".  *United States v. Bagley*, 473 U.S. 667, 662, 105 S.Ct. 3375 (1985).  *Brady* and its progeny apply only to evidence possessed by the prosecution team, which includes both investigative and prosecutorial personnel. *United States v. Meros*, 866 F.2d 1304, 1309 (11th Cir. Fla. 1989).

In the case *sub judice*, the prosecution was in possession of the blood evidence, which contained the drug toxins which would have negated the intent element of the crime charged and the unconstitutionally obtained statements.  By withholding this blood evidence deliberately and in a covert manner the toxins were allowed to diminish to the point that petitioner's entire defense was ruined.

Blood evidence was drawn from the defendant on January 29, 2004, the day of the incident, and in possession of the State.  It is the duty of the prosecutor to preserve evidence and maintain a chain of custody.  Evidence of exculpatory nature should be tested in a timely manner; or turned over to the defense before its contents are lost, diminish, and cannot be replaced.  See *Arizona v. Youngblood*, 109 S.Ct. 333, 448 U.S. 51 (1988).  The defense notified the State of its intent to present an intoxication defense.  Defense counsel informed the Court that the blood issue becomes a "very critical matter" and that the blood was requested at numerous status conferences.  Defense counsel stated clearly, "I'm stuck here and under *Kyles v. Whitley*, we are entitled to it".  (Exhibit R)  The Court made clear to the prosecutor that the defense has a right to this evidence under *Migliore v. U.S.*, 409 F.2d 786 (5th Cir. Fla. 1969).

Petitioner submits that the State intentionally withheld the evidence for a period of 39 months.  Petitioner avers that the State violated standard procedure pertinent to handling this evidence.  The State failed to maintain and/or present a proper chain of custody when the toxins within the blood evidence to diminish,

29

The State suppressed evidence which played a major role in establishing a complete defense to the charge of second degree murder. Moreover, had this evidence not been withheld and tested in a timely manner, the toxins within the blood evidence would have proven petitioner's mental incapacity when questioned by police.

At the time petitioner was taken into custody, petitioner was highly intoxicated and during questioning subsequently suffered major withdrawals. The police officers performing the questioning not only ignored the withdrawals suffered by Mr. Kott, they coerced two involuntary statements by promising him his medication. Prosecutors are responsible for "any favorable evidence known to the others acting on the government's behalf in the case, including the police". When police or prosecutors conceal significant exculpatory or impeaching material in the State's possession, it is ordinarily incumbent on the State to set the record straight. *Kyles v. Whitley*, 115 S.Ct. 1555, 514 U.S. 419 (1995).

The conduct of these officers was supported by testimony from the alleged victim's mother. (Exhibit H) Coercive police activity is a necessary predicate to finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment. *Connelly v. Colorado*, 479 U.S. 157, 167, 107 S.Ct. 515, 522 (1986). *Connelly* has modified Louisiana's jurisprudential rule that intoxication may negate the voluntariness of a statement if it is of such a degree that it renders the defendant "unconscious of the consequences of what he is saying", *State v. Simmons*, 443 So.2d 512, 516 (La. 1983). Diminished mental capacity, which may result from intoxication, remains relevant to the voluntariness of a statement only to the extent that it "made mental or physical coercion by the police more effective". *United States v. Gaddy*, 532 F.3d 783, 788 (8th Cir. Iowa 2008).

Petitioner avers that he was intoxicated to the degree that he was "unconscious of the consequences of what he is saying." His statements were the product of a will overborne by police coercion. It is pertinent to remember in Corporal Kahrs' case narrative where he states that Mr. Kott could not give consistent and coherent details when he arrived at the scene. (Exhibit I) Mr. Kott was transported to the Slidell Police Department within 15 minutes of the 911 call being placed. It is untenable to argue that Mr. Kott had the requisite mental capacity to give a voluntary statement.

It is well settled that the failure of police or prosecutor to preserve evidence may, in some circumstances, constitute grounds for reversal of conviction. It was the State's duty to preserve this evidence. See *United States v. Bryant*, 439 F.2d 642, 142 U.S. App. D.C. 132 (1971) (Wright, J)(Government must make 'earnest efforts' to preserve crucial materials and to find them once a discovery request is made).

The decisions on *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194 (1963) and *Giglio v. United States*, 405 U.S. 150, 153-54, 92 S.Ct. 763, 765-66 (1972), the Due Process Clause is implicated when a State intentionally or inadvertently destroys evidence that might have proved favorable to a criminal defendant. First, petitioner asserts the State knew of, but withheld the blood evidence precluding testing effectively denying petitioner's entire defense. *Kyles v. Whitley*, 115 S.Ct. 1555, 514 U.S. 419, 437 (1995). Second, it was incumbent on the prosecution to disclose *Brady* material and petitioner cannot be faulted for relying on that. See *Strickler*, 527 U.S., at 283-284, 119 S.Ct. 1936. Third, defense counsel's failure exacerbated the unconstitutional actions of the State.

Petitioner also cites *Giglio v. United States*, *supra*, which extended *Brady* to evidence that would damage the credibility of the State's witnesses. Quoting from

31

*Giglio*, the Court noted:

> When the "reliability of a given witness may well be determinative of guilt or innocence," nondisclosure of evidence affecting credibility falls within this general rule...Moreover, whether the nondisclosure was a result of negligence or design, it is the responsibility of the prosecutor. *Bailey*, at 370.

Petitioner contends that had the State not withheld the blood evidence, petitioner would have proven his mental incapacity when questioned by the police and this would have greatly affected the credibility of these witnesses. The State repeatedly put off the defense regarding the location of the blood evidence, chain of custody regarding the blood evidence, and finally, testing the blood in a timely manner.

### B. COERCED TESTIMONY

Prosecutors are responsible for "any favorable evidence known to the others acting on the government's behalf in the case, including the police". When police or prosecutors conceal significant exculpatory or impeaching material in the State's possession, it is ordinarily incumbent on the State to set the record straight. *Kyles v. Whitley, supra.*

Trials are adversarial in nature; each side attempts to gain an advantage over the other with the single and foremost goal of victory. In criminal trials, because the government is seeking to take away a citizen's life or liberty, the prosecution's goal, and duty, is decidedly different: he or she must seek justice. This requirement, found in all the codes of conduct applicable to the prosecution, stems from the fact that a prosecutor is the representative of a sovereignty "whose interest...in a criminal prosecution is not that it shall win a case, but that justice shall be done...[i.e.] guilty shall not escape or innocence suffer". *Berger v. United States*, 295 U.S. 78, 88 (1935). Towards that end, and with full recognition of the sometimes competing interests of a sovereign's advocate, the U. S. Supreme Court

has established several core principles governing the prosecution's obligation and duties respecting the introduction of false evidence and the suppression of evidence favorable to a defendant.

In *Alcorta v. Texas*, the prosecution suppressed information that would have greatly benefited the defense, encouraged its key witness not to disclose this information on the stand unless directly asked, and failed to point out to the Court and the defense the misleading nature of the witness' testimony. *Alcorta v. Texas*, 355 U.S. 28, 78 S. Ct. 103 (1957). The Court found the testimony seriously prejudicial to petitioner as it tended to refute his claim that he had adequate cause for a surge of sudden passion. Disclosure of the information not only would have "impeached the witness' credibility", but also "tended to corroborate the petitioner's contention that he found his wife embracing" the witness. *Id.* The Court held the prosecution's presentation of evidence that creates a "false impression" and suppression of evidence that "corroborates" the defense theory is a violation of due process. *Id.* Alcorta's conviction and sentence of death was reversed.

In the instant case, Catherine (Rena) Boyen made clear that she was not going to testify. Instead, the prosecutor threatened Ms. Boyen with being charged and multi-billed if she did not testify verbatim in accordance with her prior statement even though she recanted. Ms. Boyen recanted after revealing her original statement was coerced by the police.

"Deliberate deception of a Court and jurors by presentation of known false evidence is incompatible with rudimentary demands of justice." *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763 (1972). See also *State v. Marshall*, 660 So.2d 819 (La. 1995).

Mr. Kott avers that District Attorney procured testimony by threat and coercion, failed to correct testimony known to be false, and then blatantly lied to the defense and the Judge. The District Attorney told the Court that Ms. Boyen

33.

was brought from jail on another matter. (Exhibit S) Ms. Boyen had no other scheduled court appearances that day. (Exhibit T) Additionally, Ms. Boyen was not allowed to speak with her counsel prior to testifying. Ms. Boyen was told by the District Attorney that her attorney, Frank DeSalvo, told her to testify. (Exhibit U)

Similarly, *Napue* involved false testimony by a state's witness. The witness testified that he had not been promised a recommendation of a reduction of his sentence by the very prosecutor who was trying the case. *Napue v. Illinois*, 360 U.S. 264, 360 (1959). That testimony, however, was false as the witness had, in fact, entered into an agreement with the state for his testimony. *See also State v. Marshall*, 660 So.2d 819 (La. 1995) and *State v. Williams*, 575 So.2d 452 (La.App. 4 Cir. 1991). Ms. Boyen was forced to testify to avoid prosecution and being multi-billed.

Petitioner submits that combined, the actions and/or inactions of the State, and police, denied petitioner his viable defense, and a fair trial having a just and reliable outcome, violative of his 5th, 6th, and 14th Amendment rights to the United States Constitution and the Louisiana Constitution. The existence of prejudice in this case is marked mandating reversal, or in the least, evidentiary hearing to determine the veracity of petitioner's claims.

**Assignment of Error No.4: THE CUMULATIVE ERRORS INVOLVED IN THIS CASE DEMONSTRATE AN UNCONSTITUTIONAL CONVICTION AND TRIAL IN VIOLATION OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION.**

The issues discussed herein cannot be viewed in isolation. Mr. Kott submits he is entitled to relief based on the combined effect of the errors presented herein.

Petitioner suggests the Courts have increasingly adopted an approach that has focused on the totality of the circumstances of a trial under review. See, e.g. *Darden v. Wainwright*, 477 U.S. 168, 182, 106 S.Ct. 2464, 2472

34

(1986)(prosecutor's allegedly erroneous statements assessed in terms of "their effect on the trial as a whole"); *Strickland v. Washington*, 466 U.S. 668, 690, 104 S.Ct. 2052, 2066 (1984)(when reviewing counsel's effectiveness, courts must look to all the circumstances of the trial); *Kyles v. Whitley*, 514 U.S. 419, 115 S.Ct. 1555 (1995)(reviewing courts must be educated by the language throughout *Kyles* to look at the case a whole). Hence, Mr. Kott argues, the cumulative effect of errors presented along with counsel's unprofessional care, demonstrate he was denied a fundamentally fair trial and effective assistance of counsel as guaranteed him by the 5th, 6th, and 14th Amendments of the United States Constitution.

A cumulative error analysis is equivalent to a Fourteenth Amendment Due Process inquiry, and the fact whether one or several trial errors caused the trial to be fundamentally unfair is not important. It has been the law for some time that one error in a trial can violate a petitioner's Fourteenth Amendment right to due process. Several errors taken together can also violate a petitioner's right to due process and cause the trial to be fundamentally unfair. *Derden v. McNeel*, 938 F.2d 605, 610 (5th Cir. 1991)(citations omitted).

## CONCLUSION

In light of determination to avoid a miscarriage of justice, this Court must examine the constitutional issues presented herein. The Sixth Amendment stands as a constant admonition that justice will not be served if the constitutional safeguards are lost.

Defense counsel was grossly ineffective for failing to perform pre-trial discovery, investigation, failing to interview and call witnesses, failing to prepare and present a defense, failing to secure an independent expert, failing to seek writs on issues crucial to the defense, and failing to put the State's case to meaningful adversarial testing. Combining that with prosecutorial misconduct, petitioner was

deprived Due Process, Right to a Fair and Impartial Trial, the Right to Present a Defense, and the Right to Effective Assistance of Counsel, in violation of his 5th, 6th, 8th, and 14th Amendment rights under the United States Constitution.

The above combined Constitutional violations deprived Mr. Kott of his fundamental rights guaranteed by the United States and Louisiana Constitutions mandating reversal of his conviction and sentence or in the least a full evidentiary hearing wherein those issues can be presented and argued.

Respectfully submitted:

LAW OFFICE OF RACHEL YAZBECK

RACHEL YAZBECK (31371)
818 HOWARD AVE., STE. 305,
NEW ORLEANS, LA. 70113
(504) 586-8008
(504) 586-8003
*Attorney for Walter A. Kott, Jr.*

36

## VERIFICATION

STATE OF LOUISIANA

PARISH OF ORLEANS

BEFORE ME, the undersigned authority, a Notary Public duly commissioned and qualified in accordance with law in and for the State and Parish of aforesaid, personally came and appeared:

RACHEL M. YAZBECK, ESQ.

who, having been first duly sworn, deposed and stated that:

All of the allegations contained in the above and foregoing Application are true and correct to the best of his knowledge, information and belief;

All of the documents and exhibits attached hereto and filed herewith are true and correct copies of the original documents filed in the record of said proceedings; and a copy of the foregoing has been served by placing same in First Class United States mail, properly addressed and postage prepaid, or by placing same in the hands of one of their authorized agents on:

Honorable Richard Swartz, Judge of the Twenty Second Judicial District Court for the Parish of St. Tammany, State of Louisiana, 701 North Columbia Street, Covington, LA 70433, 985-809-5315, and on

Walter Reed, District Attorney of St. Tammany Parish, Louisiana, 701 North Columbia Street, Covington, LA 70433, 985-809-8383

RACHEL M. YAZBECK

Sworn to and subscribed before me,

Notary Public, this 18 day of

July , 2013.

TIMOTHY T. YAZBECK
NOTARY PUBLIC
LSBA NO. 34364
MY COMMISSION IS FOR LIFE

37

## CERTIFICATE OF SERVICE

I certify that I have this date hand delivered or mailed, by first class mail, postage prepaid, a true and correct copy of the above and foregoing application to all counsel of record and to the Honorable Richard Swartz, Judge of Division "C" of the 22nd Judicial District Court, St. Tammany Parish, Louisiana.

This ___19th___ day of July, 2013.

_Rachel M. _____

**APPENDIX "A"**

ST TAMMANY PARISH
STATE OF LOUISIANA
FILED FOR RECORD

Adopted October 14, 1976

2013 MAY 24  A  D 01

Effective January 1, 1977

MALISE PRIETO

UNIFORM APPLICATION FOR POST-CONVICTION RELIEF

| | |
|---|---|
| Walter A. Kott, Jr. | No: _____ |
| **NAME OF PETITIONER** | (to be filled in by clerk) |
| | |
| 347318 | 22nd JUDICIAL DISTRICT COURT |
| **PRISON NUMBER** | |
| | |
| Louisiana State Penitentiary | PARISH OF ST. TAMMANY |
| **PLACE OF CONFINEMENT** | |

**STATE OF LOUISIANA**

VS.

Warden Burl Cain
**CUSTODIAN,**

Please serve CUSTODIAN and Assistant District Attorney, 22nd JUDICIAL DISTRICT COURT, STATE OF LOUISIANA.

**INSTRUCTION – READ CAREFULLY**

(1)    This petition must be legibly written or typed, signed by the petitioner and sworn to before a notary public or institutional officer authorized to administer an oath. Any false statements of a material fact may serve as the basis for a criminal prosecution. All questions must be answered concisely in the proper space on the form. Additional pages are not permitted except with respect to the facts, which you rely upon to support your claims for relief. No citation of authorities or legal arguments are necessary.

(2)    Only one judgment may be challenged in a single petition except that conviction on multiple counts of a single indictment or information may be challenged in one petition.

(3)    YOU MUST INCLUDE ALL CLAIMS FOR RELIEF AND ALL FACTS SUPPORTING SUCH CLAIMS IN THE PETITION.



1

(4)     When the petition is completed, the original must be mailed to the clerk of the district court in the parish where you were convicted and sentenced.

(5)     You must attach official documentation showing your sentence and the crime for which you have been convicted.   You may obtain that documentation from the clerk of court of the district court of the parish where you were sentenced or from the institution where you are confined.   If that documentation is not attached, you must allege that steps were taken to obtain it.

(6)     Petitions that do not conform to these instructions will be returned with a notation as to the deficiency.

## PETITION

(1)     Name and location of court, which entered the judgment of conviction, challenged, 22nd

### JUDICIAL DISTRICT COURT, COVINGTON, LA.

(2)     Date of judgment of conviction: **December 3, 2010**

(3).    Length of sentence: **Life in prison without benefit of probation parole or suspension.**

(4)     Nature of offense involved (all counts): **Second Degree Murder** (La. R.S. 14:30.1)

(5)     What was your plea?   (Check one)

   (a) Not guilty   ( X. )

   (b) Guilty        (   )

   (c) Not guilty and not guilty by reason of insanity (   )

If you entered a guilty plea to one or more counts and not guilty to other counts, give details.

   (d) Name and address of the lawyer representing you at your plea (If you had no lawyer, please indicate)

     N/A

   (e) Was your lawyer appointed (   ) or hired (   )?  (Check One)

(6)   .   Kind of trial:   (Check one)

   (a) Jury       ( X. )

   (b) Judge only (   )

2

(c) Name and address of the lawyer who represented you at trial:

Martin Regan, 2125 St Charles Ave New Orleans, LA 70130

(d) Was the lawyer appointed (  ) or hired  (  X ) (Check one)

(7)      Did you testify at trial?  Yes ( X  )  No (  )

(a) Give the name and address of the lawyer who represented you at your sentencing   for the conviction being attacked herein: Rachel M. Yazbeck, 818 Howard Avenue, Ste 305, New Orleans, LA 70113

(b) Was the lawyer appointed (  ) or hired ( X ) (check one)

(8)      Did you appeal from the judgment of conviction?   Yes ( X )  No (  )

(9)      If you did appeal, give the following information: *(Name of Court, Result, Date of Result)*

(a) Citation, docket number, and date of written opinion by the Supreme Court or Court of Appeal (if known):   First Circuit Court of Appeal, Docket number 2011-KA-0997, Conviction and Sentence Affirmed on February 10, 2012.

(b) Name and address of lawyer representing you on appeal:

Frank Sloan, 948 Winona Drive Mandeville, LA 70471

(c) Was the lawyer appointed ( X ) or hired (  )  (Check one)

(10)     Other than a direct appeal from the appeal from the judgment of conviction and sentence, have you previously filed any application for post-conviction relief with respect to this judgment in any state or federal court?  Yes(  ) No ( X )


## GROUNDS FOR RELIEF

State concisely the facts supporting your claim that you are being held unlawfully. If necessary, you may attach extra pages stating additional claims and supporting facts.  Do not argue points of law.

(Remember that you must state the FACTS upon which your complaints about your conviction are based.  MERE CONCLUSORY ALLEGATIONS WILL NOT SUFFICE.)

**Please see attached brief and exhibits.**

3.

## REPETITIVE APPLICATIONS

The above claims may not provide grounds for relief if any of the following applies to you:

(1)      Unless required in the interest of justice, any claim for relief, which you fully litigated in an appeal, shall not be considered.

(2)      Any claim of which you had knowledge and inexcusably failed to raise in the proceeding leading to conviction may be denied by the court.

(3)      Any claim in which you raised in the trial court and inexcusably failed to pursue on appeal may be denied by the court.

(4)      A successive application may be dismissed if it raises a new or different claim.

(5)      A successive application may be dismissed if it raises a new or different claim that was inexcusably omitted from a prior application.

This application will provide space for you to explain the reasons why you failed to urge the claim on appeal, or failed to include the claim in a prior application.

## CLAIM[S]

(a) Supporting FACTS (tell your story briefly without citing cases or law):

See attached memorandum

(b) List names and addresses of witnesses who could testify in support of your claim if you cannot do so, explain why:
   a. Walter Kott, Jr. – Louisiana State Penitentiary
   b. Papillon Anderson – 1304 Champgne St, Covington, LA. 70433
   c. Richard Sebatier – address provided upon receipt
   d. Benjamin Sanders - 201 St. Charles Avenue, Suite 2420, New Orleans, Louisiana 70170.
   a. Frank DeSalvo - 829 Baronne Street, New Orleans, LA 70113

**We reserve the right to add witnesses after they are located.**

(c)      If you failed to raise this ground in the trial court prior to conviction on appeal or in a prior application, explain why. Note the proper venue in prior proceedings.

(d)      Supporting FACTS (tell your story briefly without citing cases or law):

See attached memorandum

A. Do you have in state or federal court any petition or appeal now pending as to the judgment challenged?    Yes ( )    No ( X )

If "yes", name the court:

4

B. Do you have any future sentence to serve after you complete the sentence imposed by the judgment challenged? Yes ( )     No ( X )

(1)    If so, give name and location of court which imposed sentence to be served in the future:

_____

_____

_____

(2)    Give date and length of sentence to be served in the future:

_____

(3)    Have you filed, or do you contemplate filing, any petition attacking the judgment, which imposed the sentence to be served in the future?     Yes ( X )          No ( )


        **WHEREFORE,** petitioner prays that the Court grant petitioner relief to which he may be

entitled.


                                    RACHEL M. YAZBECK (Bar # 31371)
                                    *Attorney at Law*
                                    818 Howard Avenue, Ste. 305
                                    New Orleans, LA 70113
                                    Telephone: (504) 586-8008
                                    Fax:    (504) 586-8003


5

IN THE
TWENTY-SECOND JUDICIAL DISTRICT COURT
PARISH OF ST. TAMMANY
STATE OF LOUISIANA

Docket No. 378-041
Honorable Richard Swartz, Judge Presiding

State ex. rel., WALTER A. KOTT, JR.
Petitioner

VERSUS

N. BURL CAIN, Warden
Louisiana State Penitentiary
Respondent

APPLICATION FOR
POST-CONVICTION RELIEF

Title 31-A
Louisiana Code of Criminal Procedure

Petitioner Requests an Evidentiary Hearing

Respectfully Submitted:

LAW OFFICE OF RACHEL M. YAZBECK

RACHEL M. YAZBECK (31371)
818 Howard Avenue, Suite 305
New Orleans, Louisiana 70113
Telephone:   (504) 586-8008
Facsimile:   (504) 586-8003
Counsel for Petitioner,
Walter A. Kott, Jr.

6

IN THE
TWENTY-SECOND JUDICIAL DISTRICT COURT
PARISH OF ST. TAMMANY
STATE OF LOUISIANA

Docket No. 378-041
Honorable Richard Swartz, Judge Presiding

State ex. rel., WALTER A. KOTT, JR.
Petitioner

**VERSUS**

N. BURL CAIN, Warden
Louisiana State Penitentiary
Respondent

FILED: _____

DEPUTY CLERK

## PETITION AND ORDER FOR
## WRIT OF HABEAS CORPUS AD TESTIFICANDUM

1.

Petitioner, WALTER A. KOTT, JR. #347318 Walnut 2, respectfully requests the Court to Order the Respondent, N. Burl Cain, Warden, to produce him for an evidentiary hearing pursuant to the Louisiana Code of Criminal Procedure, Article 930(A).

2.

Petitioner is incarcerated in the Louisiana State Penitentiary at Angola, Louisiana and therefore, desires that a Writ of Habeas Corpus Ad Testificandum be issued and directed to N. Burl Cain, Warden, at the Louisiana State Penitentiary, to produce him for an evidentiary hearing to be held at the 22nd Judicial District Court, Parish of St. Tammany, on the _____ day of _____, 2013 at _____ o'clock _____ m.

_____
JUDGE

7

IN THE
TWENTY-SECOND JUDICIAL DISTRICT COURT
PARISH OF ST. TAMMANY
STATE OF LOUISIANA

Docket No. 378-041
Honorable Richard Swartz, Judge Presiding

State ex. rel., WALTER A. KOTT, JR.
Petitioner

VERSUS

N. BURL CAIN, Warden
Louisiana State Penitentiary
Respondent

FILED: _____

DEPUTY CLERK

## ORDER

Considering the foregoing;

IT IS ORDERED that a Writ of Habeas Corpus Ad Testificandum be issued on the foregoing Petition and be directed to N. Burl Cain, Warden, Louisiana State Penitentiary, to produce the person of WALTER A. KOTT, JR. #347318 Walnut-2, for an evidentiary hearing to be held at the 22nd Judicial District Court, Parish of St. Tammany, on the _____ day of _____, 2013 at _____ o'clock ____ m.

THUS DONE AND SIGNED this _____ day of _____, 2013.

_____
JUDGE

8

**TABLE OF AUTHORITIESCases**

*Aka v. Oklahoma*, 470 U.S. 68, 71, 105 S.Ct. 1087 (1985) ........................................ 20
*Alcorta v. Texas*, 355 U.S. 28, 78 S. Ct. 103 (1957) ................................................. 33
*Arizona v. Youngblood*, 109 S.Ct. 333, 448 U.S. 51 (1988) ...................................... 29
*Arizona v. Youngblood*, 109 S.Ct. 333, 448 U.S. 51, 102 L.Ed.2d  281, 57 USLW 4013 (U.S. Ariz.
  1988) ........................................................................................................ 13
*Berger v. United States*, 295 U.S. 78, 88 (1935) ..................................................... 32
*Blake v. Kemp*, 758 F.2d 523 (11th Cir. Ga. 1985), cert. denied, 474 U.S. 998 (1985) ......... 21
*Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194 (1963) ........................................ 28
*California v. Trombetta*, 467 U.S. 479, 488 (1984) .................................................. 12
*Connelly v. Colorado*, 479 U.S. 157, 167, 107 S.Ct. 515, 522 (1986) ........................ 13, 30
*Cowley v. Stricklin*, 929 F.2d 640 (11th Cir. Ala. 1991) ............................................ 20
*Darden v. Wainwright*, 477 U.S. 168, 182, 106 S.Ct. 2464, 2472 (1986), ...................... 35
*Dawson v. Delaware*, 503 U.S. 159, 179 (1992) .................................................... 18
*Derden v. McNeel*, 938 F.2d 605, 610 (5th Cir. 1991) ............................................. 35
*Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763 (1972) ...................................... 33
*Graham v. Florida*, 560 U.S. 48, 130 S. Ct. 2011 (2009) .......................................... 24
*Kennedy v. Louisiana*, 554 U.S. 407, 128 S.Ct. 2641 (2008) ..................................... 23
*Kordenbrock v. Scroggy*, 919 F.2d 1091 (6th Cir. Ky. 1990), cert. denied, 499 U.S. 970 (1991)20
*Kyles v. Whitley*, 514 U.S. 419; 115 S. Ct. 1555, 1577 (1995) ................................... 21
*McMann v. Richardson*, 397 U.S. 759, 771, 90 S.Ct. 1441, 1449 (1970) .......................... 10
*Migliore v. U.S.*, 409 F.2d 786 (5th Cir, Fla. 1969) ............................................. 13, 29
*Miller v. Alabama*, 132 S. Ct. 2455; 183 L. Ed. 2d 407 (2012) .................................... 23
*Mooney v. Holohan*, 294 U.S. 103, 55 S. Ct. 340 (1935) .......................................... 32
*Moore v. Johnson*, 185 F.3d 244, 261 (5th Cir. 1999) .............................................. 19
*Napue v. Illinois*, 360 U.S. 264, 79 S. Ct. 1173 (1959) ........................................... 33
*Nealy v. Cabana*, 764 F.2d 1173, 1177 (5th Cir. 1985) ............................................ 11
*Old Chief v. United States*, 519 U.S. 172, 117 S. Ct. 644 (1997) ................................ 17
*Powell v. Alabama*, 287 U.S. 45, 68-69, 53 S.Ct. 55, 63-64 (1932) ............................... 10
*Pyle v. Kansas*, 317 U.S. 213, 216 (1942) ............................................................. 32
*Roper v. Simmons*, 543 U.S. 551, 560, 125 S.Ct. 1183 (2005) .................................... 23
*Sanders v. Ratelle*, 21 F.3d 1446, 1456 (9th Cir. 1994) ........................................... 11
*Scott v. Mullin*, 303 F.3d 1222 (10th Cir. Okla. 2002) ............................................. 32
*Smith v. McCormick*, 914 F.2d 1153 (9th Cir. Mont. 1990) ....................................... 21
*State v. Bertrand*, 6 So.3d 738 (La. 2009) ........................................................... 22
*State v. Clark*, 387 So.2d 1124, 1129 (La. 1980) .................................................... 20
*State v. Forei*, 447 So.2d 1265 (La. App. 1 Cir. 1984) ............................................. 11
*State v. Gremillion*, 542 So.2d 1074 (La. 1989) ..................................................... 15
*State v. Howard*, 859 So.2d 936 (La. App. 2 Cir. 10/31/03) ....................................... 18
*State v. Interiano*, 868 So. 2d 9 (La. 2004) .......................................................... 22
*State v. Knapper*, 579 So.2d 956 (La. 1991) ......................................................... 32
*State v. Muschkatt*, 706 So.2d 429 (La. 1998) ...................................................... 22
*State v. Rochon*, 75 So.3d 876 (La. 2011) ........................................................... 22
*State v. Sepulvado*, 25 So.3d 899 (La. App. 2 Cir. 10/28/09) ..................................... 19
*State v. Simmons*, 443 So.2d 512, 516 (La. 1983) .................................................. 13
*State v. Van Winkle*, 658 So.2d 198 (La. 1995) ..................................................... 15
*State v. Vigee*, 518 So.2d 501 (La. 1988) ............................................................ 15
*State v. Williams*, 575 So.2d 452 (La. App. 4 Cir. 1991) .......................................... 34
*State v.Marshall*, 660 So.2d 819 (La. 1995) ......................................................... 33
*Strickland v. Washington*, 466 U.S. 668; 104 S. Ct. 2052 (1984) ................................ 10
*Strickler v. Greene*, 527 U.S. 263, 281-82, 119 S.Ct. 1936 (1999) ............................... 28
*Taylor v. Kentucky*, 436 U.S. 478, 98 S.Ct. 1930 (1978) .......................................... 21
*Tennessee v. Bane*, 510 U.S. 808 (1993) ............................................................. 18
*United States v. Bagley*, 473 U.S. 667, 105 S.Ct. 3375 (1985) .................................... 21
*United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375 (1985) .............................. 29
*United States v. Bryant*, 439 F.2d 642, 142 U.S. App. D.C. 132 (1971) .......................... 30
*United States v. Chrismon*, 965 F.2d 1465, 1469 (7th Cir. 1992) ................................ 14
*United States v. Cronic, Id.* 466 U.S. 648; 104 S. Ct. 2039 at 2048 (1984) ...................... 15
*United States v. Gaddy*, 532 F.3d 783, 788 (8th Cir. 2008) ....................................... 14
*United States v. Gaddy*, 532 F.3d 783, 788 (8th Cir. Iowa 2008) ................................. 30

*United States v. Meros*, 866 F.2d 1304, 1309 (11th Cir. Fla. 1989) ............................................ 29

*Washington v. Texas*, 388 U.S. 14, 87 S.Ct.1920, 18 L.Ed.2d 1019 (1967) ................................ 15

*Woodson v. North Carolina*, 428 U.S. 280, 96 S. Ct. 2978 (1976) ............................................... 24

**Statutes**

La RS 14:30.1 ....................................................................................................................................... 8

La. C.Cr.P. Art. 14:30.1 .................................................................................................................... 22

La. C.Cr.P. Art. 924 ............................................................................................................................. 8

La. C.Cr.P. Art. 930.3(1) ..................................................................................................................... 9

La. C.E. 403 ......................................................................................................................................... 18

La. C.E. 404B(1) ................................................................................................................................. 18

La. R.S. 14:14 ...................................................................................................................................... 16

La. R.S.14:15(1) ................................................................................................................................... 16

LSA-R.S. 14:31.1 .................................................................................................................................. 9

LSA-R.S. 14:32 .................................................................................................................................... 27

**Constitutional Provisions**

5th, 6th, 8th, and 14th Amendment rights under the United States Constitution ........................ 37

Article 1, Section 13 La Const. ......................................................................................................... 10

La. Const. Art. 1 Section 16 ............................................................................................................. 15

Louisiana's Constitution 1 Section 20 ............................................................................................. 21

LSA-Const. Art. I, Section 22 ............................................................................................................ 7

LSA-Const. Art. V, Section 16 ........................................................................................................... 7

U.S. Const. Amend. 6 ......................................................................................................................... 15

U.S.C.A. Const. Amend. 5, 14. ......................................................................................................... 11

United States Eighth Amendment ..................................................................................................... 21

US Const. Amendment 6 .................................................................................................................... 10

**IN THE**
**TWENTY-SECOND JUDICIAL DISTRICT COURT**
**PARISH OF ST. TAMMANY**
**STATE OF LOUISIANA**

Docket No. 378-041
Honorable Richard Swartz, Judge Presiding

State ex. rel., WALTER A. KOTT, JR.
**Petitioner**

**VERSUS**

N. BURL CAIN, Warden
Louisiana State Penitentiary

Respondent

FILED:_____

DEPUTY CLERK

## MEMORANDUM IN SUPPORT OF
## POST-CONVICTION RELIEF

### Petitioner Requests an Evidentiary Hearing

NOW INTO COURT, comes WALTER A. KOTT, JR., through undersigned counsel, who respectfully submits the following Memorandum in Support of his Application for Post-Conviction Relief, and respectfully moves this Honorable Court to grant him relief for the following premises of law in support of his claims below:

Petitioner specifically reserves the right to supplement this petition himself, by an attorney, or both with additional legal arguments and relevant facts in support thereof, including facts developed, should further records or evidence be discovered.

### Petitioner Requests an Evidentiary Hearing

La. Code of Criminal Procedure, Article 930(A) provides in pertinent part:

"An evidentiary hearing for the taking of testimony of other evidence shall be ordered whenever there are questions of fact which cannot properly be resolved pursuant to Articles 928 and 929."

Petitioner submits that there are factual matters in dispute that cannot be resolved on the face of a cold record. Petitioner submits that evidentiary hearing is necessary to resolve the factual matters in contention by submitting evidence and taking live testimony from witnesses to prove his claims. Therefore, in accordance with Article 930(A), petitioner respectfully requests

11

an evidentiary hearing.

Petitioner respectfully moves this Honorable Court to grant him relief for the following premises of law in support of his claims below:

### STATEMENT OF JURISDICTION

Jurisdiction is properly vested in this Court in accordance with LSA-Const. Art. I, Section 22; LSA-Const. Art. V, Section 16; and La. C.Cr.P. Art. 924, et seq.

### STATEMENT OF THE CASE

On November 29, 2004, Mr. Kott was charged by indictment in the Twenty-Second Judicial District Court (Docket No. 378-041) in the Parish of St. Tammany of Second Degree Murder under the Louisiana Revised Statute Article 14:30.1. After a long bout with attempts to obtain evidence through discovery, the trial commenced on November 29, 2010. Judgment was rendered by a twelve person jury against Mr. Kott on December 3, 2010, finding him guilty of second degree murder. Mr. Kott was sentenced to the mandatory life sentence at hard labor without benefit of parole, probation, or suspension of sentence.

On November 9, 2011, Mr. Kott appealed to the First Circuit Court of Appeal claiming three assignments of error; (1) The ruling that the consent to search was voluntarily given by the defendant was an erroneous interpretation or application of the constitution or laws of the United States and the State of Louisiana; (2) The Trial Court's decision conflicts with decisions of the Louisiana and United States Supreme Courts; and (3) The Trial Court's admission of prior bad acts during the State's rebuttal was an erroneous interpretation or application of the constitution or laws of the United States and the State of Louisiana. The Trial Court's decision conflicts with decisions of both the Louisiana and United States Supreme Courts. Petitioner's conviction and sentence were affirmed on February 10, 2011 (Docket No. 2011-KA-0997).

On February 24, 2012, application for rehearing was filed. A Limited Re-Hearing was granted and ruled upon on May 4, 2012. On June 1, 2012, a Writ of Certiorari was filed to the Louisiana Supreme Court. The Louisiana Supreme Court denied relief on November 21, 2012. (Docket No. 2012-K-1221; Panel of JTK, BJJ, JPV, JLW, GGG, MRC).

### STATEMENT OF FACTS

On January 29, 2004, at approximately 11:00-11:30 a.m., the Slidell Police Department received a 911 emergency call from Walter Kott (hereinafter "defendant") seeking emergency

12

medical assistance for a young woman, Rebecca Roshto, who was unresponsive while trying to wake her. After police and paramedics arrived, attempts were made to revive Ms. Roshto, to no avail. After it was determined by police that Ms. Roshto's death may have been the result of an overdose, petitioner was questioned and searched. Police found prescription drugs upon his person (Delaudid and Lorcet 10) which at the time were unaccounted for. It was later established that the drugs found on petitioner were prescribed by his physician. Petitioner was handcuffed, placed in the police car, and transported to the Police Department and interrogated by police for over eight hours concerning Ms. Roshto's death. Contrary to that stated by the police, Kott was arrested as he was detained, handcuffed and unable to leave.

Throughout the questioning by police, petitioner explained that he had received a phone call from Ms. Roshto (a known drug addict) who wanted to stop by to visit. Petitioner, also a drug addict, was high on his own prescribed drugs and welcomed Ms. Roshto's company. Defendant was at the time injecting up to 4 Dilaudid every two to three hours. His accounting of the entire incident was that he remembered vaguely awaking only to take another injection of his prescribed drugs. Defendant never realized that Ms. Roshto was unresponsive until his daughter, Catherine (Rena) Boyer, attempted to awaken Ms. Roshto at approximately 10:00-10:30 a.m. Petitioner was tried and convicted of second degree murder based on his statements/confession(s) which were illegally obtained.

Petitioner presents herein numerous errors of constitutional magnitude resulting in an unconstitutional conviction and sentence. Petitioner presents claims of ineffective assistance of counsel and prosecutorial misconduct. Petitioner further presents that application of LSA-R.S. 14:31.1 Sections (3) and (4) which mandates a mandatory life sentence without parole for a non-violent (overdose death) offense is unconstitutional as applied.

### REASONS FOR GRANTING RELIEF

Petitioner avers that his conviction was obtained in violation of the Constitution of the United States and the State of Louisiana. La. C.Cr.P. Art. 930.3(1). The Court should grant post conviction relief in this case as his conviction resulted in a miscarriage of justice. In this application, petitioner presents numerous actions by the State which were prejudicial to the substantial rights of the accused resulting in an unfair trial, and if not for defense counsel's unprofessional errors, there is a reasonable probability that the result of the proceeding would have

been different.

Justice must now be manifested, and must not be denied because Mr. Kott was denied justice. The State withheld evidence from testing by claiming it was missing and the State failed to produce a chain of custody on this crucial evidence. There were numerous hearings regarding this evidence with rulings from the Court ordering the State to produce same which were ignored. Again, petitioner submits that if not for the State's unlawful actions and defense counsel's failures, there is more than a reasonable probability that the outcome would have been different. Defense counsel failed to follow through on numerous issues leaving Mr. Kott without a defense resulting in ineffective assistance of counsel. Mr. Kott was denied justice and his finding of guilt was contrary to well-settled issues of federal law as determined by the United States Supreme Court.

## LAW AND ARGUMENT

### ERROR ONE

### DID DEFENSE COUNSEL RENDERED UTTERLY INEFFECTIVE ASSISTANCE PRIOR TO AND DURING TRIAL?

A defendant has a constitutional right to effective assistance of counsel which is guaranteed by the Sixth Amendment of the United States Constitution and Article 1, Section 13 of the Louisiana Constitution of 1974. The standard of review for evaluating such constitutional claims as ineffective assistance of counsel was established by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668; 104 S. Ct. 2052 (1984).

To prevail on an ineffective assistance of counsel claim according to the *Strickland* standard, a petitioner must demonstrate that: "(1) counsel's performance was deficient, and (2) counsel's deficient performance prejudiced the outcome of the trial."

"[t]he Court must...determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland* at 690, 104 S.Ct. 2052. The second prong of the *Strickland* standard requires the petitioner to show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*, at 2068. Furthermore, the *Strickland* Court determined that "a reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*, at 2068.

There can be no doubt that had defense counsel performed adequate pre-trial investigation,

14

discovery, interviewed and called witnesses, and then properly prepared and presented petitioner's defense and placed the State's case to meaningful adversarial testing, the outcome would have been different. Petitioner avers that defense counsel's performance fell woefully short of the range of competency demanded of attorneys in criminal cases enunciated in *McMann v. Richardson*, 397 U.S. 759, 771, 90 S.Ct. 1441, 1449 (1970).

The question of ineffective assistance of counsel is a cumulative one. It is not proper to divide each issue up in an effort to "conquer" it; rather, this Court must review the totality of the circumstances and the cumulative effect of defense counsel's lapses. *Strickland v. Washington, supra.* Therefore, all circumstances of the trial must be viewed in their cumulative context, rather than in isolation.

A. Defense counsel failed to perform proper pre-trial discovery and investigation.

Defense counsel must engage in a reasonable amount of pre-trial investigation, and "at a minimum....make an independent investigation of the facts and circumstances of the case". *Nealy v. Cabana,* 764 F.2d 1173, 1177 (5th Cir. 1985). In general, defense counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. *Strickland,* 466 U.S. 668; 104 S. Ct. 2052. See *Sanders v. Ratelle,* 21 F.3d 1446, 1456 (9th Cir. 1994)("[c]ounsel must, at a minimum, conduct a reasonable investigation enabling him to represent his client.").

Defense counsel cannot sufficiently explain or justify his unaccountable failure in performing adequate discovery and investigation to locate the blood evidence and then assure that the blood evidence was tested in a timely manner. Motions were filed and hearings held but those motions have no value if defense counsel fails to follow through. (Exhibit A) This evidence was crucial to the defense. The evidence was the heart of petitioner's defense.

The blood sample was drawn from petitioner on the day of the incident. (January 29, 2004). The blood sample bears Slidell Police Department evidence number 65304. Defense counsel was aware of this evidence and its importance to the defense however, the first time the blood suppression issue is in the record is on February 2, 2005 in a bond reduction motion. The State repeatedly proffered excuses to preclude this evidence from being tested and sadly, defense counsel failed to do anything about it. (Exhibit B) This failure resulted in a 39 month delay which resulted in the toxins within the blood sample diminishing and petitioner's defense was lost.

15

(Exhibit C). If physical evidence has been lost or destroyed by the State, the factors to be considered regarding whether a defendant's right to due process has been prejudiced are: (1) The materiality of the evidence to guilt or punishment; (2) Prejudice to the defendant resulting from loss or destruction; and (3) Good or bad faith on part of the State. *State v. Foret*, 447 So.2d 1265 (La. App. 1 Cir. 1984); U.S.C.A. Const. Amend. 5, 14.

Duty to preserve evidence must be limited to evidence that might be expected to play a significant role in the defense. *California v. Trombetta*, 467 U.S. 479, 488 (1984). In *Trombetta*, the Court found no due process violation because the chances were low that the evidence would have been exculpatory. *Id* at 489. The blood evidence in the instant case was crucial in proving the petitioner's intoxication at the time of the incident as well as Petitioner's initial contact with the Slidell Police Department. Unlike *Trombetta*, the chances are very high that the evidence would have been a powerful piece in Mr. Kott's defense.

Unfortunately, it was too late and the toxins within the blood evidence had diminished to 9.5 nanograms per milliliter. (Exhibit D) Petitioner suffered prejudice in two ways. It resulted from the State intentionally withholding the evidence, and defense counsel's ineffective assistance in failing to assure chain of custody, failing to assure that the evidence was located, acquired, and tested in a timely manner. Petitioner was prescribed 965 4mg Dilauded (Hydromorphone) in additional 1440 of Lorcet 10 (Hydrocodone) pills within a 9 week period (Exhibit E) Equalling an allotment of 15 Dilauded and 22 Lorcet 10's per day. It is untenable to argue that the blood evidence would not have shown a high level of toxins had the blood evidence been submitted for testing in a timely manner. During hearing held pertinent to this issue, the prosecutor questioned petitioner stating:

> "We have heard no testimony during the course of this hearing how reliable this test result is based on the circumstances of the degradation of the sample. The passage of time, the amount of the sample. We have heard no testimony. You would agree with that?" (See Exhibit D, pg. 518)

Moreover, the prosecution was aware that the defense had no expert to provide the testimony necessary to prove his claims. It must be remembered that Motion for Funds to Acquire Expert Assistance was filed and granted. (Exhibit F) The Court allotted $5000.00 but defense counsel failed to acquire expert assistance. Had defense counsel used the funds allotted and acquired the expert, there would have been testimony regarding the reliability of the test result, chain of custody, and degradation of the sample over the 39 month passage of time. It is pertinent

16

to note that during hearing of Motion to Recuse the District Attorney's Office, the Trial Judge himself admonished defense counsel for his failure to follow through on the testing of the blood evidence over extended period of time. The Trial Judge informed defense counsel that this issue had come before the Court at least three times and he had given counsel the benefit during this time of looking for a crime lab all over this nation. (Exhibit G) Petitioner submits that the Trial Judge's comments support his allegation that defense counsel was utterly ineffective.

Petitioner had to deal with the State's misconduct of withholding the blood evidence from testing, but defense counsel's failure to assure location of the blood evidence, establish chain of custody, assure that it was tested in a timely manner, and acquire the assistance of an expert to assist with preparation and presentation of the defense. The blood evidence was crucial in proving Mr. Kott's mental incapacity at the time of the alleged offense. Petitioner submits that he had a right to test this evidence and a right to have an independent chemical analysis performed on the blood evidence. *Arizona v. Youngblood*, 109 S.Ct. 333, 448 U.S. 51, 102 L.Ed.2d 281, 57 USLW 4013 (U.S. Ariz. 1988); *Migliore v. U.S.*, 409 F.2d 786 (5th Cir. Fld. 1969). Petitioner submits that if not for defense counsel's unprofessional errors, there is more than a reasonable probability that the result of the proceeding would have been different.

Another issue of contention was the petitioner's illegal interrogation and the means the two involuntary statements were obtained. At the time petitioner was taken into custody/arrested, petitioner was highly intoxicated and during questioning subsequently suffered major withdrawals. The police officers performing the questioning not only ignored his heavy intoxication, but they ignored the withdrawals, and then used the withdrawals to coerce not one, but two involuntary statements by promising him his medication to alleviate the withdrawals. The police officers knowingly violated Mr. Kott's constitutional rights. It is pertinent to remember that the alleged victim's mother testified regarding the conduct of these officers. (Exhibit H).

Our current jurisprudence subscribes as a matter of State law to the rule of *Connelly v. Colorado*, 479 U.S. 157, 167, 107 S.Ct. 515, 522 (1986), "that coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." *Connelly* has modified Louisiana's jurisprudential rule that intoxication may negate the voluntariness of a statement if it is of such a

degree that it renders the defendant "unconscious of the consequences of what he is saying". *State v. Simmons*, 443 So.2d 512, 516 (La. 1983).

After *Connelly*, diminished mental capacity, which may result from intoxication, remains relevant to the voluntariness of a statement only to the extent that it "made mental or physical coercion by the police more effective". *United States v. Chrismon*, 965 F.2d 1465, 1469 (7th Cir. 1992); see also *United States v. Gaddy*, 532 F.3d 783, 788 (8th Cir. 2008)(test is whether these mental impairments caused the defendant's will to be overborne). Petitioner avers that he was intoxicated to the degree that he was "unconscious of the consequences of what he is saying" and petitioner's statements were the product of a will overborne by police coercion. Petitioner further avers that his diminished mental capacity resulting from heavy intoxication made mental or physical coercion by the police more effective.

It is pertinent to remember in Corporal Kahrs' case narrative, he states that Mr. Kott could not give consistent and coherent details when he arrived at the scene. (Exhibit I)  Mr. Kott was transported to the Slidell Police Department within 15 minutes of the 911 call being placed.  It is untenable to argue that Mr. Kott had the requisite mental capacity to give a voluntary statement/confession when he was so intoxicated that he could not give consistent and coherent details.  The conduct of the police officers was reprehensible and the record supports petitioner's allegations.  Defense counsel failed to properly challenge the unlawful actions of the police officers when he had the facts and/or evidence to do so.

Additionally, the syringe presented by the State was located far away from the scene.  No scientific evidence was presented linking petitioner or the alleged victim to the syringe and this evidence should have been suppressed.  The syringe was the only physical evidence in the courtroom alleged to have been used by petitioner.  The syringe was paraded before the jury throughout the duration of the trial.  Defense counsel failed to properly investigate and challenge the admission of this evidence as there was nothing linking this evidence to the scene.  Again, acquiring expert assistance was crucial regarding this issue who could have testified that the syringe proffered would not hold 4 Dilaudid.  If not for defense counsel's failures, there is a reasonable probability that this evidence would have been suppressed.

The blood evidence in this case was Mr. Kott's defense.  The blood evidence was crucial in proving Mr. Kott's mental incapacity at the time of the alleged offense and his mental incapacity

when questioned by the police. Again, petitioner avers that it was crucial for defense counsel to locate and expedite testing and acquire the assistance of an expert. An expert could have testified pertinent to the reliability of the test result, chain of custody, and degradation of the sample over the 39 month passage of time. Petitioner would have proven his mental incapacity resulting from his heavy intoxication at the time of questioning wherein the two involuntary statements were obtained. Petitioner submits that if not for defense counsel's failure to investigate, perform discovery, and acquire expert assistance, there is a reasonable probability that his statements would have been suppressed; thus there is more than a reasonable probability that the outcome of the proceedings would have been different.

Petitioner made known to the Court through numerous letters that he was sorely aggrieved by defense counsel's failures through repeated instances of not appearing in court and diligently obtaining the blood evidence. (Exhibit J). The type of breakdown in the adversarial process that implicates the Sixth Amendment is not limited to counsel's performance as a whole; specific errors and omissions may be the focus of a claim of ineffective assistance as well. *United States v. Cronic, Id.* 466 U.S. 648; 104 S. Ct. 2039 at 2048 (1984). Mr. Kott's need for pre-trial investigation was essential for effective assistance of counsel.

Defense counsel's errors resulted in the denial and deprivation of due process, right to a fair impartial trial, the right to present a defense, and the right to effective assistance of counsel violative of his 5th, 6th, 8th, and 14th Amendment rights under the United States Constitution mandating reversal. Now, this Court is left with the onerous task of deciding confidently how the State's case would have stood up against a competent, prepared lawyer.

### B. Failure to prepare and present a defense.

Perhaps most fundamental to any criminal case is whether the person on trial actually committed the offense charged. In this case, Rebecca Roshto died from Poli-Substance Drug Toxicity of Dilauded, Soma, and Xanax. (Exhibit K) Her death is a tragedy; however, petitioner submits that he is not guilty of second degree murder. All evidence presented was circumstantial.

The Sixth Amendment of the United States Constitution guarantees the right to present a defense. U.S. Const. Amend. 6; La. Const. Art. 1 Section 16; *Washington v. Texas*, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967); *State v. Van Winkle*, 658 So.2d 198 (La. 1995); *State v.*

*Gremillion*, 542 So.2d 1074 (La. 1989); *State v. Vigee*, 518 So.2d 501 (La. 1988). As a result of defense counsel's failure to act as counsel demanded by the Sixth Amendment to the United States Constitution, petitioner was denied the Constitutional right to present a defense. Petitioner avers that competent defense counsel would have at least properly performed pre-trial discovery and investigation, interviewed and called witnesses, used the available evidence and witnesses, secured a toxicology, psycho-pharmacology, and/or addictionology expert, and then combine all of the facts, evidence, and witnesses to properly prepare and present a viable defense.

Like Rebecca Roshto, petitioner suffered from the disease of drug addiction. While Petitioner denies administering any drugs to the victim the defense of intoxication was available to him. Where the production of the intoxicated or drugged condition has been involuntary, and the circumstances indicate this condition is the direct cause of the commission of the crime, the offender is exempt from criminal responsibility. La. R.S.14:15(1). As a result of his severe addiction, which was enabled and furthered by the Schedule II Controlled Dangerous Substance illegally prescribed by Dr. Sebatier, petitioner submits that his condition was involuntary as he was powerless over his addiction.

A similar defense, that of insanity, was also available to defense counsel and produces the same result if proven by the defendant. Under Louisiana law, the burden was upon petitioner to prove his insanity. "If the circumstances indicate that because of a mental disease (severe addiction) or mental defect the offender was incapable of distinguishing between right and wrong with reference to the conduct in question, the offender shall be exempt from criminal responsibility". La. R.S. 14:14.

As a result of his severe addiction and heavy intoxication at the time of the alleged offense, petitioner submits that he was incapable of distinguishing between right and wrong with reference to the conduct in question. Defense counsel chose to present the defense of intoxication. However, he utterly failed to perform adequate investigation and discovery, and failed to use the available facts, evidence, and witnesses to present this viable defense. Petitioner submits that no matter which of the above defenses was chosen by defense counsel, it was pertinent to acquire expert(s) to assist in preparing and presenting the defense.

Petitioner further submits that it was pertinent to present Dr. Sebatier as a witness. It is untenable to argue that Dr. Sebatier's actions were anything but illegal. Dr. Sebatier was aware of

20.

his actions and there is no plausible reason to prescribe a patient 120 Dilauded and prescribe another 120 the next day. Dr. Sebatier over prescribed on numerous occasions, (Exhibit L) Dr. Sebatier's illegal actions enabled and furthered Mr. Kott's severe addiction which played a major part in this case. Dr. Sebatier later was required to surrender his medical license (Exhibit E)

Defense counsel made no attempt to present Dr. Sebatier, no attempt to present Dr. Sebatier's illegal actions to support petitioner's defense, nor did he present an expert to testify to any or all of the above. As a result of the vast amount of illegally prescribed drugs used by petitioner, he was intoxicated to a degree that he had no culpability.

Petitioner submits that he did not commit second degree murder as he had no intent to kill or commit great bodily harm. Petitioner had no plan or motive, no intent to kill or cause great bodily harm. As a result of his severe addiction and heavy intoxication, which was enabled and furthered by Dr. Sebatier's illegal actions, petitioner's condition was involuntary and he did not know the difference between right and wrong at the time of the alleged offense.

For all that appears from the record, defense counsel inexplicably failed to recognize the significance of, and did not contemplate for the defense, facially exculpatory, demonstrative evidence, and failed to acquire the necessary expert(s) to support the defense. The Court should have no difficulty concluding defense counsel completely failed to subject the State's case to meaningful adversarial testing, and that the representation he provided was equivalent to a constructive denial of counsel. *United States v. Cronic*, 466 U.S. 648, 104 S.Ct. 2039 (1984). Defense "[c]ounsel failed in his duty to bring to bear such skill and knowledge to render the trial a reliable adversarial testing process". *Strickland*, _____ (citing *Powell v. Alabama*, 287 U.S. 45, 68-69, 53 S.Ct. 55, 63-64 (1932). The plethora of errors described above clearly indicates defense counsel was more than just ineffective.

### C. Defense counsel was ineffective for his failure to challenge and seek writs regarding the admission of other crimes evidence.

The United States Supreme Court has recognized that other crimes evidence, even when properly admitted, is likely to lead the jury to base its verdict on improper factors. *Old Chief v. United States*, 519 U.S. 172, 117 S. Ct. 644 (1997). Petitioner contends that as a result of other acts/wrongs submitted by the State in a manner contrary to law resulted in an erroneous and prejudicial finding of guilt by the fact finding jurors. What happened here was the same harm which the Court warned against in *Old Chief*.

21

Courts that follow the common-law tradition almost unanimously have come to disallow the prosecution resorting to any kind of evidence of a defendant's evil character to establish a probability of his guilt...The state may not show defendant's prior trouble with the law, specific criminal acts, or ill name among his neighbors, even though such facts might logically be persuasive that he is by propensity a probable perpetrator of the crime. *Id.*

The "other acts/wrongs" unlawfully proffered in this case, heavily bolstered the State's case. Petitioner continues to maintain that this evidence, i.e., testimony by witnesses stating that Petitioner shot them up, was improperly admitted. Moreover, as argued, Rena Boyen's testimony was a result of threat and coercion. The testimonies served only one purpose and that was the purpose that *Old Chief* considered improper – to show that petitioner was a bad man who should be convicted of this crime regardless of the actual evidence.

Petitioner submits that the evidence was not properly admitted under Louisiana law, and its admission violated due process. In order for other crimes evidence to be admitted the State shall provide notice within a reasonable time. La. C.E. 404B(1). The evidence may be admissible after a hearing in order to show proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident. *Id.* However, to be admissible the probative value of the evidence must outweigh the prejudicial effect. La. C.E. 403. For evidence of other crimes to be admissible, the State must prove with clear and convincing evidence that the probative value of the evidence outweighs its prejudicial effect. *State v. Howard*, 859 So.2d 936 (La. App. 2 Cir. 10/31/03).

"[W]hen a state court admits evidence that is 'so unduly prejudicial that it renders the trial fundamentally unfair, the Due Process Clause of the Fourteenth Amendment provides a mechanism for relief.'" *Dawson v. Delaware*, 503 U.S. 159, 179 (1992) (quoting *Tennessee v. Bane*, 510 U.S. 808 (1993)). No hearing was ever conducted regarding the admissibility of the other crimes evidence concerning Shanti Brady (Exhibit M) but only regarding the testimony of Rena Boyen (Exhibit N). The State ambushed defense counsel and defense counsel failed to object and motion for a mistrial. Rather than proving each element of the crime beyond a reasonable doubt with credible evidence, the prosecution proved this case through innuendo and reputation. Petitioner was placed in an impossible situation at trial when the other crimes evidence was admitted and his defense counsel failed to call for a mistrial. The tainted testimony

22

was allowed to be admitted before the jury without challenge. Petitioner continues to maintain that he did not commit second degree murder and the other acts/wrongs presented by the State subjected petitioner to severe prejudice resulting in an unfair trial. It is clear that the probative value of the other crimes testimony was outweighed by the prejudicial effect.

### D. Counsel failed to present a defense of negligent homicide, and request a special jury instruction on same.

Petitioner submits that the facts and circumstances of this case suggest a defense of Negligent Homicide. So, for defense counsel to disregard this factual defense and then not request a special jury instruction for same is ineffective assistance. Indeed, the very evidence as a whole shows the magnitude of this prejudice. Therefore, petitioner suggests counsel's failure was not a tactical decision, but prejudicial error. Petitioner submits that there are other cases involving similar circumstances which resulted in conviction of negligent homicide. See *State v. Sepulvado*, 25 So.3d 899 (La. App. 2 Cir. 10/28/09). In both cases, the defendants tendered pleas of guilty to a lesser charge. Petitioner was never offered a plea to a lesser verdict and petitioner contends that this results in the State's overzealous prosecution as well as defense counsel's ineffective assistance.

In *United States v. Cronic*, 839 F.2d 1401 (10th Cir. 1988), the conviction was originally reversed by the Tenth Circuit at 675 F.2d 1126. The Supreme Court then reversed that decision, and the case was sent back down to the district court, which denied relief. Before the Tenth Circuit for the second time, the Court found that trial counsel had completely failed to present the obvious defense of good faith, and also failed to request a jury instruction on good faith, the Court of Appeals saw substantial prejudice and reversed. *Id.*

Akin to *Cronic*, as a result of defense counsel's failures, Mr. Kott effectively had no defense. As argued, defense counsel could have presented intoxication or insanity. He chose intoxication. Defense counsel cannot show any strategic or tactical reasons for having failed in arguing negligent homicide and requesting jury instruction on same. Jurisprudence does not require this Court to "fabricate tactical decisions on behalf of counsel when it appears on the face of the record that counsel made no strategic decisions at all". *Moore v. Johnson*, 185 F.3d 244, 261 (5th Cir. 1999). Defense counsel's failure fell below an objective standard of reasonableness, and that a substantial or significant possibility existed that the verdict of the trier of fact would have been affected.

23

**E. Defense counsel was ineffective for his failure to acquire experts to assist in preparation and presentation of the defense when the motion filed for expert requesting funds was granted.**

Defense counsel failed to timely secure a lab, and an expert (toxicology, psycho-pharmacology, and/or addictionology) who could have testified pertinent to the reliability of the test result, chain of custody, and degradation of the sample over the 39 month passage of time. (Exhibit A) Defense counsel was ineffective when he failed to obtain an independent expert in the fields of toxicology, psycho-pharmacology, and addictionology (substance abuse). Motion to Obtain Funds for Expert was filed by the defense and granted by the Court on March 13, 2006, however, defense counsel failed to acquire these experts when they were crucial to the defense. (Exhibit F)

Petitioner is a drug addict with repeated commitments and has a history of treatment for substance abuse. Moreover, the alleged victim was also a drug addict. Expert assistance and testimony was crucial pertinent to the reliability of the test results of the blood evidence, chain of custody, and degradation of the sample over the 39 month passage of time. Expert assistance and testimony was crucial in analyzing the toxicology results pertinent to Rebecca Roshto and petitioner. Defense counsel's failure to acquire expert assistance when motion for same had been granted was grossly ineffective and substantially prejudiced the defense. Petitioner submits that without expert assistance and testimony, he was deprived of his defense.

The accused is entitled by statute to at least twelve witnesses at the expense of the parish. *State v. Clark*, 387 So.2d 1124, 1129 (La. 1980) (could have summoned a doctor at parish expense). In addition, "...Art. 739 provides a method by which he may apply to the court for additional witnesses." *Id.* at 1129.

In *Ake v. Oklahoma*, 470 U.S. 68, 71, 105 S.Ct. 1087 (1985), the Supreme Court recognized that indigent defendants are entitled to independent experts when their assistance "may well be crucial to the defendant's ability to marshall a defense". *Ake, supra,* 470 U.S. at 80. The Court conducted a Fourteenth Amendment due process analysis, *Id.* at 87, and held that without independent experts, defendants could be denied "meaningful access to justice". *Id.* at 76-77. While jurors may disregard a defendant's testimony or a lawyer's argument, experts assist lay jurors, who generally have no training in scientific or medical matters to make a sensible and educated determination about the contested issues. *Id.* 470 U.S. at 81. By organizing...[data].

24

interpreting in light of their expertise, and then laying out their investigative and analytic process to the jury, the [expert] for each party enables the jury to make its most accurate determination of the issue before them". *Id.* at 81 (emphasis added). See also *Cowley v. Stricklin*, 929 F.2d 640 (11th Cir. Ala. 1991); *Kordenbrock v. Scroggy*, 919 F.2d 1091 (6th Cir. Ky. 1990), cert. denied, 499 U.S. 970 (1991); *Blake v. Kemp*, 758 F.2d 523 (11th Cir. Ga. 1985), cert. denied, 474 U.S. 998 (1985); *Smith v. McCormick*, 914 F.2d 1153 (9th Cir. Mont. 1990).

Jurors do listen to, are influenced by, and rely upon the testimony of such experts and a trial may be fundamentally unfair when a party is left without expert assistance. *Ake*, *supra*, 472 U.S. at 80. Calling experts in this case was pertinent because (1) the results from the toxicology reports were crucial to the defense in suppressing evidence, statements or confession, and (2) crucial in proving petitioner's innocence of the crime charged, and (3) countering the State's case. Had defense counsel acquired the assistance of an expert to assist in preparation and presenting the defense, as well as countering the reports and testimony of State experts, there is more than a reasonable probability that the outcome would have been different.

F.  **Cumulative effect of defense counsel's errors and Conclusion**

In *Taylor v. Kentucky*, 436 U.S. 478, 98 S.Ct. 1930 (1978), the Court accepted the notion that several errors, none of which individually rise[s] to constitutional dimensions, may have the cumulative effect of denying a defendant a fair trial. Indeed, in *Taylor*, the Court reversed a state conviction upon a finding that "the cumulative effect of the potential damaging circumstances of the case violated the Due Process guarantee of fundamental fairness...". In the present case, counsel's performance was deficient prior to and during trial.

The Supreme Court held in *Kyles*, *supra*, that a reviewing court must consider the cumulative effect of all errors together as a whole rather than evaluating each error against the other admissible evidence in order to determine if there is a reasonable probability that the errors complained of might have affected the outcome. *Kyles v. Whitley*, 514 U.S. 419; 115 S. Ct. 1555, 1577 (1995); *United States v. Bagley*, 473 U.S. 667, 105 S.Ct. 3375 (1985).

Defense counsel's actions and/or inactions resulted in denial and deprivation of Due Process, Right to a Fair Impartial Trial, Right to Present a Defense, and the Right to Effective Assistance of Counsel subsequently rendering the trial unfair and unreliable violates his 5th, 6th, 8th, and 14th Amendment rights under the United States Constitution. The deficient representation

provided petitioner by his counsel fell woefully short of the "range of competency demanded of attorneys in criminal cases". See *McMann v. Richardson*, 397 U.S. 759, 90 S. Ct. 1441 (1970). There can be no doubt that had defense counsel provided proper representation, there is more than a reasonable probability that the outcome of the trial would have been different. Combined, the plethora of defense counsel's errors had a "cumulative" effect and reversal of petitioner's conviction and sentence is warranted.

## ERROR TWO

### IS La. C.Cr.P. Art. 14:30.1 IS UNCONSTITUTIONAL AS APPLIED?

Petitioner submits this claim alleging that Louisiana's Second Degree Murder, L.R.S. 14:30.1, which includes Sections (3) and (4) is unconstitutional as applied to him by imposing a mandatory life sentence for a crime which lacks any intent to kill or cause bodily harm, without first allowing the sentencing authority the ability to consider the characteristics of a petitioner and the details of his offense before sentencing him. The statute as applied violates his protected right against cruel and unusual punishment guaranteed by the United States Eighth Amendment, and Louisiana's Constitution 1 Section 20.

As a general matter, a statute is presumed to be constitutional, and the burden of showing otherwise falls to the challenger. *State v. Rochon*, 75 So.3d 876 (La. 2011); *State v. Muschkati*, 706 So.2d 429 (La. 1998). Criminal statutes are given a genuine construction according to the fair import of their words, taken in their usual sense, in context, and with reference to the purpose for the provision. See *State v. Interiano*, 868 So. 2d 9 (La. 2004).

While there is no single procedure for attacking the constitutionality of a statute, it has long been held that the unconstitutionality of a statute must be specially pleaded and the grounds for the claim particularized. The Louisiana Supreme Court has expressed the challenger's burden as a three step analysis. First, a party must raise the unconstitutionality in the trial court; second, the unconstitutionality of a statute must be specially pleaded; and third, the grounds outlining the basis of unconstitutionality must be particularized. *State v. Bertrand*, 6 So.3d 738 (La. 2009).

Petitioner specially pleads in his original application that Louisiana's Second Degree Murder Statute, LSA-R.S. 14:30.1(3) as applied to him, is unconstitutional in that both the United States and Louisiana Constitution's prohibition of cruel and unusual punishment "guarantees individuals the right not to be subjected to excessive sanctions". U.S.C. Amend.8, La. Const.

Section 1-20. Petitioner claims that the imposition of a life sentence without parole for a non-violent offense is an excessive sentence and serves no governmental purpose other than the intentional infliction of pain and suffering.

As originally enacted, Second Degree Murder, L.R.S. 14:30.1 reads as:

"Second degree murder is the killing of a human being:

(1) When the offender has a specific intent to kill or to inflict great bodily harm; or
(2) When the offender is engaged in the perpetration or attempted perpetration of aggravated rape, forcible rape, aggravated arson, aggravated burglary, aggravated kidnapping, aggravated escape, drive-by shooting, armed robbery, or simple robbery, even though he has no intent to kill or to inflict great bodily harm.

Whoever commits the crime of second degree murder shall be punished by life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence.

In 1987, the Louisiana Legislature added section (3) and (4) which further defined the crime of second degree murder to include:

(3) "When the offender unlawfully distributes or dispenses a controlled dangerous substance listed in Schedules I or II of the Uniform Controlled Dangerous Substances Law which is the direct cause of the death of the recipient who ingested or consumed the controlled dangerous substance."

And

(4) "When the offender unlawfully distributes or dispenses a controlled dangerous substance listed in Schedules I or II of the Uniform Controlled Dangerous Substances Law to another who subsequently distributes or dispenses such controlled dangerous substance which is the direct cause of the death of the person who ingested or consumed the controlled dangerous substance."

"In 2004, the amended statute listed only Schedule I and II. In 2010, the Statute was amended once again to read Schedule I through V, or any combination thereof."

In 2010, the burden was lessened and even greater than that of 2004, totally eliminating the specific intent to kill or inflict great bodily harm, or in the perpetration or attempted perpetration of a violent crime that has historically been necessary to convict on second degree murder prior to 1987.

Since that amendment, the United States Supreme Court ruled in *Miller v. Alabama*, 132 S. Ct. 2455; 183 L. Ed. 2d 407 (2012) that the Eighth Amendment's prohibition of cruel and unusual punishment "guarantees individuals the right not to be subjected to excessive sanctions"; *Roper v. Simmons*, 543 U.S. 551, 560, 125 S.Ct. 1183 (2005). That right "flows from the basic precept

27

of justice that punishment for crime should be graduated and proportioned" to both the offender and the offense. Two strands of precedent reflecting the concern with proportionate punishment come together. The first has adopted categorical bans on sentencing practices based on mismatches between the culpability of a class of offenders and the severity of a penalty. See, e.g., *Kennedy v. Louisiana*, 554 U.S. 407, 128 S.Ct. 2641 (2008). Several cases in this group have specially focused on juvenile offenders, because of their lesser culpability. Thus, *Roper v. Simmons* held that the Eighth Amendment bars capital punishment for children, and *Graham v. Florida* concluded that the Amendment prohibits a sentence of life without the possibility of parole for a juvenile convicted of a non-homicide offense. *Graham v. Florida*, 560 U.S. 48; 130 S. Ct. 2011 (2009).

In those decisions, the Court has required sentencing authorities to consider the characteristics of a petitioner and the details of his offense before sentencing him to death. See, e.g., *Woodson v. North Carolina*, 428 U.S. 280, 96 S. Ct. 2978 (1976). Here, the confluence of these two lines of precedent leads to the conclusion that mandatory life without parole for juveniles violates the Eighth Amendment.

The basis of these decisions focuses on the culpability of the petitioner. *Roper* and *Graham* establish that children are constitutionally different than adults for purposes of sentencing. Because juveniles have diminished culpability and greater prospects for reform, ... "they are less deserving of the most severe punishments". Those cases relied on three significant gaps between juveniles and adults. First, children have a "lack of maturity and an underdeveloped sense of responsibility, leading to recklessness, impulsivity, and needless risk-taking". *Roper* at 569. Second, children "are more vulnerable ... to negative influences and outside pressures", including from their family and peers; they have limited "control over their own environment" and lack the ability to extricate themselves from horrific, crime-producing settings. *Id.* And third, a child's character is not as "well formed" as an adult's; his traits are "less fixed" and his actions less likely to be "evidence of irretrievable depravity. *Id.* at 570.

*Roper* and *Graham* emphasized that the distinctive attributes of youth diminish the penological justifications of imposing the harshest sentences on juvenile offenders, even when they commit terrible crimes. In this case we are faced with a different, but very real and seriously diminished culpability. Petitioner, Mr. Kott, at the time of his conviction was a 48 year old man

28

with a long history of severe drug addiction. It should be noted that drug addiction is a disease. Blacks Law Dictionary Abridged Sixth Addition defines Addict: "Any individual who ... is or has been so far addicted that the use of such narcotic drugs as to have lost the power of self-control with reference to his addiction".

It is common knowledge that drug addiction dominates its victims, not only mentally but physically as well. Petitioner claims that because of his long history of addiction, and his heavy use of prescription drugs at the time of the alleged crime, his culpability was reduced to less than that of a juvenile, which merits the same protection from a mandatory sentence of life without parole, without allowing the sentencing judge the necessary discretion to consider petitioner's severe drug addiction and attended characteristics, and from assessing whether the law's harshest term of imprisonment proportionately punishes him before sentencing.

Moreover, petitioner was using drugs illegally prescribed to him by a physician, and this is indeed a circumstance which should be considered. It is untenable that Dr. Sebatier's prescribing excessive amounts of Dilauded is anything but illegal. Dr. Sebatier was aware of his actions and there is no plausible reason to prescribe a patient 120 Dilaudid and prescribe another 120 the next day. The vast amount of prescribed drugs being taken completely incapacitated him and reduced his culpability to a degree lesser than that of a juvenile. In reality, Mr. Kott was intoxicated to a degree that he had no culpability. Dr. Sebatier's illegal actions played a major part in this case.

Mr. Kott had a severe addiction and his level of intoxication at the time of the alleged offense was due to illegally prescribed controlled dangerous substances. The autopsy report states Poli-Substance Drug Toxicity of Dilauded, Soma, and Xanax was the cause of Ms. Roshto's death. (Exhibit K) Petitioner is only accused of providing the Schedule II Dilauded. It would be impossible to detect what sequence the 3 drugs were consumed, thus not proving the direct cause of her death. As a result of how the statute is worded, the judge had no discretion to consider those factors. Persuasively, in the case *sub judice*, the application of the statute leads to absurd results because petitioner had no intent to kill or commit great bodily harm. Petitioner submits that R.S. 14:30.1, which includes Sections (3) & (4) is unconstitutional as applied.

### *History of Petitioner's Drug Addiction.*

In 1984, petitioner admitted himself into DePaul's Hospital in New Orleans, Louisiana to detox from narcotics and spent approximately 15 days of their 28 day program. Petitioner was

discharged due to not being covered by Blue Cross Insurance. Later, in either late 1984 or early 1985, petitioner entered a 3 day detox at Charity Hospital in New Orleans, Louisiana. (record to be furnished upon receipt)

In 1995, from January through June, petitioner entered a 6 month treatment program at the Brantley Baptist Center, 201 Magazine Street, New Orleans, Louisiana 70113, that he successfully completed. That center is owned by the Southern Baptist Theological Seminary, Gentilly Boulevard, New Orleans, Louisiana. Dr. Toby Pittman was the Director and Kaye Bennet was the case worker (clinical intern). (Exhibit O).

Petitioner was able to stay clean until a boating accident in early 2000 when he was treated by Dr. Clinton Sharp. An MRI was performed and his diagnosis was 2 herniated discs and 2 bulging discs. (Exhibit P) Dr. Sharp referred him to a neurosurgeon at Northshore Regional Medical Center. The specialist, Dr. Bert Bratton, after several tests and procedures, diagnosed petitioner with severe sciatic nerve damage and surgery was recommended. Petitioner was unable to keep up with over $500.00 per month Cobra payments for insurance. Therefore, petitioner was unable to have insurance pay for the surgery. Both Dr. Sharp and Dr. Bratton referred him to pain management and petitioner became heavily addicted to narcotics.

Petitioner's addiction controlled him thereafter. Petitioner, with the assistance of the Slidell Substance Center, was allotted a bed at Charity Hospital in November, 2003 to a 5 day detox program. Upon completion of the 5 day detox at Charity Hospital, petitioner visited the Slidell Substance Center while waiting on a bed to become open at Southeastern University Hospital in Mandeville, Louisiana. (Records furnished upon receipt). Mr. Kott was attempted to seek help just 2 short months prior to this incident. Petitioner at this time was desperate for help because his addiction and poverty was ignored by the system.

As a result, petitioner was dependent on drugs to normally function. Due to the pain of his injuries, and the need to frequently increase his medications, petitioner became dependent on very high dosages of his prescribed medications daily. Petitioner visited Dr. Richard Sebatier, who prescribed him 965 4mg of Dilaudid (Hydramorphone) and an additional 1440 of Lorcet 10 (Hydracodone) pills within a 9 week period. (Exhibit L). This is an allotment of 15 Dilaudid and 22 Lorcet 10's per day. As stated above, Dr. Sebatier's actions not only placed his life at risk, but caused recklessness, impulsivity, and needless risk-taking. However, the State has not lodged

charges against Dr. Sebatier even though he was investigated. (Exhibit Q)  Dr. Sebatier eventually surrendered his medical license as a result of this incident. (Exhibit E)  Petitioner's addiction was furthered by receiving prescriptions of the same medications from other doctors to even increase the dosages of 2 to 4 at a time, every 45 minutes to an hour and a half.  (Exhibit L and E).

Petitioner contends that prior to 1987, LSA-R.S. 14:32, Negligent Homicide is what the accused would have been charged with.  A death caused by negligence, as there was no intent to kill or inflict great bodily harm, nor was it in the perpetration or attempted perpetration of a violent crime.  The defined language is as follows:

"The criminal offense committed by one who's negligence is the direct or proximate cause of another's death.  Criminal Homicide constitutes Negligent Homicide when it is committed negligently."

Petitioner again points out that when the legislators added this amended statute to second degree murder, their sole purpose was to unconstitutionally discriminate against drug abusers, which is a disease, securing a life sentence to excessively punish the abuser.

Petitioner contends the added language to the statute closely resembles the defined language of Proximate Cause.

"Immediate, nearest, direct, next in line.  In its legal sense.  Closest in casual connection, next in relation to cause and effect."

The legislature realized that by listing I through V Scheduled drugs in the amended statute of 2010, to include "or any combination thereof" makes it lesser to convict than in 2004 when which sequence the drugs were consumed, made it more difficult to convict.  Petitioner points out that to convict on LSA-R.S. 14:32, Negligent Homicide, the State has to prove that negligence in the direct or proximate cause of one's death.

In this unusual incident, petitioner was a drug addict using prescribed medications.  His only crime was the abuse of his own prescribed medication.  Petitioner was intoxicated almost to the point of being unconscious when the alleged victim arrived.  Upon his daughter's later arrival and discovery that her friend was unresponsive when trying to awake her, she alerted petitioner and he called 911 emergency for help.  The incident indicates negligence and/or an accident rather than second degree murder.  The alleged victim was a major contributor to her own death.  Petitioner was unaware of what had happened until notified by his daughter that the alleged victim was unresponsive.

31

Petitioner submits that *Miller, supra*, allows the Trial Judge or jury to fix punishment with the discretion to consider a juvenile's youth and immaturity, including such mitigating factors as a dysfunctional upbringing, abuse of alcohol and/or drugs as a juvenile, and whether or not he could be rehabilitated before deciding to impose a different punishment. "Moreover, defendants who do not kill, intend to kill, or foresee that life will be taken are categorically less deserving of such punishments than are murderers." *Graham v. Florida, Graham v. Florida*, 560 U.S. 48; 130 S. Ct. 2011 (2009).

Petitioner submits that the circumstances presented support his claim that the statute is unconstitutional as applied. Petitioner submits that he did not commit second degree murder as he had no intent to kill or commit great bodily harm. The wording of the statute is unconstitutional as applied when removing the intent to kill or commit great bodily harm. Second degree murder is the next most severe crime in the Louisiana Code of Criminal Procedure and mandates a life sentence. Although this case involves tragic circumstances, this case did not involve intent to kill or cause great bodily harm. The present definition of murder is not murder as envisioned by our forefathers. Applying second degree murder involving the circumstances presented herein is unconstitutional on its face.

Under the above described circumstances, petitioner submits that the sentence of mandatory life-without-parole is excessive in this particular case and violates both the United States and Louisiana Constitution's prohibition of cruel and unusual punishment which guarantees individuals the right not to be subjected to excessive sanctions. U.S.C. Amend. 8; La.Const. Section I 20.

## ERROR THREE

### DID PROSECUTORIAL MISCONDUCT OCCUR WHEN THE DISTRICT ATTORNEY WITHHELD BLOOD EVIDENCE AND WHEN HE OBTAINED TESTIMONY BY THREATENING A WITNESS?

#### A. BLOOD EVIDENCE

The suppression of evidence favorable to an accused by the prosecution when requested, violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution. *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194 (1963). As the Supreme Court later clarified, there are three components of a true *Brady* violation: (1) the evidence at issue must be favorable to the accused, either because it is

exculpatory, or because it is impeaching; (2) that evidence must have been suppressed by the State either willfully or inadvertently; and (3) prejudice must have ensued. *Strickler v. Greene*, 527 U.S. 263, 281-82, 119 S.Ct. 1936 (1999). Evidence is material so as to establish prejudice only "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome". *United States v. Bagley*, 473 U.S. 667, 662, 105 S.Ct. 3375 (1985). *Brady* and its progeny apply only to evidence possessed by the prosecution team, which includes both investigative and prosecutorial personnel. *United States v. Meros*, 866 F.2d 1304, 1309 (11ᵗʰ Cir. Fla. 1989).

In the case *sub judice*, the prosecution was in possession of the blood evidence, which contained the drug toxins which would have negated the intent element of the crime charged and the unconstitutionally obtained statements. By withholding this blood evidence deliberately and in a covert manner the toxins were allowed to diminish to the point that petitioner's entire defense was ruined.

Blood evidence was drawn from the defendant on January 29, 2004, the day of the incident, and in possession of the State. It is the duty of the prosecutor to preserve evidence and maintain a chain of custody. He has a duty to conduct or allow testing or other analysis upon request. Evidence of exculpatory nature should be tested in a timely manner, or turned over to the defense before its contents are lost, diminish, and cannot be replaced. See *Arizona v. Youngblood*, 109 S.Ct. 333, 448 U.S. 51 (1988). The defense notified the State of its intent to present an intoxication defense. Defense counsel informed the Court that the blood issue becomes a "very critical matter" and that the blood was requested at numerous status conferences. Defense counsel stated clearly, "I'm stuck here and under *Kyles v. Whitley*, we are entitled to it". (Exhibit R). The Court made clear to the prosecutor that the defense has a right to this evidence under *Migliore v. U.S.*, 409 F.2d 786 (5th Cir. Fla. 1969).

Petitioner submits that the State intentionally withheld the evidence for a period of 39 months. Petitioner avers that the State violated standard procedure pertinent to handling this evidence. The State failed to maintain and/or present a proper chain of custody when the toxins within the blood evidence to diminish. The State suppressed evidence which played a major role in establishing a complete defense to the charge of second degree murder. Moreover, had this

33

evidence not been withheld and tested in a timely manner, the toxins within the blood evidence would have proven petitioner's mental incapacity when questioned by police.

At the time petitioner was taken into custody, petitioner was highly intoxicated and during questioning subsequently suffered major withdrawals. The police officers performing the questioning not only ignored the withdrawals suffered by Mr. Kott, they coerced two involuntary statements by promising him his medication. These police officers knowingly violated Mr. Kott's constitutional rights and the State was aware the defense required timely testing of the blood evidence. Prosecutors are responsible for "any favorable evidence known to the others acting on the government's behalf in the case, including the police". When police or prosecutors conceal significant exculpatory or impeaching material in the State's possession, it is ordinarily incumbent on the State to set the record straight. *Kyles v. Whitley*, 115 S.Ct. 1555, 514 U.S. 419 (1995).

The conduct of these officers was supported by testimony from the alleged victim's mother. (Exhibit H). Coercive police activity is a necessary predicate to finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment. *Connelly v. Colorado*, 479 U.S. 157, 167, 107 S.Ct. 515, 522 (1986). *Connelly* has modified Louisiana's jurisprudential rule that intoxication may negate the voluntariness of a statement if it is of such a degree that it renders the defendant "unconscious of the consequences of what he is saying". *State v. Simmons*, 443 So.2d 512, 516 (La. 1983). Diminished mental capacity, which may result from intoxication, remains relevant to the voluntariness of a statement only to the extent that it "made mental or physical coercion by the police more effective". *United States v. Gaddy*, 532 F.3d 783, 788 (8th Cir. Iowa 2008)(test is whether these mental impairments caused the defendant's will to be overcome).

Petitioner avers that he was intoxicated to the degree that he was "unconscious of the consequences of what he is saying." His statements were the product of a will overborne by police coercion. It is pertinent to remember in Corporal Kahrs' case narrative where he states that Mr. Kott could not give consistent and coherent details when he arrived at the scene. (Exhibit I). Mr. Kott was transported to the Slidell Police Department within 15 minutes of the 911 call being placed. It is untenable to argue that Mr. Kott had the requisite mental capacity to give a voluntary statement. However, the State intentionally withheld the blood evidence from testing for such a period of time that the toxins within the blood evidence diminished, thus, petitioner was precluded

34

from presenting the exculpatory evidence proving this constitutional violation.

It is well settled that the failure of police or prosecutor to preserve evidence may, in some circumstances, constitute grounds for reversal of conviction. It was the State's duty to preserve this evidence. See *United States v. Bryant*, 439 F.2d 642, 142 U.S. App. D.C. 132 (1971) (Wright, J)(Government must make 'earnest efforts' to preserve crucial materials and to find them once a discovery request is made).

The decisions on *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194 (1963) and *Giglio v. United States*, 405 U.S. 150, 153-54, 92 S.Ct. 763, 765-66 (1972), the Due Process Clause is implicated when a State intentionally or inadvertently destroys evidence that might have proved favorable to a criminal defendant. First, petitioner asserts the State knew of, but withheld the blood evidence precluding testing effectively denying petitioner's entire defense. *Kyles v. Whitley*, 115 S.Ct. 1555, 514 U.S. 419, 437 (1995). Second, it was incumbent on the prosecution to disclose *Brady* material and petitioner cannot be faulted for relying on that. See *Strickler*, 527 U.S., at 283-284, 119 S.Ct. 1936. Third, defense counsel's failure exacerbated the unconstitutional actions of the State. Had the evidence not been withheld and tested in a timely manner, there is more than a reasonable probability that the outcome of the proceedings would have been different.

Petitioner was convicted and his *Brady* rights were violated. Petitioner cites *Brady v. Maryland, supra*, for the general rule that the State's failure to disclose material evidence which is favorable to the defense justifies the granting of a new trial. Petitioner also cites *Giglio v. United States, supra*, which extended *Brady* to evidence that would damage the credibility of the State's witnesses. Quoting from *Giglio*, the Court noted:

> When the "reliability of a given witness may well be determinative of guilt or innocence," nondisclosure of evidence affecting credibility falls within this general rule...Moreover, whether the nondisclosure was a result of negligence or design, it is the responsibility of the prosecutor. *Bailey*, at 370.

Petitioner contends that had the State not withheld the blood evidence, petitioner would have proven his mental incapacity when questioned by the police and this would have greatly affected the credibility of these witnesses. The State repeatedly put off the defense regarding the location of the blood evidence, chain of custody regarding the blood evidence, and finally, testing the blood in a timely manner.

35

## B. COERCED TESTIMONY

Prosecutors are responsible for "any favorable evidence known to the others acting on the government's behalf in the case, including the police". When police or prosecutors conceal significant exculpatory or impeaching material in the State's possession, it is ordinarily incumbent on the State to set the record straight. *Kyles v. Whitley, supra.*

Trials are adversarial in nature; each side attempts to gain an advantage over the other with the single and foremost goal of victory. In criminal trials, because the government is seeking to take away a citizen's life or liberty, the prosecution's goal, and duty, is decidedly different: he or she must seek justice. This requirement, found in all the codes of conduct applicable to the prosecution, stems from the fact that a prosecutor is the representative of a sovereignty "whose interest...in a criminal prosecution is not that it shall win a case; but that justice shall be done...[i.e.] guilty shall not escape or innocence suffer". *Berger v. United States*, 295 U.S. 78, 88 (1935). Towards that end, and with full recognition of the sometimes competing interests of a sovereign's advocate, the U. S. Supreme Court has established several core principles governing the prosecution's obligation and duties respecting the introduction of false evidence and the suppression of evidence favorable to a defendant.

Beginning with *Mooney v. Holohan*, 294 U.S. 103, 55 S. Ct. 340 (1935), the Court identified the general framework of an area of due process rights now referred to as the *Brady* doctrine. Through this series of cases, the Court condemned the prosecution's deliberate presentation of false evidence or evidence creating a false impression, the practice of standing mute when false evidence is introduced, and the suppression of evidence that is favorable or exculpatory to the defense.

> "Evidence is material, and thus not suppressible by prosecutor, if there is reasonable probability, sufficient to undermine confidence in outcome, that evidence, if disclosed to defense, would have changed outcome of proceeding or created reasonable doubt that did not otherwise exist." *State v. Knapper*, 579 So.2d 956 (La. 1991).

> State's failure to disclose exculpatory evidence to petitioner provided cause to excuse petitioner's procedural default of *Brady* claim upon federal habeas petition; Petitioner and his appellate counsel were unable to raise *Brady* claim during direct appeal because they were unaware of existence of exculpatory evidence that government concealed until they were preparing petition for post conviction relief. *Scott v. Mullin*, 303 F.3d 1222 (10th Cir. Okla. 2002)

The *Mooney* Court recognized that a due process violation results when "a state has

36

contrived a conviction, through a deliberate deception of Court and jury by the presentation of testimony known to be perjured". *Id.* at 112. Less than ten years later, the Court would recognize that not only may the presentation of false evidence present a due process violation, but also the prosecution's "suppression...of evidence favorable to" an accused citizen constitutes a due process violation. *Pyle v. Kansas*, 317 U.S. 213, 216 (1942).

*Mooney* and *Pyle* were remanded to the respective state courts for a review in collateral proceedings. The identification of those rights found in those two cases would soon become holdings under the due process clause in *Alcorta v. Texas*, 355 U.S. 28, 78 S. Ct. 103 (1957), *Napue v. Illinois*, 360 U.S. 264, 79 S. Ct. 1173 (1959), and *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194 (1963).

In *Alcorta*, the prosecution suppressed information that would have greatly benefited the defense, encouraged its key witness not to disclose this information on the stand unless directly asked, and failed to point out to the Court and the defense the misleading nature of the witness' testimony. *Alcorta*, 355 U.S. at 31. The defendant claimed he shot his wife in a fit of passion when he found her kissing the state's witness. *Id.* at 28-29. The prosecutor knew that the wife had a sexual relationship with the witness however; he elicited testimony from the witness suggesting that the two were merely friends. *Id.* at 31. Alcorta's defense to murder with malice was that he acted out of passion.

The Court found the paramour's testimony seriously prejudicial to petitioner as it tended to refute his claim that he had adequate cause for a surge of sudden passion. Disclosure of the information not only would have "impeached the witness' credibility", but also "tended to corroborate the petitioner's contention that he found his wife embracing" the witness. *Id.* The Court held the prosecution's presentation of evidence that creates a "false impression" and suppression of evidence that "corroborates" the defense theory is a violation of due process under the principles enunciated in *Mooney* and *Pyle*. *Id.* Alcorta's conviction and sentence of death was reversed.

In the instant case, Catherine (Rena) Boyen made clear that she was not going to testify. Instead, the prosecutor threatened Ms. Boyen with being charged and multi-billed if she did not testify verbatim in accordance with her prior statement even though she recanted. Ms. Boyen recanted after revealing her original statement was coerced by the police.

37

"Deliberate deception of a Court and jurors by presentation of known false evidence is incompatible with rudimentary demands of justice." *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763 (1972). See also *State v. Marshall*, 660 So.2d 819 (La. 1995).

Mr. Kott avers that District Attorney procured testimony by threat and coercion, failed to correct testimony known to be false, and then blatantly lied to the defense and the Judge. The District Attorney told the Court that Ms. Boyen was brought from jail on another matter. (Exhibit S) Ms. Boyen had no other scheduled court appearances that day. (Exhibit T) Additionally, Ms. Boyen was not allowed to speak with her counsel prior to testifying. Ms. Boyen was told by the District Attorney that her attorney, Frank DeSalvo, told her to testify. (Exhibit U)

Similarly, *Napue* involved false testimony by a state's witness. The witness testified that he had not been promised a recommendation of a reduction of his sentence by the very prosecutor who was trying the case. That testimony, however, was false as the witness had, in fact, entered into an agreement with the state for his testimony. *Napue*, 360 U.S. at 266. Ms. Boyen was forced to testify to avoid prosecution and being multi-billed.

"Conviction obtained by the knowing use of perjured testimony is fundamentally unfair and must be set aside if there is any reasonable likelihood that false testimony could have affected judgment of jury and lower standard of materiality exists for these violations because they corrupt the truth-seeking function of trial process." *State v. Marshall*, 660 So.2d 819 (La. 1995).

"State cannot use incorrect factual evidence that it knows or should know from record is untrue and which creates improper inference or conclusion. (Per Plotkin, J., with one Judge concurring and one Judge concurring with reasons.) *State v. Williams*, 575 So.2d 452 (La.App. 4 Cir. 1991).

Noting no difference between a conviction obtained by false evidence offered by the state from false evidence that goes "uncorrected [by the state] when it appears", *Napue* at 268, the Court extended the ruling of *Mooney*, holding that:

the principle that a State may not knowingly use false evidence, including false testimony,...does not cease to apply merely because the false testimony goes only to the credibility of the witness. The jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence, and it is upon such subtle factors as the possible interest of the witness in testifying falsely that a defendant's life or liberty may depend.

*Id.* at 269.

The failure to correct false testimony has also been held by Louisiana courts to further exacerbate the state's violation of [the defendant's] due process right to have material favorable evidence, including impeachment evidence, knowing use of false testimony, the conviction must be set aside if there is a reasonable likelihood that the false evidence could have had an effect on

38

the jury's verdict.  *Id.* at 272.

Petitioner submits that combined, the actions and/or inactions of the State, and police, denied petitioner his viable defense, and a fair trial having a just and reliable outcome, violative of his 5th, 6th, and 14th Amendment rights to the United States Constitution and the Louisiana Constitution.

The existence of prejudice in this case is marked mandating reversal, or in the least, evidentiary hearing to determine the veracity of petitioner's claims.

### ERROR FOUR

#### THE CUMULATIVE ERRORS INVOLVED IN THIS CASE DEMONSTRATE AN UNCONSTITUTIONAL CONVICTION AND TRIAL IN VIOLATION OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION.

The issues discussed herein cannot be viewed in isolation. Mr. Kott submits he is entitled to relief based on the combined effect of the errors presented herein, which include the State's prosecutorial misconduct and the utterly ineffective assistance of counsel rendered prior to and during trial of this matter.

Petitioner suggests the Courts have increasingly adopted an approach that has focused on the totality of the circumstances of a trial under review. *See, e.g. Darden v. Wainwright*, 477 U.S. 168, 182, 106 S.Ct. 2464, 2472 (1986)(prosecutor's allegedly erroneous statements assessed in terms of "their effect on the trial as a whole"); *Strickland v. Washington*, 466 U.S. 668, 690, 104 S.Ct. 2052, 2066 (1984)(when reviewing counsel's effectiveness, courts must look to all the circumstances of the trial); *Kyles v. Whitley*, 514 U.S. 419, 115 S.Ct. 1555 (1995)(reviewing courts must be educated by the language throughout *Kyles* to look at the case a whole). Hence, Mr. Kott argues, the cumulative effect of errors presented along with counsel's unprofessional care, demonstrate he was denied a fundamentally fair trial and effective assistance of counsel as guaranteed him by the 5th, 6th, and 14th Amendments of the United States Constitution.

A cumulative error analysis is equivalent to a Fourteenth Amendment Due Process inquiry, and the fact whether one or several trial errors caused the trial to be fundamentally unfair is not important. It has been the law for some time that one error in a trial can violate a petitioner's Fourteenth Amendment right to due process. Several errors taken together can also violate a

petitioner's right to due process and cause the trial to be fundamentally unfair. *Darden v. McNeel*, 938 F.2d 605, 610 (5th Cir. 1991)(citations omitted).

    A) He was questioned by police officers in an unconstitutional manner (mental incapacity) and then coerced by police officers who obtained not one but "two" involuntary statements;

    B) The State intentionally withheld the exculpatory blood evidence for 39 months precluding his defense;

    C) Catherine (Rena) Boyen's testimony was obtained by threat and coercion, and subsequently the prosecutor lied about the testimony to the defense and the Judge;

    D) He was denied the effective assistance of counsel; and

    E) He was denied due process and a fair trial.

Petitioner submits that any reasonable person would find that the constitutional violations presented herein require granting Mr. Kott's Application for Post-Conviction Relief. Individually and collectively, the errors presented herein require reversal of Kott's conviction and sentence.

## CONCLUSION

In the present case, petitioner presents prosecutorial misconduct, ineffective assistance of counsel, challenges 14:30.1 Sections 3 and 4 being unconstitutional as applied, and presents cumulative error, all of which denied his substantive rights.

Defense counsel's errors and omissions are consistent with failing to do the obvious or understand what was viable to the defense. Counsel's omissions failed to afford petitioner the opportunity to preclude the State from presenting evidence which was indisputably prejudicial and/or false, and he failed to present evidence relevant and necessary to the presentation of a legitimate defense theory. There are also numerous occurrences during the proceedings where counsel should have sought writs. This was not a "[s]trategic choice made after less than a complete investigation, reasonable precisely to the extent that reasonable professional judgment supports the limitations on investigation". *Strickland*, 466 U.S. 668, 690-1, 104 S.Ct. 2052, 2066 (1984).

Petitioner submits that the holding in *Kyles* may have tremendous significance as it bears

on ineffectiveness cases and the analysis of prejudice.  No longer can reviewing courts dismiss the cumulative effect of unprofessional errors such as: inconsistent evidence that went unchallenged, testimony which was not presented, state witnesses who were not impeached or otherwise discredited, objections not made or not rebutted, failing to adequately confer with clients and interview witnesses, overall not preparing and failing to file necessary motions, writs, etc.

Reviewing courts must be educated by the language throughout *Kyles* and look at the case in a different light, to review for omissions or errors of counsel that would undermine confidence in the verdict, and to reassess the "prejudice prong" of the *Strickland*, 104 S.Ct. at 2052, test in light of the "reasonable probability of a reasonable doubt" standard *Kyles* elucidates.  Hence, unpacking the specifics of a Sixth Amendment claim may be easier if the deleterious effect of counsel's errors can be analogized to the results of withholding the evidence in *Kyles*.  Simply, it is not necessary to prove calamity but only lack of confidence.

Nonetheless, in light of determination to avoid a miscarriage of justice, this Court must examine the constitutional issues presented herein.  The Sixth Amendment right to counsel is consistently recognized as fundamental to a fair adjudication.  The Sixth Amendment stands as a constant admonition that justice will not be served if the constitutional safeguards are lost.

In view of the foregoing facts and law plead by petitioner, this Honorable Court should grant his application allowing necessary and just relief.  The Louisiana court systems must be held to the above cited standards conferred upon criminal defendants and to exclude petitioner would be a miscarriage of justice.

Defense counsel did not perform as counsel guaranteed by that of the Sixth Amendment to the United States Constitution.  Defense counsel was ineffective from the onset of the proceedings.  Defense counsel was grossly ineffective for failing to perform pre-trial discovery, investigation, failing to interview and call witnesses, failing to prepare and present a defense, failing to secure an independent expert, failing to seek writs on issues crucial to the defense, and failing to put the State's case to meaningful adversarial testing.  Combining that with prosecutorial misconduct, petitioner was deprived Due Process, Right to a Fair and Impartial Trial, the Right to Present a Defense, and the Right to Effective Assistance of Counsel, in violation of his 5th, 6th, 8th, and 14th Amendment rights under the United States Constitution.

The above combined Constitutional violations deprived Mr. Kott of his fundamental rights.

41

guaranteed by the United States and Louisiana Constitutions mandating reversal of his conviction and sentence or in the least a full evidentiary hearing wherein those issues can be presented and argued.

Respectfully Submitted:

**LAW OFFICE OF RACHEL M. YAZBECK**

RACHEL M. YAZBECK     (31371)
818 Howard Avenue, Suite 305
New Orleans, Louisiana 70113
Telephone:   (504) 586-8008
Facsimile:   (504) 586-8003
Counsel for Petitioner,
Walter A. Kott, Jr.

**CERTIFICATE OF SERVICE**

I, Rachel M. Yazbeck, hereby certify that a copy of the foregoing Application for Post-Conviction has been forwarded to opposing counsel herein, and filed with the Clerk of Court, 22nd Judicial District Court, Parish of St. Tammany, Post Office Box 1090, Covington, Louisiana 70434-1090, on this 24th day of _____May_____, 2013.

RACHEL M. YAZBECK

STATE OF LOUISIANA  NO. 378041 "C"

VS.  22ND JUDICIAL DISTRICT

WALTER A. KNOTT, JR.  PARISH OF ST. TAMMANY

**FILED**

JUN 18 2013

MALISE PRIETO - CLERK
Deputy S/JUANITA WHITE

### DISTRICT ATTORNEY'S ANSWER TO
### PETITION FOR POST CONVICTION RELIEF

NOW INTO COURT, Through the undersigned Assistant District Attorney, comes: BURL CAIN, (Warden), and for answer to the application for post conviction relief filed by the defendant herein with respect represents that:

### STATEMENT OF THE CASE

This defendant was charged by Grand Jury indictment with one count of second degree murder in violation of R.S. 14:30.1. After a jury trial, he was found guilty as charged by a unanimous verdict. He was sentenced to mandatory life in prison without benefits. The charge resulted from the defendant injecting the victim, Rebecca Roshto, with hydromorphone (dilaudid).

He appealed to the First Circuit Court of Appeal and that court in two separate decisions affirmed the conviction and sentence. State vs. Knott 2011 KA 0997 decided February 10, 2012 and State vs. Knott 2011 KA 0997 decided May 4, 2012.

The defendant now files this petition for post conviction relief citing four claims or errors for consideration which will be answered in the order presented.

### RESPONSE TO CLAIM I.

The defendant claims ineffective assistance of counsel.

These allegations must be determined in light of the two-pronged test set out by the U. S. Supreme Court in *Strickland v. Washington* 446 U. S. 668, 104 S. Ct. 2052, 80 Led. 2d 674 (1984). The defendant must show both that (1) counsel's performance was deficient and (2) that the deficiency prejudiced the defendant by showing that counsel's

1

errors were so serious as to deprive the defendant of a fair trial; a trial in which the result is reliable. Such a claim requires the defendant to show a reasonable probability that, but for counsel's error, the outcome of the trial would have been different. *State ex rel. Busby v. Butler*, 538 So. 2d 164 (La. 1988), *State v. Wright* 598 So. 2d 493 (2nd Cir. 1992), *State v. Boule* 598 So. 2d, 610 (4th Cir. 1992).

In *Strickland*, supra the court stated:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. Cf. *Engle v. Isaac*, 456 U. S. 107, 133-134, 102 S.Ct. 1558, 1574-1575, 71 L.Ed. 783 (1982). A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." See *Michel v. Louisiana*, [350 U.S. 91, 76 S.Ct. 158]. There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.

> The availability of intrusive post-trial inquiry into attorney performance or of detailed guidelines for its evaluation would encourage the proliferation of ineffectiveness challenges. Criminal trials revolved unfavorably to the defendant would increasingly come to be followed by a second trial, this one of counsel's unsuccessful defense. Counsel's performance and even willingness to serve could be adversely affected. Intensive scrutiny of counsel and rigid requirements for acceptable assistance could dampen the ardor and impair the independence of assigned cases, and undermine the trust between attorney and client.

> Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct of the facts of the particular case, viewed as of the time of counsel's conduct. A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light

2

of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. In making that determination, the court should keep in mind that counsel's function, as elaborated on prevailing professional norms, is to make the adversarial testing process work in the particular case. At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

A claim of ineffectiveness of counsel is analyzed under the two pronged test developed by the United States Supreme Court (Strickland cited above). In order to establish that his trial attorney was ineffective, the defendant must first show that the attorney's performance was deficient, which requires a showing that counsel made errors so serious that he was not functioning as counsel guaranteed by the Sixth Amendment. Secondly, the defendant must prove that the deficient performance prejudiced the defense. This element requires a showing that the errors were so serious that defendant was deprived of a fair trial; the defendant must prove actual prejudice before relief will be granted. It is not sufficient for defendant to show that the error had some conceivable effect on the outcome of the proceeding. Rather, he must show that but for the counsel's unprofessional errors, there is a reasonable probability the outcome of the trial would have been different. Further, it is unnecessary to address issues of both counsel's performance and prejudice to the defendant if the defendant makes an inadequate showing on one of the components. State vs. Serigny 610 So.2nd 857,859-60 (La.App.1st Cir. 1992), writ denied, 614 So.2nd 1263 (La.1993).

A.    Defense counsel failed to perform proper pretrial discovery and investigation. This claim states a number of conclusory allegations that counsel did not properly perform discovery and investigation of the case.

A defendant who asserts a claim of ineffective assistance based on failure to investigate must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial. General statements and conclusory charges will not suffice. State vs. Castaneda 94-1118 (La.Ap.1st Cx.6/23/95), 658 So.2d

3

297.   The only factual allegation concerns the blood sample which was taken from the defendant sometime during the day the body of the victim was found.   He alleges that counsel should have obtained a sample of the defendant's blood and had it tested in a toxicology type setting in order to prove that the defendant was intoxicated at the time he gave the statements to the police officers.

The record will reveal that the defendant's blood sample was taken and sent to the State Police Crime Lab in Baton Rouge.   This was a very small sample and was taken to do a DNA profile to determine whether the defendant and the victim had sexual relations prior to the victim's death.   It turned out that the defendant's DNA did not match the semen found in the body of the victim.   At that point, defendant requested a toxicology exam of the blood, however the sample was so small that the State Police Crime Lab could not perform this test.

After several hearings on this matter, where the state was always willing to have the crime lab transport the sample to a lab of defendant's choosing, the defense attorney found a lab which could do a toxicology report on this very small sample.   At that time, the blood was transferred to that lab and a report was rendered.

The report did not confirm that the defendant had a high level of dilaudid in his system but was only about 20% of the maximum amount which would be expected from the drugs he was taking.   This is not surprising since Dr. Young who testified at the trial said that dilaudid has a very short half life of about 2.3 hours.   By the time the blood sample was taken, the defendant's liver had metabolized all but 20% of the expected amount of dilaudid.   The defendant alleges that the long delay in having the toxicology run allowed the toxins to deteriorate to an extent that they did not show the actual amount he had in his blood stream at the time he was being questioned by the police officers.

He submits no evidence to support the claim that the blood in the sample deteriorated.   In fact, there was a finding that the blood did contain dilaudid.

In a post conviction proceeding, the defendant bears the burden of proof and the state submits that he has not proved that the blood sample deteriorated from the time it was taken until it was tested.

When the toxicology report was received, the defendant changed his theory in the motion to suppress to allege that the he was going through withdrawals and that the police would not give him his prescribed drugs until he made a statement. Obviously, the intoxication - withdrawal defense is mutually exclusive. You can't be so intoxicated that you don't have the ability to consent to a statement and at the same time be unintoxicated but suffering from withdrawal symptoms. In handling the motion to suppress, the defense lawyer used the only avenue available, withdrawal. This court held lengthly hearings regarding the voluntary nature of the statements that the defendant gave to the police officers. The court issued written reasons for judgment dated November 7, 2008 finding that "it is clear that the defendant's confessions were not involuntary due to intoxication because any intoxication was not of a degree as to negate his comprehension, nor render him unconscious of the consequences of what he was saying". The court also found as a fact that the police officers did not use defendant's pills to induce or coerce the confessions. (This case was originally assigned to Judge Burris who made the original findings concerning the voluntary nature of the confessions but was reassigned to this division when Judge Burris went to the Washington Parish Criminal Docket). The record contains numerous documents, judgments, and transcripts which support the assertion by the state that this issue is not an example of ineffective assistance. The defendant alleges that by the time the blood was tested, it was too late and the toxins within the blood evidence had diminished. He claims that he was prejudiced in two ways. One, it resulted from the state intentionally withholding evidence and two, the defense counsel's failure to assure a chain of custody and that the evidence was not located and tested in a timely method. He alleges that the blood evidence would have tested differently if it had been done sooner. This is pure speculation and is not supported by any evidence. To the contrary, it is refuted by the testimony of the doctor who testified at trial.

5

In this part of his brief, defendant claims that the syringe which was not found at the scene should never have been used in evidence. There was no claim that that syringe was ever the instrument used in injecting the victim.

B.   Failure to prepare and present a defense.

As this point, the defendant's brief contains the following statement "petitioner avers that competent defense counsel would have at least properly performed pretial discovery and investigation, interviewed and called witnesses, used available evidence and witnesses, secured a toxicology, psycho-pharmacology, and/or addictionology expert, and then combine all the fact, evidence and witnesses to properly prepare and present a viable defense".

He also alleges that because of his severe addition and heavy intoxication at the time of the offense that he was incapable of distinguishing between right and wrong and therefore he could have presented a defense of intoxication or insanity.

The state submits that these allegations are conclusory and speculative and not supported by any evidence whatsoever.   In fact, the court after conducting lengthy hearings on the motion to suppress found otherwise as a fact.  The same can be said regarding the allegation that defense counsel should have called Dr. Sebatier to testify regarding the amount of illegally prescribed drugs that he give to the defendant.  This again is pure speculation and the court has ruled on these points based on the evidence it received at the hearing on the motion to suppress.

C.   Defense counsel was ineffective for his failure to challenge and seek writs regarding the admission of other crime's evidence.

The other crime evidence refers to the testimony given on rebuttal by Shante Brady and to some extent by Rena Boyen to the effect that the defendant had injected them with dilaudid.  This claim is repetitive since it was addressed in the first decision by the Court of Appeal (2/10/12) beginning on page 4.  That court found that this testimony was properly admitted.

6

He also alleges that Rena Boyen's testimony was a result of threat and coercion. The record contains a signed order by this court commanding this witness to testify because she had been granted immunity. This is not coercion.

D.  Defense counsel was ineffective for his failure to acquire experts to assist in preparation and presentation of the defense when the court granted the funds.

The same general allegation is made stating that defense counsel failed to obtain an independent expert in the fields of toxicology and so forth. This again is pure speculation that such an expert would have testified in a manner that would have helped the defendant's case. The defense attorney did actually secure the testing of the blood sample and that is about all he could have done in this case. The defendant presents no statement or report by any toxicologist or other expert that would support his speculative claims and therefore has not met his burden of proof.

F. Cumulative effect of defense counsel's errors and conclusion.

The state submits that there was no cumulative effect since the alleged errors were not errors and the defendant suffered no harm.

### RESPONSE TO CLAIM II

The defendant submits that C.Cr.P.Art.14:30.1 is unconstitutional as applied. This writer assumes that the defendant is actually referring to R.S.14:30.1. This is a complaint that the sentencing provisions of the second degree murder statute are unconstitutional. Sentencing is not a ground for relief under post conviction procedures. C.Cr.P.Art.930.3 The defendant was sentenced as the statute requires and cites no case which holds that this provision is unconstitutional.

### RESPONSE TO CLAIM III

The defendant alleges misconduct by withholding blood evidence and obtaining testimony by threatening a witness.

The blood evidence question has been answered above. The state never withheld any blood evidence. At all times, it made the evidence available to the defendant to send to another lab.

7

The allegation as to coerced testimony refers to Ms. Boyen. This has been answered above but again the state points out that she was ordered by this court to testify. These matters are all in the record.

### RESPONSE TO CLAIM IV

This is another claim of cumulative errors of which there were none.

### CONCLUSION

For the reasons cited above, these claims can be decided without a hearing and should be dismissed.

Respectfully submitted,

DALE E. BRANCH
ASSISTANT DISTRICT ATTORNEY
905 PEARL STREET
FRANKLINTON, LOUISIANA 70438
1/985/839-6711
BAR ROLL NO. 03390

8

STATE OF LOUISIANA

VS.

WALTER A. KNOTT, JR.

NO. 378041 "C"

22ND JUDICIAL DISTRICT

PARISH OF ST. TAMMANY

CERTIFICATE

I CERTIFY THAT THE FOREGOING ANSWER WAS SERVED ON Rachel M. Yazbeck, 818 Howard Avenue, Suite 305, New Orleans, Louisiana 70113 by placing a copy of same in the United States mail postage prepaid addressed to him.

June ___18th___, 2013

_____
Dale E. Branch

9

STATE OF LOUISIANA

V.

WALTER A. KOTT, JR.

FILED: _June 20 2013_

DOCKET NO: 378041   DIV. "C"

22ND JUDICIAL DISTRICT COURT

PARISH OF ST. TAMMANY

STATE OF LOUISIANA

_____

DEPUTY CLERK

## ORDER

This Court has considered defendant, Walter A. Kott, Jr.'s, Application for Post-Conviction Relief filed May 24, 2013. The Court ordered the St. Tammany Parish District Attorney to file any procedural objections he may have or an answer in this matter on May 31, 2013. The District Attorney filed an answer on June 18, 2013. Defendant asserts claims of ineffective assistance of counsel, the unconstitutionality of La. R.S. 14:30.1, prosecutorial misconduct, and cumulative errors resulting in violations of his 5th and 14th Amendment rights under the U.S. Constitution, as the basis for his Application.

The Court has reviewed the entire record and finds that the issues raised in the Application for Post Conviction Relief may be decided on the record and no evidentiary hearing is necessary. The Court finds that petitioner has failed to prove grounds upon which relief shall be granted.

Accordingly, for the foregoing reasons:

IT IS ORDERED that the Application for Post Conviction Relief filed by defendant, Walter A. Kott, Jr., is denied.

IT IS FURTHER ORDERED that the Clerk of Court of the Parish of St. Tammany give notice of the denial of the Application for Post Conviction Relief to petitioner, the District Attorney for the Parish of St. Tammany and the petitioner's custodian.

SIGNED AT COVINGTON, LOUISIANA, this 20th day of June, 2013.

_____

RICHARD A. SWARTZ
Judge, Division "C"

A TRUE COPY

_____

Dy Clerk, 22nd Jud. Dist. Court
ST. TAMMANY PARISH, LA.

22nd JUDICIAL DISTRICT COURT

PARISH OF ST. TAMMANY

STATE OF LOUISIANA

STATE OF LOUISIANA

VERSUS

WALTER A. KOTT, JR.

FILED: _____

CASE NO: 372041

DIVISION: "C"

_____
DEPUTY CLERK

## NOTICE OF INTENT TO SEEK SUPERVISORY WRITS

NOW INTO COURT, through undersigned counsel comes, CODY BEAUDETTE, who respectfully requests an order to seek supervisory writs to the First Circuit Court of Appeal, State of Louisiana, returnable on a date fixed by this Court. Defendant seeks review of this Honorable Court's ruling of June 20, 2013, denying defendant's post-conviction relief in this case. Defendant respectfully requests thirty (30) days within which to file supervisory writs in this matter.

Respectfully submitted:

LAW OFFICE OF RACHEL M. YAZBECK

_____
RACHEL M. YAZBECK (#31371)
ATTORNEY AT LAW
818 Howard Avenue, Ste. 305
New Orleans, Louisiana 70113
TELEPHONE: (504) 586-8008
FACSIMILE: (504) 586-8003



22nd JUDICIAL DISTRICT COURT

PARISH OF ST. TAMMANY

STATE OF LOUISIANA

STATE OF LOUISIANA                                    CASE NO: 378041

VERSUS                                                DIVISION: "C"

WALTER A. KOTT, JR.

FILED: _____        _____

                                        DEPUTY CLERK

## O R D E R

Considering the above and foregoing Motion:

IT IS ORDERED that an Order to Seek Supervisory Writs from the judgment of this court dated June 20, 2013, is hereby granted to the defendant, WALTER A. KOTT, JR. returnable to the Court of Appeal, First Circuit, State of Louisiana, on or before the _____ day of _____, 2013.

COVINGTON, LOUISIANA, this ____ day of _____, 2013.

_____

                       JUDGE

22nd JUDICIAL DISTRICT COURT

PARISH OF ST. TAMMANY

STATE OF LOUISIANA

STATE OF LOUISIANA                          CASE NO: 378041

VERSUS                                      DIVISION: "C"

WALTER A. KOTT, JR.

FILED: July 129, 2013                       _____
                                                    DEPUTY CLERK

O R D E R

Considering the above and foregoing Motion:

IT IS ORDERED that an Order to Seek Supervisory Writs from the judgment of this court,

dated June 20, 2013, is hereby granted to the defendant, WALTER A. KOTT, JR, returnable to the

Court of Appeal, First Circuit, State of Louisiana, on or before the 20th day of

July, 2013.

COVINGTON, LOUISIANA, this 10 day of July, 2013.

_____
            JUDGE

A TRUE COPY
DyClerk, 22nd Jud. Dist. Court
ST. TAMMANY PARISH, LA.



22ND JUDICIAL DISTRICT COURT FOR THE PARISH OF ST. TAMMANY

STATE OF LOUISIANA

NO. 378041                                                           DIVISION "E"

STATE OF LOUISIANA

VERSUS

WALTER KOTT

FILED: _March 29, 2004_        DEPUTY CLERK: _Rosie A. Burns_

## MOTION TO SUPPRESS THE EVIDENCE

NOW INTO COURT, through his undersigned counsel of record, comes the defendant, and protests that he has had his Constitutional rights violated as are guaranteed by the Constitution of the United States of America and the Constitution of the State of Louisiana, in that the evidence sought to be used against him has been unlawfully and illegally obtained, and that the defendant moves that this evidence be suppressed in any criminal proceedings against the defendant for the following reasons, to-wit:

1. That the evidence to be used against the defendant whether physical or any form of statement or confession was not seized or obtained incidental to a valid arrest and/or search; and,

2. That the evidence to be used against the defendant was seized or obtained as the result of unlawful search without a warrant and without probable cause.

WHEREFORE, the defendant prays that this evidence sought to be used by the STATE OF LOUISIANA in this matter or any other related matter be ordered, suppressed in its entirety by this Honorable Court and that the STATE, through its authorized representative, be prohibited from introducing same or making reference thereto during the trial of this cause.

Respectfully submitted,

REGAN & ASSOCIATES, P.L.C.

MARTIN E. REGAN, JR.   (11663)
ERNEST J. BAUER, JR.   (27373)
Attorneys for Defendant
2125 St. Charles Avenue
New Orleans, LA  70130
(504) 522-7260

94

SCANNED
MAY - 4 2004

## O R D E R

Considering the above and foregoing:

IT IS ORDERED that the District Attorney show cause, if any he can, on the _____ day

of _____, 2004, at _____ o'clock a.m., why the above and foregoing Motion To

Suppress The Evidence should not be granted in its entirety.

Covington, Louisiana, this _____ day of _____, 2004.

_____
J U D G E



22ND JUDICIAL DISTRICT COURT FOR THE PARISH OF ST. TAMMANY

STATE OF LOUISIANA

NO. 378,041                                          DOCKET "E"

STATE OF LOUISIANA

VERSUS

WALTER KOTT

FILED: _November 7, 2008_                    _____
                                             DEPUTY CLERK

## REASONS FOR JUDGMENT

The Court took the Motion to Suppress Confession under advisement on November 7, 2008 after several days of testimony over an extended period. The Court looks at the facts and circumstances of each case and reviews the totality of the circumstances in determining whether a confession was freely and voluntarily made without coercion, intimidation or improper influences. First, it is clear that the defendant's confessions were not involuntary due to intoxication because any intoxication was not of such a degree as to negate his comprehension nor render him unconscious of the consequences of what he was saying. See State v. Lauf, 953 So.2d 813 (La. App. 5th Cir. 2007). The fact that the defendant suffers from a medical condition (which withdrawal is) does not mean he in incapable of giving a voluntary confession. See State v. Williams, 804 So.2d 932 (La. App. 1st Cir. 2001). The Court is convinced that the police officers did not use the defendant's pills to induce or coerce the confessions. Obviously, Mr. Kott wanted pills but they were not used to coerce or intimidate him into confessioning nor were improper influences used. All confessions were received before the invoking of his right to an attorney. The Court denies the Motion to Suppress the defendant's confessions.

Signed this _8th_ day of November, 2008 in Covington, Louisiana.

_____
WILLIAM J. BURRIS
DISTRICT JUDGE, DIVISION "E"

FEB 1 7 2009

SCANNED

245

State of Louisiana          Docket # 378041
       - V -               22nd Judicial District Court
Walter a Kott Jr.          Parish of St. Tammany

Date Filed November 23, 2005   _____
                                     Deputy Clerk


Motion for Status Hearing
        Blood Sample

Now into Court Comes defendant Walter a Kott Jr.
who moves the Court to order the State to take
all steps necessary to expedit the toxicology
of the blood sample ASAP. In the event that
the State Crime Jeb in Baton Rouge is backed
up that the State go elsewhere to obtain the
toxicology so that there is no delay in
setting this matter for trial in January or
February of 2006.

    Respectfully submitted on this 17 day of November,
2005 under the penalty of perjury and good-faith.

                              Walter Kott Jr.


Please Serve

Walter Reed - DA
Morton E Ryon - Attorney
Walter Kott - Defendant.


136

SCANNED
JAN 24 2006

## Order

Based on the Foregoing Motion:

Its order that the State show Cause on the _10th_ day of _Feb._, 2006 at _9:30_ O'Clock A.M. Why said relief should not issue

Clerk to serve all parties a copy of this motion and order without cost.

Said and done this _13_ day of _Jan_, 2006

_(signature)_
Judge

<u>Please Serve</u>

Walter Reed - DA
Morton E. Ryan - Attorney
Walter Kott - Defendant.

137

SCANNED
JAN 24 2006

State of Louisiana.

Versus

Walter A. Kott Jr

Docket # 378041

22nd Judicial District Court

Parish of St. Tammany

Date Filed March 2, 2006

Deputy Clerk

## Motion to Enroll
## as Co-Counsel

Now into the Court Comes the defendant
Walter A. Kott Jr who moves the court to
allow him his right to assist himself
as Co-Counsel or Counsel if no other
Counsel is available on court dates in this
matter

Respectfully Submitted on the __22nd__ day of
__February__, 2006. under the penalty of perjury
and good-faith.

_Walter A. Kott_
Walter A. Kott Jr.
P.O. Box 907 D-226
Covington, La 70434

Please Serve

Walter Reed - DA

Jack Strain - Sheriff

Martin Regan - Attorney

Walter Kott - defendant.

147

SCANNED
MAR 0 7 2006

(1)

Order

Based on the Forgoing motion to order
that Walter Reed DN show cause why
said relief shall not issue on the 14th
day of April _____, 2006. at 9:00 oclock
A M.

Clerk to serve all parties a Copy of
this motion and order.

Said and done on this 2 day of
March _____, 2006

Judge

148

SCANNED
MAR 0 7 2006

(2)

State of Louisiana                    Docket # 378041
         Versus                      22nd Judicial District Court
Walter a Rott J.                     Parish of St. Tammany

Date Filed  MAR 0 7 2006            Lori A. Bihos
                                         Deputy Clerk

Motion for Court
Order / Subpoena

Now into Court Comes defendant Walter a Rott J. who moves the Court to issue a Court Order / Subpoena limited only to obtain the medical record of the deceased Rebecca Rockto to show what medication's she had a history of using and if she was ever admitted to a hospital emergency facility or substance abuse treatment facility, due to drug abuse. This information is vital to prepare our defence in this matter.

Respectfully summitted on the 24 day of February, 2006. under the penalty of perjury and good - faith.

Walter a Rott J.
Walter a Rott J.
P.O. Box 908 J D6
Covington, La 70434

152

SCANNED
MAR 1 7 2006

## Order

Considering the foregoing motion its order that the DA - Walter Reed show Cause on the 12th day of April, 2006 at 9:00 O'clock A M why this order / Subpoena should not be issued.

Clerk to serve all parties a Copy of this motion and Order without Cost

Said and done on this 13 day of March, 2006

_____
Judge

Please Serve

Walter Reed - DA

Jack Strain - Sheriff

Martin Regan - Defense Counsel

Walter Katt - Defendant.

153

SCANNED
MAR 17 2006

22ND JUDICIAL DISTRICT COURT FOR THE PARISH OF ST. TAMMANY

STATE OF LOUISIANA

NO. 378041                                          DIVISION "E"

STATE OF LOUISIANA

VERSUS

WALTER KOTT

FILED: May 02, 2006          DEPUTY CLERK: Debra Ann Peters

## MOTION FOR EXPEDITED EVIDENTIARY HEARING TO DETERMINE THE LOCATION OF BIOLOGICAL MATERIAL CURRENTLY IN STATE CUSTODY

NOW INTO COURT, through undersigned counsel, comes the defendant, WALTER KOTT, who moves this Honorable Court to grant him an Expedited Evidentiary Hearing for the following reason, to wit:

Defendant has apprised the Court that he will need to have a private lab screen the remainder of blood left by the State. In order to secure this independent analysis, defendant will have to be made aware of the amount of blood still in existence. To date, the Louisiana State Police Crime Lab has not been forthcoming with such information, which necessitates an Expedited Evidentiary Hearing to determine same.

WHEREFORE, defendant prays that this Honorable Court grant his request for an Expedited Evidentiary Hearing in the entitled and numbered cause.

Respectfully Submitted:

MARTIN E. REGAN & ASSOCIATES, P.L.C.

MARTIN E. REGAN, JR. (11153)
Attorney for Defendant
2125 St. Charles Avenue
New Orleans, LA 70130
(504) 522-7260

## O R D E R

IT IS HEREBY ordered that the District Attorney show cause on the 31st day of
May , 2006 at 9:00 o'clock __ .m. why the foregoing motion for an Expedited Evidentiary Hearing should not be granted.

Covington, Louisiana, this 8 day of May , 2006.

_____
JUDGE

SCANNED
OCT 1 8 2006

174

State of Louisiana                  Docket # 372241 E
Versus                              22nd Judicial District Court
Walter A. Kott ⓖ                    Parish of St. Tammany

Date Filed:   JUL 2 7 2006          Deputy Clerk: Marie A. Burns

Motion for Expedited Evidentiary Hearing to
have the State produce a Chain of Custody of the
Blood Sample including who took and what precautions
were taken to insure the integrity to avoid sample
being spoiled or destroyed by neglect.

Now into Court comes the defendant Walter A. Kott Jr. Pro-Se
who moves this Honorable Court to grant him this hearing for the
following reasons, I state to wit;

Defendant request that the state provide an additional chain of
custody of the Blood Sample starting from the date it was return
to the Slidell Police Department from the La State Crime Lab. The latter
to include what precautions an who took such precautions to insure
the integrity of the sample preventing it from being contaminated.

(The defendant has learned that after the completion of Jury selection
in the Joseph Bivona trial that the D.A. told Mr. Regan that he
forgot the sample on the roof of his car and drove off destroying
it causing a lawyer. Was this the truth or a horrible joke, espe-
cially with all of the delay's turning over the sample as well as
the results of all testing. What was the blood doing in Mr. Darvings
Car in the first place. I wasn't aware that this was a joking matter.

Wherefore defendant pray's for relief and answers to issue.

Respectfully Submitted on the 21 day of July, 2006.

180

Walter A. Kott Jr Pro-Se
P.O. Box 900 Covington La 70434

①

## Order

It is ordered that the DA show cause on the ___ day of _____, 2006. why said relief shall not issue

Clerk to serve all parties a copy of this motion and order without cost.

Said and done on this ___ day of _____, 2006.

_____
Judge

Please Serve

Walter Reed - DA

Walter Kott - Defendant

Jack Strain - Sheriff

Martin E. Regan Jr - Defense Attorney

181

②

State of Louisiana **FILED** Docket # 378041 E
Versus                                22nd Judicial District Court
Walter A. Kott ()    AUG 01 2006    Parish of St. Tammany
MALISE PRIETO - CLERK
Deputy

Date Filed:                          Deputy Clerk:

Motion for Expedited Evidentary Hearing to
Have the state produce the La State Crime Lab
Request for Scientific Analysis Form.

Now into Court Comes defendant Walter a Kott Jr. Pro-Se who
moves this Honorable Court to grant him this hearing, for
the following reasons. A State to wit:

Defense request that the state produce the La State Crime
Laboratory Request for Scientific Analysis form bearing
Revision number DPSSP 4606 (R 10/96) that the
Slidell Police Department used in shipping its evidence
marker number PR 65307 Rape Kit Pichto CC 100 that
the state has not turned over to defendant to date. This
form is Standard operational procedure according to the
Guide of Proper Evidence Protocol for testing evidence by
the La State Crime Lab. This form will show who ordered
and what test were ordered, the time and date of who
delivered and recieved the evidence.

Wherefore defendant prays the Hon Hon order the
State to produce this form Completely filled out.

Respectfully Submitted on the 24th day of July,
2006.

                                    Walter a Kott J. the
                                    PO Box 908  D-722
183                                 Covington La, 70434
①

Order

Its Order that the State show cause
on the ____ day of _____, 2006 at ____
O'Clock __ M. why said relief shall not
issue

That the Clerk serve all parties a copy
of this motion and Order.

Said and done on this ____ day of ____, 200_

_____
Judge

Please Serve

Walter Reed - DA

Walter Ratt - Defendant

Jack Straw - Sheriff

Martin E Regan Jr - Defence Attorney

184

22ND JUDICIAL DISTRICT COURT FOR THE PARISH OF ST. TAMMANY

STATE OF LOUISIANA

NO. 378041                                                          DIVISION "E"

STATE OF LOUISIANA

VERSUS

WALTER KOTT

FILE October 10, 2006 DEPUTY CLERK: _____

## EX PART MOTION FOR FUNDS FOR
## THE TESTING OF BIOLOGICAL MATERIAL

NOW INTO COURT, through undersigned counsel, comes defendant, WALTER

KOTT, who moves this Court *ex parte* pursuant to Article I of the Louisiana Constitution and

the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution, to order

the Indigent Defender Board (IDB) for St. Tammany Parish to provide him with funds to retain

experts in the field of toxicology testing. As grounds for this motion, WALTER KOTT states

the following:

Although the defendant is represented by retained counsel, paid for by his father, he

himself is indigent. He has been in jail for over two years awaiting trial on the charges brought

against him. His family members, relatives and all others who may have been in a position to

assist him financially in the past are no longer in a position to do so.

The Louisiana Supreme Court has previously required state funding for defense experts

even though the defendant may have retained counsel, *State v. Ulysses Jones*, 707 So. 2d 975

(La. 1998). In that decision the Louisiana Supreme Court noted that the retention of counsel for

an indigent by a collateral source "does not rob the defendant of his right to a fair trial and thus

the defendant may be entitled to state funding for auxiliary services." *Id at* 977.

1.)     WALTER KOTT is an indigent who is represented by counsel. The State is

pursuing Second Degree Murder charges in this matter, which could lead to a life sentence

should Mr. Kott be found guilty. To prepare adequately and effectively, defendant needs the

services of independent experts in the field of toxicological biological testing.

2.)     The United States Supreme Court has "long recognized that when a State brings

its judicial power to bear on an indigent defendant in a criminal proceeding, it must take steps

to assure that the defendant has a fair opportunity to present his defense." *Ake v. Oklahoma*,

FEB 17 2009

188                        SCANNED

470 U.S. 68, 76, 105 S Ct. 1087, 84 L. Ed. 2d. (1985). As the Court in Ake v. Oklahoma noted, this fundamental principle of due process "derives from the belief that justice cannot be equal where, simply as a result of his poverty, a defendant is denied the opportunity to participate meaningfully in a judicial proceeding in which liberty is at stake." Id. The Court, therefore, held that :

> "[When a] question....[is] likely to be a significant factor in his
> defense......[the defendant is] entitled to the assistance of a [n expert]
> on this issue and.....the denial of that assistance deprive [s] him of
> due process."

Id. at 86-87. In cases such as WALTER KOTT's where the state seeks to utilize an array of biological technicians and scientists the defendant is also entitled to technical assistance in that field. The Courts have uniformly held that the decision in Ake v. Oklahoma applies to all experts reasonably necessary for an effective defense. State v. Carmouche, 528 So. 2d 159 (La. 1988) (the La. Supreme Court held that "any reasonable request of the defendant" for expert assistance "should be granted"; as well as "experts in fingerprint analysis and serology."); See also, eg., State v. Langlois, 605 So. 2d 854 (La. 1993) (mandating the provision of $5,000.00 for defense experts; State v. Carmouche, 527 So. 2d 307 (La. 1988) (neurologist & serologist); Thorton v. State, 339 S.E.2d 240 (Ga. 1986) (defendant entitled to funds to employ assistance of forensic dental expert since dental evidence was important to state's case and since experts consulted by the defense questioned the reliability of dental impression evidence in general; "the trial court shall appoint an appropriate professional, whose experience, at a minimum, is substantially the equivalent to that of the state's expert witness"); (Ake v. Oklahoma extends to any expert as to which defendant makes a threshold showing of need.

3.)     Further, the Supreme Court's holding in Ake v. Oklahoma clearly requires more than simply "the right to place the report of a 'neutral' [expert] before the court; rather it means the right to use the services of an [ expert] in whatever capacity defense counsel deems appropriate....." Smith v. McCormick, 914 F. 2d 1155, 1157 (9ᵗʰ Cir. 1990) (reversing death sentence because court merely provided defendant with neutral psychiatrist). See also Johnson v. State, 529 So. 2d 577, 591-92 (Miss. 1988) ("an accused should...be afforded at State expense an independent expert" when accused provides name, specific cost, purpose and value of expert) (emphasis added);

4.)     In addition to due process considerations, the constitutional guarantee of equal

189

protection requires that a defendant be provided with investigative and expert assistance reasonably necessary to his defense. As the Supreme Court has observed, "[t] here can be no equal justice where the kind of trial a man gets depends on the amount of money he has." Griffin v. Illinois, 351 U.S. 12; 17-19 (1956). In short, in a case where, as here, the defense may be devastated and irrevocably harmed by the absence of expert testimony , and the accuracy of the jury's determination would be drastically enhanced by that testimony, the Supreme Court in Ake v. Oklahoma, held that the "State's fiscal interest" must yield to its interest in "an accurate proceeding." Id. 470 U.S. at 83. Curry v. Zant, 371 S.E. 2d. 647 (Ga. 1987) (defense counsel held ineffective for relying on state psychiatrist instead of seeking independent evaluation). Adequate investigation and preparation is an indispensable prerequisite to effective assistance, since a lawyer who " does not seek out all the facts relevant to his client's case is prepared to do little more than stand still at the time of trial."

### Review of Biological Material

Counsel for defendant, WALTER KOTT, has received copies of numerous documents and files concerning the testing of blood and other biological materials performed in this case. Defense counsel has contacted testing experts at the following company: Trace Laboratories, Inc., 5 North Park Drive, Hunt Valley, MD. 21030. This company has has the capacity to analyze the remaining biological materials, which analysis is crucial to the assertions made by the defense. In terms of cost, defendant would ask the Court for a stipend of $5,000.00 to cover all costs attendant with the aforementioned analyses and incidental auxiliaries. An advances itemized bill will be submitted for Court approval. The absence of these analyses would controvert the due process guaranteed the defendant, WALTER KOTT.

WHEREFORE, defendant respectfully requests that this Court grant him funds, in the amount of $5,000.00, to retain the services of the aforementioned company to analyze and deliver reports and testimony on the remaining biological material(s) necessary to conduct a fair and equitable defense of WALTER KOTT.

190

FEB 1 7 2009
SCANNED

Respectfully Submitted:

MARTIN E. REGAN & ASSOCIATES, P.L.C.

MARTIN E. REGAN, JR. (11153)
Attorney for Defendant
2125 St. Charles Avenue
New Orleans, LA 70130
(504) 522-7260

## O R D E R

On considering the above and foregoing Ex Parte Motion For Funds For The Testing of

Biological Matrial IT IS ORDERED that the District Attorney show cause on the _____ day of

_____, 2006 at ___ o'clock ___ m. why the defendant's motion should not be

granted.

Covington, Louisiana, this _____ day of _____, 2006.

191

FEB 17 2009

SCANNED

22ND JUDICIAL DISTRICT COURT FOR THE PARISH OF ST. TAMMANY

STATE OF LOUISIANA

NO. 378041                                                    DIVISION "E"

STATE OF LOUISIANA

VERSUS

WALTER KOTT

FILE _Nov. 16 2006_   DEPUTY CLERK _____

## O R D E R

Considering the October 27, 2006 Judgment in the above entitled and numbered cause;

IT IS ORDERED by the Court that the district attorney, with the consent of the defendant, forward the vial of blood, drawn for use in the rape kit in the above entitled and numbered cause, to Trace Laboratories, Inc., 5 North Park Drive, Hunt Valley, MD, 21030 for independent analysis.

Covington, Louisiana this _14_ day of _November_ 2006.

_____
J U D G E

FEB 1 7 2009
**SCANNED**

22ND JUDICIAL DISTRICT COURT FOR THE PARISH OF ST. TAMMANY

STATE OF LOUISIANA

NO. 378041                                                    DIVISION "E"

STATE OF LOUISIANA

VERSUS

WALTER KOTT

FILE _October 10, 2006_   DEPUTY CLERK: _Linda Torres_

## MOTION TO SET STATUS HEARING ON DISCOVERY

NOW INTO COURT, through undersigned counsel, comes the defendant, WALTER KOTT, who respectfully requests this Honorable Court to set a status hearing in the above captioned and entitled matter for the following reasons, to-wit:

I.

Defendant would ask this Honorable Court to set a status hearing in order to determine when any outstanding discovery materials may be provided to him so that he may proceed with preparations in the defense of the instant matter.

WHEREFORE, defendant, WALTER KOTT, prays that this Honorable Court set a status hearing in the above entitled and numbered matters.

Respectfully submitted,

MARTIN E. REGAN & ASSOCIATES, P.L.C.

_____
MARTIN E. REGAN, JR. (11153)
2125 St. Charles Avenue
New Orleans, Louisiana 70130
Telephone: (504) 522-7260
Facsimile: (504) 522-7507

## O R D E R

Considering the foregoing,

IT IS ORDERED by the Court that the defendant be and hereby is granted a status hearing and that the same be held on the _____ day of _____, 2006.

Covington, Louisiana this _____ day of _____, 2006.

_____
J U D G E

FEB 17 2009
SCANNED

192

State of Louisiana
    Versus
Walter a. Kott Jr.

Docket # 378041 E
22nd Judicial District Court
Parish of St. Tammany

Date. Filed. Nov. 3, 2006

Dept. Clerk _____

Motion for Expedited Eventary
Hearing for the State to Produce
(4) four remaining items tested,
Results from the La. State Crime Lab.

Now into Court Comes the defendant Walter a. Kott J.
who moves this honorable Court to grant him this
hearing for the following reasons I state to wit:

1) on the 27 day of October, 2006 the state through its asst.
District attorney - Bruce Dearing turned over (6) six items,
Results tested at the State Crime Lab. The State has
either failed or overlooked (4) items which would complete
and satisfy our motion heard on the above mentioned
date. The test results remaining are as follows: (1)
Maker # 65596 Hand Rag / Towel (2) # 65598 T-Shirt
(3) # 65600 Pillow (4) # 65601 Sheet / Blanket.

The Court granted the state (10) ten days to satisfy a
few others items of discovery on 10-27-06 and would
ask the Court to have these items fall on that order.

Wherefore defendant prays for relief to issue.

Respectfully submitted on this 30 day of October, 2006.

Walter a. Kott Jr.
Walter a. Kott Jr.
P.O Box 908
Covington La 70404

194

(1)

Order

Based on the foregoing motion:

Its Order that the State show Cause on the ___ day of _____, 2006 at ___ O'Clock ___ M., Why said relief shall not issue.

Its Order that the D.A. mail the defendant and attorney of record a copy of these requested test results within 10 days of receipt of this motion

Clerk to serve all parties a copy of this motion and order without Cost.

Said and done this ___ day of _____, 2006.

_____
Judge

Please Serve

1) Bruce Dearing - ADA

2) Martin E. Regan - attorney

3) Walter a. Kott Jr - A-103

WALTER A. KOTT, JR.
A-103-B
c/o STP Jail
P.O. Box 908
Covington, LA
70434

195

State of Louisiana
Versus
Walter a. Kott J.

Docket Number 378041E
22nd Judicial District Court
Parish of St. Tammany

Date Filed November 8, 2006 Deputy Clerk Marie A. Burns

Motion for affadivits and
Orders presented to Obtain Subpoenas

Now into the Court Comes defendant Walter a. Kott Jr
who moves the Court to grant the following; and
state to wit:

That the DA produce the affadivits and orders pre-
sented to the court to obtain Subpoenas from the
Clerk on 1-29-2004 to Downtown Drugs and Evans
Drug Mart, on 1-30-2004 to Walgreens Pharmacy, Hambton
Discount Pharmacy, and Michael's Medicine Shoppe on
on 2-3-2004 to Dr. Richard E. Satatur. The defendant
also request any and all others (affadivit, orders and
Subpoena's) obtain prior to the date of this filing
that the defendant is not aware of or in possession
of.

Defendant now prays for relief to issue.

Respectfully submitted on this 6 day of November,
2006.

Walter a. Kott J.
Walter a. Kott Jr
P.O. Box 908 A-103
Covington, La. 70434

196

(1)

## Order

It is ordered that the District Attorney show Cause on the ____ day of _____, 2006 at ____ O'clock ____ M.; why said relief shall not issue

That the Clerk serve all parties a copy of this motion and order.

Said and done on the 13 day of Nov, 2006

_____
Judge

Please Serve

1) Walter Reed - D.A.
701 N. Columbia St.
Covington La. 70434

2) Martin E. Regan J. - Attorney
2125 St. Charls Ave
New Orleans La. 70130

3) Walter a Kott Jr - A-103
P.O. Box 908
Covington, La. 70434

197

(2)

State of Louisiana                    Docket Number: 378041E
    Versus                        22nd Judicial District Court
Walter a. Kott Jr                     Parish of St Tammany

Date Filed: NOV 2 9 2006             Deputy Clerk: Toni A. Dumas

Motion for Expedited Evidentiary Hearing to force the
State to Produce the Blood Sample Chain of Custody previously
Ordered by this Court on October 27, 2006

    Now into Court Comes the defendant Walter as Kott Jr who moves
this Honorable Court to grant him an Expedited evidentiary Hearing for
the following reason, to wit:

    In open court on October 27, 2006 while represented by Counsel
Martin E Regan Jr the court heard (3) three motions submitted by mr
Kott Pro-Se on the 16th, 21st, and 24th of July, 2006 pertaining to the
blood sample, that were consolidated. The hearing resulted in the court
granting its request for the Chain of Custody allowing the State (10) ten
days to comply with its order. To date the State has not complied
with the order of the Court. Also requested was the specific form used
by the La State Crime lab as standard protocol bearing revision number
DPSSP 4606 (R10/96) for submitting evidence for testing. The form requested
bearing Slidell Police Department Evidence number 6530 4 as Rape
Kit which is believed to contain the sample of blood extracted on
January 29, 2004. This form would be a (2nd) second form, and the
defense believes there has to be a (3rd) third form, leaving (2) two
outstanding to be produced by the state, and will explain as
follows:

<div align="center">Facts</div>

    The defense has filed numerous motions pertaining to the blood
sample and its Chain of Custody beginning January 29, 2004 when
it was extracted at the Slidell Police Department as part of a Rape Kit

<div align="center">201</div>
<div align="center">(1)</div>

.... This Rape Kit was eventually submitted nearly (6) six months later on July 19, 2007 to the La State Crime Lab technician Felicia Parson at 10:08 AM from the Slidell Police Dept. Via Melissa Thompson. Enclosed in the shipment was Exhibit 7A a sealed envelope containing a dried reference blood sample on a card. The Rape Kit submitted from the Slidell Police Dept. Via Melissa Thompson did not contain the whole blood sample extracted on January 29, 2006.  The question is Why?

1) The vial of blood viewed on the 9th day of June, 2006 in the courtroom that is to be shipped to Trace Laboratories to be tested has to have a separate Chain of Custody.

2) That the blood on the reference card was extracted prior to being shipped at the Slidell Police Department or another unknown location.  Why and Where?

3) The defendant Mr. Kott has never submitted any other blood sample other than the one extracted for the Rape Kit to the Slidell Police Department: a finger prick did not happen on a test card.

All of these issues pertaining to the blood have been brought to the Courts attention as far back as February 1, 2005 on record. The defense has been very patient with all of the delay's that have been deemed uncontrollable and do appreciate that an order has finally been issued and signed by the Court to ship and test the sample. The Court issued an additional order to produce the Chain of Custody over the Rape Kit containing the blood. The state has apparently disregarded the Courts order as it has not been delivered well over the (10) ten days allowed.
                    But again Why?

202
(2)

The defense is entitled to these Chains of Custodies by law and has raised many issues pertaining to the blood sample and Rape Kit and their Chains of Custodies, including possible wrongdoing. The question here remains why has the State not been forthcoming with this evidence?

We now pray that this Court would enforce its order to produce every and all chains of Custody and/or that this Court impose the harshest possible sanctions it can impose for the state being in Contempt including suppressing any and all issue(s) before the Court associated with this Rape Kit, Blood and their Chain of Custodies. (Namely Miranda, Statements taken either orally or in writing) and/or ordering the defendants immediate release on a Signature bond as he is not a flight risk pending the outcome of this matter before this Court.

Wherefore I pray for the following relief to issue:

Respectfully submitted this 24th day of November, 2006.

Walter a. Kott Jr.
Walter a. Kott Jr.
PO Box 908 A-103
Covington, La 70434

203

(3)

Order

Based on the foregoing:

Its order that Walter Reed - District attorney show Cause why said relief shall not issue me the _____ day of _____, 2006 at ___ O'Clock ___ M.;

Its further orders that the Clerk serve all parties a Copy of this motion and order without Cost.

Said and done this ___ day of _____, 2006.

_____
Judge

Please Serve:

Bruce Dearing - Asst D.A.
701 N Columbia Covington, La 70434

Martin E Regan - attorney
2125 St. Charles No. LA. 70130

Jack Strain - Sheriff
1200 Champagne Covington, La 70434

Walter Reed Jr
PO Box 908 A-103 Covington, La 70434

204

(y)

State of Louisiana
(versus)

Walter a. Kott, Jr.

Docket Number 378041 E
22nd Judicial District Court

Parish of St Tammany

Date Filed: January 03, 2007    Linda Posma
                                   Deputy Clerk

## Motion for Discovery Sanctions

Now into the Court Comes defendant Walter a. Kott, Jr who moves this Court To impose discovery sanctions upon the State of Louisiana thru Walter Reed - District attorney.

## Jurisdiction

Jurisdiction of this Court is invoked pursuant to LA. C. Cr. P. Article 17, 23 and 729.5

## Statement of Facts

1.) on February 1, 2005 Walter a. Kott, Jr the defendant filed Pro-Se a motion for bond reduction seeking access to blood samples taken that are favorable to the accused defense of being too intoxicated to voluntary make incriminating statements violating Miranda, of a crime he had no involvement that was being Suppressed by the State.

2) on October 26, 2005 the trial Judge issued an order for the State to allow the defense access to said blood for in-independent testing.

3) on October 27, 2006 the trial Judge again ordered the State to produce the blood sample for independent testing by Pace Latoriatouis and a Chain of Custody within 10 days

(1.)

... 4) The State of Louisiana thru Walter Reed- District Attorney has failed to comply with the October 26, 2005 and the October 27, 2006 Court's order which are, definitive and final since no appeals were taken by law.

Wherefore I pray for the following relief to issue:

1) That the legal presumptions of La R.S 15: 432 which states in port: that evidence under the controll of a party and not produced by him, was not produced because it would not have aided him; that the witness has told the truth [etc], apply to all disputes involving his intoxication at the time of False Confessions.,

2) That I be released without bond obligations on home incarceration conditions and

3) That all incriminating statements and the blood sample be suppressed in their entirety.

Respectfully submitted this 28 day of December, 2006

Walter a. Kott, Jr
Walter a Kott, Jr
P.O. Box 908 A-103
Covington, La 70434

209

(2)

## Order

Based on the foregoing motion.

It is ordered that the State of Louisiana thru Walter Reed - District Attorney show cause on the ___ day of _____, 200__ at ___ O'clock ___ m. why said relief shall not issue

Clerk to serve all parties a copy of this motion and order without cost.

Said and done this ___ day of _____, 200__.

_____
Judge

Please Serve

1) Walter Reed - DA thru Bruce Dearing ADA.
701 N. Columbia St Covington, La 70433

2) Marion E. Regan Jr - attorney defendant
2125 St. Charles ave new Orleans, La 70130

3) Walter a. Rall Jr
P.O. Box 908 A-103 Covington, La 70434.

210

(3)

22ND JUDICIAL DISTRICT COURT FOR THE PARISH OF ST. TAMMANY

STATE OF LOUISIANA

NO. 378041                                                    DIVISION "E"

STATE OF LOUISIANA

VERSUS

WALTER KOTT

FILE Jun. 4. 2007        DEPUTY CLERK: _____

## AMENDED ORDER

Considering the October 27, 2006 Judgment in the above entitled and numbered cause, and considering that the lab which was listed on the original order no longer performs the type of analysis required by defendant:

IT IS ORDERED by the Court that the district attorney, with the consent of the defendant, forward the vial of blood, drawn for use in the rape kit in the above entitled and numbered cause, to NMS Labs, Attn: Forensics 3701 Welsh Road, Willow Grove, PA 19090 for independent analysis.

Covington, Louisiana this ___ day of _____, 2006.

_____
J U D G E

211

FEB 1 7 2009

SCANNED

22ND JUDICIAL DISTRICT COURT FOR THE PARISH OF ST. TAMMANY

STATE OF LOUISIANA

NO. 378041                                                    DIVISION "E"

STATE OF LOUISIANA

VERSUS

WALTER KOTT

FILE _March 22, 2007_ DEPUTY CLERK: _____

## MOTION AND ORDER FOR SHIPMENT OF BLOOD

NOW INTO COURT, through undersigned counsel, comes defendant WALTER

KOTT, who after being granted permission by the Court to have his blood analyzed by NMS

Labs, now represents to the Court that arrangements have been made to have FED EX retrieve

said blood from Lt. Evan Swan, Slidell Police Department for shipment to NMS Labs, NMS

Labs, Attn: Forensics Specimen Processing, 3701 Welsh Road, Willow Grove, PA 19090.

WHEREFORE, defendant prays that this motion be granted.

Respectfully submitted:

MARTIN E. REGAN & ASSOCIATES, P.L.C.

_____
MARTIN E. REGAN, JR. (11153)
Attorney for Defendant
2125 St. Charles Avenue
New Orleans, Louisiana 70130
(504) 522-7260

### ORDER

IT IS HEREBY ORDERED that defendant's blood be made ready to ship by Lt. Evan

Swan, of the Slidell Police Department, on the _____ day of March, 2007, and shipped that date

with FED EX to NMS Labs, Attn: Forensics Specimen Processing, 3701 Welsh Road, Willow

Grove, PA 19090 for independent analysis, the results of which are to be introduced into

evidence.

Covington, Louisiana this _____ day of _____, 2007.

_____
J U D G E

FEB 1 7 2009

215                                          SCANNED

22ND JUDICIAL DISTRICT COURT FOR THE PARISH OF ST. TAMMANY

STATE OF LOUISIANA

NO. 378041                                                    DIVISION "E"

STATE OF LOUISIANA

VERSUS

WALTER KOTT

FILE March 28, 2007     DEPUTY CLERK: Debra Ann Peters

## EMERGENCY MOTION AND ORDER FOR CUSTODY AND CONTROL OF BIOLOGICAL MATERIAL

NOW INTO COURT, through undersigned counsel, comes defendant WALTER KOTT, who makes an emergency request for the St. Tammany District Attorney, Slidell Police Department and the St. Tammany Sheriff's Office to release Mr. Kott's biological material to the custody and control of defense counsel for the following reason(s), to wit:

This Court ordered that Mr. Kott be allowed to proceed with the independent testing of blood drawn from him by the St. Tammany Sheriff's Department. Since your Honor's order, the St. Tammany District Attorney's Office, along with the Slidell Police Department and the St. Tammany District Attorney's Office have all failed to provide the means necessary to follow through with said order. Defense counsel has since remitted payment for NMS Labs to do the testing, but has been thwarted at every turn in his attempt(s) to have the actual biological material shipped for testing. It should be noted that defense counsel not only located the blood when the District Attorney had indicated the sample had been depleted, he also found a lab willing to do the testing of the blood and further, he was able to get the Court to provide funding. All the District Attorney had to do in this instance was to remove any encumbrances that may have existed, yet he has failed to do even that. If the District Attorney had followed through on that one simple issue, this blood could have been tested months ago, and we could have proceeded to trial on the merits.

WHEREFORE, it is prayed that the defendant be granted an emergency order requiring the St. Tammany District Attorney, St. Tammany Parish Sheriff's Office and the Slidell Police Department to release the biological materials of Walter Kott forthwith.

216

FEB 17 2009

SCANNED

Respectfully submitted,

MARTIN E. REGAN & ASSOCIATES, P.L.C.

MARTIN E. REGAN, JR. (11153)
2125 St. Charles Avenue
New Orleans, Louisiana 70130
Telephone: (504) 522-7260
Facsimile: (504) 522-7507

## ORDER

IT IS HEREBY ORDERED by the Court that the district attorney, the St. Tammany Parish Sheriff's Office and the Slidell Police Department , in tandem, release to the custody and control of defense counsel any and all biological materials that are under their control so that same may be tested independently by NMS Labs.

Covington, Louisiana, this _____ day of _____, 2007.

_____
J U D G E

FEB 1 7 2009

SCANNED

217

State of Louisiana          Docket Number 378041
        Versus              Parish of St. Tammany
Walter a Katt J             State of Louisiana

Date Filed: _____          Deputy Clerk: _____

Motion for Emergency
Expedited Status Hearing

Now into Court Comes defendant Walter Katt J
who moves this honorable court to hold the
above mentioned Motion, I state to wit;

That a hearing shall be held to clarify if
the necessary funding is available to expedite
everything rlevent to be prepared to hold and
complete the Status Hearing on the Suppression
of the Six (6) item introduced by the State on
the 26th day of October, 2005.

Respectfully Submitted on this 15th day of July 2007

                Walter Katt J
                Walter a Katt J
                POBOX 908 Comd. J 70434

            Order

Its Order:

That the DA Show Cause on this ___ day of _____, 2007
at o'clock ___ m. Why said relief shall not issue

Said and done this ___ day of _____, 2007

                                222

Please Serve All Parties.                    Judge



Oct 27, 2005

1    I mentioned to the others you can

2    bring a cell phone.  You won't be able to

3    have it on you or with you in the jury

4    room so it might be well not to have a

5    cell phone tomorrow.  Okay.

6    (At this time, the jury was retired.)

7    THE COURT:

8    Anything on this case before we --

9    MR. DEARING:

10    No, Your Honor.

11    MR. REGAN:

12    No, Your Honor.

13    THE COURT:

14    I will file the select report of the

15    jury commissioner in the record, and I

16    will recess this matter until tomorrow

17    morning at 9:30.

18    Now we had a question, and let it be

19    noted that all jurors and everybody except

20    the parties and the Court personnel and

21    the defendant are here.

22    You had something about the other

23    case, Mr. Regan?

24    MR. REGAN:

25    Yes, sir.  There was a question

26    yesterday in the second degree murder

27    charge case involving the location of a

28    blood sample that was taken from my

29    client.  So that we could complete the

30    motion hearing on the Motion to Suppress.

31    I don't know, and I am not trying to put

32    Mr. Dearing on the spot, he may not have

117
211

1    the answer, because he has been tied up

2    here with us. I am hoping that this

3    afternoon might provide an opportunity to

4    do that, report to Court tomorrow on that

5    so I can get that thing moving to a lab.

6    MR. DEARING:

7         Yes, Your Honor. And I haven't had

8    an opportunity to look into it. If the

9    evidence is still in the possession of the

10   Slidell Police Department, I am told as a

11   result of Hurricane Katrina it will not be

12   an overnight process for them to answer

13   that question. If it is in the hands of

14   the State Police Laboratory in Baton

15   Rouge, then I will likely get a quicker

16   answer. So at this point I don't know

17   whose hands it's in.

18   THE COURT:

19        But you will try to find that out?

20   MR. DEARING:

21        Yes.

22   MR. REGAN:

23        This should be just a chain of

24   custody on this stuff.

25   MR. DEARING:

26        Right.

27   THE COURT:

28        Of course, in a _Migiliore_ situation

29   you would have to have some provision to

30   maintain proper custody and chain of

31   custody.

32   MR. REGAN:

1              Yes, sir.

2    THE COURT:

3              I am sure you will have a recognized

4         expert that will understand that.

5    MR. REGAN:

6              Yes, sir.   And we will handle it

7         properly I assure you.

8    THE COURT:

9              Okay.

10   MR. REGAN:

11             Thank you.

12   THE COURT:

13             Court's adjourned.

14             *    *    *    *    *

15

16

17

18

19

20

21

22

23

24

25

26

27

28

29

30

31

32

October 28, 2005

1    that you go back in the jury room for a

2    moment.  I will come in there and speak to

3    you and my clerk will also to get some

4    information.  I think you may get $15.00 a

5    day or something like that.  Some big

6    amount.

7        If you would, everybody please

8    stand.  Retire the jury.

9        (At this time, the jury was retired.)

10   THE COURT:

11       Be seated.  Gentlemen, since there

12   is only one sentence, I think I will

13   wait -- I don't need a pre-sentence

14   investigation.  Couldn't see why I should

15   need one.  On this other charge, is that

16   set for the November docket?

17   THE CLERK:

18       Actually, we hadn't set it yet.

19   MR. DEARING:

20       Yes.  I think we maybe were going to

21   discuss that here and now.

22   MR. REGAN:

23       The blood apparently has been

24   located.

25   MR. DEARING:

26       Judge, I just would remind the Court

27   that defense would have to waive some

28   delays if sentencing occurs today, if

29   that's what you were talking about.

30   THE COURT:

31       I was going to set it for whenever

32   the pre-trial is on the other charge.  I

1       don't think I can very well do it today.
2    MR. DEARING:
3            That's fine.
4    THE COURT:
5            Let me see, that would be
6        November the 14th.  Can you be ready?
7    MR. REGAN:
8            November 14th?
9    THE COURT:
10           November the 14th.  Can you get your
11       expert between now and then to examine it
12       or?
13   MR. REGAN:
14           I doubt it.
15   THE COURT:
16           I doubt it, too.
17   MR. REGAN:
18           You see what we have; if we could
19       just talk off the record for a second.
20   THE COURT:
21           Sure.
22       (Discussion off the record.)
23   THE COURT:
24           Does the State intend to send it off
25       and test it?
26   MR. DEARING:
27           It's already at the lab.  I haven't
28       had an opportunity to talk to my
29       supervisor to see what our desire would
30       be.  The information I am given is that
31       the testing by the police lab may, I am
32       told that they used the word may, consume

1     the entire sample. They might not know in

2     advance if that's going to happen.

3   THE COURT:

4        If that's the case, then the defense

5     probably has a right to be present at the

6     testing.

7   MR. DEARING:

8        Nods head affirmatively.

9   MR. REGAN:

10       If that were the case and, you know,

11    it's a vial of blood and I don't know how

12    much they need but.

13  MR. DEARING:

14      Neither do I.

15  THE COURT:

16      I kind of doubt that.

17  MR. DEARING:

18      I think what they're saying is

19   they're not in a position to make a

20   promise. I don't think they're going to

21   intentionally use the whole sample. But

22   they're just not going to tell me we

23   promise you that there's going to be some

24   leftover. They're not willing to say

25   that.

26  THE COURT:

27     This is something I think the Court,

28   you know, we are talking about

29   eventualities now. Find out from the

30   crime lab specifically whether that's the

31   case. If so, then Mr. Regan probably will

32   want to make a motion to be present and

*Who did Bruce Talk To*

1        maybe even have an expert present at the

2        same time.

3  MR. REGAN:

4          Yes, sir.

5  THE COURT:

6          Then if you have a motion for

7        payment of a test, that would have to be

8        decided beforehand also.  If he got

9        payment for your fees from a collateral

10       source which I understand is the case,

11       right?

12  MR. REGAN:

13          Yes, sir,

14  THE COURT:

15          Let's just deal with that matter as

16        it evolves then.  I will be around.

17  MR. REGAN:

18          Yes, sir.  As far as picking another

19        date at this point for sentencing or

20        status, could we just again talk about

21        that?  Obviously, today is at the end at

22        this point.  I was wondering if the

23        information can be obtained by the D.A.'s

24        Office through a phone call.  Somebody

25        could pull it out, look at it and see if

26        it is, you know, how many cc's, or how

27        much do you need and report back?

28  THE COURT:

29          Sure.  Sure.

30          Let's go on ahead and set for

31        sentencing in this case on November the

32        3rd.  And if that should cause a problem,

1            then we will deal with it as we do.

2        MR. REGAN:

3                Thank you, sir.

4        THE COURT:

5                Adjourned.

6                *    *    *    *    *

November 3, 2005

1    THE COURT:

2            Yes.

3    MR. REGAN:

4            This is -- next on the murder case

5        it is my understanding we had a pre-trial

6        on the blood issue, that the D.A. will do

7        his best to give me an answer tomorrow.  I

8        will be here.  Hopefully we will get that

9        resolved tomorrow.

10   MR. DEARING:

11           Nods head affirmatively.

12   MR. REGAN:

13           Thank you.  I just wanted to put

14       that on the record.

15                 *    *    *    *    *

16

17

18

19

20

21

22

23

24

25

26

27

28

29

30

31

32



## MARTIN E. REGAN & ASSOCIATES P.L.C.

ATTORNEYS AND COUNSELORS AT LAW
2125 ST. CHARLES AVENUE
NEW ORLEANS, LOUISIANA 70130
(504) 522-7260   (800) 798-5019
FAX (504) 522-7507
E-MAIL: mregan@reganlaw.net

MARTIN E. REGAN, JR.
THOMAS M. CALOGERO
RODNEY KELP LITTLEFIELD
JOHN W. THOMAS
KARLA M. BAKER
ARIS N. COX, VT

December 28, 2006

Mr. Walter Kott
PO Box 908-C-746
Covington, Louisiana 70434

Dear Mr. Kott:

As per our earlier conversation about the blood sample allegedly in the custody of the Slidell P.D., I have been unable to determine, after repeated calls to that department, whether or not the blood is in fact under their control. Also, in my conversation with the lab I was alerted to the fact, not previously known, that concentration levels, of whatever substance, rapidly deteriorate depending on temperature levels of storage, duration of storage and several other factors involved in the maintenance of same.

The lab has experts available to testify based on conclusions reached as a result of analysis. Extrapolation is a method of analysis which attempts to stretch out a small amount of information using a very small number.   Interpolation is the act of assessing a large amount of information and drawing conclusions based on that reading.  These terms are not exclusive to blood work, but are used in many disciplines.

I will discuss this matter further with Mr. Regan and ask that he visit you shortly to mull over any decisions on how to proceed, ie: trial w'out the blood, etc....

I wish the letter could be longer, but rest assured we will exhaust all avenues in defense of this case.

With kind regards, I remain

Sincerely,

Sean McCrossen
Paralegal to Martin E. Regan, Jr.



1    acknowledging that this is your signature on this

2    form that consents to a search of that room?

3    A.    If it was filled out properly, it would be a

4    consent to search, but I don't think it's filled out

5    properly.  Not only do you have one thing wrong with

6    it, you got two different things.  The whole form is

7    manufactured.  You tell me what choice I had in

8    having a form manufactured?

9        THE COURT:

10            You don't ask questions of the

11          counsel.

12        THE WITNESS:

13            I am sorry, sir.

14        THE COURT:

15            You just answer questions.

16        EXAMINATION BY MR. DEARING:

17    Q.    Other than the time, I know you dispute the

18    time that this form was signed, what are you saying

19    was fabricated on this form in order to induce you to

20    consent to it when you really didn't want to consent

21    to it?

22    A.    Again Mr. Dearing, I don't remember, I don't

23    remember signing that form.  At 1:13 when I went to

24    the police station, I am going to answer it again,

25    just like I did the last time, I signed that form who

26    showed that I signed that form.  But I don't remember

27    it being explained to me what the form was or nothing

28    else.  I obtained this form almost six months, seven

29    months after it happened.  I was sitting in jail.  I

30    hadn't hired Mr. Regan for three months.  I never

31    knew what the police did.  Okay, I never knew that

32    Rebecca was sodomized.  I never knew they had -- I

1   never knew all of this stuff.

2   Q.     Mr. Kott, saying that you don't remember going

3   over this form and it not happening are two different

4   things.  If I understand your testimony, you were

5   saying you simply don't remember signing this form,

6   but you do acknowledge recognizing your signature?

7   A.     Yes, that's my signature.  I will say that.

8   Q.     Now this toxicology report that was done by

9   NMS lab --

10  A.     Correct.

11  Q.     -- in Pennsylvania that was addressed during

12  your earlier testimony.  And you pointed out that the

13  results here is 9.5 nanometers per millimeter, right?

14  A.     Correct.

15  Q.     It states that the expected range during

16  treatment of severe pain is anywhere from one to 49?

17  A.     Correct.

18  Q.     Your attorney, Mr. Regan, characterized that

19  as your level being one-fifth of what you would

20  expect.  That's one way of looking at it?

21  A.     That was me that said that.

22  Q.     Okay.  You can also look at it another way,

23  you've got ten times, ten times what you sometimes

24  will find in a person who is prescribed this drug for

25  severe pain.  The range is one to 49.  You've got

26  9.5.  You've got ten times almost the minimum range.

27  You would agree with that?

28  A.     I can't dispute what that form says, Mr.

29  Dearing.

30  Q.     This is the lab that you chose.  This is not a

31  lab that the State chose, correct?

32  A.     You're really confusing me.  That form says I

1   have one-fifth. I am not disputing what that form
2   says in saying that it says it has ten times that.
3   Q.      Where does this form say you have one-fifth,
4   if I may?
5   A.      You do the math. If you use their --
6           THE COURT:
7                   Mr. Dearing, I can understand. I
8                   have read the form. It says one to 49.
9                   Nine point five is between one and 49. I
10                  understand.
11          EXAMINATION BY MR. DEARING:
12  Q.      You would acknowledge that the State lab took
13  a position that the sample was too small and too poor
14  of a condition to even produce a reliable test
15  result, and that's why you all went and took it to
16  the second lab. You would agree with that?
17  A.      Mr. Dearing, that's really a bad issue with
18  me. That's what you told the Judge in October 25,
19  2006 is that the lab appraised you, and it's a very
20  small amount. They can conduct the test, but they
21  didn't have enough -- they didn't know if they had
22  enough biological material to share it with the
23  defense. It was what you said.
24  Q.      Did you have any conversation with the lab?
25  A.      No, sir, I am going by what I sat in the
26  courtroom and listened to with you that day, and
27  that's what you told the Judge. And I believe that's
28  damn, excuse me, doggone close to what you said.
29  Q.      You dispute --
30  A.      And we agreed that day to run tests. Then the
31  blood mysteriously gets lost for six months and
32  another two years.

1  Q.    You would agree that the sample that was

2  tested by your lab, and I think it was your own

3  testimony it was 39 months old when they first got

4  their hands on it?

5  A.    If you look at the date it was tested --

6  Q.    No, I am agreeing with you.  You would agree

7  with that?

8  A.    Correct.

9  Q.    We have heard no testimony during the course

10 of this hearing how reliable this test result is

11 based on the circumstances of the degradation of the

12 sample, the passage of time, the amount of sample, we

13 have heard no testimony.  You would agree with that?

14 A.    I am the only one testifying and I can't.

15 Q.    You certainly have no training --

16 A.    None whatsoever.

17 Q.    -- in that field?

18 A.    I'm using their numbers.

19 Q.    Relating to the issue of you injecting

20 Catherine Boyena, your daughter, if I understood your

21 earlier testimony, it wasn't just a Dilaudid

22 prescription that you met the doctor in the parking

23 lot and got the prescription for, but it was multiple

24 drugs; right?

25 A.    Yes, I got two prescriptions filled.  The

26 Lorcet 10s, and I never testified to this.  You're

27 reading that in the narrative.  So I don't even know

28 if I should -- the only thing we talked about today

29 was Dilaudid as far as I remember.

30 Q.    You got Dilaudid, Lorcet and what other

31 prescription?

32 A.    Dilaudid, Lorcet and Xanax filled.  And I

1   think if you want to get right down to it, the
2   Downtown Drugs right here in Covington, the Dilaudid
3   was filled.  Evans Pharmacy in Slidell on Thompson
4   Road.  Not the one in Picayune.  Not the one in Pearl
5   River, filled the Lorcet 10s, and it was too early to
6   fill the Xanax.
7   Q.     And your preferred method of ingestion was to
8   inject the Dilaudid and to inject the --
9   A.     It's --
10  Q.     -- Hydrocodone and Lorcet?
11  A.     The Hydrocodone is not injectable.  It can't
12  be injected.  It's got too much buffer.  You can't --
13  if you cooked it down, it would turn into a gel.  If
14  you soaked it down, you can't inject it.
15  Q.     So you say that you consume that orally?
16  A.     That's the only way you can consume that,
17  correct.
18  Q.     So other than Dilaudid, what other drug did
19  you inject back in that time?
20  A.     Only Dilaudid.  None of the other ones are
21  injectable.
22  Q.     You would agree that, getting back this is the
23  last issue to cover, I know it's your contention on
24  your consent regarding the motel room and your
25  vehicle that Detective McClain and Detective Campbell
26  were in two different locations when that form was
27  allegedly executed.  You would agree that the police
28  report doesn't say that you had yet been transported.
29  It simply states there had been a request made that
30  you be transported.  We don't know -- it doesn't say
31  you were transported and then that form was executed.
32  A.     Mr. Dearing, if you go to page three, and I



SUPPLEMENTAL NARRATIVE -- investigation of Dr. Richard Sabatier

ADDITIONAL INFORMATION:

On 9 January 2004, Detective Gibson responded to assist in the investigation documented under item 0401-2020. Detective Gibson was provided with the following information. That a female had died, possibly a homicide, and the suspect was Walter Kott. This death appeared at the time to be a result of a lethal dose of prescription medication administered to the victim by the suspect, Kott.

Lt. Swann instructed Detective Gibson to research the prescription history of Walter Kott. On 29 January 2004, Detective Gibson began this process by requesting, via subpoena, the prescriptions and prescription history of Walter Kott at local pharmacies. This led the detective to Evan's Drug Mart located 2165 West Gause in Slidell and Downtown Drugs located 322 N. Florida in Covington, LA.

From these two pharmacies the detective discovered a large amount of prescriptions for Walter Kott. By looking over these prescriptions one pattern stood out from the rest. This being prescriptions for large amounts of Dilaudid, a schedule II controlled dangerous substance containing the drug hydromorphone, from one doctor, Dr. Richard E. Sabatier.

Another distinct fact was obvious when looking at these prescriptions. This was that Dr. Sabatier was over prescribing the dilaudid, contradicting his own prescriptions. For example, on 12-01-03, Dr. Sabatier wrote a prescription to Kott for #120 4mg tablets of Dilaudid with the specific instructions to not exceed more than 4 tablets in one day (a 30 day supply). However, on 12-05-03, Dr. Sabatier again wrote a prescription to Kott for #120 4mg tablets of Dilaudid with the same instructions.

On 30 January 2004, Detective Gibson increased the search for prescriptions for Walter Kott. This time the detective only obtained subpoenas for prescriptions from Dr. Richard Sabatier for Walter Kott. Detective Gibson located such prescriptions at Walgreen's Pharmacy located 100 Military Rd in Slidell, Michael Medicine Shoppe located 4021 Pontchartrain in Slidell, and Gambina Pharmacy 614 Robert Rd in Slidell. Of these three pharmacies the prescription from Walgreen's was for Dilaudid. Again it was a 30 day supply of 4mg tablets. This was written and filled on the 28th of January 2004, the day prior to the death. The prescriptions at the other two pharmacies were for various pain and anti-anxiety medications.

Detective Gibson then listed in chronological order the prescriptions for Dilaudid for Kott from Dr. Sabatier. This showed a repeating pattern of contradicting prescriptions:

| DATE | QUANTITY | MG. |
|---|---|---|
| 11-19-03 | 120 | 4 |
| 12-01-03 | 120 | 4 |
| 12-05-03 | 120 | 4 |
| 12-26-03 | 220 | 2 |

| | | | |
|---|---|---|---|
| 12-29-03 | 120 | | 4 |
| 01-18-04 | 32 | | 2 |
| 01-10-04 | 110 | | 4 |
| 01-15-04 | 120 | | 4 |
| 0 27-04 | 120 | | 4 |
| 0  28-04 | 120 | | 4 |

Information gathered during this investigation led the detective to believe that Dr. Sabatier was seeing patients regularly outside of the office. During these out of office visits, the doctor was providing these patients, including Kott, with prescriptions. Detective Gibson felt that Dr. Sabatier was not keeping accurate records of these visits which was resulting in the over prescribing.

On 03 February 2004, Detective Gibson obtained a subpoena for the medical records and office visit history of Walter Kott at Dr. Sabatier's office. Detective Gibson located Dr. Sabatier at his residence in Mandeville, LA. Detective Gibson provided a copy of the subpoena to Dr. Sabatier. Dr. Sabatier stated he was going to the office later in the day and would call the detective to come and get the files. Dr. Sabatier never called the detective back.

On 04 February 2004, Detective Gibson returned to Dr. Sabatier's residence. Dr. Sabatier stated he was feeling sick and did not go into work yesterday. Dr. Sabatier stated he would call his office and have one of the employee's have the file ready. Dr. Sabatier advised that the detective could go and pick it up.

Detective Gibson went to the doctor's office located on Ridgelake Drive in Metarie, LA. The detective obtained the files. The files to the d  ective appeared to be incomplete. Only two records of office visits were documented.

On 05 February 2004, Detective Gibson again met with Dr. Sabatier at his residence. Detective Gibson questioned Sabatier about Kott and the prescriptions he was providing to him. Dr. Sabatier stated he had met with Kott on occasion outside the office. During these visits he provided prescriptions for Dilaudid. Dr. Sabatier however did not seem as though he realized how often or how many Dilaudid he had been prescribing to Kott. Dr. Sabatier advised Kott had told him accounts of pharmacies not filling the prescriptions because they were out at the time and that he, Kott, was going to go out of town and needed a prescription for the "road." Dr. Sabatier stated he trusted Kott because he, Kott, was a relative of a friend of his, Sabatier.

Detective Gibson asked the doctor if he would provide a written statement to these accounts. Dr. Sabatier stated he wanted to cooperate in any way he could. Detective Gibson advised Dr. Sabatier of his Miranda Rights. Dr. Sabatier signed a form stating he understood these rights and was willing to provide a statement at this time. Dr. Sabatier then provided a written statement about his relationship with Kott.

Detective Gibson then requested the assistance of the Drug Enforcement Agency's Diversion division. On 05 February 2004, DEA diversion met with the detective at Slidell Police Department. DEA diversion agents were p   sent and had requested Dr. Sabatier also be at the meeting. Detective

Gibson first met with the agents and explained the nature of the case and the evidence located during the investigation.

The agents then interviewed, Dr. Sabatier. When confronted about the over prescribing, Dr. Sabatier could not explain. Dr. Sabatier stated he had not realized what had been happening and admitted he had over prescribed. The agents asked the doctor to surrender his permit to prescribe controlled dangerous substances. Dr. Sabatier complied without hesitation. Detective Gibson learned that Dr. Sabatier also surrendered his medical license a few days later.

Based on this investigation and that Dr. Sabatier had voluntarily surrendered his ability to prescribe medications and his ability to practice, no charges were pursued. Federal charges may result from DEA Diversion's investigation.

All evidence collected by Detective Gibson was later placed into evidence, marked as Property Record 66044.

DATE/TIME/REPORTING OFFICER:

Wed Mar  3 14:33:17 CST 2004

J. Gibson 234



Case 2:14-cv-00953-SM Document 3-3 Filed 06/03/14 Page 251 of 352

22ND JUDICIAL DISTRICT COURT FOR THE PARISH OF ST. TAMMANY

STATE OF LOUISIANA

NO. 378041                                    DIVISION "E"

STATE OF LOUISIANA

VERSUS

WALTER KOTT

FILE _Nov. 16, 2006_ DEPUTY CLERK: _____

### JUDGMENT

The above entitled and numbered cause came up for hearing on October 27, 2006

relative to defendant's Ex Parte Motion For Funding Testing On Biological Testing.

Present for said hearing were:

Martin E. Regan, Jr. , Attorney for Defendant

Bruce Dearing, Attorney for the State of Louisiana

After considering the law and arguments of counsel, the Court granted defendant's

Motion and so orders the State to grant Mr. Kott Five Thousand ($5,000.00) Dollars so that he

may employ the use of various forensic biological material tests in preparation for his trial in

the matter.

So Ordered on the _16_ day of _November_ 200 _6_ .

_____
JUDGE

FEB 1 7 2009

SCANNED

State of Louisiana                Docket # 378041
Versus                            22nd Judicial District Court
Walter A. Kott Jr                 Parish of St. Tammany

Date Filed   MAR 0 7 2006         Teri A. Byrns
                                  Deputy Clerk

Motion on Pauper Status
to grant funds for expert

Now into Court Comes defendant Walter
a Kott Jr who moves the Court to assist
with the funds necessary to hire experts
To review the topology's listed below and testify
on behalf of the defense at either motions hear-
ing or trial. (This is essential to the defense
to be able to refute the states experts if necessary
(The defendant is on record on the 1 day of
November, 2005 informing the Court of his
pauper status and seeks relief on only the
following three items.

1) an expert to review the autopsy and
topology's of the deceased Rebecca Roshto and
testify if necessary.
2) an expert to review the topology of the
defendant Walter Kott and testify if necessary.
3) a Private Investigator to obtain the medical history
of the Deceased Rebecca Roshto if the Court Order or
Subpoena is obtained.

Respectfully summitted on the 24 day of
February, 2006. under the penalty of perjury
and good-faith

                         Walter a Kott Jr
          154            P.O.Box 908 D206 Covington Jr 70434
                                   SCANNED
                              MAR 1 7 2006

(1)

## Order

Based on the foregoing motion its order that Walter Reed District Attorney show cause on the 12th day of April 2006. at 9:00 O'clock A.m. why said relief shall not issue.

Clerk to serve all parties a copy of this motion and order without cost.

Said and done on the 13 day of March, 2006

_____
Judge

Please Serve

Walter Reed - D.A.

Jack Strain - Sheriff

Martin Regan - Defense Counsel

Walter Katt - Defendant.

155

SCANNED
MAR 17 2006



MR. REGAN:

    Thank you.  That is correct.

THE COURT:

    I might state the way you're looking
at me, you think that the Court hasn't
given you every opportunity.  We have been
doing this thing --

    When was the first time we took some
evidence in this Motion to Suppress?  It's
been a year that we have been going on.
Most of the time for your benefit, we have
set things on Fridays, we have set things
at the convenience of your calendar, and
now all of a sudden, you come at the last
minute with this kind of a motion to try
to derail this motion which we have been
working on for at least a year.

MR. REGAN:

    The motion was last heard
January 31st of '08, and the motion was
filed in July that we are hearing today in
November.

THE COURT:

    We have had it at least on -- this
is at least the third time that we have
taken evidence on this.  And I have given
you the benefit during this time of
looking for crime labs all over this
nation.

    Proceed.

MR. DEARING:

    Your Honor, I believe we have



1   Detective or Officer Campbell?

2   A.      Yes, we did.  We went into the police station

3   and asked the sergeant I guess at the desk that, you

4   know, which he notified Detective Campbell that we

5   were there to pick the truck up.

6   Q.      Did you in fact personally see or get a chance

7   to speak with Detective Campbell?

8   A.      Yes, we did.  He accompanied us to the

9   impound, I guess you would call it the impound lot,

10  behind the police station.

11  Q.      Was your daughter's vehicle there?

12  A.      Yes, it was.

13  Q.      And when you went to that vehicle with

14  Detective Campbell, was your husband, Mr. Henry

15  Herrington, permitted to come?

16  A.      Yes, he was.

17  Q.      Now, did you have an occasion to speak with

18  Detective Campbell regarding your daughter's case?

19  A.      Yes, we did.

20  Q.      And with respect to Detective Campbell at this

21  point, did he indicate that he was involved in the

22  investigation in to your daughter's death?

23  A.      Yes, he was.

24  Q.      Ma'am, did he make any statements regarding

25  obtaining a confession from anyone?

26  A.      Yes, he did.  As --

27  Q.      Let me just go slow so we can get -- I would

28  like to get -- where was he when he made statements

29  regarding getting the confession regarding your

30  daughter's death?

31  A.      We were standing at the passenger side of my

32  daughter's truck.  The door was open.  He had asked

1  me to look through her truck to make sure that

2  everything, you know, all of her property was in fact

3  there. And you know, I related to him that I really

4  didn't know what she had in her truck, you know,

5  before it was impounded. So I really couldn't give a

6  definition of if everything was there or not. My

7  husband at that time, Henry Harrington, proceeded to

8  question Detective Campbell as to, you know, are you

9  sure that you have the right man. We just can't

10  believe that Walter Kott did this, you know, along

11  those lines. And Detective Campbell proceeded to

12  explain to us how he obtained the confession.

13  Q.    Now when Detective Campbell proceeded to tell

14  you how he obtained the confession, was Mr. Henry

15  Herrington, your husband, there in his company as

16  well?

17  A.    Yes.

18  Q.    Would you relate to the Court as accurately as

19  you can what Detective Campbell said as to how he

20  obtained a confession from Walter Kott?

21  A.    He said that it took them awhile, in fact,

22  several hours, because he said the confession wasn't

23  obtained until late in the afternoon, somewhere along

24  those lines. And he said that Walter had asked for

25  water and Walter had wanted his pills. And he

26  proceeded to show me how he shook the bottle of

27  pills. (Indicating.)

28  Q.    You're shaking your right hand for the record?

29  A.    Right.

30  Q.    Show us the movement that Detective Campbell

31  did when he was telling you this.

32  A.    He literally shook his hand as if holding a

1   bottle of pills in front of my face (Indicating.) and

2   told me that he had told Walter that he could have

3   his pills if he would write the confession.

4   Q.    And is there any doubt in your mind that

5   that's what he told you?

6   A.    No, there was no doubt.

7   Q.    This is in fact your daughter who was in fact

8   dead at this point, correct?

9   A.    Yes, sir.

10  Q.    Did you obtain the release of the vehicle that

11  night?

12  A.    Yes, sir, we did.

13  Q.    Now, your participation in this case went on

14  after that, did it not?

15  A.    Yes, it did.

16  Q.    You had expressed an opinion of doubt as to

17  whether Walter Kott was involved or responsible for

18  her death, did you not?

19  A.    Correct.

20  Q.    What, if anything, did you know at this point

21  that led you to believe that Walter Kott was not

22  responsible for your daughter's death?

23  A.    Through our, I am going to say investigation.

24  We spoke with many different people who in effect had

25  the same thing to say.  Rebecca was with Jason

26  Thomas.

27  Q.    Okay.  Jason Thomas, and who is -- let's start

28  with that.  They were saying she was with Jason

29  Thomas that night.  Is that what you're telling us?

30  A.    Right.

31  Q.    Who is Jason Thomas?

32  A.    Jason Thomas was a young man that she met



DEAD BODY Rebecca Roshto w/f 22yoa room 129 Plaza Inn & Suites 798 Lindberg Glen

DATE/TIME, DESCRIBE DISCOVERY OF VICTIM: Thu. 1/29/04 1123 hrs., officers responding to report of some type of medical assist with subject on scene attempting to revive unresponsive person in bath tub of motel room, upon arrivals officers located deceased nude w/f propped up in bathtub.

DATE/TIME DEAD PERSON LAST SEEN ALIVE; BY WHOM: unspecified time during early morning hours by complainant Walter Kott to whom room was rented since 1/21/04.

POSITION OF THE BODY WHEN DISCOVERED: propped in corner of bathtub/shower in bathroom of room 129.

UNUSUAL MARKS ON THE BODY: lividity in legs, hands, right hip, and possible injection mark in elbow of right arm.

MEDICAL AID GIVEN PRIOR TO DEATH; BY WHOM: none reported.

DEAD PERSON'S ATTENDING PHYSICIAN: unknown

POSSIBLE CAUSE OF DEATH: overdose

DATE/TIME  CORONER'S OFFICE NOTIFIED: 1129 hrs. 1/29/04.

DATE/TIME CORONER INVESTIGATOR ON SCENE: 1218 hrs. 1/29/04

CORONER INVESTIGATOR'S NAME AND ACTIONS TAKEN: Joy Raybon CO5 and Rebecca Caminita CO4, initial examination of body and removal for autopsy.

E _ DENCE OBTAINED: See Case Resume and Item Involvements

AMBULANCE ATTENDANTS' NAMES: Acadian Ambulance Service, Maria McCain and Jacob Lathrop

AUTOPSY INFORMATION: Pending

DISPOSITION OF PERSONAL EFFECTS: See Case Resume for disposition of effects seized as evidence.

DEATH NOTIFICATION TO NEXT OF KIN: unknown at time of this officer's report.

ADDITIONAL INFORMATION:

On Thu. 1/29/04 at approx. 1123 hrs. Cpl. Kahrs responded to a report of a call for medical assistance at Plaza Inn & Suites 798 Lindberg Glen room 129. The call was reported to involve a non-responsive subject who the caller had moved to the shower in attempt to revive the subject.

Upon arrival Cpl. Kahrs was met by a w/m later ID'd as Walter Kott. Kott directed officers into the room and stated "She's not

breathing".   Cpl. Kahrs entered the bathroom and observed a nude w/f
subject propped in a sitting position and leaning in the back corner of
the tub/shower stall.  Cpl. Kahrs checked for a pulse at the subject's
neck and right wrist but no pulse was detected.  Lividity was plainly
observed in the subject's legs and left arm.  The water was observed to
be running in the bathtub and the subject's hair was wet.  SSgt. Davis
also observed the subject as found.  Cpl. Kahrs and SSgt. Davis then
left the room with Kott and notified Lt. Foltz that the subject was
deceased.  Lt. Foltz arrived shortly thereafter and requested
notification of the coroner's office and CID.

        Acadian Ambulance arrived and their personnel attached leads for
EKG reading which registered no vital signs.  After ambulance personnel
completed the scene was emptied and secured with crime scene tape
pending arrival of CID personnel and coroner's investigator and a crime
scene log begun.

        Cpl. Kahrs conducted initial interview of Walter Kott to attempt
to determine the circumstances surrounding the subject's death, ████████
████████ ███████████ ██████ ███████ ███████ ██████████ █████ █████████
the following ████████ ████████████ ██████ ████ ████████ ████ ████████

        Kott stated that he knew the female as Rebecca but did not know
her last name.  Kott advised, and showed on his cell phone log, that
Rebecca had called his cellphone at 1129 p.m. on 1/28/04 from
(985)502-5941 after having a fight with her boyfriend (name unknown).
Kott stated that he believed she had called from Doug's restaurant where
she might work.  Kott stated that a short while later Rebecca showed up
at his motel room, having driven in her truck which he identified as a
green Chevrolet pickup LA tag W219999 parked a short distance from the
room.  Kott stated that Rebecca was "feeling pretty good" at the time
she showed up, indicating that she was intoxicated, and claimed that she
arrived with a beer and told him that she had ingested some type of pill
but he could not remember what type she claimed to have taken.  Kott
stated that Rebecca had left at one point in the night to get cigarettes
and possibly other items.  Kott stated that upon waking he discovered
Rebecca was lying on the bed and had apparently vomitted on the
bedspread.  Kott stated that he could not wake Rebecca and that he and
his daughter Catherine Boyen then moved Rebecca to the tub to attempt to
revive her but they were unsuccessful.  Kott stated that Boyen then left
and suggested that he call for an ambulance.

        Kott could not give a time that he woke and discovered Rebecca
unresponsive, giving various times in a range from 0830 to 1000 hrs.,
and indicated that Rebecca may have been in the tub for 45 minutes to an
hour.  Kott stated he was not sure if she had been breathing at all when
first discovered, only that she was "drooling".  Kott stated that his
daughter had left because she had "other things to do" but it was not
determined in initial interview if Boyen had been there during the night
or had been called to the room by Kott.  Kott stated that he had asked a
hotel attendant (w/m name Gwin Bowling) for sheets to clean up as
Rebecca had vomitted on the bedspread which he had removed and bundled
up on the floor.  Kott did not give any explanation when asked as to why
he did not immediately call for assistance when Rebecca was discovered
unresponsive.  Kott stated that he did not "touch her or fuck her or
nothing".

Gwin Bowling stated that he had not entered the room and did not know anything about the incident other than that he gave Kott fresh linens.

Upon Det. Campbell's arrival and briefing he requested that Kott be secured in the rear of unit 128. Cpl. Kahrs patted down Kott at Lt. Foltz's direction and asked him if he had any weapons, narcotics, or other contraband on his person and he advised that he had his medicine in his pocket because he cannot carry the large bottle they come in. Cpl. Kahrs located and retrieved from Kott's right front pocket 8 oblong green tablets labeled WATSON 503 and recognized by Cpl. Kahrs from previous contact and experience to be Hydrocodone Schedule II CDS. Kott advised that the prescription bottle was in his car, a maroon Dodge bearing LA tag MLN131 which he pointed out parked near the corner of the building. Kott was advised of his rights and placed in the rear of unit 128.

The crime scene was extended to cover the vehicle identified as Rebecca's and Kott's vehicle. The registration of the truck indicated it was owned by a Rebecca Roshto who was found to be entered in CAD and fit the description of the deceased subject.

Detectives requested that Kott be transported to the station for further questioning and he was transferred to unit 163 and transported by Sgt. Vanshoubrouek.

Cpl. Kahrs remained at the scene to assist CID during initial walk-through, coroner's initial examination and removal of body, and measuring and processing of crime scene to include the room and Kott's vehicle, beginning wrecker/inventory sheets for both vehicles which were later towed from the scene to be secured at the SPD. Cpl. Kahrs cleared the scene at approx. 1443 hrs. while several CID personnel were still present and in control of the scene and vehicles.

See supplemental narratives/case resume of assigned detective and property involvements for further information.

DATE, TIME, REPORTING OFFICER:
Thu Jan 29 17:02:36 CST 2004
Cpl. J. Kahrs #128

*NO MIRANDA MENTIONED*

*KOTT COULD NOT GIVE CONSISTENT EVENT DETAILS. ?₅ 2*



STATE OF LOUISIANA

VS. # __319.354/317.841__

Walter Kott

FILED __June 11, 2004__

22ᵗᴴ JUDICIAL DISTRICT COURT

PARISH OF ST. TAMMANY

STATE OF LOUISIANA

DEPUTY CLERK

## MOTION FOR CONTINUANCE

NOW INTO COURT, through undersigned Counsel, comes the defendant herein who moves this Court to continue the Felony Jury Trial set for the __11__ day of __June__ 200__4__ for the following reason: __More Discovery is outstanding__

_____

OBJECTS

✓ NO OBJECTION.

ASSISTANT DISTRICT ATTORNEY

RESPECTFULLY SUBMITTED:

ATTORNEY FOR DEFENDANT

## ORDER

Considering the foregoing Motion, IT IS ORDERED that the matter be continued to the __14th__ day of __October__, 200__4__.

Covington, Louisiana, this __11__ day of __June__, 200__4__.

WILLIAM J. BURRIS, JUDGE
22ᴺᴰ JUDICIAL DISTRICT COURT

105

SCANNED

JUN 25 2004

STATE OF LOUISIANA

VS. # 378041

Walter Kott

FILED September 24, 2004

22ND JUDICIAL DISTRICT COURT

PARISH OF ST. TAMMANY

STATE OF LOUISIANA

_____
DEPUTY CLERK

## MOTION FOR CONTINUANCE

NOW INTO COURT, through undersigned Counsel, comes the defendant herein who moves this Court to continue the Felony Jury Trial set for the __11__ day of __October__, 2004 for the following reason: __Received discovery on__ ___9-24-04___

☑ OBJECTS
  NO OBJECTION

_____
ASSISTANT DISTRICT ATTORNEY

RESPECTFULLY SUBMITTED:

_____
ATTORNEY FOR DEFENDANT

## ORDER

Considering the foregoing Motion, IT IS ORDERED that the matter be continued to the __3rd__ day of __November__, 2004.

Covington, Louisiana this __24__ day of __Sept__, 2004

_____
WILLIAM J. BURRIS, JUDGE
22ND JUDICIAL DISTRICT COURT

SCANNED
SEP 3 0 2004

106

STATE OF LOUISIANA
379354
VS. # 378041

Walter A. Kott

FILED November 3 2004

22ND JUDICIAL DISTRICT COURT

PARISH OF ST. TAMMANY

STATE OF LOUISIANA

_____
DEPUTY CLERK

## MOTION FOR CONTINUANCE

NOW INTO COURT, through undersigned Counsel, comes the defendant herein who moves this Court to continue the Felony Jury Trial set for the __3__ day of __November__ 2004 for the following reason: Counsel is out of the country until Nov. 14, 2004

X  OBJECTS
☐  NO OBJECTION

_____
ASSISTANT DISTRICT ATTORNEY

RESPECTFULLY SUBMITTED:

_____
ATTORNEY FOR DEFENDANT

## ORDER

Considering the foregoing Motion, IT IS ORDERED that the matter be continued to the 3rd day of January, 2005.

Covington, Louisiana this 3 day of Nov, 2004

_____
WILLIAM J. BURRIS, JUDGE
22ND JUDICIAL DISTRICT COURT

109

SCANNED
DEC - 8 2004

STATE OF LOUISIANA

VS. # 378041 / 379354

Walter Kott

FILED January 3, 2005

22ND JUDICIAL DISTRICT COURT

PARISH OF ST. TAMMANY

STATE OF LOUISIANA

DEPUTY CLERK

## MOTION FOR CONTINUANCE

NOW INTO COURT, through undersigned Counsel, comes the defendant herein who moves this Court to continue the Felony Jury Trial set for the __3__ day of __January__ 200__5__ for the following reason: __Defense counsel is on another matter in Jefferson Parish__

___ OBJECTS
_X_ NO OBJECTION

ASSISTANT DISTRICT ATTORNEY

RESPECTFULLY SUBMITTED:

ATTORNEY FOR DEFENDANT

## ORDER

Considering the foregoing Motion, IT IS ORDERED that the matter be continued to the __28th__ day of __February__, 200__5__.

Covington, Louisiana this __3__ day of __Jan__, 200__5__

WILLIAM J. BURRIS, JUDGE
22ND JUDICIAL DISTRICT COURT

**SCANNED**

JAN 25 2005

112

STATE OF LOUISIANA

VERSUS

WALTER A. KOTT JR.

DATE FILED Feb. 1, 2005

DOCKETT NUMBER 378041

22ND JUDICIAL DISTRICT COURT

PARISH OF ST TAMMANY

_____

DEPUTY CLERK

## MOTION FOR BOND REDUCTION

NOW INTO THIS COURT COMES DEFENDANT WALTER A. KOTT JR. WHO MOVES THIS COURT TO REDUCE HIS BOND UNDER THE PRINCIPLES SET BY THE U.S. SUPREME COURT IN STACK -V- BOYLE 321 U.S. 1, 5 [1951] I STATE TO WIT;

) ON THE 29 DAY OF JANUARY, 2004 I WAS ARRESTED AND SUBSEQUENTLY INDICTED FOR 2ND DEGREE MURDER. TO WHICH BOND WAS SET IN THE AMOUNT OF $200,000 00 DOLLARS CASH, PROPERTY OR SURETY.

) THAT THIS BOND IS EXCESSIVE IN LIGHT OF THE FOLLOWING FACTS AND DISPUTES IN THE LAW ENFORCLEMENTS REPORTS.

) A BLOOD SAMPLE TAKEN IS BEING SUPRESSED DESPITE FAVORABLE TO THE DEFENSE WHICH WOULD SHOW THE BLOOD AND NARCOTIC LEVEL OF DEFENDANT WAS AT SUCH LEVEL TO RENDER HIM INCOMPETENT TO THROW OUT THE INCRIMINATING STATEMENTS MADE PRIOR TO AND AFTER GIVING THE MIRANDA WARNINGS UPON CONSTANT BADGERING WITHOUT SLEEP AND GIVING ME ACESS TO A LAWYER UPON REQUEST.

) MEDICAL REPORTS SHOW THAT NO NARCOTICS WAS AT THE POINT OF ENTRY OF THE SYRINGE INTO THE VICTIM WHICH THE STATE IS ALLEGING I USED TO CAUSE HER DEATH.

) TIMES AND DATES OF THE REPORTS ARE IN CONFLICT WITH EACH OTHER DESPITE 5TH OFFICERS ARE ALLEGED TO HAVE WITNESSED THE SAME FACTS.

) NO SEARCH WARRANT WAS OBTAINED TO ALLOW PRISONERS TO ENTER INTO A PRIVATE DUMPSTER IN SEARCH OF EVIDENCE OF A ALLEGED CRIME.

113

SCANNED

MAR 2 1 2005

THAT I HAVE BEEN DETAINED FOR OVER ONE YEAR WITHOUT INCIDENTS.

THAT A BOND IN THE AMOUNT OF 100,000.ºº DOLLARS CASH, PROPERTY OR SURETY WLD BE ENOUGH TO SECURE DEFENDANTS PRESENCE AT TRIAL TO BE POSTED BY IVATE INDIVIDUALS IN ADDITION TO AND OTHER CONDITIONS SET BY THE COURT.

THAT NO PROBABLE CAUSE DETERMINATION WAS MADE ON THESE WARRANT ARREST THIN 48 HOURS IN VIOLATION OF GERSTEIN-V-PUGH, 420 US AT 113-114 (1975) AND .C. CP. ART. 230.2

WHEREFORE I PRAY THE BOND BE REDUCED TO 100,000.ºº LLARS CASH, PROPERTY OR SURETY.

RESPECTFULLY SUMMITED THIS 27 DAY OF January 2005 OER THE PENALTY OF PERJURY AND GOOD-FAITH.

WALTER A. KOTT JR.
P.O. BOX 908 C-746
COVINGTON LA 70434

114

*SCANNED*

MAR 2 1 2005

## ORDER

BASED ON THE FOREGOING MOTION:
ITS ORDER THAT THE STATE SHOW CAUSE ON THE 9
DAY OF FEBRUARY 2005 AT 9 O'CLOCK A.M. WHY SAID
RELIEF SHALL NOT ISSUE.

CLERK TO SERVE ALL PARTIES A COPY OF THE
MOTION AND ORDER WITHOUT COST.

SAID AND DONE THIS ____ DAY OF_____, 2005

_____
JUDGE

PLEASE SERVE

WALTER REED DA
701 N. COLUMBIA ST.
COVINGTON LA 70434

MARTIN E REGAN JR ATTORNEY AT LAW
2125 ST CHARLES AV.
NEW ORLEANS LA. 70130

WALTER A. KOTT JR
P.O. BOX 902 C-746
COVINGTON LA 70434

*Set for same date as his attorney's motion for reduction of bond is set and consolidated for hearing for 3/3/05*

115

SCANNED
MAR 21 2005

STATE OF LOUISIANA

VS. # 379354
       378041

Walter A. Kott

FILED February 28, 2005

22ND JUDICIAL DISTRICT COURT

PARISH OF ST. TAMMANY

STATE OF LOUISIANA

_____

DEPUTY CLERK

## MOTION FOR CONTINUANCE

NOW INTO COURT, through undersigned Counsel, comes the defendant herein who moves this Court to continue the Felony Jury Trial set for the **28** day of **February** 200**5** for the following reason: **Defense counsel is in a first degree murder trial in Jefferson Parish State v. Mark Cambre**

OBJECTS

☒ NO OBJECTION

_____
ASSISTANT DISTRICT ATTORNEY

RESPECTFULLY SUBMITTED:

_____ o/bo

Martin Regan
ATTORNEY FOR DEFENDANT

## ORDER

Considering the foregoing Motion, IT IS ORDERED that the matter be continued to the **18th** day of **April**, 200**5**.

Covington, Louisiana this **28** day of **Feb**, 200**5**

_____
WILLIAM J. BURRIS, JUDGE
22ND JUDICIAL DISTRICT COURT

118

SCANNED

MAR 21 2005

STATE OF LOUISIANA

VS. _Walter Reed Kott_

# _378070_

# _379 854_

FILED _April 18, 2005_

22nd JUDICIAL DISTRICT COURT

PARISH OF ST. TAMMANY

STATE OF LOUISIANA

_[signature]_

DEPUTY CLERK

## MOTION FOR CONTINUANCE

NOW INTO COURT, through undersigned Counsel, comes the defendant herein, who moves this Court to continue the Felony Jury Trial set for the _18th_ day of _April_ 2005, for the following reason: _Defense needs additional Time to Prepare for Trial_

_____ OBJECTS
_X_ NO OBJECTION

_[signature]_

ASSISTANT DISTRICT ATTORNEY

RESPECTFULLY SUBMITTED:

_[signature]_

ATTORNEY FOR DEFENDANT

## ORDER

Considering the foregoing Motion, IT IS ORDERED that the matter be continued to the

_____ day of _____, 200___

Covington, Louisiana this _18th_ day of _April_, 200_5_

_[signature]_

WILLIAM J. BURRIS, JUDGE
22nd JUDICIAL DISTRICT COURT

120

**SCANNED**
APR 27 2005

STATE OF LOUISIANA

VS. # 379 354
      357804
Walter Kott

FILED May 25, 2005

22ND JUDICIAL DISTRICT COURT

PARISH OF ST. TAMMANY

STATE OF LOUISIANA

_____
DEPUTY CLERK

## MOTION FOR CONTINUANCE

NOW INTO COURT, through undersigned Counsel, comes the defendant herein who moves this Court to continue the Felony Jury Trial set for the __25__ day of __May__ 200_5_ for the following reason: _Defense counsel is in another matter previously set._

____ OBJECTS
_X_ NO OBJECTION

_____
ASSISTANT DISTRICT ATTORNEY

RESPECTFULLY SUBMITTED:

_____
ATTORNEY FOR DEFENDANT
DBO Martin Regan

## ORDER

Considering the foregoing Motion, IT IS ORDERED that the matter be continued to the _6th_ day of __June__, 200_5_.

Covington, Louisiana this _25_ day of _May_, 200_5_.

_____
WILLIAM J. BURRIS, JUDGE
22ND JUDICIAL DISTRICT COURT

121

**SCANNED**
JUN 23 2005

STATE OF LOUISIANA

VS. # 379354
~~378041~~

Walter A. Kott

FILED June 6, 2005

22ND JUDICIAL DISTRICT COURT

PARISH OF ST. TAMMANY

STATE OF LOUISIANA

DEPUTY CLERK

## MOTION FOR CONTINUANCE

NOW INTO COURT, through undersigned Counsel, comes the defendant herein who moves this Court to continue the Felony Jury Trial set for the ___6___ day of ___June___ 200_5_ for the following reason: Defense counsel has other matters set in Jefferson Parish prior to the setting of this case

✓ OBJECTS as to 379354
☒ NO OBJECTION as to 378041

ASSISTANT DISTRICT ATTORNEY

RESPECTFULLY SUBMITTED:

ATTORNEY FOR DEFENDANT
OBO Martin Regan

## ORDER

Considering the foregoing Motion, IT IS ORDERED that the matter be continued to the:
_24th_ day of _August_, 200_5_

Covington, Louisiana this ___6___ day of ___June___, 200_5_

WILLIAM J. BURRIS, JUDGE
22ND JUDICIAL DISTRICT COURT

122

**SCANNED**
JUN 2 3 2005

STATE OF LOUISIANA

VS. # 378041

Walter Kott

FILED January 4, 2006

22ND JUDICIAL DISTRICT COURT

PARISH OF ST. TAMMANY

STATE OF LOUISIANA

_____

DEPUTY CLERK

## MOTION FOR CONTINUANCE

NOW INTO COURT, through undersigned Counsel, comes the defendant herein who moves this Court to continue the Felony Jury Trial set for the _23rd_ day of _January_ 200_6_ for the following reason: _The Defendant had not completed his discovery as of this date further than all pre-Trial motions still open_

Z OBJECTS
  NO OBJECTION

_____
ASSISTANT DISTRICT ATTORNEY

RESPECTFULLY SUBMITTED:

_____
ATTORNEY FOR DEFENDANT

## ORDER

Considering the foregoing Motion, IT IS ORDERED that the matter be continued to the _10th_ day of _February_, 200_6_ for hearing or motion.

Covington, Louisiana this _4_ day of _Jan_ 200 _6_.

_____
WILLIAM J. BURRIS, JUDGE
22ND JUDICIAL DISTRICT COURT

141

SCANNED
JAN 24 2006

22ND JUDICIAL DISTRICT COURT FOR THE PARISH OF ST. TAMMANY

STATE OF LOUISIANA

NO. 378041.                                                              DIVISION "E"

STATE OF LOUISIANA

VERSUS

WALTER KOTT

FILED: March 30, 2006       DEPUTY CLERK: _____

### MOTION FOR CONTINUANCE

NOW INTO COURT, through undersigned counsel, comes the defendant, WALTER

KOTT, who respectfully requests that the Motion hearing in the above entitled and numbered

cause, currently scheduled for April 12, 2006, be continued for the following reason, to-wit:

Counsel has not received all of the pertinent lab analyses relative to these proceedings.

WHEREFORE, it is prayed that the Motion hearing in the above entitled and numbered

cause, presently set for April 12, 2006, be continued, to be reset by this Honorable Court.

Respectfully submitted:

MARTIN E. REGAN & ASSOCIATES, P.L.C.

MARTIN E. REGAN, JR. (11158)
Attorney for Defendant
2125 St. Charles Avenue
New Orleans, Louisiana 70130
(504) 522-7260

### ORDER

Considering the above and foregoing Motion:

IT IS ORDERED that the hearing in the above entitled and numbered cause be

continued and reset on the _____ day of _____, 2006, at _____ o'clock __.m.

Covington, Louisiana, this _17_ day of _April_, 2006.

_____
JUDGE

SCANNED
APR 20 2006

162

STATE OF LOUISIANA

VS. # 378041

Walter Kott

FILED February 1, 2007

22ND JUDICIAL DISTRICT COURT

PARISH OF ST. TAMMANY

STATE OF LOUISIANA

_____
DEPUTY CLERK

## MOTION FOR CONTINUANCE

NOW INTO COURT, through undersigned Counsel, comes the defendant herein who moves this Court to continue the Felony Jury Trial set for the _____ 1 _____ day of February 200 7 for the following reason:

Defense counsel is in trial

_____ OBJECTS
_X_ NO OBJECTION

_____
ASSISTANT DISTRICT ATTORNEY

RESPECTFULLY SUBMITTED:

_____ OBO
ATTORNEY FOR DEFENDANT
Martin Regan

## ORDER

Considering the foregoing Motion, IT IS ORDERED that the matter be continued to the 28th day of February, 200 7

Covington, Louisiana this _1_ day of Feb, 200 7

_____
WILLIAM J. BURRIS, JUDGE
22ND JUDICIAL DISTRICT COURT

212

FEB 17 2009

SCANNED

22ND JUDICIAL DISTRICT COURT FOR THE PARISH OF ST. TAMMANY

STATE OF LOUISIANA

NO. 378041                                                      DIVISION "E"

STATE OF LOUISIANA

VERSUS

WALTER KOTT

FILED July 15, 2008     DEPUTY CLERK: Rachell Exal

## MOTION TO CONTINUE HEARING

NOW INTO COURT, through undersigned counsel, comes the defendant, WALTER KOTT, who respectfully requests that the Motion hearing in the above entitled and numbered cause, currently scheduled for July 18, 2008, be continued for the following reason, to wit:

Counsel for defendant has been in a death penalty trial since July 08, 2008, and will continue trial the entire week of July 14, 2008, in Orleans Parish "C", State v. Michael Boykins, and as such requests a continuance of the instant matter.

WHEREFORE, it is prayed that the Motion hearing in the above entitled and numbered cause, presently set for July 18, 2008, be continued, to be reset by this Honorable Court.

Respectfully submitted:

MARTIN E. REGAN & ASSOCIATES, P.L.C.
#15057

MARTIN E. REGAN, JR. (11153)
Attorney for Defendant
2125 St. Charles Avenue
New Orleans, Louisiana 70130
(504) 522-7260

## ORDER

Considering the above and foregoing Motion:

IT IS ORDERED that the hearing in the above entitled and numbered cause be continued and reset on the _____ day of _____, 2008, at _____ o'clock __.m.

Covington, Louisiana, this _16_ day of _July_ 2008.

_____
JUDGE

FEB 1 7 2009

SCANNED

22ND JUDICIAL DISTRICT COURT FOR THE PARISH OF ST. TAMMANY

STATE OF LOUISIANA

NO. 378041                                                      DIVISION "E"

STATE OF LOUISIANA

VERSUS

WALTER KOTT

FILED: _June 15, 2007_   DEPUTY CLERK: _Lori A. Burns_

## MOTION TO CONTINUE HEARING

NOW INTO COURT, through undersigned counsel, comes the defendant, WALTER

KOTT, who respectfully requests that the Motion hearing in the above entitled and numbered

cause, currently scheduled for June 22, 2007, be continued for the following reason, to-wit:

Counsel has a previously scheduled Sentencing to attend, to wit: US v. Roger Kersten.

Additionally, counsel is in the process of locating an expert pharmaceutical witness, having just

received the lab reports. It is for these reasons that defendant requests a continuance.

WHEREFORE, it is prayed that the Motion hearing in the above entitled and numbered

cause, presently set for June 22, 2007, be continued, to be reset by this Honorable Court.

Respectfully submitted:

MARTIN E. REGAN & ASSOCIATES, P.L.C.

MARTIN E. REGAN, #11356
Attorney for Defendant
2125 St. Charles Avenue
New Orleans, Louisiana 70130
(504) 522-7260

## ORDER

Considering the above and foregoing Motion:

IT IS ORDERED that the hearing in the above entitled and numbered cause be

continued and reset on the _____ day of _____, 2007, at _____ o'clock _.m.

Covington, Louisiana, this _14_ day of _June_, 2007.

JUDGE

FEB 17 2009

SCANNED

220



November 17, 2005

Dear Judge Burris,

This is a matter that I feel needs to be brought to the Courts attention. On October 26, 2005 Motion Hearings on Doc # 378041 the state is on record saying that they were not aware of a blood sample and that this is the first time they were hearing about a blood sample. Your Honor this is probely a moot point since you have already allowed the blood in as evidence. Mr. Regan being the gentleman that he is let the state off the hook I believe. The state is attempting to secure a life sentence in these proceedings and I am not Mr. Regan, I can't believe the state has the audacity to hoodwink or mislead this court. On February 1, 2005 a motion for bond reduction was filed and denied by the court on March 31, 2005 that I am sure was reviewed by both the Court and state. Section 2A. of that motion state that a blood sample taken is being suppressed despite favorable to the defense which would show the blood and narcotic level of defendant was at such a level to render him incompatent to throw out the incriminating statements made prior to and after giving of the miranda warnings upon constant badgering without sleep and giving me access to a lawyer upon request. This should stand as proof that the state and court have been aware of the blood sample since February 1, 2005. I will file a motion for a Status Hearing, asking that the court order that the trecology be expedited ASAP sparing no expense and if the State Crime lab in Baton Rouge La. is

(1)

backed up go elsewhere so that we
experience no more delay's in getting
this matter to trial on your first available
trial date in January of February of
next year, and would you be kind enough
to set the attached motion for hearing
on your next motion date of December
15, 2005.

Thanks

Walter Kitt
P.O. Box 907 - A 220
Covington La 70434



FILED
FEB 15 2006
MALISE PRIETO, CLERK
Deputy

#378041

February 10, 2006

Re Doc # 378041   Walter Kott

Dear Judge Bunis,

Your Honor please do not punish me because
my attorney Mr Ryan failed to show up on
February 10, 2006. If anyone needs to be
punished, punish Mr Ryan. I have
voiced my concern about the delays pertain-
ing to the testing of my blood sample at
the La. State Crime Lab in Baton Rouge, La.
On Feb 9, 2006 Mr Dearing informa Mr Ryan
that the test are not finished and has no
idea when they will be completed. It has
now been 3½ months since I brought this
matter of delays to your attention in my
letter dated November 17, 2005 along with
the motion for a status hearing. The Court
has now Continued this 62 more days to
April 12, 2006. That will be almost 6 mon
since Mr Dearing is on Record ordering testing
on November 4, 2005. Your Honor I plead
with you to address this situation on either
March 3, 2006 or trial week March 6, 2006
if you do not rule on this issue this could
go on for months to Come. This is a reasonab
request for you to give your immediate
attention and consideration.

Thanks,
Walter Kott

cc: M. + R

Ex Parte - Not Read
File in Record
Send Copy to his a

Feb
January 22, 2006

**FILED**
MAR 02 2006 #37804

MALISE PRIETO- CLERK
Deputy _Darlene McCan_

Dear Judge Bunis,

I am left with no other choice than to now petition
the court to allow me to enroll as co-counsel with
Mr Rigan for the 2nd degree murder trial. When we
retained Mr Rigan he was paid a substantial fee even
though it is far below the going rate for murder trials.
We felt fortunate to have him with our limited funds
yet it appears true the saying that you get what you pay
for. Today we wonder if retaining him was a wise
choice. Mr Rigan seems to have more pressing matters
to attend to elsewhere much less be prepared or even
show up for my court dates. He or a representative of
his firm has failed to show up now on three seperate
court dates. I will be glad to refresh the courts memory
of these dates upon request. The thought of the court
dismissing motions because no counsel is present
is frightening. Mr Rigan makes no attempt to try
and communicate with me as to resolving the
lack of time spent on this case. He assured me
that he would move up the status hearing to either
March 3rd or 6th, 2006., another promise that will not
come to pass on his part. People often say to leave
things in the Lords hands. Well I am almost envious
to know that someone has to do his (j. work an
I fully intend to do Mr Rigan's in this matter
that is what's necessary to prevail. I am entitled
to know at all times any movement in my case
either through Mr Rigan or the court if I am
enrolled as co-counsel. My desire here sole
is to no longer be left in the dark and bring
this matter to trial without any more delay



As of this time my next scheduled court date is April 12, 2006. the day of your full pre-trial docket. In the past 25 months I have not made it to the courtroom one time in three days. On days when I am to appear in court my day starts at 3 AM. I am shackled and hand cuffed at 6:30 AM to be transported to the court-house at 8 AM and held in sub 70° holding cells continually shackled almost impossible to even have a bowel movement not to be returned to the jail until 6 PM after seeing no one and later finding out that the case has been continued on the average of another 2 months. Does the court think it is in the best interest of every one involved to wait almost 6 months to resolve this blood sample issue when it has been aware of the problem for this period of time. I feel that I am intelligent enough to take on this track of assisting Mr Regan whether he be present or not so that I am aware of all aspects of my case. It is my desire to go to trial sooner than later. I am sick and tired of the Hurricane being an excuse, remember I lost a DWI Jury trial on October 28, 2005 and was over a week shy of March 2006. Thanks in advance for your Cooperation in this matter.

I remain,

Walter Kott.
P.O. Box 908 D-726
Covington, La 70434

CC: Martin Regan

A TRUE COPY
Aileen Green
DPY. CLK, 22nd JUD. DIST. COURT
ST. TAMMANY PARISH, LA

⑨

~~January~~ February 24, 2006

FILED

MAR 17 2006

MALISE PRIETO, CLERK
Deputy _Vicki A. Dumas_

Judge Bunis,

I am enclosing (3) motions that I have been dis-
cussing with Mr. Regan since shortly after the
Hurricane that he was going to file. I know not
why they haven't been filed as of yet. While I am
very angry and upset with Mr. Regan as far as his
communication skills go and his lack of Profes-
sionalism doing what he says he will do at
times. With that said he is still a very good
attorney that gives me my best chance to win,
getting him to move forward and work on my
case is another story much less show up on
my scheduled court date. This is something that
you can control as far as moving forward
fast your Honor. I have wrote numerous times
since November 2005 asking you to resolve the
blood issue so you may rule on the evidence or
Miranda motions. That will leave only a few
minor motions and issue's to complete. I am
determined to move forward even without the benefit
of a law library to quote law. I will continue to file
what I feel necessary to file to receive a fair trial
leave no stone unturned to guarantee that everyone of
my rights to file have been exhausted. Your Honor
please stop allowing these delay's and see to it that
both the state and defense aggressively move forward
towards trial so that we may finally get this case to
a Jury, Is this really asking too much.

Thanks,

Walter Katz Jr.

SCANNED
MAR 17 2006

July 26, 2012

Mr. Greg Barens

From: Walter Katz     STG 941-6

your time,

this needs to be brought to your attention and
I demand an apology from the library. He
stated in the library on 6-10-06 in front of one
of his other clients that he threw off-topic in
my Wit complaint on the roof of the car declaring
I don't tax it? Not only have been a joke to
him, but certainly not to me. I understand
that this blood sample is a very valuable piece
of evidence favorable to me that is briefly
not a joking matter at all. Though I don't
agree therewith, but that we have been in agreement
since 2-1-05. And the state has not been
forthcoming, on suppressing this sample that
still hasn't been sent to a lab for the
(Frances) to rule. There isn't even a murder/court
date to resolve this issue. I pray that you take
the appropriate action to resolve this blood issue
as well as Mr. Baring's inappropriate statement
about the sensitive issue pertaining to the
destroying of my blood sample.

Thanks

Walter Katz

Dear Sir,

Best Regards, he has told me for the past term. If you want to know how he was I do think the court set because he is the docket with Clerk or down I want all the hoo stuff to work in my case so be it. Failing the Attorney was too little too late.

I filed a motion to enroll as Co-Counsel last February, 2006. I am determined to move forward without him if that's what's necessary. I will ask that you would appoint someone to help me bring this matter to trial or a jury.

The last thing on the world I want is for you to be angry or cross at me, especially for my lack of representation that was paid for in full over 18 months ago. I have taken a stand for what since I was 12 years old and I thought that a judge had a duty to all parties the victim and family, the accused as well as the litigant who elect you to see to it that justice be served in a timely manner. I want to be straight loud and clear and have you rule on the facts. This is your courtroom your honor and being threatened by both the Deputy and the litigant this past 21 months pertaining to this blind waiver shouldn't be an option any longer. The time to protect facts and truth's. Please give me my day in court.

Thanks,

Walter a (Ltr)

(3)

February 2, 2007

To Judge Burns.

From: Walter Kott   Dockt # 378041

Sir,

I received a summons to appear in Court on Thursday February 1, 2007 on the 1st but was not transported to Court most likely because Mr Regan was in the middle of trial in Judge Green's Courtroom through Saturday at the earliest. Would you please re-schedule the Status hearing on February 12th as I know Mr Regan has (2) other Client's scheduled on that date so that the issue's I have previously mentioned be adressed. It is now over (3) months since your order to shift my blood and turn over a chain of Custody of Same. I also have (4) Motion's pending addressing all issue's including sanctions.

Thanks,

Walter a Kott Jr

P.O. Box 908 A203
Covington, La. 70434

213

of my displeasure and do whatever I felt necessary.
I then asked I speak with you and I was told to
call Saturday 7-9 at 10:41 AM. I called then and Ms
Holly answered the phone was put on hold to be
transferred to you but she came back and said that
you had an appointment at 3PM today Monday 7-9
assuring me that you would have a date to call
at 4:30 PM. I did as told and I called today at 4:30 pm
and put on hold by Ms Dion, when she returned I
was told that Ms Holly was out and that you were
in trial. So I asked to speak with Ms Joan who when
answering the phone was very kind, professional and
very nice. I asked if I could take a couple of
minutes to explain my conflict's and the 3PM
meeting you were supposed to have had on my
behalf. She then briefly to explain of your two trial
that were scheduled to begin today of which both
were continued. after explaining everything she put
me on hold to contact you. Ms Joan came back to
the phone and I was once again assured that I
would have a court date on Thursday 7-
to call back then. Ms Joan then
how you want to have the two
as quickly as me. I told her
speak with you also because a
front of the Judge is useless unless
with my blood being Reactifically Extrapolated by a
lot of Scientist and a Pharmacologist to testify. She
said to call Saturday July 14th to discuss this with
you at 1PM, which I will. Melvin all these call's
are recorded all if this is true. We are running
out of people to blame for the delay's. We have
not been in front of the Judge since October 27, 2006

(2)

my trial that were compiled for 1-2-07. As we
move I have court dates on 5-22 and [illegible] to
to various occasions, mostly because I feel you
weren't prepared to go on the commenced on 6-4
when you [illegible] me we had the [illegible] to go
the [illegible] as well as the [illegible] and
would I move [illegible] of [illegible] [illegible] last
commenced on 6-12 when your [illegible] came you
were going to continue because it is compiled that
on the afternoon on the [illegible] to schedule [illegible] would
have time to complete the [illegible] hearing
[illegible]. You [illegible] the [illegible] to [illegible] continue
through the week of 6-11. [illegible] today
7-9 the first day of the trial week. We [illegible] that you
and your staff were [illegible] of [illegible]
failed to [illegible] my [illegible], Mr. [illegible] [illegible] she [illegible]
my [illegible] time. I [illegible] you
as of [illegible] [illegible] the [illegible], and have
[illegible] [illegible] [illegible] the [illegible] would
take more than [illegible]. Additionally, the [illegible] [illegible]
[illegible] cause another continuance, [illegible] have
made a [illegible] [illegible] [illegible] Read [illegible]
[illegible] I [illegible] to [illegible] [illegible]. Mr. [illegible]
there [illegible] [illegible] the [illegible] from [illegible] [illegible]
Reports on # 05-596, 598, 600, 601 the Complete Chain
of Custody for my trial. Have you provided the
DA's office with the [illegible], [illegible] [illegible] [illegible]
to copy all pictures, [illegible], digital, [illegible]
tapes and negatives. The motion for [illegible] [illegible]
[illegible]'s phone records from 11-1-03 to [illegible]-04
plus a [illegible] that [illegible] to [illegible] to
testify as to the [illegible] [illegible] to [illegible] [illegible]
also need an affidavit to obtain [illegible] [illegible]

(3)

for my Both those times in Hospital were being caused by being [illegible] on [illegible] dose, [illegible] but [illegible] to having almost passed [illegible] not forget the affidavits to obtain subpoenas and Court orders to obtain my medical history and pharmacy records of my prescription history. Mr. Ryan the truth of the matter is the only thing stopping these motions' hearing and that is you Mr. Ryan busy schedule. You are supposed to run a professional law firm that I have entrusted my life to. Walter are charges and others quick [illegible] I then [illegible] time for action. If you prepare yourself and invest just a little time on me you may just surprise yourself and [illegible]. 20 of the outstanding items I have mentioned are to a motions, [illegible], [illegible], affidavits, subpoenas/court orders. You have assured me you would do [illegible] the things that I think [illegible]. Now don't you think it will be a good time to obtain all of these, before [illegible] or would just amount to another continuance which I don't want. So should I file all of this to be sure its filed when we do get in front of Judge Burns.

Stop putting things off, lets do this now!!!

Thanks,

Walter Katz.

cc. Judge Burns, Bruce Denny, Mr. Walsh!





AUGUST 31, 2004

DISTRICT ATTORNEYS OFFICE
428 E. BOSTON ST.
COVINGTON, LA 70433

ATTN.: ROBERT WELCH

RE:   REBECCA ROSHTO
      DOD – 01/29/04

DEAR ROBERT;

ENCLOSED YOU WILL FIND A COPY OF THE RECORDS YOU REQUESTED ON THE ABOVE
REFERENCED CASE. INCLUDED IS A CERTIFIED COPY OF THE CORONER INVESTIGATOR'S
REPORT/WORK PRODUCT, THE AUTOPSY REPORT AND THE TOXICOLOGY REPORT.

IF I CAN BE OF ANY OTHER ASSISTANCE TO YOU, PLEASE DO NOT HESITATE TO CALL MY
OFFICE.

SINCERELY,

REBECCA J. CAMINITA
ADMINISTRATIVE ASSISTANT
ST. TAMMANY PARISH CORONER'S OFFICE

ENCLOSURES

# AUTOPSY PROTOCOL
## Coroner's Office
### St. Tammany Parish

Roshto, Rebecca R.                                          STPCO-136-04
22 W/F
Date of Autopsy: 01/30/04 at 10:30 A.M.

## EXTERNAL DESCRIPTION

The body is received nude.

The body is that of an obese, 5'- 3" white female whose appearance is consistent with the given age of 22 years. The weight of the body is 192 pounds. The head is normocephalic and atraumatic. The scalp is covered with long brown hair. There is moderate rigidity in the extremities. Lividity is noted on the anterior legs. There are no noticeable tattoos. There is a linear scar on the dorsal surface of the left hand. There is a venipuncture mark on the antecubital space of the right arm with a surrounding 1 cm hematoma. There is a small circular bruise on the anterior right forearm and two on the dorsal surface of the left hand. The irides are brown, the sclerae are congested and the conjunctivae are injected. The earlobes are pierced once bilaterally. There is gastric material in the nares. The teeth are natural and in unremarkable condition. The lips and anterior oral mucosa are free of trauma. The chest is symmetrical and the abdomen is obese. The back is straight and unremarkable. The upper and lower extremities are present and intact.

Evidence of Therapy:  EKG pads are in place.

Evidence of Injury:  See above.

## INTERNAL EXAMINATION

Examination of the body cavities reveals minimal amounts of fluid in the pleural, pericardial and abdominal cavities.

Neck Organs:  The tongue, hyoid bone, thyroid gland, thyroid cartilage, larynx and muscles of the anterior neck have no evidence of disease or injury.

Heart and Great Vessels:  The 270 gram heart has a smooth, glistening epicardial surface with normal subepicardial fat. The coronary arteries follow their normal anatomic course and are widely patent. The myocardium is red-brown and homogeneous and is free of any recent or old lesions. The valve surfaces are smooth and shiny and have no vegetations or fenestrations. The foramen ovale is closed.

A TRUE COPY

Peter R. Galvan, M.D.

**Lungs:** The 470 gram right lung and 450 gram left lung have moderate subpleural anthracotic pigmentation. The pulmonary vessels are patent and no emboli are present. The bronchi are devoid of obstruction. Pulmonary cut surfaces demonstrate edema and congestion throughout all lobes. There is no evidence of tumor, inflammatory consolidation or granulomatous disease.

**Liver and Gallbladder:** The 2000 gram liver has a smooth, glistening, intact capsule. The gallbladder contains dark, green bile and is free of stones. The lymph nodes at the porta hepatis are not enlarged. The cut hepatic surfaces are dark brown and homogeneous.

**Spleen:** The 370 gram spleen has a smooth, glistening, intact, thin, slate gray-purple capsule. The dark maroon, granular cut surfaces do not have a prominent follicular or trabecular architecture.

**Adrenals:** The adrenals are symmetrical and have unremarkable external and cut features.

**Pancreas:** The pancreas lies in its normal retroperitoneal location and on cut surface demonstrates a normal lobulated parenchyma.

**Kidneys:** The 110 gram right kidney and the 120 gram left kidney have smooth subcapsular surfaces. The cut surfaces are dark, red-brown with normal corticomedullary ratios and clearly defined demarcations. The ureters are thin-walled and not dilated. The bladder contains clear, yellow urine.

**Gastrointestinal Tract:** The small and large bowels follow their normal anatomic course and are unremarkable along their serosal surfaces. The appendix is present. The stomach is devoid of contents. The mucosa of the duodenum, esophagus and stomach is unremarkable.

**Musculoskeletal:** There are no fractures of the clavicles, ribs, sternum or vertebral column. The subcutaneous tissues of the chest and abdomen are free of hemorrhage and trauma.

**Reproductive Organs:** The uterus, fallopian tubes, ovaries and cervix are present and grossly unremarkable externally and on cut surfaces. There is no evidence of intrauterine pregnancy.

**Brain:** The scalp and underlying subcutaneous tissues are free of any areas of hemorrhage or trauma. The cerebrospinal fluid surrounding the 1160 gram brain is clear, colorless, and normal in quantity. The vessels at the base of the brain show minimal degrees of atherosclerotic narrowing. The cerebral hemispheres are symmetrical and have unremarkable external surfaces. Cut surfaces of the cerebrum, midbrain, pons, cerebellum, medulla and medulla oblongata are unremarkable. After stripping the dura, there are no underlying skull fractures.

A TRUE COPY

Peter R. Galvan, M.D.

# AUTOPSY PROTOCOL
## Coroner's Office
## St. Tammany Parish

Roshto, Rebecca R.                                    STPCO-136-04
22 W/F
Date of Autopsy: 01/30/04 at 10:30 A.M.
Date of Death:   01/29/04 at 12:20 P.M.

FINAL DIAGNOSIS:

1.0 Pulmonary edema and congestion

CAUSE OF DEATH: Polysubstance drug toxicity of Hydromorphone, Soma & Xanax

MANNER OF DEATH: Homicide

TOXICOLOGY: Hydromorphone, Soma, Xanax

A TRUE COPY

Peter R. Galvan, M.D.
St. Tammany Parish Coroner

550 Brownswitch Road * Slidell, LA * 70458



```
29 Jan 04          T A X   I N S U R A N C E   S U M M A R Y              Page  1

DOWNTOWN DRUGS  322 N. FLORIDA  COVINGTON, LA  70433
For KOTT, WALTER A. JR.                        From 08/01/2003 Thru 01/29/2004
Product                                                       Auth#
    #       Days       RX# Dr            N/R Date      Qty     Amt
```

KOTT, WALTER A. JR.
| Product # | Days | RX# | Dr | N/R | Date | Qty | Auth# / Amt |
|---|---|---|---|---|---|---|---|
| DILAUDID 4MG TABLET | | | | | | | TH030823196291 |
| 00074-2416-14 | 30 | 6157557 | SABATIER, R | N | 08/23/03 | 120 | 112.69 |
| DILAUDID 4MG TABLET | | | | | | | TG0309201KCLM1 |
| 00074-2416-14 | 30 | 6158231 | SABATIER, R | N | 09/20/03 | 120 | 112.69 |
| DILAUDID 2MG TABLET | | | | | | | T50310041V6TW1 |
| 00074-2415-14 | 30 | 6158613 | SABATIER, R | N | 10/04/03 | 120 | 99.21 |
| DILAUDID 4MG TABLET | | | | | | | TA0311053N7RY1 |
| 00074-2416-14 | 30 | 6159399 | SABATIER, R | N | 11/05/03 | 120 | 112.69 |
| HYDROCODONE/APAP 10/650 TAB | | | | | | | T70311053NBKU1 |
| 00591-0503-05 | 22 | 6159400 | SABATIER, R | N | 11/05/03 | 90 | 48.52 |
| HYDROCODONE/APAP 10/650 TAB | | | | | | | T203111723OZA1 |
| 00591-0503-05 | 22 | 6159400 | SABATIER, R | R | 11/17/03 | 90 | 48.52 |
| ALPRAZOLAM 2MG TABLET | | | | | | | TF0311053N9JQ1 |
| 00781-1089-01 | 30 | 6159401 | SABATIER, R | N | 11/05/03 | 90 | 23.29 |
| ALPRAZOLAM 2MG TABLET | | | | | | | T50311723PF81 |
| 00781-1089-01 | 30 | 6159401 | SABATIER, R | R | 11/17/03 | 90 | 23.29 |
| DILAUDID 4MG TABLET | | | | | | | TB0312012WVMZ1 |
| 00074-2416-14 | 30 | 6160038 | SABATIER, R | N | 12/01/03 | 120 | 112.69 |
| HYDROCODONE/APAP 10/650 TAB | | | | | | | T40312012WWI71 |
| 00591-0503-05 | 30 | 6160039 | SABATIER, R | N | 12/01/03 | 100 | 53.91 |
| HYDROCODONE/APAP 10/650 TAB | | | | | | | TD0312131IUS4B1 |
| 00591-0503-05 | 30 | 6160039 | SABATIER, R | R | 12/13/03 | 100 | 53.91 |
| ALPRAZOLAM 2MG TABLET | | | | | | | T40312012WXPP1 |
| 00781-1089-01 | 30 | 6160040 | SABATIER, R | N | 12/01/03 | 100 | 25.88 |
| ALPRAZOLAM 2MG TABLET | | | | | | | T40312122953SNE1 |
| 00781-1089-01 | 30 | 6160040 | SABATIER, R | N | 12/29/03 | 100 | 25.88 |
| DILAUDID 2MG TABLET | | | | | | | T50312064SPGG1 |
| 00074-2415-14 | 25 | 6160238 | SABATIER, R | N | 12/06/03 | 220 | 187.00 |
| DILAUDID 4MG TABLET | | | | | | | T50312122953UZM1 |
| 00074-2416-14 | 30 | 6160764 | SABATIER, R | N | 12/29/03 | 120 | 112.69 |
| HYDROCODONE/APAP 10/650 TAB | | | | | | | TE0401101VRK41 |
| 00591-0503-05 | 30 | 6161076 | SABATIER, R | N | 01/10/04 | 180 | 174.69 |
| DILAUDID 2MG TABLET | | | | | | | TE0401101VXRV1 |
| 00074-2415-14 | 4 | 6161077 | SABATIER, R | N | 01/10/04 | 32 | 40.65 |
| HYDROCODONE/APAP 10/500 TAB | | | | | | | T10401171B8Q11 |
| 00591-0540-05 | 30 | 6161257 | SABATIER, R | N | 01/17/04 | 180 | 82.40 |
| DILAUDID 4MG TABLET | | | | | | | TG040127MJIPU1 |
| 00074-2416-14 | 30 | 6161479 | SABATIER, R | N | 01/27/04 | 120 | 112.69 |

TOTALS FOR KOTT, WALTER A. JR.                                           1563.2
4832 PONTCHARTRAIN APT 21 SLIDELL, LA 70458

---END OF REPORT--- 04/01/29 16:09:39 DOWNTOWN DRUGS

```
29 JAN 04        D ( P E N S I N G  H I S T ( . Y         PAGE
KOTT,WALTER A. JR.    4832 PONTCHARTRAIN APT 21      08/01/03 to 01/29/0(
     RX# PRODUCT                     REF DOCTOR
DATE        DAYS EXP.DATE   M/R LAST DATE DISP SIG
```

lergies:    NO KNOWN DRUG ALLERGY

```
  6161479 DILAUDID 4MG TABLET          0 SABATIER,RICHARD E.
01/27/2004    30 07/25/2004    01/27/2004   T1T Q6-8H PRN FOR TREATMENT OF B:

  6161257 LORTAB 10/500 TABLET         0 SABATIER,RICHARD E.
01/17/2004    30 07/15/2004    01/17/2004   T1T Q4-6H PRN FOR PAIN

  6161077 DILAUDID 2MG TABLET          0 SABATIER,RICHARD E.
01/10/2004     4 07/08/2004    01/10/2004   T1T OR T2T Q6H PP FOR NERVE ROOT

  6161076 HYDROCODONE/APAP 10/650 TAB  0 SABATIER,RICHARD E.
01/10/2004    30 07/08/2004    01/10/2004   T1T PO Q 4 TO 6 HOURS FOR BACK P:

  6160764 DILAUDID 4MG TABLET          0 SABATIER,RICHARD E.
12/29/2003    30 06/26/2004    12/29/2003   T1T PO Q6H FOR RELIEF OF ARTHROP:

  6160238 DILAUDID 2MG TABLET          0 SABATIER,RICHARD E.
12/06/2003    25 06/03/2004    12/06/2003   T2T68PRSP

  6160040 ALPRAZOLAM 2MG TABLET        1 SABATIER,RICHARD E.
12/01/2003    30 05/29/2004    12/29/2003   T1/4T 2 TO 3 TIMES A DAY. T1/2-1:

  6160039 LORCET 10/650 TABLETS        1 SABATIER,RICHARD E.
12/01/2003    30 05/29/2004    12/13/2003   T1/2-1T Q4-6H PRN FOR PAIN

  6160038 DILAUDID 4MG TABLET          0 SABATIER,RICHARD E.
12/01/2003    30 05/29/2004    12/01/2003   T1/2-1T PRN FOR SEVERE BREAKTHRO:

  6159401 ALPRAZOLAM 2MG TABLET        1 SABATIER,RICHARD E.
11/05/2003    30 05/03/2004    11/17/2003   T1/4T BID PRN ANXIETY AND T1/2-1:

  6159400 LORCET 10/650 TABLETS        1 SABATIER,RICHARD E.
11/05/2003    22 05/03/2004    11/17/2003   T1/2-1T PO Q 6 TO 8 H PP

  6159399 DILAUDID 4MG TABLET          0 SABATIER,RICHARD E.
11/05/2003    30 05/03/2004    11/05/2003   T1T PO Q6H PRN BREAKTHROUGH PAIN

  6158613 DILAUDID 2MG TABLET          0 SABATIER,RICHARD E.
10/04/2003    30 04/01/2004    10/04/2003   T1T QID FOR BREAKTHROUGH NERVE R:

  6158231 DILAUDID 4MG TABLET          0 SABATIER,RICHARD E.
09/20/2003    30 03/18/2004    09/20/2003   T1T QID PRN FOR RELIEF OF LUMBAR

  6157557 DILAUDID 4MG TABLET          0 SABATIER,RICHARD E.
08/23/2003    30 02/19/2004    08/23/2003   T1T TID OR QID PRN BREAKTHROUGH
```

---END OF REPORT--- 04/01/29 16:06:20 DOWNTOWN DRUGS

# EVANS DRUG MART #2

2165 WEST GAUSE BLVD     SLIDELL, LA          70400     01/03/2001

## PRESCRIPTION SERVICE INVOICE

PATIENT:  ROTT, WALTER A JR.        429 CLIVE DR        SLIDELL, LA          70458       SS#

| PRODUCT NAME | NDC# | DAYS | DOCTOR | DATE | QTY | PRICE AUTH:CO |
|---|---|---|---|---|---|---|
| DILAUDID 4MG TABLET | 00044-1024-02 | 20 2102692 | GLOVER, GEOFFERY | 02/03/2003 | 120 | 120.65 |
| DILAUDID 4MG TABLET | 00044-1024-02 | 21 2102810 | GLOVER, GEOFFERY | 02/28/2003 | 110 | 110.65 |
| DILAUDID 4MG TABLET | 00044-1024-02 | 23 2102915 | GLOVER, GEOFFERY | 03/26/2003 | 140 | 139.65 |
| DILAUDID 4MG TABLET | 00074-2416-14 | 30 2103480 | SABATIER, RICHARD | 08/18/2003 | 120 | 120.65 |
| DILAUDID 4MG TABLET | 00074-2416-14 | 30 2103823 | SABATIER, RICHARD | 11/18/2003 | 120 | 120.65 |
| DILAUDID 4MG TABLET | 00074-2416-14 | 30 2103880 | SABATIER, RICHARD | 12/05/2003 | 120 | 120.65 |
| DILAUDID 4MG TABLET | 00074-2416-14 | 27 2104021 | SABATIER, RICHARD | 01/12/2004 | 110 | 111.65 |
| HYDROCODONE/APAP 10/650 TAB | 00591-0503-05 | 23 4211447 | GLOVER, GEOFFERY | 02/03/2003 | 138 | 61.95 |
| ALPRAZOLAM 2MG TABLET | 59762-3722-03 | 32 4211448 | GLOVER, GEOFFERY | 02/03/2003 | 65 | 34.95 |
| HYDROCODONE/APAP 10/650 TAB | 00591-0503-05 | 21 4211752 | GLOVER, GEOFFERY | 02/28/2003 | 125 | 61.95 |
| ALPRAZOLAM 2MG TABLET | 59762-3722-03 | 32 4211753 | GLOVER, GEOFFERY | 02/28/2003 | 65 | 34.95 |
| HYDROCODONE/APAP 10/325 TAB | 00591-0853-05 | 20 4211967 | ARMSTRONG, DION | 03/18/2003 | 120 | 52.95 |
| HYDROCODONE/APAP 10/650 TAB | 00591-0503-05 | 22 4212063 | GLOVER, GEOFFERY | 03/26/2003 | 135 | 61.95 |
| ALPRAZOLAM 2MG TABLET | 59762-3722-03 | 32 4212064 | GLOVER, GEOFFERY | 03/26/2003 | 65 | 34.95 |
| HYDROCODONE/APAP 10/650 TAB | 00591-0503-05 | 21 4212978 | PRICE, JERELLE | 07/07/2003 | 260 | 118.95 |
| HYDROCODONE/APAP 10/650 TAB | 00591-0503-05 | 21 4212978 | PRICE, GERELLE | 07/25/2003 | 260 | 118.95 |
| HYDROCODONE/APAP 10/650 TAB | 00591-0503-05 | 21 4212978 | PRICE, GERELLE | 08/14/2003 | 260 | 118.95 |
| HYDROCODONE/APAP 10/325 TAB | 00591-0853-05 | 30 4212979 | PRICE, GERELLE | 07/07/2003 | 120 | 60.95 |
| HYDROCODONE/APAP 10/325 TAB | 00591-0853-05 | 30 4212979 | PRICE, GERELLE | 08/04/2003 | 120 | 60.95 |
| HYDROCODONE/APAP 10/325 TAB | 00591-0853-05 | 30 4212979 | PRICE, GERELLE | 08/29/2003 | 120 | 60.95 |
| ALPRAZOLAM 2MG TABLET | 00781-1089-05 | 16 4212982 | PRICE, GERELLE | 07/07/2003 | 100 | 35.45 |
| ALPRAZOLAM 2MG TABLET | 00781-1089-05 | 16 4212982 | PRICE, GERELLE | 07/25/2003 | 100 | 35.45 |
| ALPRAZOLAM 2MG TABLET | 00781-1089-05 | 16 4212982 | PRICE, GERELLE | 08/14/2003 | 100 | 35.45 |
| HYDROCODONE/APAP 10/650 TAB | 00591-0503-05 | 40 4213526 | PRICE, GERELLE | 09/10/2003 | 240 | 118.95 |
| HYDROCODONE/APAP 10/650 TAB | 00591-0503-05 | 40 4213526 | PRICE, GERELLE | 10/11/2003 | 240 | 118.95 |
| HYDROCODONE/APAP 10/650 TAB | 00591-0503-05 | 40 4213526 | PRICE, GERELLE | 11/08/2003 | 240 | 118.95 |

Prescription Listing by Doctor for medicine

MITOR 6/01/03 through 1/16/04 Page 1

| Lin | Rx # | Date | Customer's Name / Address | Drug Name / Size / Prescription | Price | Qty | Refill Paid By |
|---|---|---|---|---|---|---|---|
| 1. | 1672538 | 1/16/03 | CHARLES SCHULTZ 1200 SYCAMORE PL MANDEVILLE, LA 70448 | 30.0 CARISOPRODOL 350MG TAB 1 Q4-6H PRN FOR PAIR | 49.41 | BMW | PCS |
| 2. | 1672833 | 7/16/03 | CHARLES SCHULTZ 1200 SYCAMORE PL MANDEVILLE, LA 70448 | 30.0 ALPRAZOLAM 2MG TAB 1 PO BID PRN | 5.39 | BMW | PCS |
| 3. | 1699036 | 7/30/03 | CHARLES SCHULTZ 1200 SYCAMORE PL MANDEVILLE, LA 70448 | 30.0 ALPRAZOLAM 2MG TAB 1 PO BID PRN | 5.39 | BMW | PCS |
| 3. | 1659016 | 7/30/03 | CHARLES SCHULTZ 1200 SYCAMORE PL MANDEVILLE, LA 70448 | 90.0 CARISOPRODOL 350MG TAB 1 Q4-6H PRN FOR PAIR | 45.27 | BMW | PCS |
| 4. | 1703300 | 8/13/03 | CHARLES SCHULTZ 1200 SYCAMORE PL MANDEVILLE, LA 70448 | 90.0 HYDROCO/APAP 10-650MG TAB 1 Q4-6H PRN FOR PAIN | 20.65 | BMW | PCS |
| 5. | 1703301 | 8/13/03 | CHARLES SCHULTZ 1200 SYCAMORE PL MANDEVILLE, LA 70448 | 90.0 CARISOPRODOL 350MG TAB 1 Q4-6H PRN FOR PAIN | 45.27 | BMW | PCS |
| 6. | 1703302 | 8/13/03 | CHARLES SCHULTZ 1200 SYCAMORE PL MANDEVILLE, LA 70448 | 30.0 ALPRAZOLAM 2MG TAB 1 PO BID PRN | 5.39 | BMW | PCS |
| 7. | 1721529 | 8/27/03 | CHARLES SCHULTZ 1200 SYCAMORE PL MANDEVILLE, LA 70448 | 90.0 HYDROCO/APAP 10-650MG TAB 1 PO Q4-6H PRN FOR PAIN | 20.65 | BMW | PCS |
| 8. | 1718600 | 8/27/03 | CHARLES SCHULTZ 1200 SYCAMORE PL MANDEVILLE, LA 70448 | 90.0 CARISOPRODOL 350MG TAB 1 Q4-6H PRN FOR PAIN | 35.27 | BMW | PCS |
| 9. | 1718601 | 8/27/03 | CHARLES SCHULTZ 1200 SYCAMORE PL MANDEVILLE, LA 70448 | 30.0 ALPRAZOLAM 2MG TAB 1 PO BID PRN | 9.39 | BMW | PCS |
| 10. | 1839039 | 1/09/04 | FREEMAN TERROR 23479 PILOT STREET ABITA SPRINGS, LA 70420 | 60.0 ALPRAZOLAM 2MG TAB .25 BID - TID BID AT AND TAKE .5 TABLET AS PRN | 21.39 | BMW | CASH |
| 11. | 1839470 | 1/14/04 | VICKIE STOKES 14417 HWY 1073 COVINGTON, LA 70427 | 120.0 HYDROCODONE 5MG TAB 1 PO Q6-8H PRN SP - NOT TO EXCEED 4 IN 24 HOURS | 72.28 | BMW | CASH |
| 12. | 1839471 | 1/14/04 | RANDY A FAYE 16497 RED BIRD COVE KORALUSA, LA 70427 | 120.0 HYDROCODONE 5MG TAB 1 PO Q3-12H PRN SEVERE BACK PAIN - NO MORE THAN 3 IN 24 HOURS | 72.28 | BMW | CASH |
| 4. | 1816803 | 1/15/04 | DANIEL DONAKER 23483 PILOT ST ABITA SPRINGS, LA 70420 | 60.0 HYDROCODONE 5MG TAB 1 Q4-6H PRN FOR SEVERE PAIN | 37.93 | BMW | CASH |


BEST POSSIBLE IMAGE

Rexns Plus          Prescription Listing by Doctor for MEDICINE SHO...   #1170? through   1/16/04
All Prescriptions Written by Dr. RICHARD BRAYTER   #1170? 6/03/03 through   1/16/04   Page   1

| Member #y | Date | Customer's Name / Address | Drug Name / Sig | Price | Rfl Refill Paid By |
|---|---|---|---|---|---|
| 15. 183984 | 1/15/04 | DANIEL DURACHER 23483 PILOT ST ABITA SPRINGS, LA 70420 | 100.0 DIXXON/APAP 10-650MG TAB 1 Q4-6H PRN FOR SEVERE POST OPERATIVE BACK PAIN | Price 101.12 368 Actfll | Rfl 0 | Chgd CASH |
| 15. 183805 | 1/15/04 | DANIEL DURACHER 23483 PILOT ST ABITA SPRINGS, LA 70420 | 100.0 DIAZEPAM 10MG TAB 1/2 BID - TID PRN AX AND OR MUSCULAR SPASM AND TAKE .5-1 TAB US PRN | 26.48 BBW 0 | | CASH |
| 13. 183606 | 1/15/04 | DANIEL DURACHER 23483 PILOT ST ABITA SPRINGS, LA 70420 | 180.0 HYDROCO/APAP 10-500MG TAB 1 Q4-6H PRN | 71.80 BBW 0 | | CASH |
| 15. 183662 | 1/15/04 | DANIEL DURACHER 23483 PILOT ST ABITA SPRINGS, LA 70420 | 200.0 CARISOPRODOL 350MG TAB 1 Q4-6H PRN FOR SEVERE MUSCULOSKELETAL SPASM | 65.26 BDW 0 | | CASH |
| 15. 183721 | 1/16/04 | MAXIME KOTT 4932 PONCHATRAIN DR SLIDELL, LA 70458 | 135.0 DILAUDID 4MG TAB 1 Q4-6H FOR SEVERE BACK PAIN NOT TO EXCEED 4 TABLETS IN 24 HOURS | 135.38 BBW 0 | | CASH |
| 10. 183723 | 1/16/04 | MAXIME KOTT 4932 PONCHATRAIN DR SLIDELL, LA 70458 | 120.0 HYDROCO/APAP 10-500MG TAB 1 Q4-6H PRN PA | 47.06 BBW 0 | | CASH |
| 11. 183722 | 1/16/04 | MAXIME KOTT 4932 PONCHATRAIN DR SLIDELL, LA 70458 | 60.0 HYDROCO/APAP 10-500MG TAB 1 Q4-6H PRN VA | 23.35 BBW 0 | | CASH |

THE MEDICINE SHOPPE COVINGTON, LA 70433 TEL. 985-871-2544 FAX 985-892-3714 WASHINGTON BUSINESS 160 ...

 

**Richard E. Sabatier, M.D., F.A.C.S., FACPE.**
US DEA Reg. No. AS2056542
3421 North Causeway Blvd., Suite 804
Metairie, LA 70002

504-834-1311                                                    Fax 504-834-1329

Name _WALTER A. KOTT, JR_____ Date _01/15/04_

Address _4832 Pontchartrain   SLIDELL La 70458_

Phone _985-768-8881_ Date of Birth _09-10-56_ Sex _male_

**℞**

DILAUDID - 4mg (four)

D TD # 120 (one hundred twenty)

Sig: T tablet Q 6-8hr prn
severe radicular (neuropathy) w/ or
w/out arthropathy back pain, not to
exceed 4 tablets IN 24 hours

☐ Label
Refill ___ Times  BRAND NECESSARY  DEA# ____
☐ NO REFILL

_Richard E. Sabatier_ M.D.   _AS-2056542_   ___M.D.
PRODUCT SELECTION PERMITTED          DISPENSE AS WRITTEN.
           VERIFICATION BY PHYSICIAN ONLY.

---

**Richard E. Sabatier, M.D., F.A.C.S., FACPE.**
US DEA Reg. No. AS2056542
3421 North Causeway Blvd., Suite 804
Metairie, LA 70002

504-834-1311                                                    Fax 504-834-1329

Name _WALTER A. KOTT, JR._____ Date _01/15/04_

Address _4832   Pontchartrain  SLIDELL  LA 70458_

Phone _985-768-8881_ Date of Birth _09-10-56_ Sex _male_

**℞**

LORTAB- 10/500
D TD # 180 (one hundred eighty)
Sig: T tablet Q 4-6hr prn pain

☑ Label  _two -R. Sarajia_
Refill _2_ Times  _01/15/04_  BRAND NECESSARY
☐ NO REFILL
_Richard E. Sabatier_ M.D.   DEA# _AS-2056542_   ___M.D.
PRODUCT SELECTION PERMITTED          DISPENSE AS WRITTEN.
           VERIFICATION BY PHYSICIAN ONLY



VOID VOID VOID VOID VOID VOID
VOID VOID VOID VOID

Richard E. Shippler, M.D., F.A.C.S., F.A.C.P.E.
US DEA Reg. No. A53006342
3421 North Causeway Blvd, Suite 604
Metairie, LA 70007

Tel 504-834-1379

Name _____  Date _____
Address _____  Date of Birth _____  Sex _____
Phone _____

R

DISPENSE AS WRITTEN

PRODUCT SELECTION PERMITTED

VERIFICATION BY PHYSICIAN ONLY

_____ M.D.

Richard E. Shippler, M.D., F.A.C.S., F.A.C.P.E.
US DEA Reg. No. A53006342
3421 North Causeway Blvd, Suite 604
Metairie, LA 70007

Tel 504-834-1379

Name _____  Date _____
Address _____  Date of Birth _____  Sex _____
Phone _____

R

DISPENSE AS WRITTEN

PRODUCT SELECTION PERMITTED

VERIFICATION BY PHYSICIAN ONLY

_____ M.D.









DEA# BP7221714 Genelle Price, MD
Keith Blackman, N

Pain Management
Armstrong Medical Clinic, Inc
5930 Martin Dr.
Suite 8
New Orleans, LA 70126
Office: 504-243-0208    Fax: 504-243-0260
LA Lic No_____

NAME _Walter Kott_____

ADDRESS _____ DATE _9-10-03_

℞

Norco 10 mg

÷ po Q 4-6° PRN Pain

#120

☐ LABEL
REFILL ___ TIMES  PRN  NR

_____ M.D.        , M.D.
PRODUCT SELECTION PERMITTED      DISPENSE AS WRITTEN





**STANTON'S TRINITY MEDICAL GROUP**
GEOFFERY GLOVER, M.D.

Telephone: (504) 240-1400
Fax: (504) 240-1430
6600 Morrison Rd., Ste. 1600D
New Orleans, LA 70126

Name: Walter Kott
Date: 3/26/03

Rx 1 Lortab Delaudid 4mg  Qafto
Sig: One every _io_ hrs Prn Pain
Refill 1 2 3 4 5

Rx 2 Soma 350mg
Sig: One every _io_ hrs Prn
Refill 1 2 3 4 5

Rx 3 Xanax _____ mg
Sig: P.O. bid
Refill 1 2 3 4 5

☐ Dispense As Written
Refill 0 · 1 · 2 · 3 · 4 - PRN

M.D.

---

FOR Walter Kott
ADDRESS _____ DATE 3-18-03

Rx

Norco 10/
-120 -325

REFILL ___ TIMES  DR. Deon Armstrong
DEA NO: _____ ADDRESS

PRORDER # : 10115 (AME-1) · SAMUELS PRODUCTS, Inc. · 1-800-543-7185 · FAX · 1-513-891-4527

---

DEA# _____
**Genelle Price, MD**
**Keith Blackman, MD**

Pain Management
Armstrong Medical Clinic, Inc
6930 Martin Dr.
Suite B
New Orleans, LA 70126
Office: 504-243-0208  Fax: 504-243-0250
LA Lic No _____

NAME Walter Kott
ADDRESS _____ DATE 2-2-03

Rx

Lorcet 10mg
½ - ¼ tabs Q4° Prn Pain
# 260 tabs

☐ LABEL
REFILL # _____ TIMES  PRN  NR

_____ M.D.

---

**STANTON'S TRINITY MEDICAL GROUP**
GEOFFERY GLOVER, M.D.

Telephone: (604) 240-1400
Fax: (504) 240-1430
6600 Morrison Rd., Ste. 1600D
New Orleans, LA 70126

Name: Walter Kott
Date: 3/26/03

Rx 1 Lorcet 10 mg  Qual 10
Sig: One every _io_ hrs Prn Pain
Refill 1 2 3 4 5

Rx 2 Soma 350mg  Qual 35
Sig: One every _4 io_ hrs Prn
Refill 1 2 3 4 5

Rx 3 Xanax 2 mg  Qual 65
Sig: P.O. bid
Refill 1 2 3 4 5

☐ Dispense As Written
Refill 0 · 1 · 2 · 3 · 4 · PRN

M.D.

STANTON'S TRINITY MEDICAL GROUP
GEOFFERY GLOVER, M.D.
6600 Morrison Rd. Ste. 1900D          New Orleans, LA 70126
Telephone (504) 240-1400
Fax: (504) 240-1430
DEA #

Date: 2/3/03

Name: Walter Kott
Address:

R1: Lorcet 10mg P.O.
Sig One every 4 to 6 hrs Prn Pain          Quan 120   Refill 1 2 3 4 5

R2: Soma 350mg
Sig One every 4 to 6 hrs Prn          Quan 120   Refill 1 2 3 4 5

R3: Xanax 2 mg
Sig P.O. bid          Quan 60   Refill 1 2 3 4

☐ Dispense As Written
Refill 0 - 1 - 2 - 3 - 4 - PRN

Glover (M.D.)

---

Telephone: (504) 240-
Fax: (504) 240-1430                  MKO
6600 Morrison Rd. Ste. 1900D          New Orleans, LA 70126
STANTON'S TRINITY MEDICAL GROUP
GEOFFERY GLOVER, M.D.
DEA #

Date: 2/3/03

Name: Walter Kott
Address:

R1: Lorcet 10mg P.O.
Sig One every 4 to 6 hrs Prn Pain          Quan 120   Refill 1 2 3 4 5

R2: Soma 350mg
Sig One every 4 to 6 hrs Prn          Quan 120   Refill 1 2 3 4 5

R3: Xanax 2 mg
Sig P.O. bid          Quan 60   Refill 1 2 3 4

☐ Dispense As Written
Refill 0 - 1 - 2 - 3 - 4 - PRN

Glover (M.D.)

DEA# *BP702170* Genelie Price, MD
Keith Blackman, MD

Pain Management
Armstrong Medical Clinic, Inc.
6930 Martin Dr.
Suite B
New Orleans, LA 70126
Office: 504-243-0208  Fax: 504-243-0260
LA Lic No

NAME *Walter Kott*

ADDRESS_____ DATE *7-7-03*

Rx

Norco 10mg
$\frac{1}{4}$ po Q 6° PRN breakthru
pain po
#120

☐ LABEL 2
REFILL_____ TIMES  PRN  NR
_____, M.D.
PRODUCT SELECTION PERMITTED          DISPENSE AS WRITTEN

---

DEA# *BP702124* Genelie Price, MD
Keith Blackman, MD

Pain Management
Armstrong Medical Clinic, Inc.
6930 Martin Dr.
Suite B
New Orleans, LA 70126
Office: 504-243-0208  Fax: 504-243-0260
LA Lic No

NAME *Walter Kott*

ADDRESS_____ DATE *9-11-*

Rx

Lorcet 10 mg
$\frac{1}{4}$ po Q 4-6° PRN
#240

☐ LABEL Two
REFILL_____ TIMES  PRN  NR
_____, M.D.
PRODUCT SELECTION PERMITTED          DISPENSE AS WRITTEN

---

DEA# *BP702170* Genelie Price, MD
Keith Blackman, MD

Pain Management
Armstrong Medical Clinic, Inc.
6930 Martin Dr.
Suite B
New Orleans, LA 70126
Office: 504-243-0208  Fax: 504-243-0260
LA Lic No

NAME *Walter Kott*

ADDRESS_____ DATE *7-7-03*

Rx

Xanax 2mg
$\frac{1}{4}$ po Q 4°
#100

☐ LABEL 2
REFILL_____ TIMES  PRN  NR
_____, M.D.          _____, M.D.

---

DEA# *BP702117* Genelie Price, MD
Keith Blackman, MD

Pain Management
Armstrong Medical Clinic, Inc.
6930 Martin Dr.
Suite B
New Orleans, LA 70126
Office: 504-243-0208  Fax: 504-243-0260
LA Lic No

NAME *Walter Kott*

ADDRESS_____ DATE *9-11-*

Rx

Xanax 2mg
$\frac{1}{4}$ po Q 12-24°
#80

☐ LABEL
REFILL Two TIMES  PRN  NR
_____, M.D.          _____, M.D.



March 30, 2004

Dear Mr Reed
My name is Short Brady.
I am presently incarcerated at Richland
Parish Detention Center, in Rayville, La.
I recently read a newspaper article
about a murder case against Walter
Kott Jr. I believe he may have
tried the same thing on me in April
of 2002. I am willing to testify
against him. I felt I needed to
write because my situation: the
victims appear similar to the news-
paper article dated Feb 3, 2004 I don't
want you to think this was the first
time he has done something like this.
This is obviously something he has been
doing, there could be others. I feel
this could have been me. I realize
how lucky I was. Anything I can do
to prevent him from doing this
again, please let me know. I will
be released from prison, out on
parole in St Tammany Parish in August
of this year. You could meet me here
until August or through my Parole
Officer after I'm released. If I
can help please contact me.

Sincerely,
Shanti Brady



1         That's correct, Your Honor.

2   MR. REGAN:

3         That's correct, Your Honor.

4         And we thank the Court for giving us

5        the opportunity to have a hearing.

6   THE COURT:

7         Certainly.

8         I am going to go ahead and continue

9        this trial until the November 29th date.

10       We'll select a jury at that time.  This is

11       after consultation with the jury

12       coordinator for the Twenty-Second JDC.

13       There was some concern that the jurors

14       were not informed that they would need to

15       come back that week.  We have a whole new

16       jury panel coming in on the 29th.  And we

17       will select our jurors from that panel.

18        Is there any objection?

19   MR. REGAN:

20        Yes, sir, and the defense would

21       specifically thank the Court for that

22       delay because there are some things we're

23       working on.

24        There's one other thing that came to

25       our attention.  And maybe this 29th day is

26       even better for this reason:  We requested

27       in Paragraph 52 for any evidence the State

28       is going to introduce, similar acts, or

29       things of this sort.  It's a 404(B)

30       request.

31        To the best of my knowledge, we've

32       never gotten an answer to the 404(B).  And

1          I don't want to create a train collision,

2          but it's my understanding, since we didn't

3          get a 404(B) notice that they can't

4          introduce it.  And I know we've got a

5          week, here.  And I don't want to get right

6          up on the trial date and find out that

7          we've got issues.

8              And I'm double-thinking, calling

9          this to the Court's attention.  But I

10         think I do, as an officer of the court.

11         In Paragraph 52 in the Motion for

12         Discovery -- and I'll pass the record back

13         up for the Court to review it --

14  MR. NORIEA:

15          Your Honor, with this delay, it's

16          our intention to file a 404(B) notice.

17          And I will get that done tomorrow.  I can

18          basically tell you that the thrust of the

19          motion is going to be that Catherine Boyen

20          observed the defendant inject Rebecca

21          Roshto in the past with Dilaudid and also

22          that after the victim was dead, before she

23          had been placed in the bathtub, the

24          defendant injected himself and his

25          stepdaughter, Catherine Boyen, with

26          Dilaudid.  I guess the pressure was too

27          much for them to handle.  I think the

28          second part is res gestae, but I will add

29          that to the 404(B) motion for the Court to

30          consider.

31  MR. REGAN:

32          And, again, we're dotting our T's

1          and crossing our T's.

2    THE COURT:

3              And I appreciate that.

4    MR. REGAN:

5              And we're taking care of that in

6         advance.  What I would think we should do

7         at this point is if you can get me that

8         faxed over tomorrow --

9    MR. NORIEA:

10             I'll do that.

11   MR. REGAN:

12             And then if the judge would give me

13        24 hours to respond in writing, if there's

14        an objection to it, I need to look at

15        exactly what they're trying to introduce.

16        And if that's the extent of it -- because

17        we have been involved -- and Your Honor's

18        new to this case.  But this goes back to

19        '04.  It's six years.  My oldest case.

20        And there have been many issues and

21        statements.  But the State is going to put

22        in writing specifically what you're

23        bringing in under 404(B) or res gestas,

24        and let me address those issues.

25   MR. NORIEA:

26             And, Your Honor, just for the

27        Court's edification, that -- evidence of

28        that, the defendant has in their file.

29        This isn't something new that developed in

30        the past week.  This is the first

31        statement Ms. Boyen gave the police

32        regarding that conduct and also the



# *Brantley Baptist Center*

## Ministries of Hope, Hospitality, & Mercy

Tobey O. Pitman, M.Div.
Director

November 26, 2012

To whom it may concern,

This statement is being submitted at the request of Mr. Walter Kott.

I served as the Executive Director of the Brantley Center until it's closing after Hurricane Katrina. Mr. Walter Kott was admitted into our long-term (16 week) residential therapeutic community for treatment of ongoing addictive concerns in his life.

Mr. Kott became a graduate of our program... which means he successfully completed the requirements of intake, evaluation, group therapies, and individual counseling.

Since the facility did not reopen after Katrina, all records were destroyed. The statement I am offering cannot be substantiated through secondary evidence or documentation. I am not able to be specific regarding the timeframe for his completion except to say that it would have been in the mid-nineties.

I trust this statement is helpful regarding Mr. Kott's concern.

Yours very truly,

Dr. Tobey Pitman
National Missionary, Retired
North American Mission Board, SBC

Brantley Baptist Center • 201 Magazine Street • New Orleans, LA 70130-2452
www.brantleycenter.com • (504) 523-5761 • (504) 525-9813 fax • brantleycenter@write-me.com
A North American Mission Board Ministry-Evangelism Center funded by the Cooperative Program
and the Annie Armstrong Easter Offering for Home Missions





**SLIDELL MEMORIAL HOSPITAL AND MEDICAL CENTER**
DEPARTMENT OF MEDICAL IMAGING
1001 GAUSE BOULEVARD SLIDELL, LOUISIANA 70458

DC:

| | |
|---|---|
| **Patient Name:** KOTT, WALTER A JR | **Med Rec No:** 000000199595 |
| **DOB:** 09/10/1956 | **Account No:** 000051329516  **Clinic:** RD |
| **Ordering Dr:** CLINTON H. SHARP III M.D. | **Rad No:** 0000000660916   **Ord No:** 90003 |
| **Attending Dr:** CLINTON H. SHARP III M.D. | **PtINS/Room:**   **Svc:** ODX |
| **Referring Dr:** UNASSIGNED UNASSIGNED | **PtClass:** O   **Pt Type:** O |
| **DATE OF EXAM:** 01/25/2001 | **REG DATE:** |

LUMBAR SPINE MRI - 72142

CLINICAL INFORMATION: 44 year old male with leg pain and back pain.

FINDINGS: Sagittal and axial images of the lumbar spine were obtained. The lumbar spine is in satisfactory alignment. The vertebral bodies are of normal height. The intervertebral disc spaces are maintained. There is normal marrow signal at all image levels. Conus medullaris is in normal location.

L2-3, L3-4: No significant abnormality.

L4-5: There is central broad-based disc bulge causing mild bilateral neural foraminal narrowing. There is no spinal stenosis or focal disc herniation.

L5-S1: No significant abnormality.

IMPRESSION: MILD CENTRAL BROAD-BASED DISC BULGE AT L4-5 CAUSING MILD BILATERAL NEURAL FORAMINAL NARROWING WITH NO SPINAL STENOSIS OR FOCAL DISC HERNIATION. OTHERWISE UNREMARKABLE LUMBAR SPINE MRI.

Reading Dr: (007187) RICHELLE C. LEGNON, M.D.
Transcribed by: OJV / Date: Jan 25 2001 4:46P

This document has been electronically
Signed by: KLAR A. ROVIRA IV, M.D.  On: Jan 25 2001 5:27P

CLINTON H. SHARP III M.D.
1051 GAUSE BLVD #330
SLIDELL, LA 70458

Printed: March 5, 2001 (2:59pm)



# SLIDELL POLICE DEPARTMENT
## 2112 Sergeant Alfred Drive
### Slidell, LA 70458

0101-2020
Item Number

## STATEMENT

Date: 02/05/04

I, RICHARD EDWARD SABATIER MD , being 55 years of age and residing at 969 BALD CYPRESS DRIVE Telephone Number 985622-4701 make the following statement to Police Officers GIBSON and , of the SLIDELL POLICE DEPARTMENT. I make this statement under my own free will. I have been advised, PRIOR to making this statement, that I have a right to counsel and that I do not have to make this statement and that it may be used against me in a court of law. No promises, threats or favors have been offered and/or made to me, and knowing and understanding all of the above, I state the following:

I prescribed Mr WALTER KOTT Lortab and Dilaudid Mr Kott has been treated by several Physicians in the past. I am unsure whether Mr Kott has continued to see other Physicians since he became my patient I emphasized that he must see only one physician and utilize only pharmacist in order to protect his health and well being Mr Kott has long standing chronic lumbar level 4 and to a lesser degree level 3 and level 5 lumbar radiculopathy (Nerve root) and facet Arthropathy (acquired osteoarthritis of the facet [error] Joints And uncovertebral as well as zygapophyseal Joints. These Findings are compatible with a continuous level of lumbosacral discomfort, diminished mobility and periods of increased pain and discomfort especially when the weather is cold and damp.

Mr Kott is employed by an automobile dealership. His occupation requirements involve attending auctions in different parts of the United States on short notice. Mr Kott communicated with me several times in order to facilitate his professional travel requirements that is it was sometimes not possible

Richard Edward Sabatier
Signature of Person Making Statement



SLIDELL POLICE DEPARTMENT
2112 Sergeant Alfred Drive
Slidell, Louisiana LA 70458

04-2020
Item Number

for Mr Kott to keep his scheduled appointment due to professional ~~responsibilities~~ responsibilities. Mr Kott asked me to meet him on January 3, 2004 and January 21, 2004 at Starbuck Coffee House in Mandeville, Louisiana due to his unpredictable travel schedule. The meeting conducted on January 3, ~~2004~~ 2004 was at approximately 10:00 A.M. The meeting conducted on January 21, 2004 was at approximately 09:00 AM.

I asked Mr Kott why the interval of our meeting was less than the recommend 30 days. He explained that there was some administrative confusion as a result of my prescribing 2 mg of Dilaudid in an attempt to lower his medication requirements, hence the 2mg and 4mg medication prescriptions were overlapping or were superimposed, therefore resulting in an obligatory delay in receiving his medications. During each of our meetings I inquired in detail in regard to Mr Kott's symptoms and conducted a neurological examination confined to the thoracic, lumbar and sacral spine. There was no evidence of progression or worsening of his condition. Mr Kott demonstrated slight and ~~gr~~ gradual improvement in ~~his~~ his physical findings and clinical signs; presumably as a result of gradual weight loss and adopting new methods into his daily activities which were designed to diminish the attrition (wear and tear) on his spinal column. He was not successful in eliminating tobacco, which generally results in an improvement of symptoms of chronic back pain.

I DID NOT charge Mr Kott any professional fee. His brother is a physician who has been my close friend

Signature of Person Making Statement

```
 1         statement -- could we ask for
 2         sequestration?
 3    THE COURT:
 4              Sure.
 5    MR. REGAN:
 6              There are some witnesses here.
 7    THE COURT:
 8              Okay.  Officers, you know the Rule
 9         of Sequestration.
10              Okay, sir.
11    MR. REGAN:
12              My client gave statements at this
13         point immediately after his arrest, which
14         was immediately after the body was found.
15         Our position is that he was highly
16         intoxicated and on a number of different
17         medications at that point.  There is blood
18         that was drawn from him apparently and I
19         have spoken to Mr. Dearing several times
20         asking that any blood taken, my client's
21         blood had been tested.  And Mr. Dearing I
22         think certainly honestly told me he wasn't
23         aware of anything at this point.  Didn't
24         have anything.  That becomes a very
25         critical matter at this point in
26         determining whether or not he was in a
27         position to waive his rights.  As you do
28         any time you take a guilty plea, you want
29         to know whether the party is taking any
30         medication that would affect his ability
31         to waive his -- intelligently waive his
32         rights.  This is a very important thing.
```

1  and I have asked about it a couple of
2  times at various status conferences. We
3  need those results for the Court to make
4  any kind of ruling regarding whether or
5  not he was under the influence of any
6  medication at the time that inculpatory
7  statement was made. I think Mr. Dearing's
8  acknowledged today that he is aware that
9  blood was taken. Does not know if there
10  is any results so

11 THE COURT:

12   Is that correct?

13 MR. DEARING:

14   Your Honor, in order to give a full
15  explanation of events, at the time the
16  police were handling this investigation
17  they were unsure whether a sexual assault
18  was also part of this homicide. So they
19  sought and obtained a consent from the
20  defendant to execute a sex crime kit on
21  the defendant, which involves, typically
22  involves taking of blood. But it's for
23  the purpose of doing a DNA profile, if DNA
24  becomes an issue in a case. So there has
25  been no request, if there was in fact
26  blood drawn, no request for any
27  toxicology, because that was not the
28  purpose for any blood that was drawn. And
29  I am not willing to commit to defense that
30  I am willing to pursue that testing. I am
31  not saying yes or no to it. It's just the
32  first time defense has made that request

1              to me is here today, and I am not prepared

2              to give an answer as to whether or not I

3              want to take that.

4    THE COURT:

5              If there is a sufficient sample

6              under Migliore, they have a right to --

7    MR. DEARING:

8              Exactly.  I made that offer to

9              defense.

10   MR. REGAN:

11             I'm sorry, that was made today.

12   MR. DEARING:

13             When you first brought it up.

14   MR. REGAN:

15             We have had conferences here and I

16             kept asking is there any blood --

17   MR. DEARING:

18             I kept telling you I did not know.

19   MR. REGAN:

20             Did not know.

21   MR. DEARING:

22             Right.

23   MR. REGAN:

24             And there is no way for me to get

25             past that.  And under Kyles I am entitled

26             to that.  And certainly, obviously the

27             reason I am looking for the blood at this

28             point, because it's not a rape case or a

29             sexual offense case, we are trying to

30             determine his degree of intoxication at

31             the time that the statements were made.

32             And all that has been relevant and, of

1    course, that's the only reason we have

2    been asking is there any blood so we could

3    get it tested.

4          I would ask the Court to permit us

5    to get the results, because any hearings

6    you have right now would certainly have to

7    include any information regarding his

8    state of intoxication and drugs. It's a

9    fundamental issue.

10   THE COURT:

11         Is there a reason why we couldn't

12   proceed with what we have and just leave

13   it open for future evidence as to that?

14   MR. DEARING:

15         That's fine with the State.

16   MR. REGAN:

17         That would be okay with the defense.

18   THE COURT:

19         Okay. You can make a motion -- a

20   Migliore motion to have it tested by your

21   expert, if you want.

22   MR. REGAN:

23         And we would gladly do that. I

24   would hope today, and I know Mr. Dearing

25   apparently just found out, but if I could

26   find out where it's located and what we

27   can do to expedite that, because that's

28   going to be important.

29   THE COURT:

30         I will allow some questioning

31   concerning that.

32   MR. DEARING:



```
 1          matter.
 2    MR. REGAN:
 3              Sir, did you want to hear from
 4          Catherine Boyen so you could evaluate
 5          whether or not we reached the standards at
 6          this point that's required under 403(B)?
 7          I thought that that's what the Court --
 8    THE COURT:
 9              That was -- do we have Ms. Boyen
10          available?
11    MR. NORIEA:
12              We have her here in the St. Tammany
13          jail, Your Honor.  I spoke to her this
14          morning.  She's been given immunity for
15          any testimony here, and she's willing to
16          testify.  She understands she has no fifth
17          Amendment rights, and she is here in the
18          St. Tammany jail.  Somebody had her up
19          here in another courtroom this morning.  I
20          spoke with her in a holding cell.
21    THE COURT:
22              Is she downstairs?
23    THE BAILIFF:
24              She may be.
25    THE COURT:
26              Can we get her up here for 1:15?
27    MR. REGAN:
28              We can be back for 1:15.
29    THE BAILIFF:
30              We'll check.
31    THE COURT:
32              Let's get her up here for 1:15, and
```

```
 1              we'll have a brief period of testimony
 2              from Ms. Boyen, and I'll make my ruling.
 3         MR. REGAN:
 4              Yes, sir.
 5              (At this time a recess was taken.)
 6         THE COURT:
 7              Good afternoon.  Please be seated.
 8              This is the matter of State of
 9         Louisiana versus Walter Kott.  This is a
10         continuation of the 404(B) hearing in
11         connection with this matter.
12              Would you please stand and be sworn,
13         ma'am.
14              (CATHERINE BOYEN, after having been
15         first duly sworn under oath, did testify
16         as follows:)
17    DIRECT EXAMINATION BY MR. NORIEA:
18    Q.   State your name and address, ma'am.
19    A.   Catherine Boyen.
20    Q.   Ms. Boyen, do you know Walter Kott?
21    A.   Yes, sir.
22    Q.   How long?
23    A.   My whole life, since I was a child.
24    Q.   Was he married to your mother at some point in
25    time?
26    A.   Yes, sir.
27    Q.   I want to direct your attention to a girl
28    named Rebecca Roshto.
29         Did you know Rebecca?
30    A.   Yes, sir.
31    Q.   Around January 29, 2004, were you summoned to
32    Walter Kott's hotel room by him?
```

1135

1  A.    Yes.

2  Q.    When you got there, what did he do to you with

3  respect to any illegal drugs?

4  A.    What did he do to me?  I don't understand.

5  Q.    Did he inject you?

6  A.    We did some Dilaudids, yes.

7  Q.    What are they known as?

8  A.    K4s.

9  Q.    In the past, have you seen him inject Rebecca

10  with Dilaudids within the past year for that

11  incident?

12  A.    She was at our house prior to that.  She would

13  come stay by there.  Yes, she got loaded by us

14  before.

15  Q.    Walter injected her?

16  A.    Yes.

17  Q.    Walter also injected you at other times?

18  A.    Uh-huh (affirmative response).

19  Q.    And you see Walter present in the courtroom?

20  A.    Uh-huh (affirmative response).

21  Q.    Would you point him out?

22  A.    (Indicating.)

23  MR. NORIEA:

24          Your Honor, let the record reflect

25          she's pointing toward the defendant.

26          Ms. Boyen, for this hearing, that's

27          all the questions I have.

28  CROSS-EXAMINATION BY MR. REGAN:

29  Q.    Ms. Boyen -- it's Catherine Boyen, correct?

30  A.    Uh-huh (affirmative response).

31  Q.    And you have a nickname, what do they call

32  you?

```
 1        MR. NORIEA:
 2              We'd stipulate to that, Judge.
 3        MR. REGAN:
 4              Thank you.
 5        EXAMINATION BY MR. REGAN:
 6   Q.   And, ma'am, how do you -- if you do two at
 7   one time and two at another time, are we talking
 8   about swallowing these things?
 9   A.   No. I mean, I've never swallowed a K4.
10   Q.   How does one ingest the K4?
11   A.   Put it in a needle and shoot it up.
12   Q.   Right.
13        Are you aware that the autopsy shows a single
14   injection point, not two?
15   A.   Okay.
16   Q.   Are you aware of that?
17   A.   Yes, I am.
18   Q.   Who told you?
19   A.   I seen it when he -- (indicating).
20   Q.   Which one?
21   A.   I'm not sure.
22        THE WITNESS:
23              What's your name?
24        EXAMINATION BY MR. REGAN:
25   Q.   Mr. Cuccia, over here or Mr. --
26   A.   I don't know his name.
27   Q.   Let me say, this gentleman? (Indicating.)
28   A.   No, sir.
29   Q.   This gentleman?
30   A.   Yes, sir.
31   Q.   That's Mr. Nick Noriea.
32   A.   I'm sorry.
```



Criminal - Defendant Search - Cases - Case Detail

## Case Detail

Docket #: 486511

Judge: WILLIAM J. KNIGHT

Defendant: BOYEN, CATHERINE GRACE

Defense Attorney: CAPODEBOSCO, MICHAEL LOUIS

Prosecuting Attorney: DOHRE, KEN

File date: 5/20/2010

Division: J

DOB: 11/17/1980

Indigent: Y

Trial Type:

## Surety Information

none listed

## Last Docket - click to view all

| Date | Description | Dispose Date | Dispose Description |
|------|-------------|--------------|---------------------|
| 07/27/2010 | MOTIONS | 7/27/2010 | PLEAD GUILTY |

## Bill Charges - click to view all

| Date | Code | Bill Charge | Charge Type | Disposition Chrg | Plea/Verdict |
|------|------|-------------|-------------|------------------|--------------|
| 5/20/2010 14:68.4 | | UNAUTH USE OF MOTOR VEHICLE | F | UNAUTH USE OF MOTOR VEHICLE | PG |
| 5/20/2010 14:68.4 | | UNAUTH USE OF MOTOR VEHICLE | F | UNAUTH USE OF MOTOR VEHICLE | PG |

## Minutes - click to view all

| Date | Judge | Division |
|------|-------|----------|
| 7/27/2010 | WILLIAM J. KNIGHT | J |
| 8/28/2010 | WILLIAM J. KNIGHT | J |
| 6/1/2010 | PETER J. GARCIA | D |

https://www.stammaryclerk.org/ards administracies.asp

Criminal - Defendant S...rch - Cases - Case Detail

## Case Detail

| | |
|---|---|
| **Docket #:** 487112 | **File date:** 4/22/2010 |
| **Judge:** MARTIN E. COADY | **Division:** F |
| **Defendant:** BOYEN, CATHERINE GRACE | **DOB:** 11/17/1980 |
| **Defense Attorney:** BRADLEY , MICHAEL S | **Indigent:** Y |
| **Prosecuting Attorney:** ELLIOT , MARTHA | **Trial Type:** |

## Surety Information

none listed

## Last Docket - click to view all

| Date | Description | Dispose Date | Dispose Description |
|---|---|---|---|
| 04/28/2010 | **MISDEMEANOR ARRAIGNM** | 4/28/2010 | PLEAD GUILTY |

## Bill Charges - click to view all

| Date | Code | Bill Charge | Charge Type | Disposition Chrg | Plea/Verdict |
|---|---|---|---|---|---|
| 4/22/2010 | 14:98 8 | **DWI 2** | M | **DWI 2** | PG |
| 4/22/2010 | 32:415 | **DRIVING UNDER SUSPENSION** | M | **DRIVING UNDER SUSPENSION** | NP |
| 4/22/2010 | 32:58 8 | **CARELESS OPERATION OF VEHICLE** | M | **CARELESS OPERATION OF VEHICLE** | NP |

## Minutes - click to view all

| Date | Judge | Division |
|---|---|---|
| 4/28/2010 | **MARTIN E. COADY** | F |

Criminal - Defendant Search - Cases - Case Detail

## Case Detail

|  |  |
|---|---|
| Docket #: 435199 | File date: 9/5/2007 |
| Judge: PETER J. GARCIA | Division: D |
| Defendant: BOYEN, CATHERINE GRACE | DOB: 11/17/1980 |
| Defense Attorney: DESALVO , FRANK G. | Indigent: N |
| Prosecuting Attorney: OUDRE , JOSEPH | Trial Type: |

## Surety Information

none listed

## Last Docket - click to view all

| Date | Description | Dispose Date | Dispose Description |
|---|---|---|---|
| 01/22/2009 | PLEAD GUILTY | 1/22/2009 | PLEAD GUILTY |

## Bill Charges - click to view all

| Date | Code | Bill Charge | Charge Type | Disposition Chrg | Plea/Verdict |
|---|---|---|---|---|---|
| 9/5/2007 14:58.4 | | UNAUTH USE OF MOTOR VEHICLE | F | UNAUTH USE OF MOTOR VEHICLE | PG |

## Minutes - click to view all 6 entries

see minutes detail

Criminal - Defendant Search - Cases - Case Detail

## Case Detail

Docket #: 427791                                    File date: 4/9/2007

Judge: ELAINE W. DIMICELI                          Division: B

Defendant: BOYEN, CATHERINE GRACE                  DOB: 11/17/1980

Defense Attorney: DESALVO , FRANK G.                Indigent: N

Prosecuting Attorney: DEARING , BRUCE              Trial Type: JUDGE

## Surety Information

none listed

## Last Docket - click to view all

| Date | Description | Dispose Date | Dispose Description |
|------|-------------|--------------|---------------------|
| 10/23/2008 | REVOCATION HEARING | 10/23/2008 | REVOKED |

## Bill Charges - click to view all

| Date | Code | Bill Charge | Charge Type | Disposition Chrg | Plea/Verdict |
|------|------|-------------|-------------|------------------|--------------|
| 4/9/2007 | 40:967 C1 | POSSESSION OF COCAINE | F | POSSESSION OF COCAINE | 893 |

## Minutes - click to view all 9 entries

see minutes detail



1  A.    Yes.

2  Q.    So if somebody was injected twice, you'd

3  expect two marks, right?

4  A.    Possibly, unless you go in the same spot.

5  Q.    You have -- it's the exact same pinhole,

6  right?

7  A.    Got to know what you're doing.

8  Q.    And with respect to meeting with -- I was with

9  your lawyer, DeSalvo, right?

10  A.    Right.

11  Q.    Papillon Anderson?

12  A.    Uh-huh (affirmative response).

13  Q.    Did we threaten or coerce you in any way?

14  A.    No, sir.

15  Q.    Did we act properly with you?

16  A.    Yes, sir.

17  Q.    Was there any suggestion that we did anything

18  wrong at this point to push you?

19  A.    I asked not to even do this.

20  Q.    You, in fact, spoke to your attorney by

21  yourself?

22  A.    Right.

23  Q.    That was Frank DeSalvo?

24  A.    Right.

25  Q.    And at this point, have you asked for your

26  attorney, DeSalvo, today?

27  A.    No, sir, I wasn't aware -- I don't -- I don't

28  even know what this is about. I mean --

29  Q.    We're in a trial.

30  A.    I understand. I was explained that this

31  was -- I come here this morning, and we went back to

32  the jail.

1  Q.      Right.

2  A.      And now I hear this.  And this is just to get

3  something you wanted to be briefed on, on my

4  statement.  This is what I was told.

5  Q.      And who told you that?

6  A.      Mr. --

7       MR. NORIEA:

8            Your Honor, for the record, I

9            advised the witness that this was --

10      MR. REGAN:

11            Let me ask -- excuse me.

12      THE COURT:

13            Do you have an objection?

14      MR. REGAN:

15            No, sir.

16      THE COURT:

17            No, do you have an objection?

18      MR. NORIEA:

19            No.

20      THE COURT:

21            Okay.  Then you may proceed.

22      MR. REGAN:

23            Thank you.

24      EXAMINATION BY MR. REGAN:

25  Q.      Were you told by Mr. Noriea that we picked a

26  jury, and we were doing a trial today?

27  A.      That the jury wouldn't be present, that this

28  was just something the Judge wanted to do.

29  Q.      Correct.  Exactly.

30          And is it your intention to testify at the

31  trial?

32  A.      No, I was told that -- well, when I discussed

1  it with Frank. I said I didn't want to testify, Your

2  Honor. And Mr. Noriea told me that he talked to

3  Frank last night, and he said to testify. So I

4  have -- from this point, I'll get in touch with

5  Frank.

6  Q.      Let me -- I'm not -- I have not -- I've

7  never given you any legal advice, correct?

8  A.      Right.

9  Q.      Frank DeSalvo -- absolutely.

10         He told you that Frank told you -- Frank told

11  him to tell you something? Is that --

12         MR. NORIEA:

13              Well, let me --

14         MR. REGAN:

15              It's important at this point. I

16         don't believe that --

17         MR. NORIEA:

18              -- object at this point.

19         THE COURT:

20              Wait. Wait. One at a time.

21         MR. REGAN:

22              I apologize.

23         THE COURT:

24              Do you have an objection?

25         MR. NORIEA:

26              Yes, Your Honor. This is getting so

27         far beyond the scope of the 404(B) hearing

28         that it is totally irrelevant. I don't

29         have to -- I spoke to Mr. DeSalvo last

30         night. He knew that she had immunity

31         signed by myself and the Attorney General.

32         And he told me that he told her that she

1          has to testify because she has no Fifth

2          Amendment right, and she could be held in

3          contempt of court for failure to answer

4          questions.

5    EXAMINATION BY MR. REGAN:

6    Q.    That's what Frank told you?

7    MR. NORIEA:

8          Last night, yes.

9    EXAMINATION BY MR. REGAN:

10   Q.    And is that what you were told?

11   A.    Well, he -- I was told to testify.

12   Q.    I just didn't know. And, of course, we're not

13  involved in that at this point.

14       It's important at this point -- do you intend

15  to testify at the trial when the jury is sitting

16  here?

17    MR. NORIEA:

18          Your Honor, let me object to the

19          relevance of that question.

20    THE COURT:

21          Sustained.

22    MR. REGAN:

23          Thank you.

24          I have no further questions at this

25          time.

26    THE COURT:

27          Thank you.

28    MR. NORIEA:

29          No redirect, Your Honor.

30    THE COURT:

31          I have a few questions for you,

32          Ms. Boyen.

