## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**WALTER A. KOTT, JR.**                                    **CIVIL ACTION**

**VERSUS**                                                  **NO. 14-953**

**N. BURL CAIN, WARDEN**                                    **SECTION "E"(5)**

### REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.  Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2).[1]  For the following reasons, **IT IS RECOMMENDED** that the petition for *habeas corpus* relief be **DISMISSED WITH PREJUDICE**.

### I.       *Procedural and Factual History*

Petitioner, Walter Kott, is a state prisoner incarcerated at the Louisiana State Penitentiary in Angola, Louisiana.[2]  On March 8, 2004, he was charged by felony indictment

---

[1]Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, or that the claim relies on a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2]Rec. Doc. No. 3, Petition.

with second degree murder pursuant to Louisiana Revised Statute 14:30.1.[3]  On April 2, 2004, Kott entered a plea of not guilty to the offense.[4]

Kott was represented by retained counsel.  His counsel filed motions to suppress evidence obtained after a search of Kott's person, hotel room, and vehicle, and to suppress inculpatory statements that he made to police.  These motions were addressed at length at three pretrial hearings and were all denied.[5]  At trial, the facts were summarized as follows by the Louisiana First Circuit Court of Appeal:[6]

> On January 29, 2004, at 11:23 a.m., the defendant called for medical assistance to his motel room at the Plaza Inn on Lindberg Drive in Slidell. He told the responding police officers that the victim, Rebecca Roshto, was in his room and was not breathing. The police found her lying naked in the bathtub. She was dead and lividity was present in her body. She had mucus coming from her nose and an apparent puncture wound and "track mark" from a needle on her inner right arm.
>
> The defendant had eight pills of hydrocodone in his pocket. There was a pill bottle for Diphenhydramine, containing numerous pills, located in the drawer of the motel room. The defendant also had prescription bottles in his name containing thirty Dilaudid pills and fifty-six hydrocodone (Lorcet) pills in the glove compartment of his car. Additionally, a syringe and needle were recovered from a bag in the dumpster at the motel.
>
> Analysis of the victim's blood and liver revealed the presence of a trace amount of carisoprodol (Soma); a low-end therapeutic amount of alprazolam (Xanax), a muscle relaxant; and a lethal amount of hydromorphone (Dilaudid). The victim died within two to four hours of being injected with the Dilaudid.

---

[3]State Rec., Vol. 1 of 14, Minute Entry, 3/8/04.

[4]State Rec., Vol. 1 of 14, Minute Entry, 4/2/04.

[5]State Rec., Vol. 2 of 14, Transcript, 10/16/05; Transcript, 1/31/08; State Rec., Vol. 3 of 14, Transcript 1/31/08 (continued); Transcript, 11/7/08; State Rec. Vol. 1 of 14, Reasons for Judgment, 11/7/08.

[6]*State v. Kott*, 90 So. 3d 555 (La. App. 1st Cir. 2012) (Table); State Rec., Vol. 10 of 14, 1st Cir. Opinion, 2011-KA-0997, 2/10/12.

Dilaudid, an opiate six to twelve times more potent than morphine, affects the receptors in the brian controlling breathing. It can cause the fluid in blood to flow into the lungs, preventing breathing and causing a "froth column" at the nose and mouth.

Eric Scott Williams testified that the defendant confessed he had injected the victim with "K4 Dilaudids" and "[t]here was mention of Xana and Somas," when Williams was incarcerated in St. Tammany Parish Jail with the defendant in January or February of 2004. Williams also claimed the defendant stated he disposed of the syringe or syringes and the drugs from the room at a convenience store on Voters Road in Slidell.

Catherine Grace "Rena" Boyen, the defendant's stepdaughter, testified the defendant called her on January 29, 2004, at approximately 8:00 a.m. or 8:30 a.m., stated he was having heart problems and asked her to come to his hotel room. Boyen indicated the victim was deceased and lying on the bed in the room. Boyen and the victim had been friends for a few years. Boyen put ice on the victim to try to "bring her back." According to Boyen, the defendant had previously injected her and the victim with Dilaudid. In a January 29, 2004 statement to the police, Boyen indicated the defendant told her he "shot [the victim] up with four K4s in the past two hours."

The defendant gave multiple statements to the police concerning the incident. Initially, he claimed the victim came to his motel room between 10:50 p.m. and 12:00 a.m., on the night prior to her death, after calling him and asking to come over to talk because she was having a "bad evening." He claimed the victim then went to get gas, cigarettes, and milk. He claimed he went to sleep and woke up at 9:00 a.m. or 10:00 a.m. when Boyen came to his room. He claimed Boyen helped him put the victim in the bathtub, and when the victim did not respond, he called the police. The defendant had needle marks on both of his arms.

In his second statement, the defendant claimed he "shot Dilaudid" with Boyen in the days prior to, and on the morning of, the victim's death. In his third statement, the defendant claimed he administered a four milligram tablet of Dilaudid to himself and a lady friend, "Rebecca," by injecting the drug into one of her veins with a hypodermic needle. He claimed he then went to sleep, while "Rebecca" watched the Discovery Channel.

At trial, the defendant denied injecting the victim with anything on the day of the incident or at any other time. He also denied confessing to Williams. Additionally, he denied confessing to Boyen. Further, he denied injecting Boyen with drugs. He claimed his statements to the police were the result of the police putting his "medications" in front of him and promising to give him the drugs

3

in exchange for the statements. He also claimed he made the statements so the police would not take Boyen to jail.

* * * *

The defendant testified that he allowed the victim to come to his motel room after she called him and tearfully asked him if she could "come over and stay." He denied injecting her with anything on the day of the incident or at any other time. He claimed Boyen had a drug problem, and she or "someone else could have [injected the victim with drugs]." He also denied injecting the victim with drugs approximately a year before the incident or injecting Boyen with drugs.

Following a five-day trial, on December 3, 2010, the jury unanimously found Kott guilty of second degree murder.[7] On March 11, 2011, Kott was sentenced to the mandatory sentence of life imprisonment at hard labor without benefit of probation, parole, or suspension of sentence.[8]

Kott appealed his conviction to the Louisiana First Circuit Court of Appeal. His appointed counsel filed one brief,[9] and Kott filed his own supplemental *pro se* brief.[10] The brief filed by counsel asserted two errors: (1) the trial court erred in permitting the State to use evidence of another crime in rebuttal; and (2) this error was not harmless. In his supplemental brief, Kott raised three errors: (1) the trial court erred in not suppressing the evidence gathered from his motel room and vehicle; (2) the trial court erred in denying the motion to suppress inculpatory statements because the statements were involuntary; and (3) these errors were not harmless.

---

[7]State Rec., Vol. 8 of 14, Trial Transcript, 12/3/10.

[8]State Rec., Vol. 8 of 14, Sentencing Transcript, 3/11/11.

[9]State Rec., Vol. 10 of 14, Appellate Brief, 9/26/11.

[10]State Rec., Vol. 10 of 14, *Pro Se* Supplemental Brief, 10/25/11.

Due to clerical error, the First Circuit initially only considered the counsel-filed brief and handed down an opinion denying the claims raised therein.[11]  Kott's counsel then filed an application for rehearing in order to have Kott's timely *pro se* brief considered.[12]  The application was granted in limited part to consider the claims of that brief, which the First Circuit Court denied on May 4, 2012, affirming his conviction and sentence.[13]  Kott filed an application for review with the Louisiana Supreme Court, which that court denied on November 21, 2012.[14]  His conviction became final on February 19, 2013, when Kott did not seek a writ of certiorari in the United States Supreme Court within ninety (90) days from that denial.  *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999).

On May 24, 2013, Kott, through counsel, filed an application for post-conviction relief in the state district court.[15]  In the application, he asserted the following errors: (1) ineffective assistance of counsel; (2) Louisiana's second degree murder statute is unconstitutional as applied to his case; (3) prosecutorial misconduct; and (4) the cumulative effect of the errors violated his due process right to a fair trial.  On June 20, 2013, the district court denied the application.[16]

---

[11]*State v. Kott*, 90 So. 3d 555 (La. App. 1st Cir. 2012) (Table), text available at 2012 WL 602425; State Rec., Vol. 10 of 14, 1st Cir. Opinion, 2011-KA-0997, 2/10/12.

[12]State Rec., Vol. 10 of 14, Application for Rehearing, 2/24/12.

[13]State Rec., Vol. 10 of 14, 1st Cir. Opinion, 2011-KA-0977, 5/4/12.

[14]*State v. Kott*, 102 So. 3d 53 (La. 2012) (Mem); State Rec., Vol. 14 of 14, La. S. Ct. Order, 2012-K-1221, 11/21/12.

[15]State Rec., Vol. 9 of 14, Uniform Application for Post-Conviction Relief, 5/24/13.

[16]State Rec., Vol. 11 of 14, District Ct. Order, 6/20/13.

Kott timely filed a related writ application to the Louisiana First Circuit Court of appeal, which the First Circuit denied without reasons on October 28, 2013.[17] According to the record, Kott did not receive notice of the First Circuit's denial until March 17, 2014, due to his attorney's error.[18] He then filed a *pro se* writ application to the Louisiana Supreme Court, along with a motion for leave to file an out of time writ application, on April 1, 2014.[19] The Louisiana Supreme Court denied that writ application, without reasons stated, on December 8, 2014.[20]

## II.     *Federal* **Habeas** *Petition*

While Kott's untimely writ application regarding post-conviction relief was pending before the Louisiana Supreme Court, he filed a federal petition for *habeas corpus* relief in this Court, on April 22, 2014.[21] He then filed a motion for stay and abeyance of his federal petition, pending the outcome of his post-conviction proceedings.[22]   On July 30, 2014, the undersigned Magistrate Judge denied that motion.[23]

In his federal petition, Kott asserts the following grounds for relief: (1) the trial court erred in denying his motion to suppress his involuntary confession; (2) the trial court erred

---

[17]State Rec., Vol. 9 of 14, 1st Cir. Order, 2013-KW-1257, 10/28/13.

[18]State Rec., Vol. 11 of 14, Letter from Attorney Rachel Yazbeck 3/12/14; Envelope from Attorney Rachel Yazbeck, dated received 3/17/14; Affidavit from Rachel Yazbeck, 3/17/14.

[19]State Rec., Vol. 11 of 14, Post-Conviction Relief Writ Application, 4/1/14; Motion to File an Out of Time Writ Application, 4/1/14.

[20]*State ex rel. Kott v. State*, 153 So. 3d 434 (La. 2014) (Mem).

[21]Rec. Doc. No. 3, Petition.

[22]Rec. Doc. No. 4, Motion for Stay and Abeyance.

[23]Rec. Doc. No. 11, Order with Reasons.

in denying his motion to suppress the evidence from an involuntary search; (3) denial of his right to confrontation; (4) improper and prejudicial admission of prior bad acts during the State's rebuttal examination of a State witness; (5) ineffective assistance of counsel; (6) the Louisiana second degree murder statute is unconstitutional as applied to his case; (7) prosecutorial misconduct; and (8) cumulative errors violated his due process right to a fair trial.

The State filed a response, conceding that the petition is timely, but arguing that claims (5) through (8) are not exhausted, because the petition to the Louisiana Supreme Court was still pending when Kott filed his federal petition, and the writ application to the Louisiana Supreme Court was untimely and therefore procedurally improper.[24]  The State argues that all of the claims also fail on the merits.

### III.    Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254.[25]  The threshold questions on *habeas* review under the amended statute are whether the petition is timely and whether the claims raised by the petitioner were adjudicated on the merits in a state court; *i.e.*, the petitioner must have exhausted state-court remedies and must not be in "procedural

---

[24]Rec. Doc. 15, State's Response.

[25]The AEDPA went into effect on April 24, 1996 and applies to *habeas* petitions filed after that date. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir.1998) (*citing Lindh v. Murphy*, 521 U.S. 320 (1997)), *see also, United States v. Sherrod*, 964 F.2d 1501, 1505 (5th Cir. 1992)(absent legislative intent to the contrary, statutes become effective at the moment they are signed into law).

default" on a claim. *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b),(c)).  In this case, as noted above, the State has raised an exhaustion defense.

First, the issue of actual exhaustion raised by the State is now moot, as the Louisiana Supreme Court denied Kott's writ application.[26]  The Louisiana Supreme Court denied the writ application without reasons, giving no indication as to whether its denial rested on procedural grounds.  Therefore, the issues of procedural default, exhaustion, and equitable tolling before this Court are rather difficult to discern.  However, the Court has determined it need not resolve these questions herein, because after a thorough review of the record, the Court finds that Kott's claims lack merit.  Because a district court may, in its discretion, deny relief on the merits regardless of whether or not the claims have been fully exhausted, 28 U.S.C. § 2254(b)(2); *Jones v. Jones*, 163 F.3d 285, 299 (5th Cir. 1999), the court declines to address the State's arguments regarding exhaustion, and turns to address the merits.

### 1.    Merits Review

The AEDPA standard of review is governed by § 2254(d) and the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362 (2000).  Subsections 2254(d)(1) and (2) contain revised standards of review for pure questions of fact, pure questions of law, and mixed questions of both.  The AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

---

[26]*State ex rel. Kott v. State*, 153 So. 3d 434 (La. 2014) (Mem).

8

A state court's determination of factual issues is presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2), *see also* 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of *habeas corpus* by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

A state court's determination of questions of law and mixed questions of law and fact is given deference under 28 U.S.C. § 2254(d)(1), unless the decision "was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States, or ... involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). The "contrary to" and "unreasonable application" clauses have distinct meaning:

> A decision is contrary to clearly established Federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Under § 2254(d)(1)'s "unreasonable application" language, a writ may issue "if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."

*Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001) (quoting *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)) (citations omitted). However, "'[a] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state court decision applied [a Supreme Court case] incorrectly.'" *Price v.*

9

*Vincent*, 538 U.S. 634, 641 (2003) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24–25 (2002))

(brackets in original); *Bell v. Cone*, 535 U.S. at 699 (2002). Rather, under the "unreasonable

application" standard, "the only question for a federal habeas court is whether the state court's

determination is objectively unreasonable." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002),

*cert. denied sub nom, Neal v. Epps*, 537 U.S. 1104 (2003).

The burden is on the petitioner to show that the state court applied the precedent to

the facts of the case in an objectively unreasonable manner. *Price*, 538 U.S. at 641 (quoting

*Woodford*, 537 U.S. at 24–25); *Wright v. Quarterman*, 470 F.3d 581, 585 (5th Cir. 2006). "As

a condition for obtaining habeas corpus from a federal court, a state prisoner must show that

the state court's ruling on the claim being presented in federal court was so lacking in

justification that there was an error well understood and comprehended in existing law

beyond any possibility for fairminded disagreement." *White v. Woodall*, 134 S. Ct. 1697, 1702

(2014) (quoting *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 786–787, 178 L.Ed.2d 624

(2011)).

**IV.     *Petitioner's Substantive Claims***

**1.     *Denial of Motion to Suppress the Confession***

Kott's first asserted claim is that the trial court erred in denying his pretrial motion to

suppress his confession. He alleges that the inculpatory statements he made to police were

the result of police coercion, because the officers withheld his medication which caused him

to go into withdrawal. According to Kott, he was addicted to his legally prescribed painkillers,

which he admittedly abused, and was in severe withdrawal after hours of interrogation. Kott

alleges that he asked for his medication multiple times, and that the police offered him his

medication in exchange for a confession–thus, the statements that he made were not given voluntarily, but rather as the result of police coercion.

Kott asserted this issue in his *pro se* brief on direct appeal to the Louisiana First Circuit. The court thoroughly reviewed the testimony and evidence from the pretrial suppression hearings and trial, and concluded that the trial court had not abused its discretion in finding that the fact that the defendant suffered from withdrawal did not make him incapable of giving a voluntary confession.[27]

The admissibility of a confession is a mixed question of law and fact.  *Miller v. Fenton*, 474 U.S. 104, 112 (1985).  The determination of the voluntariness of a confession requires the court to consider the "totality of the circumstances," including the "characteristics of the accused and the details of the interrogation."  *Shneckloth v. Bustamonte*, 412 U.S. 218, 224 (1973).  In entertaining a collateral challenge to the voluntariness of a confession, a federal court must defer to state court fact-finding on "subsidiary factual questions" under 28 U.S.C. § 2254(e)(1).  However, the court has an "independent obligation" to determine whether a confession was voluntary under federal law.  *Miller*, 474 U.S. at 112.  In light of the AEDPA, the state courts' voluntariness determination must therefore not be contrary to, nor an unreasonable application of, federal law.

In order for a confession to be involuntary, there must be some form of coercive police activity.  *Colorado v. Connelly*, 479 U.S. 157, 167 (1986).  Thus, while one's "mental condition is surely relevant to an individual's susceptibility to police coercion, mere examination of the confessant's state of mind can never conclude the due process inquiry."  *Id.* at 165.

---

[27]State Rec., Vol. 10 of 14, 1st Cir. Opinion, 2011-KA-0977, 5/4/12.

Here, Kott asserts that he was in severe withdrawal from his abuse of prescribed painkillers, and the police knowingly coerced his confession by offering him his pills in exchange for inculpatory statements.

The state trial court properly conducted a full evidentiary hearing on the admissibility of the inculpatory statements, and took the issue under advisement before issuing an opinion on the matter.[28] The trial court received testimony from the officers, as well as evidence in the form of a waiver-of-rights form and the written statements. The trial court concluded that while Kott certainly wanted his pills, the police did not use them to induce or coerce his confession.[29]

On direct appeal, the Louisiana First Circuit entered its own findings based upon the evidence and testimony from the pretrial hearing.[30] The First Circuit considered the pretrial testimony of Jan Wroten, the mother of the victim, who testified that one of the officers, Detective Campbell, stated that the defendant had asked for pills and he told the defendant he could have the pills if he wrote a confession. Ms. Wroten also indicated that Detective Campbell imitated shaking a bottle of pills in front of her face.

The First Circuit further discussed the testimony of the officers, who noted that it was obvious that Kott had a drug problem and that he wanted his pills, but that he never requested medical attention or an ambulance. Furthermore, the officers denied coercing the defendant

---

[28]State Rec., Vol. 2 of 14, Transcript, 10/16/05; Transcript, 1/31/08; State Rec., Vol. 3 of 14, Transcript 1/31/08 (continued); Transcript., 11/7/08; State Rec. Vol. 1 of 14, Reasons for Judgment, 11/7/08.

[29]State Rec. Vol. 1 of 14, Reasons for Judgment, 11/7/08.

[30]State Rec., Vol. 10 of 14, 1st Cir. Opinion, 2011-KA-0977, 5/4/12.

with a promise of his drugs in exchange for a statement.  Detective Campbell testified and also denied the statement to Ms. Wroten.  Detective Campbell also testified that he advised Kott of his *Miranda* rights and identified the waiver-of-rights form that Kott had signed.

Based on the record before it, the First Circuit concluded that the trial court had not abused its discretion in concluding that, despite suffering from withdrawal, Kott had made his statements voluntarily.

On federal *habeas* review, this court must presume that the factual determinations made by the state courts were correct, including that the officers did not promise Kott his pills to compel him to make an otherwise involuntary statement, and that he received his *Miranda* rights prior to his statements.

To overcome the presumption of correctness, Kott must rebut it by clear and convincing evidence, which he has not done.  In his federal petition he has repeated the same allegations that were already addressed by the state courts at the pretrial hearing and at trial.

This court's thorough review of the state court record and especially the transcripts of the pretrial motion-to-suppress hearings and trial leads this court to find that the Louisiana First Circuit Court's determination of voluntariness is supported by the testimony and other evidence, such as the waiver form.  The state courts' finding of voluntariness was therefore neither contrary to, nor an unreasonable application of, Supreme Court precedent.  Kott is not entitled to federal *habeas corpus* relief on this claim.

### 2.    *Denial of Motion to Suppress the Evidence*

In his second claim, Kott asserts that the trial court erred in finding his consent to the search of his motel room and vehicle was voluntary, because it was the result of police

coercion when they denied him his medication, causing him to suffer withdrawal.  Essentially, the grounds he argues rendered his consent involuntary are the same as the ones he argued rendered his inculpatory statements involuntary.

The trial court considered Kott's motion to suppress the evidence at the same pretrial suppression hearings as the motion to suppress the confessions.  The Louisiana First Circuit also reviewed the relevant testimony regarding this claim on direct review, and concluded that there was no evidence that the consent to search was obtained involuntarily.

The main fact that Kott relies upon to support his argument that consent was not voluntary is that the time written on the consent to search form was 10:45 a.m., which was prior to the time that Kott had made the 9-1-1 call.  Kott also argued that the time on the *Miranda* rights form was 13:14, which meant he hadn't waived his rights when he signed the search form.  However, the testimony of the police officers indicated that he had orally been advised of his *Miranda* rights prior to his arrival at the police station.

The last reasoned decision on this issue was on appeal to the Louisiana First Circuit Court of Appeal.[31]  After thoroughly reviewing the record, the First Circuit concluded that there was no error or abuse of discretion in the trial court's denial of the motion to suppress the evidence.  Indeed, the testimony of the police officers supported the fact that he had been advised of his rights prior to signing the consent form; that the time on the consent form was obviously inaccurate; and the fact that one officer had signed the form at a different time than the first officer did not vitiate the voluntariness of Kott's consent.

---

[31]State Rec., Vol. 10 of 14, 1 st Cir. Opinion, 2011-KA-0977, 5/4/12.

These factual determinations are entitled to the presumption of correctness before this Court on federal *habeas corpus* review.  Kott has not rebutted these findings by clear and convincing evidence; he has simply reiterated the arguments he made to before the state courts.  He is not entitled to federal *habeas corpus* relief on this claim.

### 3.    *Denial of Right to Confrontation*

In his next claim, Kott asserts that he was deprived of his constitutional right to confront a witness when he was not allowed to cross-examine one of the prosecution's witnesses on alleged prior improper misconduct at a pretrial hearing on the motion to suppress.  At the hearing, Kott's counsel attempted to cross-examine Captain Kevin Swann regarding his alleged termination for misconduct from another police department approximately 10 years prior to the crime with which Kott was charged.[32]

The prosecution objected to the relevancy, and the trial court sustained the objection, agreeing that it was remote and collateral to the matters before the court.  Kott's counsel properly preserved his objection on the record.  His related supervisory writ applications were denied without reasons by the First Circuit Court of Appeal and the Louisiana Supreme Court.[33]

As the United States Fifth Circuit Court of Appeals has stated, "A trial court may generally limit the scope and extent of cross-examination, and its decision will not be disturbed on review unless the ruling was an abuse of its discretion."  *United States v. Crosby*, 713 F.2d 1066 (5th Cir. 1983) (citing *United States v. Hawkins*, 661 F.2d 436, 444 (5th Cir.

---

[32]State Rec., Vol. 3 of 14, Transcript, 1/31/08 (continued), pp. 637-38.

[33]State Rec., Vol. 2 of 14, 1st Cir. Order, 2009-KW-0295, 6/22/09; La. S. Ct. Order, 2009-KK-1667, 10/30/09.

1981)).  Therefore, the trial court certainly has the ability to limit issues to those relevant at trial.  *Id.*

Kott argues that Captain Swann's prior termination for misconduct is relevant as to the credibility of his testimony at trial.  This court's review of the record, and the appendices attached regarding Captain Swann's alleged misconduct, indicates that the trial court's ruling was not an abuse of discretion.  It was simply not unreasonable for the trial court to limit cross-examination regarding a termination nearly 10 years prior to the crime at issue.

Furthermore, this court agrees that even if there could have been an error in this ruling, any error was certainly harmless.  There were many other officers who testified regarding the voluntary nature of Kott's statements and his consent to the searches.  Indeed, it is apparent from the record that Captain Swann was not the lead officer on this matter.  Kott is therefore not entitled to federal *habeas corpus* relief on this claim.

### 4.    *Admission of Other Crimes Evidence*

In his next claim, Kott contends that the trial court erred in allowing the admission of other crimes evidence.  Specifically, he argues that the State improperly introduced evidence during its rebuttal, in the form of testimony of another woman, Shante Brady, who stated that Kott had previously injected her with Dilaudid.  Kott argues that not only was this evidence offered in violation of the notice required under Louisiana state law, but also that its prejudicial value outweighed its probative value, depriving him of a fair trial.

Kott's counsel raised this claim on appeal to the Louisiana First Circuit Court of Appeal. In its decision, the First Circuit thoroughly reviewed what happened regarding this issue at

trial.[34] Kott testified in his own defense at his trial.  On cross-examination, the State asked Kott whether he knew Shante Brady, and whether he had injected her with drugs.  The following summary was taken from the First Circuit Court of Appeal's opinion:[35]

> He indicated he knew Shante Brady, but denied injecting her or anyone else with drugs.  The State told the defendant, "She'll be here tomorrow to talk." The defendant replied, "Well, good. Let's go."

> On rebuttal, the State called Shante Brady. At a bench conference, the defense asked what Brady was being called "to rebut ." The State indicated the defendant had denied injecting Brady with Dilaudid, but she would testify to the contrary. The defense objected it had no "404(B)" notice of Brady's testimony. The State responded, "[t]his isn't 404(B). This is for credibility [.]" The defense then objected that the State had "jarred the door open ... to uncharged misconduct" by improperly questioning the defendant about other criminal activity. The court pointed out the defense had failed to contemporaneously object to the alleged improper questioning.

> Outside the presence of the jury, Brady indicated in 2002, the defendant told her a mutual friend was waiting for her in his motel room, sent a cab to bring her there, and then repeatedly injected her with Dilaudid. The State indicated, as part of discovery, the defense had been provided with a copy of the 2004 letter discussing the incident that Brady had sent to the district attorney's office. The court asked the State for what purpose it was offering Brady's testimony. The State replied it was offering the testimony to impeach the defendant's testimony that he had never injected Brady. The defense objected for lack of notice of La. C.E. art 404(B) evidence. The court ruled it would allow testimony from Brady, with a limiting instruction. The court observed that in his direct testimony, the defendant had claimed the nonexistence of a material fact, i.e., the distribution by injection of Dialudid to the decedent. On cross-examination, he had also denied injecting Brady with Dilaudid. The court held notice of other crimes evidence was not required on rebuttal when the defendant made the other crimes evidence relevant by his own testimony.

---

[34]*State v. Kott*, 90 So. 3d 555 (La. App. 1st Cir. 2012) (Table); State Rec., Vol. 10 of 14, 1st Cir. Opinion, 2011-KA-0997, 2/10/12.

[35]*Id.* (footnotes omitted).

Insofar as Kott argues herein that he did not receive proper notice under La. Code Evid. art. 404(b), that question does not present a cognizable claim before this court. *Habeas* review is limited to questions of constitutional dimension, and federal courts generally do not review the admissibility of evidence under state law. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *Gonzales v. Thaler*, 643 F.3d 425, 429 (5th Cir. 2011); *Jernigan v. Collins*, 980 F.2d 292, 298 (5th Cir. 1992).

Therefore, federal courts do not sit to review the propriety of state-court evidentiary rulings, unless the proceedings violate due process such that the violation renders the criminal proceeding fundamentally unfair. *Lisenba v. People of the State of California*, 314 U.S. 219, 236-37 (1941); *Peters v. Whitley*, 942 F.2d 937, 940 (5th Cir.1991) (*Habeas* review is proper only to determine whether a state trial judge's error is so extreme as to render the trial fundamentally unfair or violate an explicit constitutional right.)

Kott has alleged, however, that the prejudicial nature of the testimony so outweighed the probative nature of the evidence, that it rendered his trial fundamentally unfair. This issue presents a mixed question of law and fact. *Wilkerson v. Cain*, 233 F.3d 886, 890 (5th Cir.2000). Under the applicable standard of review, this court therefore must determine if the state court's decision is contrary to or involved an unreasonable application of Supreme Court precedent.

The United States Court of Appeals for the Fifth Circuit has stated that the admission of prejudicial evidence is fundamentally unfair so as to justify federal *habeas corpus* relief only if it "played a crucial, critical, and highly significant role in the trial." *Gonzales*, 643 F.3d at 430 (quotation omitted). This court's thorough review of the record concludes that the First

Circuit's conclusion that "the prejudicial effect of the challenged evidence did not rise to the level of undue or unfair prejudice when balanced against its probative value" was not unreasonable under federal law.

Kott's daughter testified that he had shot her and the victim up with Dilaudid previously. She also testified that he confessed to shooting up the victim when she arrived on the scene. Kott himself gave inculpatory statements to the police. In light of all of the evidence, Brady's testimony was not only probative, but its prejudicial effect was lessened.

Furthermore, Kott first denied having injected his daughter or the victim, contrary to his daughter's testimony and his own prior statements. "If a defendant testifies, he puts his credibility in issue. If he lies in the course of his testimony, he lays himself open to attack by means of illegal evidence which otherwise the prosecution could not use against him." *Williams v. Wainwright*, 502 F.2d 1115, 1116 (5th Cir. 1974). The State therefore cross-examined him regarding if he had ever shot anyone else up, and if he knew Shante Brady. He admitted knowing her, yet denied ever shooting her up. And, the defense had received the letter Brady had written stating that he had injected her in 2002 with Dilaudid through open file discovery, and was aware of her assertions prior to trial.

In light of these circumstances, the admission of this evidence of prior bad acts in the state courts was neither contrary to, nor an unreasonable application of, federal law. Kott is not entitled to federal *habeas corpus* relief on this claim.

### 5.  *Ineffective Assistance of Counsel*

In his fifth claim, Kott asserts that he received ineffective assistance of trial counsel when counsel (a) failed to perform pretrial discovery and investigation; (b) failed to prepare

19

and present a viable defense; © failed to present a defense of negligent homicide and to request a special jury instruction on it; (d) failed to acquire experts despite funding being granted; and (e) the cumulative effect of these errors.

The United States Supreme Court has established a two-pronged test for evaluating claims of ineffective assistance of counsel.  Specifically, a petitioner seeking relief must demonstrate both that counsel's performance was constitutionally deficient and that the deficient performance prejudiced his defense.  *Strickland v. Washington*, 466 U.S. 668, 697 (1984).  A petitioner bears the burden of proof on such a claim and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective."  *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir. 1993); *see also Clark v. Johnson*, 227 F.3d 273, 284 (5th Cir. 2000).  If a court finds that a petitioner has made an insufficient showing as to either of the two prongs of inquiry, *i.e.,* deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong.  *Strickland*, 466 U.S. at 697.

To prevail on the deficiency prong of the *Strickland* test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment.  *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001). "Counsel's performance is deficient if it falls below an objective standard of reasonableness."  *Little v. Johnson*, 162 F.3d 855, 860 (5th Cir. 1998).  Analysis of counsel' performance must take into account the reasonableness of counsel's actions in light of all the circumstances.  *See Strickland*, 466 U.S. at 689. "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'"  *Lockhart v. Fretwell*, 506 U.S. 364, 371 (1993) (quoting *Strickland*, 466 U.S. at 690).  A petitioner must overcome a strong

20

presumption that the conduct of his counsel falls within a wide range of reasonable representation. *See Crockett v. McCotter*, 796 F.2d 787, 791 (5th Cir.1986); *Mattheson v. King*, 751 F.2d 1432, 1441 (5th Cir. 1985).

To prevail on the prejudice prong of the *Strickland test*, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.* In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." *Crockett*, 796 F.2d at 793.

Because the state district court rejected petitioner's ineffective assistance of counsel claims on the merits and because such claims present a mixed question of law and fact, this Court must defer to the state-court decision unless it was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); *Moore v. Cockrell*, 313 F.3d 880, 881 (5th Cir. 2002). Moreover, the United States Supreme Court recently explained that, under the AEDPA, federal *habeas corpus* review of ineffective assistance of counsel claims is in fact doubly deferential:

> The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect

application of federal law.  A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision.  *Yarborough v. Alvarado*, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004).  And as this Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Ibid.*  "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court."  *Knowles v. Mirzayance*, 556 U.S. 111, ––––, 129 S.Ct. 1411, 1413–14, 173 L.Ed.2d 251 (2009) (internal quotation marks omitted).

*Harrington v. Richter*, 131 S.Ct. 770, 785–86 (2011) (citation omitted).  The Supreme Court then explained:

Surmounting *Strickland*'s high bar is never an easy task.  An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence. The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom.

Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult.  The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.  The *Strickland* standard is a general one, so the range of reasonable applications is substantial.  Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

22

*Id.* at 788 (citations omitted; emphasis added).

Under these stringently deferential standards, Kott has failed to meet his burden of showing that his trial counsel was ineffective.  The state district court, in the last reasoned decision on the issue, found summarily that after its review of the entire record, "petitioner has failed to prove grounds upon which relief shall be granted."[36] This decision cannot be said to be an unreasonable application of Supreme Court precedent in light of this court's own thorough review of the record.

First, Kott argues that his trial counsel failed to perform pretrial discovery and investigation.  Specifically, that he failed to obtain the blood evidence in a timely matter which was crucial to his defense.  The evidence he refers to was a blood sample taken from him on the day of the incident.  Kott argues that the delay in obtaining the blood caused the sample to be degraded and therefore the toxins in his blood sample were lessened, which prejudiced his defense because had the levels been higher it would have proven his incapacity at the time he was questioned by police.  This argument must fail. Whether or not it is possible that the blood sample could have been degraded, (of which there is no evidence, only a letter from Kott's counsel's paralegal suggesting that he learned from the lab that substances in a blood sample can deteriorate "depending on temperature levels of storage, duration of storage and several other factors involved in maintenance")[37] counsel did eventually obtain the sample and had it independently tested, and toxins were present.

---

[36]State Rec., Vol. 11 of 14, District Ct. Order, 6/20/13.

[37]Rec Doc. No. 3-3, Exhibits, p. 239.

In fact, the original purpose of the drawing Kott's blood was to serve as a DNA sample to establish whether he had engaged in sexual intercourse with the victim. Kott argues that if the toxin levels were higher (and not "diminished") he would have had a likelihood of a different outcome at trial because it would have illustrated his high level of intoxication. However, as discussed in greater detail below, the theory of his defense hinged on his state of withdrawal and police coercion in withholding his medication, which caused him to involuntarily confess to a crime he did not commit. The sample itself, and his level of intoxication, was not a crucial element of his defense–indeed there was no question at trial that he was an admitted painkiller addict and had been abusing drugs for some while.

Similarly, his argument that his counsel failed to call an expert, despite having secured funding for one, also must fail. The record indicates that counsel obtained funds to get testing, submitted the sample for testing, and introduced those results at a pretrial motion to suppress hearing.[38] Counsel likely reasonably concluded that the results of the test were not particularly helpful to his defense, as explained above, and therefore an expert was unnecessary to testify regarding those results. Furthermore, "[c]laims that counsel failed to call witnesses are not favored on federal habeas review because the presentation of witnesses is generally a matter of trial strategy and speculation about what witnesses would have said on the stand is too uncertain." *Woodfox v. Cain*, 609 F.3d 774, 808 (5th Cir. 2010)(citing *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir.1985)). Therefore, petitioners claiming ineffective assistance on the basis of uncalled witnesses must demonstrated prejudice by "nam[ing] the witness, demonstrat[ing] that the witness was available to testify and would

---

[38]State Rec., Vol. 3 of 14, Transcript, 1/31/08 (continued), p. 506-07.

have done so, set[ting] out the content of the witness's proposed testimony, and show[ing] that the testimony would have been favorable to a particular defense." *Id.* (quoting *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir.2009)).  This standard applies to uncalled lay and expert witnesses alike.  *Id.*  Here, Kott has failed to meet this burden.  He has not named an expert witness, nor demonstrated what the witness would have testified to, nor that such an expert was available.  This claim must therefore fail.

In another similar vein, Kott argues that counsel was ineffective for failing to present a defense of intoxication.  In fact, as mentioned above, the main strategy urged by the defense both in the pretrial motion-to-suppress hearings and at trial was that Kott suffered from withdrawal symptoms, rather than intoxication, namely because the police had refused him his medication.  In other words, the theory of his defense was that his confession was the result of withdrawal and that he was not in fact guilty of the crime.  Presenting another defense simultaneously that he was indeed so intoxicated that he could not distinguish right or wrong in committing the crime would have been inconsistent–as it would have admitted guilt – and therefore unlikely to persuade the jury.  In any case, this issue is a question of trial strategy, which deserves the utmost deference on *habeas* review.  *See Strickland*, 466 U.S. at 689.

Additionally, Kott urges the argument that his counsel failed to present a defense of negligent homicide, and request a jury instruction regarding the same.  Although this also represents a question of trial strategy, the record indicates that Kott is mistaken on this point.  Indeed, in the closing statement, defense counsel reiterated that if the jury were to believe the State's theory that Kott injected the victim, that it must have been done negligently or

accidentally.[39] Furthermore, prior to the jury instruction on negligent homicide, there was a bench conference.[40] Defense counsel wanted to make sure the court read to the jury the mandatory penalty of life without the benefit of probation or parole for second degree murder.[41] Defense counsel then objected–not to the reading the instructions for negligent homicide and manslaughter–but rather to reading the sentences for each of these crimes. This was obviously a matter of strategy, and likely a way of preventing the jury from being dissuaded from electing either of those lesser punishments due simply to the much lesser sentence Kott might stand to receive. Defense counsel was not ineffective in this regard.

Finally, Kott argues that the cumulative effect of the errors constituted ineffective assistance of counsel. However, Kott has failed to identify any constitutional error in defense counsel's performance, and thus has no basis for any alleged cumulative effect of the alleged errors. *Pondexter v. Quarterman*, 537 F.3d 511, 525 (5th Cir. 2008), *cert. denied*, 129 S.Ct. 1544 (2009); *United States v. Hall*, 455 F.3d 508, 520 (5th Cir. 2006); *Miller v. Johnson*, 200 F.3d 274, 286 n. 6 (5th Cir. 2000). In other words, as the United States Fifth Circuit Court of Appeals has noted with respect to such claims of cumulative error: "Twenty times zero equals zero." *Mullen v. Blackburn*, 808 F.2d 1143, 1147 (5th Cir. 1987).

Kott has failed to meet his burden on his claim of ineffective assistance of counsel. Therefore, he is not entitled to federal *habeas corpus* relief on this claim.

---

[39]State Rec., Vol. 8 of 14, Trial Transcript, 12/3/10, p. 1907.

[40]*Id.* at pp. 1932-33.

[41]*Id.*

### 6.     Unconstitutionality of La. Rev. Stat. 14:30.1(3) and (4)

In his sixth claim, Kott asserts that Louisiana's second degree murder statute, specifically La. Rev. Stat. 14:30.1(3) and (4) is unconstitutional as applied to his case by providing for a mandatory life sentence for an offense which "lacks any intent to kill or inflict great bodily harm, without first allowing the sentencing court the ability to consider the characteristics of a petitioner and the details of his offense before sentencing him."

In his argument, Kott relies mostly on Louisiana law, which is not relevant to the *habeas* proceeding before this court.  He does cite to some United States Supreme Court cases, however, none which suggest that in the case of an adult offender a mandatory life sentence is unconstitutional.  Rather, he cites to a recent line of cases that have held that children and juveniles should not be mandatorily sentenced to life, due to a lesser culpability of children and the fact that a child's character is less formed.  Extrapolating on the "diminished culpability" of a child, he extends this theory to encompass the incapacity and lesser culpability of a drug addict.

This argument, however, has not been accepted by the United States Supreme Court, and is not for this federal *habeas* court to entertain herein.  The state courts' rejection of this claim was therefore neither contrary to, nor an unreasonable application of, Supreme Court precedent.

### 7.     Prosecutorial Misconduct

In his seventh claim, Kott asserts that prosecutorial misconduct occurred when the district attorney withheld the blood sample from him, and obtained testimony by threatening witnesses.  Specifically, he argues that the blood sample that was taken was withheld in order

27

to "diminish" it to the point that his defense was ruined, as less toxins were in the blood once the sample eventually was tested.

Again, the basic premise underlying this part of the claim, that the blood sample was actually not properly preserved and somehow the toxins "diminished" has not been supported by evidence. Rather, the only basis for this assertion is the letter which stated that a lab technician had told Kott's paralegal that substances in blood *could* diminish if not properly stored and over time. Moreover, the State did eventually turn over the blood sample, and it was tested by the defense, and still showed the presence of toxins. This part of his claim simply lacks a factual basis, is hinged on speculation, and therefore lacks merit.

Next, Kott claims that the State coerced and threatened his daughter, Catherine Boyen, to cause her to testify. This claim also lacks merit. The record reflects that Boyen was granted immunity from prosecution for the acts relating to this crime and therefore was compelled to testify by court order.[42] As the United States Supreme Court stated decades ago, "[t]he power of government to compel persons to testify in court or before grand juries and other governmental agencies is firmly established in Anglo-American jurisprudence." *Kastigar v. United States*, 406 U.S. 441, 443 (1972). The fact that Catherine Boyen may not have wanted to testify against her father does not result in prosecutorial misconduct where she was granted immunity and therefore compelled to do so.

Kott has not met his burden on this claim, and is not entitled to federal *habeas corpus* relief.

### 8.    *Cumulation of Errors*

---

[42]State Rec., Vol. 6 of 14, Trial Transcript 12/1/10, p. 1458.

In his eighth and final claim, Kott asserts that the cumulation of the above alleged errors resulted in a fundamentally unfair trial violating his due process rights.  As explained above in regards to his claim of cumulative error as a basis for ineffective assistance of counsel, because this court finds that all of his claims lack merit, the alleged errors cannot be cumulated to create a basis for relief.  *See Pondexter*, 537 F.3d at 525; *Hall*, 455 F.3d at 520; *Miller*, 200 F.3d at 286 n. 6; *accord Blackburn*, 808 F.2d at 1147.  Kott is not entitled to federal *habeas corpus* relief on this claim.

## RECOMMENDATION

Accordingly, **IT IS RECOMMENDED** that the petition for federal *habeas corpus* relief filed by Lawrence Landor be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).[43]

New Orleans, Louisiana, this 26th day of _____ October _____, 2015.

_____
**MICHAEL B. NORTH**
**UNITED STATES MAGISTRATE JUDGE**

---

[43]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.